**No. 23-13200-F**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

---

**HONEYWELL INTERNATIONAL, INC. f/k/a ALLIED CHEMICAL CORPORATION and as ALLIEDSIGNAL, INC., and GEORGIA POWER COMPANY,**

**Appellants,**

**v.**

**CITY OF BRUNSWICK, by and through its MAYOR AND BOARD OF COMMISSIONERS,**

**Appellee.**

---

On Appeal from the United States District Court for the
Southern District of Georgia
No. 2:22-cv-00132

---

# BRIEF OF APPELLANT GEORGIA POWER COMPANY

---

T. Joshua R. Archer
Georgia Bar No. 021208
Balch & Bingham LLP
30 Ivan Allen Jr. Blvd., NW
Suite 700
Atlanta, Georgia 30308
Telephone: (404) 261-6020

Benjamin H. Brewton
Georgia Bar No. 002530
Balch & Bingham LLP
801 Broad Street, Suite 800
Augusta, Georgia 30901
Telephone: (706) 842-3711

*Attorneys for Appellant Georgia Power Company*

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT**

Pursuant to Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-1, the undersigned counsel of record for Appellant Georgia Power Company file this Certificate of Interested Persons and Corporate Disclosure Statement and certify the following is a complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

- Archer, T. Joshua R., counsel for Appellant Georgia Power Company
- Balch & Bingham LLP, law firm of counsel for Appellant Georgia Power Company
- Bell, John C. Jr., counsel for Appellee City of Brunswick
- Brewton, Benjamin H., counsel for Appellant Georgia Power Company
- Carter, Amber M., counsel for Appellant Honeywell International, Inc.
- City of Brunswick, Appellee
- Corry, Brian Donald, counsel for Appellee City of Brunswick
- Georgia Power Company, Appellant

- Gilbert, Harrell, Sumerford & Martin, P.C., law firm of counsel for Appellant Honeywell International, Inc.
- Hall, J. Randal, Judge, United States District Court for the Southern District of Georgia
- Honeywell International, Inc. (NASDAQ: HON), Appellant
- James, Pamela S., counsel for Appellee City of Brunswick
- Johnson, Mark D., counsel for Appellant Honeywell International, Inc.
- Killian Law Firm LLC, law firm of counsel for Appellee City of Brunswick
- Killian, Robert P., counsel for Appellee City of Brunswick
- McQuigg Smith & Corry, law firm of counsel for Appellee City of Brunswick
- Southern Company (NYSE: SO), publicly held corporation that owns 100% of stock of Appellant Georgia Power Company
- The Bell Firm, law firm of counsel for Appellee City of Brunswick

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to 11th Cir. Rule 28-1(c), Appellant Georgia Power Company ("Georgia Power") states it does not request oral argument.

## TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure Statement................C-1

Statement Regarding Oral Argument ........................................................................i

Table of Contents ........................................................................................ ii

Table of Citations ..........................................................................................iv

Statement Regarding Adoption of Briefs of Other Parties .......................................1

I. Statement of Subject Matter and Appellate Jurisdiction ................................2

II. Statement of the Issues ........................................................................3

III. Statement of the Case ........................................................................3

A. Nature of the Case ........................................................................3

B. Course of Proceedings and Dispositions in the Court Below ...............4

C. Statement of Facts ........................................................................5

D. Standard of Review ........................................................................8

IV. Summary of the Argument ........................................................................10

V. Argument and Citation of Authority ..........................................................12

A. The Statute of Limitations Bars the City's Claim. .............................13

1. Georgia Law Governing the City's Claims .............................14

a. Permanent Versus Abatable Nuisances/Trespasses .......14

b. Permanent Nuisances Created by Public Versus Private Entities ..............................................................15

2. The City's Complaint Clearly Alleges a Permanent Nuisance/Trespass Against Georgia Power. ............................ 17

3. The City's Permanent Nuisance Claim Is Barred by the Statute of Limitations. ............................................................ 21

4. The "Discovery Rule" Does Not Save the City's Claims ......... 22

B. Even if the City's Claims Against Georgia Power Were for Continuing Nuisance/Trespass, the City Cannot Establish an Essential Element of Its Claims. ...................................................... 26

VI. Conclusion ........................................................................................ 29

Certificate of Compliance ........................................................................ 31

Certificate of Service ................................................................................ 32

## TABLE OF CITATIONS

**Cases**

*Abramyan v. State*,

301 Ga. 308 (2017)....................................................................................9

*Allied Chemical Corp. v. Georgia Power Co.*,

236 Ga. 548 (1976)..................................................................................15

*Bainbridge Power Co. v. Ivey*,

41 Ga. App. 193 (1930)............................................................................20

*Blankenship v. Consolidation Coal Company*,

850 F.3d 630 (4th Cir. 2017)....................................................................26

*Bodin v. Gill*,

216 Ga. 467 (1960)..................................................................................27

*BP P.L.C. v. Mayor and City Council of Baltimore*,

141 S. Ct. 1532 (2021) ..............................................................................3

*Brand v. Montega Corp.*,

233 Ga. 32 (1974)....................................................................................12

*Briggs & Stratton Corp. v. Concrete Sales & Servs.*,

971 F. Supp. 566 (M.D. Ga. 1997)........................................................ 12, 28

*City Council of Augusta v. Lombard*,

101 Ga. 724 (1897)..................................................................................27

*City of Atlanta v. Carlisle*,

359 Ga. App. 444 (2021).........................................................................13

* *City of Atlanta v. Kleber*,

285 Ga. 413 (2009)................................................................ 14, 15, 18, 19

* *Corporation of Mercer University v. National Gypsum Company*,

1986 WL 12447 (M.D. Ga. March 9, 1986) .......................................... 27, 28, 29

*Cox v. Cambridge Towne Houses, Inc.*,

239 Ga. 127 (1977).........................................................................16

*Crosson v. Carrollton City School District*,

478 F. Supp. 3d 1255 (N.D. Ga. 2020) ...............................................20

*Crowe v. Coleman*,

113 F.3d 1536 (11th Cir. 1997).........................................................9

*Francis v. Teague*,

2009 WL 10665635 (N.D. Ga. Feb. 13, 2009) ......................................12

*Henderson v. Washington Nat. Ins. Co.*,

454 F.3d 1278 (11th Cir. 2006).........................................................9

*KSSR Props., LLC v. BellSouth Telecom.*,

2021 WL 1940207 (N.D. Ga. April 21, 2021)......................................20

*LaCroix v. Western Dist. of Kentucky*,

627 Fed. Appx. 816 (11th Cir. 2015).................................................21

*Lawrence v. Thornburg Mortg. Home Loans Inc.*,

624 Fed. Appx. 721 (11th Cir. 2015) ....................................................... 21

*Leonard v. Enterprise Rent a Car*,

279 F.3d 967 (11th Cir. 2002) ....................................................... 9

*Liberty County v. Eller*,

327 Ga. App. 770 (2014) ....................................................... 20

*Magnin v. Teledyne Continental Motors*,

91 F.3d 1424 (11th Cir. 1996) ....................................................... 10

*Manley v. Ford Motor Co.*,

17 F. Supp. 3d 1375 (N.D. Ga. 2014) ....................................................... 9

*O'Connor v. Boeing North American, Inc.*,

311 F.3d 1139 (9th Cir. 2002) ....................................................... 25

* *Oglethorpe Power Corp. v. Forrister*,

289 Ga. 331 (2011) ....................................................... 14, 15, 16, 17, 18, 19, 21

*Parker v. Scrap Metal Processors, Inc.*,

386 F.3d 993 (11th Cir. 2004) ....................................................... 29

*Porter v. MetroPCS Communications Inc.*,

592 Fed. Appx. 780 (11th Cir. 2014) ....................................................... 8

*Provident Mut. Life Ins. Co. of Philadelphia v. City of Atlanta*,

938 F. Supp. 829 (N.D. Ga. 1995) ....................................................... 12

*Reichhold Chemicals, Inc. v. Textron, Inc.*,
888 F. Supp. 1116 (N.D. Fla. 1995)....................25

*Smith v. Dallas Utility Co.*,
27 Ga. App. 22 (1921)....................20

*Southfund Partners v. City of Atlanta*,
221 Ga. App. 666 (1996)....................27

*State of Georgia v. City of East Ridge, Tennessee*,
949 F. Supp. 1571 (N.D. Ga. 1996)....................12

*Stillwell v. Allstate Ins. Co.*,
663 F.3d 1329 (11th Cir. 2011).................... 9, 21, 22, 26, 29

*Wise Business Forms, Inc. v. Forsyth County*,
2023 WL 6065278 (Ga. Sept. 19, 2023)....................14

**Federal Statutes**

28 U.S.C. § 1291....................2

28 U.S.C. § 1331.................... 2, 4, 5

28 U.S.C. § 1332.................... 2, 4, 5

28 U.S.C. § 1442.................... 2, 3, 4

28 U.S.C. § 1447(d)....................2

* 42 U.S.C. § 9658(b)(4)(A).................... 11, 22, 23, 25

**State Statutes**

O.C.G.A. § 9-3-30(a) .......................................................................................13

**Other Authorities**

Glynn County GIS Department Website
https://qpublic.schneidercorp.com/Application.aspx?AppID=964&LayerID=19142&PageTypeID=4&PageID=8448&KeyValue=03-06321 ............................6

RESTATEMENT (SECOND) OF TORTS § 930 cmt. c ................................ 16, 17, 18, 19

U.S. DEP'T OF THE INTERIOR, USGS Fact Sheet FS-095-01, "Mercury in U.S. Coal – Abundance, Distribution, and Modes of Occurrence" (2001) .................23

U.S. EPA, EPA-452/R-97-004, "Mercury Study Report to Congress Volume II: An Inventory of Anthropogenic Mercury Emissions in the United States" ES-4 (1997) .....................................................................................................23

U.S. EPA, EPA-600/3-77-063, "Mercury Distribution in Soil Around a Large Coal-Fired Power Plant" (1977)......................................................................23

U.S. GOV'T ACCOUNTABILITY OFF., GAO-10-47, "Clean Air Act: Mercury Control Technologies at Coal-Fired Power Plants Have Achieved Substantial Emissions Reductions" (2009) ........................................................................23

**Newspaper Articles**

Mary Landers, "Sierra Club files intent to sue Georgia Power over coal ash cleanup," SAVANNAH MORNING NEWS (July 24, 2017)

https://www.savannahnow.com/story/news/2017/07/25/sierra-club-files-intent-sue-georgia-power-over-coal-ash-cleanup/13871752007 .........................24

Russell Grantham, "Sierra Club: Georgia Power's coal ash plan illegal," ATLANTA JOURNAL-CONSTITUTION (July 24, 2017) https://www.ajc.com/business/sierra-club-georgia-power-coal-ash-plan-illegal/JA56xb0v0qzxRZCNRVEuPK.................................................................24

Terry Dickson, "Environmental law firm wants Georgia Power to remove more coal ash," THE FLORIDA TIMES-UNION (Nov. 7, 2017) https://www.jacksonville.com/story/news/2017/11/07/ environmental-law-firm-wants-georgia-power-remove-more-coal-ash/15778793007.......................24

## STATEMENT REGARDING ADOPTION OF BRIEFS OF OTHER PARTIES

Pursuant to Federal Rule of Appellate Procedure 28(i) and 11th Cir. Rule 28-1(f) Appellant Georgia Power Company hereby adopts and incorporates by reference herein the following sections of Appellant Honeywell International Inc.'s Opening Brief:

- Statement of the Case
- Summary of the Argument
- Argument

## I. STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

The District Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1442, the federal officer removal statute, because the City's claims are connected or associated with Appellant Honeywell International, Inc.'s ("Honeywell") investigation and remediation of environmental contamination at and around its property under the direction and oversight of EPA. The District Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because the City's state law claims necessarily involve substantial and disputed federal questions involving a challenge to a federally-directed environmental cleanup under CERCLA over which the District Court retained jurisdiction. The District Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the City and Honeywell are citizens of different states, the amount in controversy exceeds $75,000, and Georgia Power was fraudulently joined to defeat diversity jurisdiction.

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, because it is from a final judgment of the District Court entered on September 1, 2023, closing this action and remanding it to the Superior Court of Glynn County. This Court also has jurisdiction over this appeal pursuant to 28 U.S.C. § 1447(d), because it is from an order remanding this action to the Superior Court of Glynn County from which it was removed pursuant to 28 U.S.C. § 1442, the federal officer

removal statute. Because Georgia Power and Honeywell relied on 28 U.S.C. § 1442 as a ground for removal of this action to the District Court, this Court may review the District Court's entire remand order. *See BP P.L.C. v. Mayor and City Council of Baltimore*, 141 S. Ct. 1532, 1533 (2021).

The District Court's Order being appealed was entered on September 1, 2023. Georgia Power timely filed its Notice of Appeal on September 25, 2023.

## II. STATEMENT OF THE ISSUES

Whether the District Court erred in remanding this action to the Superior Court of Glynn County based on its findings that:

1. the federal officer removal statute (28 U.S.C. § 1442) does not apply;
2. this case does not involve a claim arising under federal law; and
3. Georgia Power was not fraudulently joined to defeat diversity jurisdiction.[1]

## III. STATEMENT OF THE CASE

### A. Nature of the Case

The City filed its Complaint in the Superior Court of Glynn County, Georgia, asserting claims against Honeywell and Georgia Power for continuing nuisance and

[1] The facts and arguments addressing Issues 1 and 2 are set forth in the Brief of Appellant Honeywell International, Inc., and Georgia Power expressly adopts those facts and arguments and incorporates them by reference herein. Georgia Power's Statement of Facts and Argument and Citations of Authority set forth below address Issue 3.

continuing trespass, alleging they released chemicals from their facilities decades ago that contaminated property belonging to the City. Honeywell and Georgia Power removed this action to the District Court pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction), 1332 (diversity jurisdiction), and 1442 (federal officer removal jurisdiction). Upon the City's motion, the District Court remanded this action to the Superior Court. The sole issues to be resolved in this appeal surround the District Court's subject matter jurisdiction over the claims set forth in the City's Complaint.

**B. Course of Proceedings and Dispositions in the Court Below**

The City filed this action on October 20, 2022, in the Superior Court of Glynn County, Georgia (Case No. CE22-01086). *See* Doc. 1-1 at 137.[2] On November 18, 2022, Georgia Power and Honeywell removed the case to the United States District Court for the Southern District of Georgia. *See* Doc. 1. On December 19, 2022, the City filed its Motion to Remand this action to the Superior Court. *See* Doc. 21.

On September 1, 2023, the District Court entered its Order granting the City's Motion to Remand and its Judgment closing the case. *See* Docs. 43, 44. In its Order, the District Court held (1) it did not have federal officer removal jurisdiction under 28 U.S.C. § 1442 because Georgia Power and Honeywell were not acting under a

[2] As required by 11th Cir. R. 28-5, references to the record are to document numbers and page numbers appearing in the headers generated by the District Court's electronic filing system.

federal officer when they allegedly released pollutants in the waters and marshlands on and abutting the City's property (*see* Doc. 43 at 8, 11); (2) it did not have federal question jurisdiction under 28 U.S.C. § 1331 because the City's Complaint asserts only state law claims (*see id*. at 14); and (3) it did not have diversity jurisdiction under 28 U.S.C. § 1332 because Georgia Power (the non-diverse defendant) was not fraudulently joined to defeat diversity (*see id*. at 25).

On September 6, 2023, the District Court remanded the case to the Superior Court of Glynn County. Georgia Power timely filed its Notice of Appeal on September 25, 2023. *See* Doc. 45.

### C. Statement of Facts

In its Complaint, the City alleges Honeywell and its predecessors operated a chlor-alkalai plant in Brunswick, Georgia (the "Brunswick Plant Site") from 1956 to 1979 and that Honeywell played a role in keeping the Brunswick Plant Site operational from 1979 to 1994 after it sold the plant to Linden Chemicals and Plastics Corporation. *See* Complaint (Doc. 1-1 at 137) ¶¶ 7, 9. The City alleges Honeywell's activities at the Brunswick Plant Site resulted in discharges of mercury and poly-chlorinated byphenals into the air and water that spread into waters, marshes, and property of the City. *See id*. ¶¶ 11-13, 19-22, 34-35, 41-42, 66, 75.

The Complaint's scant allegations as to Georgia Power focus solely on its operation of an electric power plant called Plant McManus, which was on a parcel

of land near, but entirely separate from, the Brunswick Plant Site. *See* Glynn County GIS Department Website.[3] Georgia Power started construction of Plant McManus in 1951. *See* Declaration of Robert Mitchell (Doc. 25 at Ex. A) ¶ 8. Beginning in 1959, Plant McManus exclusively burned coal to generate electricity. *See id.* ¶¶ 13-17. Burning coal was in line with industry standards at the time; the burning of coal produced 704.4 billion kilowatt-hours of electricity in 1970, more than petroleum and natural gas combined. *See id.* ¶ 18.

In the early 1970s, Georgia Power began converting Plant McManus to generate electricity by burning oil instead of coal. *See id.* ¶ 19. To convert Plant McManus from a coal-fired plant, Georgia Power shut down each of the Plant's units for months, reducing Plant McManus's supply of electricity. *See id.* ¶ 20. Georgia Power also installed five oil storage tanks large enough to accommodate 18 million gallons of oil and constructed a large receiving dock where oil could be unloaded. *See id.* ¶¶ 21, 22. The conversion of Plant McManus from coal-burning to oil-burning cost Georgia Power millions of dollars[4] and took approximately two years. *See id.* ¶¶ 23-24. Georgia Power has not burned coal at Plant McManus since 1972, more than 50 years ago. *See id.* ¶¶ 25-27.

---

[3] Available at https://qpublic.schneidercorp.com/Application.aspx?AppID=964&LayerID=19142&PageTypeID=4&PageID=8448&KeyValue=03-06321

[4] For context, if Georgia Power were to undertake the same conversion project today, it would cost tens of millions, if not hundreds of millions, of dollars. *See id.* ¶ 24.

The City's 134-paragraph Complaint includes only three paragraphs addressing Georgia Power:

> 87. For many years, the Defendant Georgia Power Company owned and operated an electrical generator station that abutted the Turtle River known as Plant McManus. The Georgia Power Plant was coal fired, and emitted mercury into the air, the waters, and the marshes of Glynn County.
>
> 88. The mercury released by Georgia Power has, in part, migrated onto marshes and shoreline owned by the City of Brunswick thereby contributing to the pollution of property of the City of Brunswick.
>
> 89. The Defendant Georgia Power has acknowledged joint responsibility for the mercury pollution of the Marshes of Glynn, as evidenced by the Consent Decree agreed to by Georgia Power. *United States of America v. Honeywell International, Inc. and Georgia Power Company*, Civil Action No. 2:16-CV-00112, U.S. District Court, S.D. GA, DKT. 3-1, 07-29-16.

The Consent Decree referenced in paragraph 89 of the City's Complaint had nothing to do with Georgia Power's operation of Plant McManus, which is the only subject of the Complaint's allegations against Georgia Power. Rather, the Consent Decree resulted from Georgia Power's operations on the Brunswick Plant Site, which is near but entirely separate from Plant McManus, from 1937 to the mid-1950s. *See* Doc. 1-1 at 44 (Complaint in *United States of America v. Honeywell International, Inc. and Georgia Power Company*, No. 2:16-CV-00112 (S.D. Ga.) ("EPA Complaint").[5]

---

[5] Georgia Power was a party to this Consent Decree because it had purchased tracts of land within the Brunswick Plant Site in 1937, 1942, and 1950, which it used primarily for electric power generation and petroleum product storage and, the Consent Decree states, where it had disposed of hazardous substances. *See* EPA

The City's Complaint makes no allegations against Georgia Power with regard to its operations on the Brunswick Plant Site.

Besides the three paragraphs set out above, every paragraph of the Complaint asserts allegations against only Honeywell or against "Defendants" collectively. The single substantive allegation against Georgia Power is in paragraph 87: Georgia Power owned and operated Plant McManus, a coal fired electric power plant that emitted mercury. The City asserts two state law causes of action (continuing trespass and continuing nuisance) based on "Defendants' [alleged collective] failure and refusal to permanently abate their continuing nuisances and damage …." Complaint ¶ 125.

**D. Standard of Review**

This Court reviews an order granting a motion to remand for lack of jurisdiction de novo. *See Porter v. MetroPCS Communications Inc*., 592 Fed. Appx. 780, 782 (11th Cir. 2014). The District Court remanded this action to the Superior Court upon finding, among other things, the City did not fraudulently join Georgia Power in order to defeat diversity.

"When a plaintiff names a non-diverse defendant solely in order to defeat federal diversity jurisdiction, the district court must ignore the presence of the non-

---

Complaint ¶ 9. In the mid-1950s, Honeywell's predecessor acquired most of Georgia Power's land at the Brunswick Plant Site. *See id*. ¶ 10.

diverse defendant and deny any motion to remand the matter back to state court." *Henderson v. Washington Nat. Ins. Co*., 454 F.3d 1278, 1281 (11th Cir. 2006). "In such a case, the plaintiff is said to have 'fraudulently joined' the non-diverse defendant." *Id*. "To establish fraudulent joinder, 'the removing party has the burden of proving by clear and convincing evidence that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011) (quoting *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997)) (brackets omitted). Under Georgia law, there is no possibility a plaintiff can establish a cause of action if the plaintiff cannot introduce evidence within the complaint's own framework to sustain a grant of relief. *See Abramyan v. State*, 301 Ga. 308, 309 (2017).

Furthermore, "for purposes of [a] challenge to the subject matter jurisdiction of the district court, the critical time is the date of removal …." *Leonard v. Enterprise Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002). Whether a defendant was fraudulent joined is determined by "how the plaintiff fashions his initial complaint …." *Manley v. Ford Motor Co*., 17 F. Supp. 3d 1375, 1384 (N.D. Ga. 2014). To the extent the City attempts to recharacterize its Complaint's allegations against Georgia Power to include anything beyond the framework of paragraph 87,

the Court "must assess the [C]omplaint as it stood when the removal petition was filed [on November 18, 2022], not as [the City] may now wish [it] had crafted it." *Magnin v. Teledyne Continental Motors*, 91 F.3d 1424, 1429 (11th Cir. 1996).

## IV. SUMMARY OF THE ARGUMENT

The District Court's Order should be reversed, because Georgia Power was fraudulently joined in order to defeat diversity jurisdiction. The framework of the City's Complaint against Georgia Power is set forth in only one of its 134 paragraphs—Georgia Power's alleged emission of mercury as a result of burning coal at Plant McManus. The 131 paragraphs of the Complaint that do not mention Georgia Power address operations at the Brunswick Plant Site by Honeywell or "Defendants" collectively. Not a single allegation relating to the Brunswick Plant Site is made against Georgia Power. The City included its scant allegations against Georgia Power, the resident defendant, solely to avoid diversity jurisdiction and keep this action in the Superior Court of Glynn County.

The District Court erred in finding there is no clear precedent under Georgia law by which to determine whether the nuisance the City alleges Georgia Power created is continuing or permanent in nature and, thus, it is possible the statute of limitations does not bar the City's claim against Georgia Power. To the contrary, Georgia law clearly shows the alleged nuisance created at Plant McManus—the emission of mercury resulting from the burning of coal—is permanent, and not

continuing or abatable, because it was an integral part and a substantial and relatively enduring feature of Plant McManus's original plan of construction as a coal-fired plant and resulted from the essential method of the Plant's operation from 1959 to 1972. Because the nuisance the City alleges Georgia Power created is permanent, the City's claims are barred by the expiration of the four-year limitations period in 1976. The federally mandated discovery rule for environmental torts, 42 U.S.C. § 9658(b)(4)(A), does not save the City's claims, because the City reasonably should have known more than four years before it filed this action that the alleged property damages for which it seeks to recover from Georgia Power were caused or contributed to by the alleged emission of mercury resulting from the burning of coal at Plant McManus.

Even if the nuisance the City alleges Georgia Power created at Plant McManus was abatable or continuing and not permanent, the City still cannot possibly establish a cause of action against Georgia Power. An essential element of a continuing nuisance claim under Georgia law is a legal right to abate the nuisance, and the City does not allege (and cannot allege) that it granted Georgia Power the legal right to abate the alleged nuisance on the City's property. For these reasons, the District Court has subject matter jurisdiction over this action, and its Order remanding this action to the Superior Court should be reversed.

## V. ARGUMENT AND CITATION OF AUTHORITY

The District Court held Georgia Power—the resident defendant mentioned in only three of the Complaint's 134 paragraphs—was not fraudulently joined, and thus diversity jurisdiction does not exist, because (1) Georgia Power did not clearly show the City's claims are for a permanent nuisance (as opposed to continuing nuisance) such that they are barred by the statute of limitations (*see* Doc. 43 at 21), and (2) "the City's Complaint states the elements of trespass and nuisance and gives Georgia Power fair notice that it is being sued for releasing mercury into the City's property" (*id*. at 25). The District Court erred, because there is no possibility the City can establish a cause of action against Georgia Power, for two reasons. First, the statute of limitations clearly bars the City's nuisance and trespass claims.[6] Second, the City failed to allege it gave Georgia Power the legal right to enter onto the City's property to abate the nuisance, which is an essential element of the City's claim.

[6] "Under Georgia law a claim of continuing trespass is subsumed within a nuisance claim." *Briggs & Stratton Corp. v. Concrete Sales & Servs.*, 971 F. Supp. 566, 573 (M.D. Ga. 1997) (citing *State of Georgia v. City of East Ridge, Tennessee*, 949 F. Supp. 1571, 1584 (N.D. Ga. 1996), and *Brand v. Montega Corp.*, 233 Ga. 32 (1974)); *see also Francis v. Teague*, No. 1:07-CV-1274, 2009 WL 10665635, *6 (N.D. Ga. Feb. 13, 2009) (explaining plaintiff's continuing trespass and continuing nuisance claims were "one and the same" because, as here, plaintiff did not allege any separate acts constituting continuing trespass). "Therefore, it is appropriate to treat the accrual of claims of trespass and nuisance in similar fashion." *Provident Mut. Life Ins. Co. of Philadelphia v. City of Atlanta*, 938 F. Supp. 829, 836 (N.D. Ga. 1995).

### A. The Statute of Limitations Bars the City's Claim.

Claims for damage to property based on trespass or nuisance are subject to a four-year statute of limitation. *See* O.C.G.A. § 9-3-30(a). "However, when the statute begins to run depends on the nature of the nuisance or trespass. … [T]he classification of a nuisance as continuing or permanent directly controls the manner in which the statute of limitations will be applied to the underlying claim." *City of Atlanta v. Carlisle*, 359 Ga. App. 444, 445 (2021) (citations and punctuation omitted). The District Court held "there is a possibility the statute of limitations does not bar the City's claim against Georgia Power" because there is no "clear precedent" under Georgia law by which the District Court could determine whether the nuisance the City's alleges is continuing or permanent in nature. Doc. 43 at 21.

The District Court did not analyze any Georgia case law, however, in light of the allegations in the City's Complaint. Instead, it simply noted the case law is "baffling" and provides "no clear bright line rule on whether Georgia Power's conduct constitutes permanent or continuing nuisance and trespass." *Id.* To the contrary, Georgia case law is clear and shows the nuisance that is the subject of the City's claims against Georgia Power is permanent in nature, and the City's claims are thus barred by the four-year limitations period of O.C.G.A. § 9-3-30(a).

1. Georgia Law Governing the City's Claims

a. Permanent Versus Abatable Nuisances/Trespasses

The Georgia Supreme Court classifies nuisances as either "abatable" or "permanent." *Wise Business Forms, Inc. v. Forsyth County*, No. S22G0874, 2023 WL 6065278, *3 (Ga. Sept. 19, 2023).

> An "abatable" nuisance is one where the harm to a plaintiff's property "results from some minor feature of construction or management" or "from an improper and unnecessary method of operation," which can "be averted at slight expense" or readily enjoined. A "permanent" nuisance is "one whose character is such that, from its nature and under the circumstances of its existence, it presumably will continue indefinitely." Determining whether a nuisance is abatable or permanent will typically dictate "the manner in which the statute of limitations will be applied."

*Id*. (quoting *Oglethorpe Power Corp. v. Forrister*, 289 Ga. 331, 333-34 (2011)).

If the nuisance is permanent, the statute of limitations begins "once some portion of the harm becomes observable," and "a plaintiff is allowed only one cause of action to recover damages for past and future harm." *Forrister*, 289 Ga. at 333. If the nuisance is abatable, or "continuing," "every continuance of the nuisance is a fresh nuisance for which a fresh action will lie, and the statute of limitation will begin to run at the time of each continuance of the harm." *Id*. (quoting *City of Atlanta v. Kleber*, 285 Ga. 413, 416 (2009)).

b. Permanent Nuisances Created by Public Versus Private Entities

Georgia law draws a further distinction between permanent nuisances created by public entities and permanent nuisances created by private entities.[7] If a public entity is alleged to have created a permanent nuisance, then two unique rules apply. First, the four-year statute of limitations begins to run when the harm becomes observable, and the plaintiff may not file a claim after the limitations period has elapsed. *See Forrister*, 289 Ga. at 333-34; *Kleber*, 285 Ga. at 416-17. Second, if the plaintiff does file a claim, the available remedy is strictly limited: the plaintiff "cannot demand … abatement and must instead seek a damages award for [both] past and future harm …." *Forrister*, 289 Ga. at 335. In other words, a plaintiff asserting a permanent nuisance claim against a public entity must bring a single claim for all damages – past and future – within the four-year limitations period beginning when the harm first becomes observable. *See id*. at 333 ("[A] plaintiff is allowed only one cause of action to recover damages for past and future harm.").

If a private party is alleged to have created a nuisance, on the other hand, these rules do not apply. In such cases, even if the nuisance is permanent, the plaintiff may file a claim more than four years after the harm was first observable. *See Cox*

---

[7] It is undisputed Georgia Power is a public entity. *See Allied Chemical Corp. v. Georgia Power Co.*, 236 Ga. 548, 558 (1976) ("Georgia Power Company is duly organized as a public utility company under the laws of Georgia, holding exclusive franchise to furnish electric power in a major portion of the State of Georgia.").

*v. Cambridge Towne Houses, Inc*., 239 Ga. 127, 128 (1977) (noting available damages are limited to those "which have occurred within the past four years"). And the plaintiff has greater discretion as to the remedy sought – it can either sue for both past and future damages in one action, as with public entity nuisances, or sue for past damages alone. *See id*. If the plaintiff sues only for past damages, it is allowed to file more lawsuits in the future to recover for any additional damage that occurs.

The Georgia Supreme Court has explained why this distinction exists between permanent nuisances created by public entities versus by private entities. Unlike a private entity, a public utility is "employed in necessary public service," so a permanent nuisance caused by the public entity is functionally equivalent to taking land by eminent domain for public use. *See Forrister*, 289 Ga. at 334 (quoting RESTATEMENT (SECOND) OF TORTS § 930 cmt. c). This means the plaintiff is entitled to a single award for both past and future damages. *See id*. It also means the public entity is entitled to "have the court ascertain and award complete compensation for the continuing injury, instead of awaiting successive actions" that might undermine "public interest" and "convenience." RESTATEMENT (SECOND) OF TORTS § 930 cmt. c.

Under Georgia law, therefore, if the nuisance that is the subject of the City's claims against Georgia Power is permanent in nature, the four-year statute of

limitations began to run when the harm first became observable and the City's remedy is limited to a single award for all past and future harm.

2. The City's Complaint Clearly Alleges a Permanent Nuisance/Trespass Against Georgia Power.

The City contended below that the nuisance allegedly created by Georgia Power at Plant McManus is abatable and continuing, and not permanent, which it must do to avoid the statute of limitations bar. *See* Brief in Support of Plaintiff's Motion to Remand (Doc. 21-1) at 5. It is clear, however, that the City is actually complaining of a permanent nuisance.

A nuisance caused by a public utility is permanent where it is "caused by some substantial and relatively enduring feature of the plan of construction or from an essential method of operation ...." *Forrister*, 289 Ga. at 334 (quoting RESTATEMENT (SECOND) OF TORTS § 930, cmt. c). Thus,

> if an establishment providing a necessary public service would have to be substantially rebuilt or otherwise have its basic operations shut down to stop a nuisance, thereby potentially harming the general public, a plaintiff cannot demand such abatement but must instead seek a damages award for past and future harm within the statutorily prescribed period.

*Id.*

The Georgia Supreme Court's opinions in *Forrister* and *Kleber* illustrate the special framework established for nuisances/trespasses allegedly created by public utilities. In *Forrister*, neighbors of a power plant alleged a continuing nuisance from

noise created by exhaust stacks. *See id*. at 335. To stop the noise, the power plant would have had to completely "tear-down" and rebuild the exhaust stacks, costing the plant millions of dollars and halting the production of electricity, a necessary public service, while the stacks were rebuilt. *See id*. The court held the noise was a permanent nuisance, because the exhaust system was "an integral part [and] an enduring feature of the power plant's plan of construction, and the noise emanating from the exhaust stacks results from the essential method of the plant's operation, which is the generation of electrical power." *Id*. The plaintiffs were therefore "limited to filing one cause of action for the recovery of past and future damages caused by a permanent nuisance." *Id*.

In *Kleber*, the plaintiffs filed a nuisance action against Norfolk Southern railroad, alleging its drainage pipe caused flooding on the plaintiffs' property in part because Norfolk Southern inadequately maintained the pipe. *See* 285 Ga. at 414-16. The court held that, to the extent the flooding was due to Norfolk Southern's improper maintenance of the pipe—and not the pipe's "mere presence"—the nuisance claim was continuing in nature, because poor maintenance is "an improper and unnecessary method of operation" that can be abated, and the plaintiffs were allowed to contend Norfolk Southern's maintenance of the pipe within the four years preceding their lawsuit created a nuisance. *Id*. at 417 (quoting RESTATEMENT (SECOND) OF TORTS § 930, cmt. c).

Here, the nuisance the City alleges Georgia Power created at Plant McManus—the emission of mercury resulting from the burning of coal—did not result "from some minor feature of construction or management [of Plant McManus], so that it could be averted at slight expense." *Forrister*, 289 Ga. at 334 (quoting RESTATEMENT (SECOND) OF TORTS § 930, cmt. c). Nor did it result from improper maintenance or some other "improper and unnecessary method of operation." *Kleber*, 285 Ga. at 417. Rather, the alleged nuisance was an integral part and a "substantial and relatively enduring feature" of Plant McManus's original plan of construction as a coal-fired plant and resulted from the essential method of the Plant's operation from 1959 to 1972. *Forrister*, 289 Ga. at 334; *see also* Doc. 25 at Ex. A ¶¶ 14-18, 25-27. To convert the entire plant from coal burning to oil burning in the early 1970s, Georgia Power had to shut down for months and extensively retrofit each unit of the plant and make other infrastructure improvements, which took two years to complete and cost millions of dollars. *See* Doc. 25 at Ex. A ¶¶ 19-24; *Forrister*, 289 Ga. at 334 (finding nuisance to be permanent where "there would have to be a complete tear-down and rebuilding of the exhaust stacks, which would stop the production of electricity while the stacks were replaced").

The alleged nuisance created by Georgia Power's operations at Plant McManus is therefore permanent in nature, and not abatable or continuing, under

clear Georgia law. *See KSSR Props., LLC v. BellSouth Telecom.*, No. 1:19-cv-2708-TCB, 2021 WL 1940207, *4 (N.D. Ga. April 21, 2021) ("the overwhelming majority of case law on this issue holds that absent any improper maintenance or ongoing acts ... utilities constitute permanent trespasses or nuisances");[8] *Crosson v. Carrollton City School District*, 478 F. Supp. 3d 1255, 1267 (N.D. Ga. 2020) (finding recently built high school was permanent, and not continuing, nuisance because "abatement would have required great expense and disruption to a public use, would not be feasible or practicable, [and] could not be resorted to by the defendant without great expense and inconvenience"); *Liberty County v. Eller*, 327 Ga. App. 770, 774 (2014) (holding nuisance claim was barred by four-year statute of limitations because alleged nuisance, a county-installed drainage pipe, was permanent); *Bainbridge Power Co. v. Ivey*, 41 Ga. App. 193 (1930) (rejecting claim that reservoir created to generate electricity was continuing nuisance, even though mosquitoes used reservoir as breeding ground, because nuisance could not be abated without "considerable expense"); *Smith v. Dallas Utility Co.*, 27 Ga. App. 22 (1921) ("A dam and its appurtenances, constructed for the development of electricity and the distribution of it to the public for light, heat, and power, is a public improvement within the meaning

---

[8] The City's Complaint does not allege Georgia Power improperly maintained Plant McManus or that mercury emissions are ongoing. Indeed, the City allegations are past-tense: Plant McManus "***was*** coal-fired, and ***emitted*** mercury …." Complaint ¶ 87 (emphasis added).

of the law; and, where it has been properly constructed and maintained, the law will not compel its destruction because of damages flowing from its maintenance.”).

3. The City’s Permanent Nuisance Claim Is Barred by the Statute of Limitations.

Since Georgia law clearly shows the City’s claims against Georgia Power are for a permanent nuisance, the claims are barred because the four-year limitations period expired in 1976. Determining when the limitations period began is critical to determining whether there is any “possibility the [City] can establish a cause of action against [Georgia Power]” (*Stillwell*, 663 F.3d at 1332), because a plaintiff asserting a permanent nuisance claim against a public entity must bring a single claim for all damages—past and future—within the four-year limitations period beginning when the harm first becomes observable. *See Forrister*, 289 Ga. at 333.

The City’s sole allegation of Georgia Power’s alleged wrongdoing is, “Plant [McManus] was coal fired, and emitted mercury into the air, the waters and the marshes of Glynn County.” Complaint ¶ 87.[9] As discussed above, Plant McManus

[9] All other paragraphs of the Complaint that make allegations against “Defendants” collectively are conclusory and improper and do not provide Georgia Power notice of any claim against it. *See LaCroix v. Western Dist. of Kentucky*, 627 Fed. Appx. 816, 819 (11th Cir. 2015) (affirming dismissal of complaint that made allegations against defendants collectively, “making it impossible to identify which particular defendant engaged in what allegedly wrongful conduct”); *Lawrence v. Thornburg Mortg. Home Loans Inc.*, 624 Fed. Appx. 721, 722 (11th Cir. 2015) (plaintiff’s conclusory allegations that “defendants collectively and individually” engaged in acts of wrongdoing “were insufficient to withstand the motion … to dismiss”). To

ceased being "coal fired" in 1972 when it was converted at substantial expense into an oil burning facility. As a result, Plant McManus could not possibly have "emitted mercury" after 1972, the four-year limitations period began in 1972 when Plant McManus stopped burning coal, and the City's nuisance and trespass claims expired four years later in 1976.

Because the City's claims are barred by the statute of limitations, the City cannot possibly establish a cause of action against Georgia Power. *See Stillwell*, 663 F.3d at 1332. Georgia Power was thus fraudulently joined in order to defeat diversity jurisdiction. The District Court erred in remanding this action to the Superior Court.

4. <u>The "Discovery Rule" Does Not Save the City's Claims.</u>

The City argued below that, under 42 U.S.C. § 9658(b)(4)(A) (the "Discovery Rule"), the statute of limitations does not bar its claim against Georgia Power because two City representatives submitted declarations in support of its Motion to Remand stating they personally did not know about the alleged mercury contamination until counsel told them in 2021. *See* Doc. 32 at 12. As Georgia Power argued below, these declarations should be disregarded for two reasons. First, neither declarant is the City or purports to represent the City's knowledge, and thus

---

sustain a grant of relief against Georgia Power, therefore, the City must introduce evidence within the framework of paragraph 87 of its Complaint.

neither declaration can support the City's argument that ***it*** did not have notice of the alleged claim until 2021.

Second, the Discovery Rule commences the statute of limitations when "the plaintiff knew (or ***reasonably should have known***) that the ... property damages ... were caused or contributed to by the pollutant ...." 42 U.S.C. § 9658(b)(4)(A) (emphasis added). It was a well-known public fact, at least four years before the City filed its Complaint, that coal-fired power plants emit mercury. *See*, *e.g.*, U.S. GOV'T ACCOUNTABILITY OFF., GAO-10-47, "Clean Air Act: Mercury Control Technologies at Coal-Fired Power Plants Have Achieved Substantial Emissions Reductions" at 4 (2009) ("Mercury enters the environment in various ways, such as through ... coal combustion"); U.S. DEP'T OF THE INTERIOR, USGS Fact Sheet FS-095-01, "Mercury in U.S. Coal – Abundance, Distribution, and Modes of Occurrence" (2001) ("In February 1998, the U.S. Environmental Protection Agency ... issued a report citing mercury emissions from [coal fired] electric utilities as the largest remaining anthropogenic source of mercury released to the air."); U.S. EPA, EPA-452/R-97-004, "Mercury Study Report to Congress Volume II: An Inventory of Anthropogenic Mercury Emissions in the United States" ES-4 (1997) ("coal-fired utility boilers" cause 33 percent of "the total anthropogenic emissions" of mercury in the United States); U.S. EPA, EPA-600/3-77-063, "Mercury Distribution in Soil Around a Large Coal-Fired Power Plant" (1977) ("The combustion of coal is often

cited as a significant mercury source. ... [T]he 1975 estimated mercury release from U.S. coal-fired electric utilities was about 49,000 kg.").

Specifically as to the City's allegations, on July 24, 2017, more than five years before the City filed its Complaint, the Savannah Morning News reported an environmental group was planning to sue Georgia Power over its plan to clean up coal ash at several power plants, including at Plant McManus, because it contained contaminants such as mercury. *See* Mary Landers, "Sierra Club files intent to sue Georgia Power over coal ash cleanup," SAVANNAH MORNING NEWS (July 24, 2017).[10] On November 7, 2017, almost five years before the City filed its Complaint, The Florida Times-Union reported Georgia Power had stored 550,000 tons of coal ash, which is "known to contain … mercury," in an unlined pit at Plant McManus in the estuary west of Brunswick. *See* Terry Dickson, "Environmental law firm wants Georgia Power to remove more coal ash," THE FLORIDA TIMES-UNION (Nov. 7, 2017).[11]

---

[10] Available at https://www.savannahnow.com/story/news/2017/07/25/sierra-club-files-intent-sue-georgia-power-over-coal-ash-cleanup/13871752007; *see also* Russell Grantham, "Sierra Club: Georgia Power's coal ash plan illegal," ATLANTA JOURNAL-CONSTITUTION (July 24, 2017) (available at https://www.ajc.com/business/sierra-club-georgia-power-coal-ash-plan-illegal/JA56xb0v0qzxRZCNRVEuPK).

[11] Available at https://www.jacksonville.com/story/news/2017/11/07/ environmental-law-firm-wants-georgia-power-remove-more-coal-ash/15778793007.

It clearly was public knowledge within the City's local community in 2017 that coal-fired power plants, specifically including Plant McManus, may have emitted mercury into their environment. The City therefore reasonably should have known more than four years before it filed its Complaint in October 2022 of the property damage that is the subject of its Complaint and that such damage was caused or contributed to by contaminants emitted from Plant McManus. *See O'Connor v. Boeing North American, Inc*., 311 F.3d 1139, 1147 (9th Cir. 2002) (applying 42 U.S.C. § 9658(b)(4)(A) and holding that, "[b]ecause the plaintiff must be diligent in discovering the critical facts[,] a plaintiff who did not actually know of his claim will be barred if he should have known of it in the exercise of due diligence;" "[a] plaintiff is held to her actual knowledge as well as knowledge that could reasonably be discovered through investigation of sources open to her") (punctuation and citations omitted); *Reichhold Chemicals, Inc. v. Textron, Inc*., 888 F. Supp. 1116, 1126 (N.D. Fla. 1995) (for purposes of 42 U.S.C. § 9658(b)(4)(A), "it is not necessary that the plaintiff know the identity of every specific pollutant or contaminant, but only the fact of the contamination").

The City cannot turn a blind eye to widely available public reports of potential emissions of mercury from Plant McManus affecting City property and then use the Discovery Rule as a shield against its ignorance. Combined with the countless allegations in the Complaint as to Honeywell's emissions of mercury since 1956 on

and near the City's property and the EPA's designation in 1995 of Honeywell's property as a Superfund site, it is clear the City "reasonably should have known" more than four years prior to filing this action that its property was also affected by mercury emitted by Plant McManus. *See Blankenship v. Consolidation Coal Company*, 850 F.3d 630, 638 (4th Cir. 2017) ("based on the extensive record of publicity about [defendant]'s activities in this case, … the plaintiffs reasonably should have known of their damages more than [the applicable limitations period] before they commenced their actions"). Because the City did not file its Complaint until more than four years after it reasonably should have known of its cause of action against Georgia Power, it cannot possibly establish a cause of action against Georgia Power. This Court should therefore reverse the District Court's Order remanding this action to the Superior Court. *See Stillwell*, 663 F.3d at 1332.

### B. Even if the City's Claims Against Georgia Power Were for Continuing Nuisance/Trespass, the City Cannot Establish an Essential Element of Its Claims.

The District Court held Georgia Power did not clearly and convincingly show that, to state its nuisance/trespass claims, the City had to allege Georgia Power had a right to abate the alleged continuing nuisance on the City's property. *See* Doc. 43 at 25. The District Court's holding is contradicted by controlling case law. Accordingly, even if the nuisance of which the City complains is deemed to be

abatable and continuing, and not permanent, the City cannot possibly establish a cause of action against Georgia Power.

It is a longstanding rule of Georgia law that an alleged wrongdoer's legal right to abate a continuing nuisance/trespass is an essential element of a viable nuisance/trespass claim. *See Southfund Partners v. City of Atlanta*, 221 Ga. App. 666, 669 (1996) ("the principle upon which one is charged as a continuing wrong-doer is, that he has a legal right, and is under a legal duty, to terminate the cause of the injury") (quoting *City Council of Augusta v. Lombard*, 101 Ga. 724, 724 (1897)); *Bodin v. Gill*, 216 Ga. 467, 473 (1960) (one can only be held liable for continuing nuisance or trespass if "he has a legal right and is under a legal duty to terminate the cause of the injury"). The City cannot possibly establish a cause of action against Georgia Power, therefore, because the City does not allege (and cannot allege) that it granted Georgia Power the legal right to abate the alleged nuisance on the City's property.

In *Corporation of Mercer University v. National Gypsum Company*, No. 85-126-3-MAC, 1986 WL 12447 (M.D. Ga. March 9, 1986), for instance, Mercer's complaint alleged the presence of National Gypsum's asbestos products in Mercer's buildings constituted a continuing nuisance and trespass. *See* 1986 WL 12447 at *5. National Gypsum moved to dismiss the complaint on the ground Mercer did not allege National Gypsum had the legal right to enter Mercer's property to remove the

asbestos products, which was an essential element of Mercer's continuing nuisance/trespass claim. *See id.* at *5. The court agreed and dismissed Mercer's continuing nuisance and trespass claims, holding "a legal right to abate the nuisance is an element of a continuing nuisance claim in Georgia" and "Mercer's inability to allege that the defendants had a legal right to abate the nuisance is fatal to its nuisance claim." *Id.* at *6, *7 (also dismissing continuing trespass claim as "virtually indistinguishable" from continuing nuisance claim); *see also Briggs & Stratton Corp*, 971 F. Supp at 573 n.2 ("an element of a continuing nuisance claim in Georgia is a legal right to abate the nuisance").

The District Court distinguished these cases upon which Georgia Power relied because they "address nuisance and trespass where the conduct causing the injury took place on a property outside the defendant's control, which is not the case here because the alleged conduct that caused the contamination was at Georgia Power's plant." Doc. 43 at 24. While the City alleges the cause of the alleged mercury contamination was the burning of coal at Plant McManus, Georgia Power terminated that cause in 1972 when it converted Plant McManus from coal burning to oil burning. So the City does not complain its property has been injured by Georgia Power's failure to terminate the cause of the injury on Georgia Power's property, as the District Court seemed to believe. Rather, the City complains of the presence of mercury on ***its*** property, and it wants Georgia Power to remove the mercury from

the City's property. Like the plaintiffs in the cases on which Georgia Power relied, the City's property is outside Georgia Power's control, and Georgia Power does not have the legal right to enter onto City property and abate the alleged presence of mercury there.[12]

The City's failure and inability to allege Georgia Power had the legal right to enter City property to abate the alleged continuing nuisance/trespass is fatal to its claims. *See Mercer University*, 1986 WL 12447 at *7. The City therefore cannot possibly establish a cause of action against Georgia Power, and this Court should reverse the District Court's Order remanding this action to the Superior Court. *See Stillwell*, 663 F.3d at 1332.

## VI. CONCLUSION

For the foregoing reasons, the Court should reverse the District Court's Order remanding this action to the Superior Court and direct the District Court to reopen this action for further proceedings.

---

[12] The District Court cited *Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1016 n.29 (11th Cir. 2004), which affirmed a jury verdict finding a continuing nuisance and stated in a footnote, "[t]he fact that the [plaintiffs] prevented the defendants from coming onto the [plaintiffs'] property to clean up the debris does not prevent a finding of continuing nuisance." Doc. 43 at 25. This one sentence from a footnote that was not essential to the *Parker* court's affirmance of the jury's verdict does not negate the holdings of the cases on which Georgia Power relies showing the right to abate is an essential element of the City's claim.

Respectfully submitted this 22nd day of November, 2023.


*/s/ T. Joshua R. Archer*

T. Joshua R. Archer
Georgia Bar No. 021208
**Balch & Bingham LLP**
30 Ivan Allen Jr. Blvd., NW
Suite 700
Atlanta, Georgia 30308
Telephone: (404) 261-6020
jarcher@balch.com

Benjamin H. Brewton
Georgia Bar No. 002530
**Balch & Bingham LLP**
801 Broad Street, Suite 800
Augusta, Georgia 30901
Telephone: (706) 842-3711
bbrewton@balch.com

*Attorneys for Appellant Georgia Power Company*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), I certify this brief complies with the type-volume limitation set forth in Federal Rule of Appellate Procedure 32(a)(7)(B). This brief contains 7,042 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). The type size and style used in this brief are font size 14, Times New Roman Style.

*/s/ T. Joshua R. Archer*
T. Joshua R. Archer
Georgia Bar No. 021208
*Attorney for Appellant Georgia Power Company*

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of November, 2023, I have filed the foregoing **Brief of Appellant Georgia Power Company** with the Clerk of Court for the United States Court of Appeals for the Eleventh Circuit using the CM/ECF system, which will automatically send email notification of such filing to counsel of record.

John C. Bell, Jr.
Pamela S. James
The Bell Firm
P.O. Box 1547
Augusta, GA 30903

Robert P. Killian
Killian Law Firm LLC
47 Professional Drive
Brunswick, GA 31520

Brian D. Corry
McQuigg Smith & Corry
504 Beachview Drive
Suite 3D
St. Simons Island, GA 31522

Mark D. Johnson
Amber M. Carter
Gilbert Harrell Sumerford & Martin PC
777 Gloucester Street
Suite 200
Brunswick, GA 31520

*/s/ T. Joshua R. Archer*
T. Joshua R. Archer
Georgia Bar No. 021208
*Attorney for Appellant Georgia Power Company*