No. 23-13200-F

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

**HONEYWELL INTERNATIONAL, INC. f/k/a ALLIED CHEMICAL CORPORATION and as ALLIEDSIGNAL, INC., and GEORGIA POWER COMPANY,**

**Appellants**

**v.**

**CITY OF BRUNSWICK, by and through its MAYOR AND BOARD OF COMMISSIONERS,**

**Appellee**

---

On Appeal from the United States District Court for the
Southern District of Georgia
No. 2:22-cv-00132

---

### APPELLEE'S MOTION TO DISMISS THE APPEAL OF
### HONEYWELL INTERNATIONAL, INC. AND
### THE GEORGIA POWER COMPANY

| | | |
|---|---|---|
| John C. Bell, Jr. | Robert P. Killian | Brian D. Corry |
| GA Bar No. 048600 | GA Bar No. 417575 | McQuigg Smith & Corry |
| Pamela S. James | Killian Law Firm, LLC | 504 Beachview Drive |
| GA Bar No. 389015 | 47 Professional Drive | Suite 3-D |
| The Bell Firm | Brunswick, GA 31520 | St. Simons Island, SC |
| PO Box 1547 | (912) 263-9520 | 31522 |
| Augusta, GA 30903-1547 | bob@killianlawfirm.com | (912) 638-1174 |
| (706) 722-2014 | | brian@msclawga.com |
| john@bellfirm.net | | |
| pam@bellfirm.net | | |

*Attorneys for Appellee*

**CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT**

Pursuant to Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-1, the undersigned counsel of record for Appellee The City of Brunswick files this Certificate of Interested Persons and Corporate Disclosure Statement and certify the following is a complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

- Archer, T. Joshua R., counsel for appellant Georgia Power Company

- Arnold & Porter Kaye Scholer LLP, law firm for Appellant Honeywell International, Inc.

- Balch & Bingham LLP, law firm of counsel for Appellant Georgia Power Company

- Bell, John C., Jr., counsel for Appellee City of Brunswick

- Birkel, Charles, counsel for Appellant Honeywell International, Inc.

- Brewton, Benjamin H., counsel for Appellant Georgia Power Company

- Carter, Amber M., counsel for Appellant Honeywell International, Inc.

- City of Brunswick, Appellee

C-1

- Corry, Brian Donald, counsel for Appellee City of Brunswick

- Fayne, S. Zachary, counsel for Appellant Honeywell International, Inc.

- Georgia Power Company, Appellant

- Gilbert, Harrell, Sumerford & Martin, P.C., law firm of counsel for Appellant Honeywell International, Inc.

- Hall, J. Randal, Judge, United States District Court for the Southern District of Georgia

- Honeywell International, Inc. (NASDAQ: HON), Appellant

- Israel, Brian D., counsel for Appellant Honeywell International, Inc.

- James, Pamela S., counsel for Appellee City of Brunswick

- Johnson, Mark D., counsel for Appellant Honeywell International, Inc.

- Killian Law Firm LLC, law firm of counsel for Appellee City of Brunswick

- Killian, Robert P., counsel for Appellee City of Brunswick

- McQuigg Smith & Corry, law firm of counsel for Appellee City of Brunswick

- Southern Company (NYSE: SO), publicly held corporation that owns 100% of stock of Appellant Georgia Power Company

- The Bell Firm, law firm of counsel for Appellee City of Brunswick

*s/ John C. Bell, Jr.*
John C. Bell, Jr.
Counsel for Appellee City of Brunswick

C-2

**APPELLEE'S MOTION TO DISMISS THE APPEAL OF**
**HONEYWELL INTERNATIONAL, INC. AND**
**THE GEORGIA POWER COMPANY**

COMES NOW Appellee, the City of Brunswick, through counsel, pursuant to Rule 27 of the Federal Rules of Appellate Procedures and Rule 27.1 of the Local Rules of this Court, and moves to dismiss the above appeal on the grounds that the Appellants, Honeywell International, Inc. and The Georgia Power Company, have waived their right to proceed in federal district court by proceeding in the Superior Court of Glynn County, Georgia, seeking resolution on the merits in their favor as to all claims asserted by the City of Brunswick.

**Honeywell and Georgia Power Have Sought**
**Substantive Relief in the Superior Court of Glynn County**

Honeywell and Georgia Power have been seeking resolution in their favor in the Superior Court of Glynn County since the Order of the United States District Court of September 1, 2023, that remanded this case to that court.

Georgia Power and Honeywell both filed their respective answers to the complaint. Exs. 1 and 2. Both Georgia Power and Honeywell included within their answers an affirmative defense of failure to state a claim upon which relief can be granted. *Ids*., p. 2 and p. 21. They thereby preserved these defenses. O.C.G.A. § 9-11-12(b), (h)(2). No further action by either was needed to preserve the *status quo*.

Georgia Power and Honeywell then sought summary disposition of the case in

their respective favor by filing and briefing motions to dismiss the complaint for failure to state a claim. Exs. 3 and 4. The City responded to these motions. Exs. 5 and 6. Both Defendants filed reply briefs. Exs. 7 and 8. Georgia Power also filed an amended motion to dismiss with a new supporting brief. Ex. 9.

Georgia Power and Honeywell also each filed 12(e) motions for a more definite statement seeking additional information from the City as to its claims, a form of affirmative discovery. Exs. 3, 7 and 10.

The court held a two-hour hearing on all pending motions on September 20, 2024. Following the hearing, Honeywell and Georgia Power filed post-hearing supplemental briefs and the City of Brunswick filed its second amended complaint and supplemental brief. Exs. 11, 12, 13 and 14.

At no time did Honeywell or Georgia Power request the superior court to stay consideration of their respective motions. Instead, Georgia Power filed a notice to the superior court of the pending oral argument before this Court, noting, "if the Eleventh Circuit reverses the District Court's September 1, 2023, order this Court will be divested of jurisdiction over this case." Ex. 15.

The net effect of the efforts of Honeywell and Georgia Power is clear. Were the superior court to grant the motions to dismiss, they could and surely would dismiss their pending appeal in this Court. However, were the superior court to deny

their motions to dismiss, as the City of Brunswick expects, these Defendants/Appellees would continue to seek essentially the same relief in this Court. Honeywell and Georgia Power are playing ball in two courts.

## A Defendant's Substantive Litigation
## in State Court Waives Removal Jurisdiction

A defendant that litigates the substantive merits of the claims asserted against it in state court waives its right to proceed by removal in federal court. *Brown v. Demco, Inc.*, 792 F.2d 478, 481 (5th Cir. 1986), citing as support, *Schell v. Food Machinery Corp.*, 87 F.2d 385, 388 (5th Cir. 1937), *cert. denied*, 308 U.S. 679 (1937); *accord*, *Banks v. Housing Authority of DeKalb County*, 32 F.Supp.3d 1296 (N.D. Ga. 2014)*, wherein the Court held:

> Whether the state court defendant has waived his right to remove based on "active participation must be made on a case-by-case basis." *Id.* (citing *Hill v. State Farm Mutual Automobile Ins. Co.*, 72 F.Supp.2d 1353, 1354 (M.D.Fla.1999)). Two factors that may guide the court's determination of whether a defendant has waived the right to remove a case to federal court are: "1) whether the actions taken by the Defendants in the state court were for the purpose of preserving the status quo, or did they manifest an intent to litigate on the merits in state court and 2) whether the removal can be characterized as an appeal from an adverse judgment of the state court." *Fain*, 166 F.R.D. at 40–41 (citing *Bolivar Sand Co. v. Allied Equipment, Inc.*, 631 F.Supp. 171, 173 (W.D.Tenn.1986), *Scholz v. RDV Sports, Inc.*, 821 F.Supp. 1469 (M.D.Fla.1993), and *In re 73rd Precinct Station House in Borough of Brooklyn, City of New York*, 329 F.Supp. 1175 (D.C.N.Y.1971)). **In support of the first factor, "actions that may result in a disposition on the merits of the state court action, in whole or in part," are sufficient to evidence the requisite intent to litigate on the merits**.

3

*Bolivar Sand Co.*, 631 F.Supp. at 173. As to the second factor, courts have found that **"if a potentially dispositive motion, such as a motion to dismiss, is made and argued by the defendant, the state court's adverse decision cannot be 'appealed' to [federal] Court by way of removal."** *Fain*, 166 F.R.D. at 42; *Bolivar Sand Co.*, 631 F.Supp. at 173; *see also Heery Intern., Inc. v. DeKalb County School Dist., Ga.*, 1:10–cv–3835–RWS, 2011 WL 336856, *2 (N.D.Ga. Jan. 31, 2011) (noting in remand order that defendant who waited until after the state court expressed its intent to grant plaintiffs' requested relief before seeking removal was "in effect [ ] attempting in [federal] Court to have a second bite at the apple [and] to escape the intended ruling of the Superior Court").

*Id.*(emphasis added). *Accord, Direct Mortg. Corp. v. Keirtec, Inc.,* 478 F.Supp.2d

1339, 1340-42 (D. Utah, 2007), wherein the court held:

**The court finds it must remand this case because, by failing to advise the court that action was still being taken in the state court, Landslide impliedly consented to the state court's jurisdiction.**
. . .
Landsafe, as the removing party, had the burden to establish this court's jurisdiction. But after Landsafe removed to this court, it continued to take advantage of the actions in state court.
. . .
But rather than questioning the state court's continuing jurisdiction or notifying this court that the state court action continued to proceed as if the case had never been removed, Landsafe stood silent. By doing so, Landsafe effectively consented to the state court's jurisdiction.
. . .
By failing to advise this court that action was continuing at the state court level after the removal, Landsafe has essentially tried to "play both sides of the fence."
. . .
Landsafe cannot quietly and idly let the state court action proceed, while waiting to see if a ruling of the state court will affect it favorably.
. . .
To hold otherwise would be to undermine principles underlying the

4

removal doctrine. The procedural devices of removal and remand are designed to ensure only one court exercises jurisdiction over a case at any given time. This ultimately prevents inconsistent rulings and duplicitous work, and it preserves judicial and party resources. If this court were to exercise jurisdiction in this case, it might invalidate the substantive actions the state court judge took in this case after Landsafe filed a notice of removal, thereby requiring duplicitous work from the parties. The state court's dismissal of one defendant might have to be reconsidered. **In short, to allow the case to proceed here would constitute a waste of judicial resources, undermine the finality of state court rulings, and possibly lead to inconsistent decisions.**

*Id.* (emphasis added)

The assertion of a 12(b)(6) defense prior to removal without taking "any additional steps to have the state court rule on its motion" does not constitute "substantive offense of defensive actions in state court." *Cogdell v. Wyeth*, 366 F.3d 1245, 1249 (11th Cir. 2004) citing *Yusefzadeh v. Nelson, Mullins, Riley & Scarborough, LLP*, 365 F.3d 1244, 1247 (11th Cir. 2004). Here, both Defendants preserved their 12(b)(6) defenses by asserting them as affirmative defenses in their respective answers to the City's complaint. Exs. 1, p. 2; 2, p. 21. No further action by Honeywell or Georgia Power was needed to preserve "the *status quo*." *Banks, supra* at 1298.

Efforts by a defendant to seek resolution of a 12(b)(6) motion in its favor establish a waiver of removal jurisdiction. *Chavez v. Kincaid*, 15 F.Supp.2d 1118, 1125 (D. New Mex. 1998) (serving discovery, filing a motion to dismiss and

scheduling a state court hearing on the motion "manifests an intent to proceed in state court."); *Scholz v. RDV Sports, Inc.*, 821 F.Supp. 1469, 1470 (M.D. Fla. 1993) (filing a motion to dismiss, an amended motion to dismiss and scheduling a hearing on the motions waived removal jurisdiction).

Here, Honeywell filed motions and briefs totaling 62 pages and vigorously argued the merits of its motions in the Glynn County Superior Court, seeking affirmative substantive relief. Georgia Power filed motions and briefs totaling 57 pages and vigorously argued the merits of its motions in the Glynn County Superior Court, seeking affirmative substantive relief. Honeywell and Georgia Power are thus "seeking relief of the state court." *Schell, supra*, at 388.

## CONCLUSION

Honeywell and Georgia Power have waived removal jurisdiction. Their pending appeals should be dismissed.

Respectfully submitted,

 *s/ John C. Bell, Jr.*
John C. Bell, Jr. (Ga. Bar No. 048600)
Pamela S. James (Ga. Bar No. 389015)
THE BELL FIRM
PO Box 1547
Augusta, GA 30903-1547
(706) 722-2014
John@bellfirm.net
Pam@bellfirm.net

6

Robert P. Killian (Ga. Bar No. 417575)
KILLIAN LAW FIRM LLC
47 Professional Drive
Brunswick, GA   31520
(912) 263-9520
bob@killianlawfirm.com

Brian Donald Corry (Ga. Bar No. 165557)
McQUIGG SMITH & CORRY
504 Beachview Drive Suite 3D
Saint Simons Island, GA 31522
(912) 638-1174
brian@msclawga.com

Counsel for Appellee City of Brunswick

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), I certify this motion complies with the type-volume limitation set forth in Federal Rule of Appellate Procedure 32(a)(7)(B) and contains 1,536 words.  The type size and style used in this brief are font size 14, Times New Roman Style.

<u> *s/ John C. Bell, Jr.*   </u>
Counsel for Appellee City of Brunswick

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of November, 2024, I have filed the foregoing Appellee's Motion to Dismiss the Appeal of Honeywell International, Inc. and The Georgia Power Company with the Clerk of Court for the United States Court of Appeals for the Eleventh Circuit using the CM/ECF system, which will automatically send email notification of such filing to all counsel of record.

       *s/ John C. Bell, Jr.*
       John C. Bell, Jr.
       Counsel for Appellee City of Brunswick

9

# Exhibit 1

GLYNN CO. CLERK'S OFFICE
Filed 5/31/2024 3:36 PM
Accepted 5/31/2024 3:59 PM
CASE # CE22-01086

*Rebecca G Walden*

CLERK SUPERIOR COURT

**IN THE SUPERIOR COURT OF GLYNN COUNTY
STATE OF GEORGIA**

| | |
|---|---|
| **CITY OF BRUNSWICK, by and through its MAYOR AND BOARD OF COMMISSIONERS,** )<br>)<br>)<br>)<br>**Plaintiff,** )<br>)<br>**v.** )<br>)<br>**HONEYWELL INTERNATIONAL, INC. f/k/a ALLIED CHEMICAL CORPORATION and as ALLIEDSIGNAL, INC., and GEORGIA POWER COMPANY,** )<br>)<br>)<br>)<br>)<br>**Defendants.** )<br>_____ ) | Civil Action No. CE22-01086 |

<u>**DEFENDANT GEORGIA POWER COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT**</u>

Defendant Georgia Power Company ("Georgia Power") submits its Answer to Plaintiff's Complaint as follows:

<u>**AFFIRMATIVE, GENERAL, AND OTHER DEFENSES**</u>

At the time of the preparation of this Answer, Georgia Power is unaware of all the facts and circumstances giving rise to the claims set forth in Plaintiff's Complaint. The following defenses are raised so as not to be waived as a matter of law and will be relied upon to the extent the facts develop to show they apply. Georgia Power reserves its right to assert additional defenses as warranted by the facts and evidence developed in this action.

<u>**FIRST DEFENSE**</u>

Plaintiff's alleged claims are barred by the statute of limitations.

1

23294430.3

**SECOND DEFENSE**

Plaintiff lacks standing to bring the claims set forth in its Complaint.

**THIRD DEFENSE**

The Complaint fails to state a claim against Georgia Power upon which relief can be granted.

**FOURTH DEFENSE**

Georgia Power is not liable to Plaintiff because Georgia Power has not caused or maintained a continuing trespass on Plaintiff's property.

**FIFTH DEFENSE**

Georgia Power is not liable to Plaintiff because Georgia Power has not caused or maintained a continuing nuisance on Plaintiff's property.

**SIXTH DEFENSE**

Georgia Power is not liable to Plaintiff in any amount because Georgia Power did not breach any duty owed to Plaintiff.

**SEVENTH DEFENSE**

Georgia Power is not liable to Plaintiff in any amount because no act of Georgia Power proximately caused or contributed to the alleged damage described in the Complaint.

**EIGHTH DEFENSE**

Pursuant to O.C.G.A. §§ 51-12-31 and 51-12-33, any judgment rendered against Georgia Power in this action should be limited to the fault, if any, attributable to Georgia Power as found by a jury. In its verdict, the jury may specify the particular damages to be recovered from Georgia Power. Judgment in such a case must be entered severally.

2

## NINTH DEFENSE

Georgia Power did not commit any act or omission constituting willful misconduct, malice, fraud, wantonness, oppression, or an entire want of care that would raise the presumption of conscious indifference to the consequences.

## TENTH DEFENSE

Georgia Power has not acted in bad faith, been stubbornly litigious, or caused Plaintiff to incur unnecessary trouble and expense.

## ELEVENTH DEFENSE

Plaintiff's Complaint fails to state a claim for which punitive damages can be recovered.

## TWELFTH DEFENSE

The conduct of Georgia Power will not support an award of punitive damages.

## THIRTEENTH DEFENSE

Plaintiff is not entitled to collect an award of punitive damages from Georgia Power because an award of such damages could violate the due process, equal protection, and excessive fines clauses of the Georgia and United States Constitutions.

## FOURTEENTH DEFENSE

Plaintiff's claim for punitive damages cannot be sustained because an award of punitive damages under Georgia jury instructions would be unconstitutional as they do not provide a constitutionally adequate substantive standard for determining liability for or the appropriate amount of punitive damages, which violates Georgia Power's due process rights guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section I, Paragraph I of the Constitution of the State of Georgia.

3

**FIFTEENTH DEFENSE**

Plaintiff's claim for punitive damages cannot be sustained because, under Georgia law, a jury may not award punitive damages against Georgia Power where, as here, Georgia Power has not engaged in intentionally malicious conduct or had any actual knowledge of any malicious conduct, for to do so would violate Georgia Power's due process rights guaranteed by the Fourteenth Amendment of the United States Constitution and Article I, Section I, Paragraph I of the Constitution of the State of Georgia.

**SIXTEENTH DEFENSE**

Plaintiff's claims for punitive damages cannot be sustained because Georgia law regarding standards for determining liability for, and the amount of, punitive damages fails to give Georgia Power prior notice of the conduct for which punitive damages may be imposed and are void for vagueness in violation of the United States Constitution and Article I, Section I, Paragraph I of the Constitution of the State of Georgia.

**SEVENTEENTH DEFENSE**

Plaintiff's claim for punitive damages cannot be sustained because, under Georgia law, a jury award of punitive damages is not subject to post-trial and appellate court review under constitutionally adequate objective standards to ensure that the award is rationally related to the state's legitimate goals of deterrence and retribution, which violates Georgia Power's due process rights guaranteed by the Fourteenth Amendment of the United States Constitution and Article I, Section I, Paragraph I of the Constitution of the State of Georgia.

**EIGHTEENTH DEFENSE**

Plaintiff's claims for punitive damages cannot be sustained because, under Georgia law, a jury award of punitive damages is not subject to post-trial review through an evidentiary hearing

4

23294430.3

that requires the trial court to weigh the excessiveness of the award, in violation of Georgia Power's due process rights guaranteed by the Fourteenth Amendment of the United States Constitution and Article I, Section I, Paragraph I of the Constitution of the State of Georgia.

### NINETEENTH DEFENSE

This Court lacks jurisdiction over the subject matter of Plaintiff's alleged claims.

### TWENTIETH DEFENSE

Plaintiff's claims may be barred by the doctrine of waiver.

### ANSWERING THE SECTION OF PLAINTIFF'S COMPLAINT TITLED "PARTIES, JURISDICTION AND VENUE"

1.    Georgia Power admits Plaintiff is a municipal corporation in Glynn County, Georgia.  Georgia Power denies the remaining allegations in Paragraph 1 to the extent they make any allegations against Georgia Power. To the extent the remaining allegations in Paragraph 1 are directed to Defendant Honeywell International, Inc. formerly known as Allied Chemical Corporation and as AlliedSignal, Inc. ("Honeywell"), Georgia Power lacks knowledge or information sufficient to admit or deny those allegations and therefore denies them.

2.    Georgia Power admits Plaintiff's claim is brought by counsel.  Georgia Power denies the remaining allegations in Paragraph 2 to the extent they make any allegations against Georgia Power. To the extent the remaining allegations in Paragraph 2 are directed to Honeywell, Georgia Power lacks knowledge or information sufficient to admit or deny those allegations and therefore denies them.

3.    Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 3 of the Complaint and therefore denies those allegations.

4.    Georgia Power admits it is a Georgia corporation with its principal office address

5

23294430.3

at 241 Ralph McGill Blvd., NE, Bin #10180, Atlanta, Georgia, 30308-3374. Georgia Power further admits it may be served by service upon its registered agent, Kristi Dow, 241 Ralph McGill Blvd., Bin #10180, Atlanta, Georgia 30308. Georgia Power admits this Court has personal jurisdiction over it. To the extent Paragraph 4 alleges this Court has jurisdiction over the subject matter of Plaintiff's claims, Georgia Power denies such allegations. Georgia Power denies any remaining allegations in Paragraph 4.

5.      Georgia Power denies the allegations in paragraph 5 of the Complaint.

**ANSWERING THE SECTION OF PLAINTIFF'S COMPLAINT TITLED "GENERAL ALLEGATIONS"**

6.      Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 6 of the Complaint and therefore denies those allegations.

7.      Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 7 of the Complaint and therefore denies those allegations.

8.      Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 8 of the Complaint and therefore denies those allegations.

9.      Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 9 of the Complaint and therefore denies those allegations.

10.      Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 10 of the Complaint and therefore denies those allegations.

11.      Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 11 of the Complaint and therefore denies those allegations.

12.      Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 12 of the Complaint and therefore denies those allegations.

23294430.3

13. Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 13 of the Complaint and therefore denies those allegations.

14. Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 14 of the Complaint and therefore denies those allegations.

15. Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 15 of the Complaint and therefore denies those allegations.

16. Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 16 of the Complaint and therefore denies those allegations.

17. Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 17 of the Complaint and therefore denies those allegations.

18. Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 18 of the Complaint and therefore denies those allegations.

19. Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 19 of the Complaint and therefore denies those allegations.

20. Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 20 of the Complaint and therefore denies those allegations.

21. Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 21 of the Complaint and therefore denies those allegations.

22. Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 22 of the Complaint and therefore denies those allegations.

23. Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 23 of the Complaint and therefore denies those allegations.

23294430.3

24.     Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 24 of the Complaint and therefore denies those allegations.

25.     Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 25 of the Complaint and therefore denies those allegations.

26.     Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 26 of the Complaint and therefore denies those allegations.

27.     Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 27 of the Complaint and therefore denies those allegations.

28.     Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 28 of the Complaint and therefore denies those allegations.

29.     Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 29 of the Complaint and therefore denies those allegations.

30.     Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 30 of the Complaint and therefore denies those allegations.

31.     Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 31 of the Complaint and therefore denies those allegations.

32.     Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 32 of the Complaint and therefore denies those allegations.

33.     Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 33 of the Complaint and therefore denies those allegations.

34.     Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 34 of the Complaint and therefore denies those allegations.

23294430.3

35.    Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 35 of the Complaint and therefore denies those allegations.

36.    Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 36 of the Complaint and therefore denies those allegations.

37.    Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 37 of the Complaint and therefore denies those allegations.

38.    Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 38 of the Complaint and therefore denies those allegations.

39.    Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 39 of the Complaint and therefore denies those allegations.

40.    Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 40 of the Complaint and therefore denies those allegations.

41.    Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 41 of the Complaint and therefore denies those allegations.

42.    Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 42 of the Complaint and therefore denies those allegations.

43.    Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 43 of the Complaint and therefore denies those allegations.

44.    Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 44 of the Complaint and therefore denies those allegations.

45.    Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 45 of the Complaint and therefore denies those allegations.

23294430.3

46.    Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 46 of the Complaint and therefore denies those allegations.

47.    Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 47 of the Complaint and therefore denies those allegations.

48.    Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 48 of the Complaint and therefore denies those allegations.

49.    Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 49 of the Complaint and therefore denies those allegations.

50.    Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 50 of the Complaint and therefore denies those allegations.

51.    Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 51 of the Complaint and therefore denies those allegations.

52.    Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 52 of the Complaint and therefore denies those allegations.

53.    Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 53 of the Complaint and therefore denies those allegations.

54.    Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 54 of the Complaint and therefore denies those allegations.

55.    Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 55 of the Complaint and therefore denies those allegations.

56.    Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 56 of the Complaint and therefore denies those allegations.

23294430.3

57.     Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 57 of the Complaint and therefore denies those allegations.

58.     Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 58 of the Complaint and therefore denies those allegations.

59.     Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 59 of the Complaint and therefore denies those allegations.

60.     Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 60 of the Complaint and therefore denies those allegations.

61.     Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 61 of the Complaint and therefore denies those allegations.

62.     Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 62 of the Complaint and therefore denies those allegations.

63.     Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 63 of the Complaint and therefore denies those allegations.

64.     Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 64 of the Complaint and therefore denies those allegations.

65.     Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 65 of the Complaint and therefore denies those allegations.

66.     Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 66 of the Complaint and therefore denies those allegations.

67.     Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 67 of the Complaint and therefore denies those allegations.

23294430.3

68.     Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 68 of the Complaint and therefore denies those allegations.

69.     Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 69 of the Complaint and therefore denies those allegations.

70.     Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 70 of the Complaint and therefore denies those allegations.

71.     Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 71 of the Complaint and therefore denies those allegations.

72.     Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 72 of the Complaint and therefore denies those allegations.

73.     Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 73 of the Complaint and therefore denies those allegations.

74.     Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 74 of the Complaint and therefore denies those allegations.

75.     Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 75 of the Complaint and therefore denies those allegations.

76.     Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 76 of the Complaint and therefore denies those allegations.

77.     Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 77 of the Complaint and therefore denies those allegations.

78.     Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 78 of the Complaint and therefore denies those allegations.

79.     Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 79 of the Complaint and therefore denies those allegations.

80.     Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 80 of the Complaint and therefore denies those allegations.

81.     Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 81 of the Complaint and therefore denies those allegations.

82.     Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 82 of the Complaint and therefore denies those allegations.

83.     Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 83 of the Complaint and therefore denies those allegations.

84.     Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 84 of the Complaint and therefore denies those allegations.

85.     Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 85 of the Complaint and therefore denies those allegations.

86.     Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 86 of the Complaint and therefore denies those allegations.

87.     Georgia Power admits that for many years it owned and operated Plant McManus. Georgia Power admits Plant McManus was coal fired from 1959 until 1972.  Georgia Power denies the remaining allegations in paragraph 87 of the Complaint.

88.     Georgia Power denies the allegations in Paragraph 88 of the Complaint.

89.     Georgia Power denies the allegations in Paragraph 89 of the Complaint.

90.     The allegations in paragraph 90 of the Complaint are legal conclusions to which a response is not required. To the extent a response is required, Georgia Power denies the allegations

13

in Paragraph 90 to the extent they are directed to Georgia Power. To the extent the allegations in Paragraph 90 are directed to Honeywell, Georgia Power lacks knowledge or information sufficient to admit or deny those allegations and therefore denies them.

91.     The allegations in Paragraph 91 of the Complaint are legal conclusions to which a response is not required. To the extent a response is required, Georgia Power denies the allegations in Paragraph 91 to the extent they are directed to Georgia Power. To the extent the allegations in Paragraph 91 are directed to Honeywell, Georgia Power lacks knowledge or information sufficient to admit or deny those allegations and therefore denies them.

92.     The allegations in Paragraph 92 of the Complaint are legal conclusions to which a response is not required. To the extent a response is required, Georgia Power denies the allegations in Paragraph 92 to the extent they are directed to Georgia Power. To the extent the allegations in Paragraph 92 are directed to Honeywell, Georgia Power lacks knowledge or information sufficient to admit or deny those allegations and therefore denies them.

93.     Georgia Power denies the allegations in Paragraph 93 of the Complaint to the extent they are directed to Georgia Power. To the extent the allegations in Paragraph 93 are directed to Honeywell, Georgia Power lacks knowledge or information sufficient to admit or deny those allegations and therefore denies them.

94.     Georgia Power denies the allegations in Paragraph 94 of the Complaint to the extent they are directed to Georgia Power. To the extent the allegations in Paragraph 94 are directed to Honeywell, Georgia Power lacks knowledge or information sufficient to admit or deny those allegations and therefore denies them.

95.     Georgia Power denies the allegations in Paragraph 95 of the Complaint to the extent they are directed to Georgia Power. To the extent the allegations in Paragraph 95 are directed to

14

Honeywell, Georgia Power lacks knowledge or information sufficient to admit or deny those allegations and therefore denies them.

96.     Georgia Power admits the allegations in Paragraph 96 of the Complaint.

97.     Georgia Power denies the allegations in Paragraph 97 of the Complaint to the extent they are directed to Georgia Power. To the extent the allegations in Paragraph 97 are directed to Honeywell, Georgia Power lacks knowledge or information sufficient to admit or deny those allegations and therefore denies them.

98.     Georgia Power denies the allegations in Paragraph 98 of the Complaint to the extent they are directed to Georgia Power. To the extent the allegations in Paragraph 98 are directed to Honeywell, Georgia Power lacks knowledge or information sufficient to admit or deny those allegations and therefore denies them.

99.     Georgia Power denies the allegations in Paragraph 99 of the Complaint to the extent they are directed to Georgia Power. To the extent the allegations in Paragraph 99 are directed to Honeywell, Georgia Power lacks knowledge or information sufficient to admit or deny those allegations and therefore denies them.

100.    Georgia Power denies the allegations in Paragraph 100 to the extent they are directed to Georgia Power. To the extent the allegations in Paragraph 100 are directed to Honeywell, Georgia Power lacks knowledge or information sufficient to admit or deny those allegations and therefore denies them.

101.    Georgia Power denies the allegations in Paragraph 101 of the Complaint to the extent they are directed to Georgia Power. To the extent the allegations in Paragraph 101 are directed to Honeywell, Georgia Power lacks knowledge or information sufficient to admit or deny those allegations and therefore denies them.

23294430.3

102.    Georgia Power denies the allegations in Paragraph 102 of the Complaint to the extent they are directed to Georgia Power. To the extent the allegations in Paragraph 102 are directed to Honeywell, Georgia Power lacks knowledge or information sufficient to admit or deny those allegations and therefore denies them.

103.    Georgia Power denies the allegations in Paragraph 103 of the Complaint to the extent they are directed to Georgia Power. To the extent the allegations in Paragraph 103 are directed to Honeywell, Georgia Power lacks knowledge or information sufficient to admit or deny those allegations and therefore denies them.

104.    Georgia Power denies the allegations in Paragraph 104 of the Complaint.

105.    Georgia Power denies the allegations in Paragraph 105 of the Complaint.

106.    Georgia Power denies the allegations in Paragraph 106 of the Complaint.

107.    Georgia Power denies the allegations in Paragraph 107 of the Complaint to the extent they are directed to Georgia Power. To the extent the allegations in Paragraph 107 are directed to Honeywell, Georgia Power lacks knowledge or information sufficient to admit or deny those allegations and therefore denies them.

108.    Georgia Power denies the allegations in Paragraph 108 of the Complaint to the extent they are directed to Georgia Power. To the extent the allegations in Paragraph 108 are directed to Honeywell, Georgia Power lacks knowledge or information sufficient to admit or deny those allegations and therefore denies them.

## COUNT ONE
### (CONTINUING TRESPASS)

109.    Georgia Power restates and incorporates by reference as if fully set forth herein paragraphs 1 through 108 of its Answer.

16

110.    Georgia Power denies the allegations in Paragraph 110 of the Complaint to the extent they are directed to Georgia Power. To the extent the allegations in Paragraph 110 are directed to Honeywell, Georgia Power lacks knowledge or information sufficient to admit or deny those allegations and therefore denies them.

111.    Georgia Power denies the allegations in Paragraph 111 of the Complaint to the extent they are directed to Georgia Power. To the extent the allegations in Paragraph 111 are directed to Honeywell, Georgia Power lacks knowledge or information sufficient to admit or deny those allegations and therefore denies them.

112.    Georgia Power denies the allegations in Paragraph 112 of the Complaint to the extent they are directed to Georgia Power. To the extent the allegations in Paragraph 112 are directed to Honeywell, Georgia Power lacks knowledge or information sufficient to admit or deny those allegations and therefore denies them.

113.    Georgia Power denies the allegations in Paragraph 113 of the Complaint to the extent they are directed to Georgia Power. To the extent the allegations in Paragraph 113 are directed to Honeywell, Georgia Power lacks knowledge or information sufficient to admit or deny those allegations and therefore denies them.

114.    Georgia Power denies the allegations in Paragraph 114 of the Complaint to the extent they are directed to Georgia Power. To the extent the allegations in Paragraph 114 are directed to Honeywell, Georgia Power lacks knowledge or information sufficient to admit or deny those allegations and therefore denies them.

115.    Georgia Power denies the allegations in Paragraph 115 of the Complaint to the extent they are directed to Georgia Power. To the extent the allegations in Paragraph 115 are

23294430.3

directed to Honeywell, Georgia Power lacks knowledge or information sufficient to admit or deny those allegations and therefore denies them.

116.    Georgia Power denies the allegations in Paragraph 116 of the Complaint to the extent they are directed to Georgia Power. To the extent the allegations in Paragraph 116 are directed to Honeywell, Georgia Power lacks knowledge or information sufficient to admit or deny those allegations and therefore denies them.

117.    Georgia Power denies the allegations in Paragraph 117 of the Complaint to the extent they are directed to Georgia Power. To the extent the allegations in Paragraph 117 are directed to Honeywell, Georgia Power lacks knowledge or information sufficient to admit or deny those allegations and therefore denies them.

118.    Georgia Power denies the allegations in Paragraph 118 of the Complaint to the extent they are directed to Georgia Power. To the extent the allegations in Paragraph 118 are directed to Honeywell, Georgia Power lacks knowledge or information sufficient to admit or deny those allegations and therefore denies them.

119.    Georgia Power denies the allegations in Paragraph 119 of the Complaint to the extent they are directed to Georgia Power. To the extent the allegations in Paragraph 119 are directed to Honeywell, Georgia Power lacks knowledge or information sufficient to admit or deny those allegations and therefore denies them.

**COUNT TWO**
**(CONTINUING NUISANCE)**

120.    Georgia Power restates and incorporates by reference as if fully set forth herein paragraphs 1 through 119 of its Answer.

18

23294430.3

121.    Georgia Power denies the allegations in Paragraph 121 of the Complaint to the extent they are directed to Georgia Power. To the extent the allegations in Paragraph 121 are directed to Honeywell, Georgia Power lacks knowledge or information sufficient to admit or deny those allegations and therefore denies them.

122.    Georgia Power denies the allegations in Paragraph 122 of the Complaint to the extent they are directed to Georgia Power. To the extent the allegations in Paragraph 122 are directed to Honeywell, Georgia Power lacks knowledge or information sufficient to admit or deny those allegations and therefore denies them.

123.    Georgia Power denies the allegations in Paragraph 123 of the Complaint to the extent they are directed to Georgia Power. To the extent the allegations in Paragraph 123 are directed to Honeywell, Georgia Power lacks knowledge or information sufficient to admit or deny those allegations and therefore denies them.

124.    Georgia Power denies the allegations in Paragraph 124 of the Complaint to the extent they are directed to Georgia Power. To the extent the allegations in Paragraph 124 are directed to Honeywell, Georgia Power lacks knowledge or information sufficient to admit or deny those allegations and therefore denies them.

125.    Georgia Power denies the allegations in Paragraph 125 of the Complaint to the extent they are directed to Georgia Power. To the extent the allegations in Paragraph 125 are directed to Honeywell, Georgia Power lacks knowledge or information sufficient to admit or deny those allegations and therefore denies them.

126.    Georgia Power denies the allegations in Paragraph 126 of the Complaint to the extent they are directed to Georgia Power. To the extent the allegations in Paragraph 126 are

19

directed to Honeywell, Georgia Power lacks knowledge or information sufficient to admit or deny those allegations and therefore denies them.

127.    Georgia Power denies the allegations in Paragraph 127 of the Complaint to the extent they are directed to Georgia Power. To the extent the allegations in Paragraph 127 are directed to Honeywell, Georgia Power lacks knowledge or information sufficient to admit or deny those allegations and therefore denies them.

128.    Georgia Power denies the allegations in Paragraph 128 of the Complaint to the extent they are directed to Georgia Power. To the extent the allegations in Paragraph 128 are directed to Honeywell, Georgia Power lacks knowledge or information sufficient to admit or deny those allegations and therefore denies them.

129.    Georgia Power denies the allegations in Paragraph 129 of the Complaint to the extent they are directed to Georgia Power. To the extent the allegations in Paragraph 129 are directed to Honeywell, Georgia Power lacks knowledge or information sufficient to admit or deny those allegations and therefore denies them.

130.    Georgia Power denies the allegations in Paragraph 130 of the Complaint to the extent they are directed to Georgia Power. To the extent the allegations in Paragraph 130 are directed to Honeywell, Georgia Power lacks knowledge or information sufficient to admit or deny those allegations and therefore denies them.

131.    Georgia Power denies the allegations in Paragraph 131 of the Complaint to the extent they are directed to Georgia Power. To the extent the allegations in Paragraph 131 are directed to Honeywell, Georgia Power lacks knowledge or information sufficient to admit or deny those allegations and therefore denies them.

23294430.3

132.    Georgia Power denies the allegations in Paragraph 132 of the Complaint to the extent they are directed to Georgia Power. To the extent the allegations in Paragraph 132 are directed to Honeywell, Georgia Power lacks knowledge or information sufficient to admit or deny those allegations and therefore denies them.

133.    Georgia Power denies the allegations in Paragraph 133 of the Complaint to the extent they are directed to Georgia Power. To the extent the allegations in Paragraph 133 are directed to Honeywell, Georgia Power lacks knowledge or information sufficient to admit or deny those allegations and therefore denies them.

134.    Georgia Power denies the allegations in Paragraph 134 of the Complaint to the extent they are directed to Georgia Power. To the extent the allegations in Paragraph 134 are directed to Honeywell, Georgia Power lacks knowledge or information sufficient to admit or deny those allegations and therefore denies them.

## ANSWERING THE COMPLAINT AS A WHOLE

Georgia Power denies any and all allegations set forth in Plaintiff's Complaint not expressly admitted, denied, or neither admitted nor denied for lack of information sufficient to form a belief.

WHEREFORE, having answered Plaintiff's Complaint fully, Georgia Power requests this case be decided by a jury of twelve people, denies Plaintiff is entitled to any relief, and further demands its immediate dismissal from this action with all costs cast against Plaintiff and such other and further relief as this Court deems just, equitable, and proper under the circumstances.

Respectfully submitted this 31st day of May, 2024.

/s/ Benjamin H. Brewton
Benjamin H. Brewton
Georgia Bar No. 002530

21

23294430.3

T. Joshua R. Archer
Georgia Bar No. 021208
Balch & Bingham LLP
801 Broad Street
Suite 800
Augusta, Georgia 30901
P: (706)842-3711
F: (866)258-8984
bbrewton@balch.com
jarcher@balch.com

*Attorneys for Defendant*
*Georgia Power Company*

22

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using

the CM/ECF system and service will be perfected upon the following this 31st day of May, 2024:

John C. Bell, Jr.
Pamela S. James
The Bell Firm
P.O. Box 1547
Augusta, GA  30903

Robert P. Killian
Killian Law Firm LLC
47 Professional Drive
Brunswick, GA  31520

Brian D. Corry
McQuigg Smith & Corry
504 Beachview Drive
Suite 3D
St. Simons Island, GA  31522

Mark D. Johnson
Amber M. Carter
Gilbert Harrell Sumerford & Martin PC
777 Gloucester Street
Suite 200
Brunswick, GA  31520

/s/ Benjamin H. Brewton
Benjamin H. Brewton
*Attorney for Defendant Georgia Power
Company*

23

Exhibit 2

GLYNN CO. CLERK'S OFFICE
Filed 6/3/2024 6:21 PM
Accepted 6/4/2024 8:55 AM
CASE # CE22-01086

*Rebecca J. Walden*
CLERK SUPERIOR COURT

## IN THE SUPERIOR COURT OF GLYNN COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| CITY OF BRUNSWICK, by and through its MAYOR AND BOARD OF COMMISSIONERS, <br><br> Plaintiff, <br><br> v. <br><br> HONEYWELL INTERNATIONAL, INC., f/k/a ALLIED CHEMICAL CORPORATION and as ALLIEDSIGNAL, INC., and THE GEORGIA POWER COMPANY, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) CIVIL ACTION FILE NO. <u>CE22-01086</u> <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## <u>ANSWER AND DEFENSES OF DEFENDANT HONEYWELL INTERNATIONAL, INC.</u>

Honeywell International, Inc. (hereinafter, "this Defendant" or "Honeywell") makes and files this Answer and Defenses to Plaintiff City of Brunswick's (hereinafter, the "Plaintiff" Complaint as follows:

### <u>FIRST DEFENSE</u>

This Defendant responds to the specific allegations of Plaintiff's Complaint as follows:

<u>PARTIES, JURISDICTION AND VENUE</u>

(1)

Honeywell admits that Plaintiff is a municipal corporation in Glynn County, Georgia. Honeywell lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies the same. Honeywell further denies that it has damaged Plaintiff in any manner whatsoever.

(2)

Honeywell lacks knowledge and information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

(3)

Honeywell admits the allegations of paragraph 3 pertaining to Honeywell's place of incorporation, principal place of business, registered agent, and former corporate names. Honeywell denies that it has committed any acts or omissions that would subject it to the jurisdiction and venue of this Court. *See*, for example, Honeywell's Motion to Dismiss filed contemporaneously with this Answer.

(4)

Honeywell lacks knowledge and information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

(5)

Honeywell admits that this action arises from the Plaintiff's allegations concerning Honeywell's conduct; Honeywell denies, however, that it engaged in any wrongful conduct. Honeywell further denies that Plaintiff has incurred any injuries alleged, and as set forth in paragraph 3 above, denies that jurisdiction and venue are appropriate in this Court.

<u>RESPONDING TO SECTION ENTITLED "GENERAL ALLEGATIONS"</u>

(6)

Honeywell lacks knowledge and information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same. Honeywell further denies that Plaintiff has properly alleged facts showing that it is the owner of any marshes, creek beds, and river bottoms.  In further response, Honeywell states that it has contemporaneously filed a motion

for a more definite statement pursuant to O.C.G.A. § 9-11-12(e) as Plaintiff has not identified any specific properties in connection with the filing of its complaint.

(7)

Honeywell admits that, in 1955, Allied Chemical and Dye Company ("Honeywell's Predecessor" or its "Predecessor") purchased property abutting, along, and around Purvis Creek, including 480 marshland acres, located in Brunswick, Glynn County, Georgia.

(8)

Honeywell admits that there was correspondence between its Predecessor and the State of Georgia prior to construction of the plant but denies that paragraph 8 accurately summarizes said correspondence.

(9)

Honeywell admits that its Predecessor built and operated the chlor-alkalai plant on the Plant Site from 1956 through December 1979, at which time Honeywell's Predecessor sold the Plant to Linden Chemicals and Plastics Corp. ("LCP"). Based on information and belief, Honeywell admits the allegations contained in the second sentence of this paragraph.

(10)

Honeywell denies that the allegations contained in this paragraph are a complete and accurate description of the Solvay process as used by its Predecessor in its Brunswick plant. In further response, Honeywell admits that from 1956 through 1974, Honeywell's Predecessor manufactured chlorine, caustic soda, bleach, and other products by directing an electrical charge through a graphite anode through brine to a sheet of mercury that flowed over a metal bedplate, and that this took place in a series of mercury cells contained in two buildings. Honeywell states

that, sometime in 1974, Honeywell's Predecessor began to switch from graphite anodes to dimensionally stable anodes made of titanium.

(11)

Honeywell admits that during the operation of the plant, some mercury was knowingly discharged into Purvis Creek, including, from 1971 through 1979, in accordance with Honeywell's Predecessor's wastewater discharge permit. Honeywell denies that any of these discharges were wrongful. Honeywell admits that its Predecessor discharged mercury through its wastewater discharge system, which at times included a sewer system and a ditch. Honeywell denies the remaining allegations contained in this paragraph.

(12)

Honeywell admits that during the operation of the plant, some mercury was released into the atmosphere. Honeywell denies the remaining allegations contained in this paragraph.

(13)

Denied.

(14)

Honeywell admits that beginning in October 1962 Honeywell's Predecessor began impregnating replacement anodes with Aroclor 1268, a polychlorinated biphenyl, and that it stopped impregnating its anodes with Aroclor 1268 in 1970. Honeywell denies the remaining allegations contained in this paragraph. In further response, Honeywell states that the last use of such anodes was more than 50 years prior to the filing of this lawsuit.

(15)

Honeywell denies that every impregnated anode from 1962 to 1972 contained Aroclor 1268. For those anodes that were impregnated with Aroclor 1268, Honeywell admits, on information and belief, that 8.5 to 10 pounds represents a range that likely reflects the weight of Aroclor 1268 present in most anodes, but further states that the amount of Aroclor 1268 in each anode varied depending on the density of the graphite contained in the anode. Honeywell lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies the same.

(16)

Honeywell admits that between 1962 and 1970 its Predecessor used Aroclor 1268 at its Brunswick plant, though Honeywell currently lacks knowledge or information sufficient to admit or deny how much Aroclor 1268 was "consumed" per year at the plant between 1962 and 1970. Honeywell denies the remainder of paragraph 16.

(17)

Denied. In further response, available evidence indicates that one or more companies in Georgia other than Honeywell's Predecessor did in fact use Aroclor 1268 in their manufacturing process.

(18)

Honeywell admits that some mercury would have been absorbed by the graphite anodes during the manufacturing process.

(19)

Honeywell admits that the graphite anodes would erode into the cells over time and that some portion of the graphite, mercury, and Aroclor 1268 were discharged into Purvis Creek or

captured in filters and backwashed through the plant sewer into Purvis Creek. Honeywell denies the remaining allegations contained in this paragraph.

(20)

Honeywell admits that its Predecessor would periodically replace the graphite anodes used in its process. On information and belief, Honeywell admits that this replacement would typically occur after 70% to 80% of the anode had eroded. Honeywell admits that its Predecessor used graphite anode pieces, some of which had been impregnated with Aroclor 1268 and some of which had not, to fill potholes and as rip-rap material around the outfall into Purvis Creek to prevent erosion. Honeywell further states that the majority of the spent anodes were shipped off-site for disposal. Honeywell denies the remaining allegations contained in this paragraph.

(21)

Honeywell admits that a portion of the graphite anode pieces used as rip-rap contained small amounts of Aroclor 1268 and mercury. Honeywell denies the remaining allegations contained in this paragraph.

(22)

Honeywell admits that Aroclor 1268 was discharged or disposed of at the plant site, but denies that "tons" of Aroclor 1268 was disposed of or present in each of the locations listed in this paragraph.

(23)

Honeywell admits that the U.S. Environmental Protection Agency ("EPA") banned the production of PCBs in 1979.

(24)

Honeywell admits that from 1956 until 1978, wastes containing mercury, including cell room parts, were disposed of in a landfill that Honeywell's Predecessor closed with regulatory approval in 1978. This landfill was constructed and first used by an owner prior to Honeywell's Predecessor. Available evidence indicates that this prior owner also disposed of mercury containing wastes in this landfill. Honeywell denies the remaining allegations contained in this paragraph.

(25)

Honeywell admits that at the direction of and with the approval of the State of Georgia, Honeywell's Predecessor closed its on-site landfill in accordance with instructions provided to its Predecessor by the state regulatory authorities. Honeywell denies the remaining allegations contained in this paragraph.

(26)

Honeywell admits that in 1973, it discovered that one of the plant's cell rooms appeared to be settling. Honeywell denies the remaining allegations contained in this paragraph.

(27)

Denied.

(28)

Denied.

(29)

On information and belief, Honeywell admits that at various points documents concerning mercury in the environment were obtained by plant management and kept in plant files. Honeywell is presently without knowledge or information sufficient to admit or deny that plant management

had such documents in 1969. Honeywell denies the remaining allegations contained in this paragraph.

(30)

Denied.

(31)

Honeywell lacks knowledge and information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

(32)

Denied.

(33)

Denied.

(34)

Denied.

(35)

Denied.

(36)

Denied.

(37)

Denied.

(38)

Honeywell routinely evaluated costs associated with the Plant, including costs of compliance with environmental laws. Honeywell denies the remaining allegations contained in this paragraph.

(39)

Honeywell's Predecessor sold the plant to LCP in 1979. Honeywell denies the remaining allegations contained in this paragraph.

(40)

Denied.

(41)

Denied.

(42)

Denied.

(43)

Denied.

(44)

Denied.

(45)

Honeywell further admits that it informed the EPA in 1981 of Honeywell's then-held belief that no PCBs had been disposed of at the Brunswick plant site. Honeywell denies the remaining allegations contained in this paragraph. Honeywell had no basis to believe that PCBs had been disposed of at the Brunswick site.

(46)

Denied.

(47)

On information and belief, Honeywell admits the allegations contained in the first sentence of this paragraph. Honeywell denies the remaining allegations contained in this paragraph.

(48)

Denied.

(49)

Denied.

(50)

Denied.

(51)

Honeywell states that Georgia Department of Natural Resources ("DNR"), U.S. EPA, and other state and federal agencies were aware of the presence of mercury in the Turtle River estuary since at least 1970. Honeywell further admits that in 1991, the DNR determined that there were low levels of PCBs in fish and other marine life that was later determined to be Aroclor 1268. Honeywell denies the remaining allegations contained in Paragraph 51 of the Complaint. By way of further response, Honeywell states that sampling by DNR throughout Georgia has indicated that fish and other marine life contain levels of mercury, Aroclor 1268, and many other constituents. Honeywell's cleanup efforts at the site over the past 30 years have resulted in improved fish consumption guidelines for the area of the Turtle River estuary.

(52)

Honeywell admits that since 1991, the DNR has taken various actions regarding fishing in portions of Purvis Creek, Gibson Creek, and Turtle River. Honeywell denies that the allegations contained in this paragraph accurately or completely characterize those actions. In further response to paragraph 52, Honeywell refers to its response to paragraph 51 above.

(53)

Honeywell admits that since 1991, the DNR has issued fish consumption advisories and other actions regarding fishing and the consumption of seafood in portions of Purvis Creek, Gibson Creek, and the Turtle River. The terms of those advisories speak for themselves. Honeywell denies that the allegations contained in this paragraph accurately or completely characterize those advisories. In further response to paragraph 53, Honeywell refers to its response to paragraph 51 above.

(54)

Honeywell admits that in 1992, the Environmental Protection Division of the Georgia DNR ("EPD") issued a proposed consent order to LCP for the removal of anodes present in the outfall berms. Honeywell denies the remaining allegations contained in this paragraph.

(55)

Honeywell admits that the EPD issued a proposed consent order to Honeywell after the EPD learned that LCP had not used Aroclor 1268 in LCP's manufacturing process. Honeywell denies the remaining allegations contained in this paragraph.

(56)

Denied.

(57)

Honeywell admits that certain costs would not have been incurred if LCP kept the plant operating. For example, costs associated with dismantling the plant, closing the holding ponds, disposing of plant equipment, etc., would not be incurred if the plant was operational. Honeywell further admits that in 1993, the estimate of these deferred costs was in excess of $20 million. Honeywell denies the remaining allegations contained in this paragraph.

(58)

Honeywell admits that it attempted to keep the Brunswick plant in operation while HoltraChem Manufacturing Company, LLC, with the approval of the United States Bankruptcy Court, negotiated the potential purchase of the Brunswick plant and three other chlor-alkali plants. Honeywell further admits that one of its main purposes in participating in the purchase was to defer (and manage) certain shutdown and remediation costs. Honeywell denies the remaining allegations contained in this paragraph.

(59)

Admitted.

(60)

Denied.

(61)

Honeywell admits that during 1993, as part of the attempted purchase of the Brunswick plant by HoltraChem Manufacturing Company, LLC, Honeywell made, caused to be made, and/or guaranteed certain payments, including the Brunswick plant's power bill, for a period of time. It is sheer speculation to conclude that in the absence of those efforts "the Plant power would have been cut off and the plant would have shut down," though that is certainly what Honeywell was trying to prevent.

(62)

Honeywell admits that in October 1993, at the request of the Creditors Committee of LCP for the United States Bankruptcy Court, Honeywell provided a leave of absence to Mark White, allowing him to become an LCP employee in which capacity he served as the Brunswick plant manager until February 1994. Honeywell denies the remaining allegations contained in this paragraph.

(63)

Honeywell admits that it intervened in the state court action concerning the EPD's attempted revocation of LCP's operating permits in order to preserve the ability of the plant to operate under its permits. Honeywell further admits that its interest in doing so stemmed from the fact that (a) it had certain potential liabilities at the plant as a result of past operations, and (b) it was participating as a member of HoltraChem Manufacturing Company, LLC in its potential purchase of the plant. The pleadings filed in this intervention speak for themselves. Honeywell denies the remaining allegations contained in this paragraph.

(64)

Honeywell denies the allegations contained in this paragraph as written. Honeywell notes that James Kavney did offer advice and assistance to LCP in its maintenance efforts at the plant.

(65)

Honeywell admits that it sent several of its employees to Brunswick to assist in the operation and maintenance of the plant in an attempt to bring the plant into compliance with its operating permits. Honeywell denies the remaining allegations contained in this paragraph.

(66)

Honeywell denies the allegations contained in this paragraph as written. Moreover, it is not known what is meant by the "prolonged operation" of the plant.

(67)

Denied.

(68)

Honeywell admits that the process of shutting down the Brunswick plant began in February 1994.

(69)

Honeywell admits that the EPA issued a Unilateral Administrative Order ("UAO") to Honeywell, LCP, and Mark White. In further response, Honeywell states that the terms and scope of the UAO speak for themselves, and that Honeywell has been working under the direction of the EPA for the past 30 years following issuance of the UAO in 1994. Honeywell denies the remaining allegations contained in this paragraph.

(70)

In response to paragraph 70, Honeywell admits that EPA has conducted extensive investigations of the LCP site, but denies that the allegations of paragraph 70 are a complete and accurate summary of those investigations. Honeywell admits that mercury was found and removed from the LCP plant site during remediation, though "tons" were not found in each of the locations listed in this paragraph. Honeywell further admits that mercury was found in some fish and crabs in the area near the LCP plant as well as in the waterways adjacent to the plant. Honeywell denies the remaining allegations contained in this paragraph.

(71)

In response to paragraph 71, Honeywell admits that EPA has conducted extensive investigations of the LCP site, but denies that the allegations of paragraph 71 are a complete and accurate summary of those investigations. Honeywell admits that PCBs were found and removed from the LCP plant site during remediation, though "tons" were not found in each of the locations listed in this paragraph. Honeywell further admits that PCBs were found in some fish and crabs in the area near the LCP plant as well as in the waterways adjacent to the plant. Honeywell denies the remaining allegations contained in this paragraph.

(72)

Honeywell admits that mercury and PCBs have been found in the marshes adjacent to the plant, though the vast majority of the mercury and PCBs remained on plant-owned marshes and upland property.  Honeywell further admits that in 1998 the EPA required Honeywell to excavate one (1) foot of soil from thirteen (13) acres of marsh and sediment in creeks near a former disposal site located on the plant site.  In further response, there are other known sources of mercury and PCBs throughout the area in and around Brunswick, Georgia.  Honeywell denies the remaining allegations contained in this paragraph.

(73)

Honeywell admits that a small portion of the mercury and PCBs released from the plant have been found in marine life on or near the LCP site. Mercury and PCBs have also been found in the marshes adjacent to the plant, though the vast majority of the mercury and PCBs remained on plant-owned property. Honeywell denies any of the remaining allegations of this paragraph.

(74)

Honeywell denies the allegations of paragraph 74 as stated, and in further response, refers to its responses to paragraphs 51, 69, 70, 71 and 72 above.

(75)

Denied.

(76)

Denied.

(77)

Denied.

(78)

On information and belief, Honeywell admits that, at least as of the time the Complaint was filed, Plaintiff owned some waterfront and/or marshfront properties. Plaintiff's allegations concerning its legal rights and privileges as a waterfront and/or marshfront property owner are legal conclusions and so require no response, though Honeywell notes that these allegations contain incorrect statements of law. Honeywell denies the remaining allegations contained in this paragraph.

(79)

Denied.

(80)

Honeywell denies the allegations contained in this paragraph. Honeywell acknowledges, however, that there have in the past been both commercial and recreational restrictions for fishing and crabbing near the LCP site. Honeywell also notes that collection of shellfish in the Turtle River has been banned for decades pursuant to the National Shellfish Sanitation Program for reasons having nothing to do with the LCP site.

(81)

Denied.

(82)

Denied.

(83)

Denied.

(84)

Denied.

(85)

Denied.

(86)

Denied.

(87)

Honeywell admits that Georgia Power Company owned and operated Plant McManus. Honeywell is without knowledge and information sufficient to form a belief concerning the operational allegations concerning Plant McManus and so denies same.

(88)

Honeywell lacks knowledge and information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

(89)

Denied. In further response, Honeywell states that Section I.E of the Consent Decree referenced in paragraph 89 provides as follows: "The Settling Defendants (SDs) do not admit any liability to Plaintiff arising out of the transactions or occurrences alleged in the complaint, nor do they acknowledge that the release or threatened release of hazardous substance(s) at or from the Site constitutes an imminent and substantial endangerment to the public health or welfare or the environment." The Consent Decree is attached hereto as Exhibit "A".

(90)

Denied.

(91)

Denied.

(92)

Denied.

(93)

Denied.

(94)

Denied.

(95)

Denied.

(96)

Denied. In further response, Honeywell states that the geographic boundaries of a CERCLA site are defined by statute. *See* 42 U.S.C. § 101(9) (defining "facility" to include "any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located").

(97)

Honeywell is unable to ascertain the meaning of the allegations in this paragraph and so denies the same. Honeywell again notes, however, that the geographic boundaries of a CERCLA site are defined by statute. *See* 42 U.S.C. § 101(9). If property falls outside of the statutorily-defined boundary, it is not part of the site. If property falls within the definition, then it is part of the site. Whether remediation is required is a separate question.

(98)

Denied. In further response, Honeywell states that under CERCLA's definitions, this is not possible. *See* 42 U.S.C. § 101(9).

(99)

Denied.

(100)

Denied.

(101)

Denied.

(102)

Denied.

(103)

Denied.

(104)

Denied.

(105)

Denied.

(106)

Denied.

(107)

Denied.

(108)

Denied.

<u>COUNT ONE</u>

CONTINUING TRESPASS

(109)

This Defendant hereby incorporates by reference its responses to Paragraphs 1-108 above

as if fully restated herein.

(110)

Denied.

(111)

Denied.

(112)

Denied.

(113)

Denied.

(114)

Denied.

(115)

Denied.

(116)

Denied.

(117)

Denied.

(118)

Denied.

(119)

Denied.

## COUNT TWO

### CONTINUING NUISANCE

(120)

This Defendant hereby incorporates by reference its responses to Paragraphs 1-119 above as if fully restated herein.

(121)

Denied.

(122)

Denied.

(123)

Denied. Honeywell further states that the scope of Plaintiff's "entitlement" to use any given property is a legal question to which no response is required.

(124)

Denied.

(125)

Denied.

(126)

Denied.

(127)

Denied.

(128)

Denied.

(129)

Denied.

(130)

Denied.

(131)

Denied.

(132)

Denied.

(133)

Denied.

(134)

Denied.

RESPONDING TO PLAINTIFF'S PRAYER FOR RELIEF

Answering the "WHEREFORE" paragraph following paragraph 134 of Plaintiff's Complaint, including sub-paragraphs (a) through (e), Honeywell denies that Plaintiff is entitled to any damages or any other relief requested, including any and all relief sought in sub-sections (a) to (e). In further response, Honeywell prays that Plaintiff's Complaint be dismissed with prejudice and requests any such other and further relief as the Court finds just and proper.

## SECOND DEFENSE

Plaintiff's Complaint, in whole or in part, fails to state a claim against this Defendant upon which relief may be granted.

## THIRD DEFENSE

Plaintiff lacks standing to pursue some or all of the claims alleged.

## FOURTH DEFENSE

Some or all of Plaintiff's claims are preempted by applicable federal statutes and regulations pursuant to the Supremacy Clause of the United States Constitution.

## FIFTH DEFENSE

This Defendant states that the injuries allegedly sustained by Plaintiffs may have been caused by intervening, superseding actions for which this Defendant is in no way liable.

**SIXTH DEFENSE**

This Defendant contests the damages and injuries which are being asserted in this claim, and this Defendant demands strict proof thereof.

**SEVENTH DEFENSE**

This Defendant asserts that all or some recovery in this case may be barred by the applicable statute(s) of limitations and repose.

**EIGHTH DEFENSE**

This Defendant asserts that the Plaintiff has failed to take reasonable steps to reduce or minimize any damages or losses allegedly experienced.

**NINTH DEFENSE**

This Defendant is not indebted to or liable to Plaintiff in any manner or amount whatsoever.

**TENTH DEFENSE**

This Defendant states that some or all of Plaintiff's claims may be barred by the doctrines of laches, waiver, and estoppel.

**ELEVENTH DEFENSE**

Plaintiff is not entitled to collect an award of punitive damages from this Defendant because an award of such damages could violate the due process, equal protection, excessive fees, and double jeopardy clauses of the Georgia and United States Constitutions.

**TWELTH DEFENSE**

Plaintiff has failed to join necessary and indispensable parties.

**THIRTEENTH DEFENSE**

All or a portion of the claims alleged in the Complaint are subject to the primary jurisdiction of various state and federal agencies, including the United States Environmental Protection Agency, the Georgia Department of Natural Resources, and/or the Georgia Environmental Protection Division.

## FOURTEENTH DEFENSE

Plaintiff's claims are barred in whole or in part by the prior trespass doctrine.

## FIFTEENTH DEFENSE

Plaintiff's claims are barred in whole or in part because Honeywell's conduct was in accordance with the applicable standards of care under all laws and regulations, and actions taken by Honeywell in accordance with such standards of care were reasonable as a matter of law.

## SIXTEENTH DEFENSE

Honeywell's activities were at all times conducted in substantial compliance with all applicable laws, regulations, permits, etc.

## SEVENTEENTH DEFENSE

This Defendant hereby specifically denies any allegations contained in Plaintiff's Complaint that are not expressly admitted.

## EIGHTEENTH DEFENSE

This Defendant reserves the right to assert other defenses as they may become known to this Defendant during the course of further investigation into these matters or further developments in this case.

WHEREFORE having fully addressed Plaintiff's Complaint, Honeywell demands a trial by a jury of twelve and prays that the Court:

1.      Dismiss Plaintiff's Complaint;

2.      Require Plaintiff to pay costs, including reasonable attorneys fees, of this action; and

3.      Grant such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED, this 3rd day of June, 2024.

/s/ Mark D. Johnson
Mark D. Johnson
Georgia Bar No. 395041
mjohnson@ghsmlaw.com

/s/ Amber M. Carter
Amber M. Carter
Georgia Bar No. 631646
acarter@ghsmlaw.com

**GILBERT HARRELL SUMERFORD & MARTIN, P.C.**
Post Office Box 190
Brunswick, Georgia 31521-0190
P:  (912) 265-6700
F:  (912) 264-0244

Brian D. Israel*
**ARNOLD & PORTER KAYE SCHOLER LLP**
777 South Figueroa Street, 44th Fl.
Los Angeles, CA 90017-5844
P: (213) 243-4000
F: (213) 243-4199
brian.israel@arnoldporter.com

* Admitted Pro Hac Vice.

**Attorneys for Defendant Honeywell International, Inc.**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I have electronically filed electronically the foregoing **ANSWER AND DEFENSES OF DEFENDANT HONEYWELL INTERNATIONAL, INC.** with the Clerk of the Court to be served by operation of the Court's electronic filing system.

Respectfully submitted this 3rd day of June, 2024.

*/s/ Mark D. Johnson*
Mark D. Johnson

**Counsel for Defendant**
**Honeywell International, Inc.**

GILBERT, HARRELL,
SUMERFORD & MARTIN, P.C.
P.O. Box 190
Brunswick, GA 31521-0190
Telephone: (912) 265-6700
Facsimile: (912) 264-0244
mjohnson@ghsmlaw.com

Exhibit 3

GLYNN CO. CLERK'S OFFICE
Filed 5/31/2024 3:36 PM
Accepted 5/31/2024 3:59 PM
CASE # CE22-01086

*Rebecca G Walden*

CLERK SUPERIOR COURT

**IN THE SUPERIOR COURT OF GLYNN COUNTY**
**STATE OF GEORGIA**

| | |
|---|---|
| **CITY OF BRUNSWICK, by and through** ) | |
| **its MAYOR AND BOARD OF** ) | |
| **COMMISSIONERS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | Civil Action No. CE22-01086 |
| **HONEYWELL INTERNATIONAL, INC.** ) | |
| **f/k/a ALLIED CHEMICAL** ) | |
| **CORPORATION and as ALLIEDSIGNAL,** ) | |
| **INC., and GEORGIA POWER** ) | |
| **COMPANY,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**DEFENDANT GEORGIA POWER COMPANY'S MOTION TO DISMISS**
**OR, IN THE ALTERNATIVE, FOR MORE DEFINITE STATEMENT**
**AND BRIEF IN SUPPORT**

Defendant Georgia Power Company ("Georgia Power") respectfully moves the Court for an order dismissing Plaintiff City of Brunswick's (the "City") claims against Georgia Power in their entirety or, in the alternative, directing the City to provide a more definite statement of its allegations and claims specifically against Georgia Power.

**I.      INTRODUCTION AND FACTUAL BACKGROUND**

The City's Complaint asserts claims against Georgia Power and Defendant Honeywell International, Inc. ("Honeywell") for continuing nuisance and continuing trespass, alleging they released chemicals from their facilities decades ago that contaminated property belonging to the City. The City alleges Honeywell and its predecessors operated a chlor-alkalai plant in Brunswick (the "Brunswick Plant Site") from 1956 to 1979 and that Honeywell played a role in keeping the Brunswick Plant Site operational from 1979 to 1994 after it sold the plant. *See* Complaint ¶¶ 7,

20782563.2

9.  The City alleges Honeywell's activities at the Brunswick Plant Site resulted in discharges of mercury and other chemicals into the air and water that spread into waters, marshes, and property of the City.  *See id.* ¶¶ 11-13, 19-22, 34-35, 41-42, 66, 75.

The Complaint's scant allegations against Georgia Power focus solely on its operation of an electric power plant called Plant McManus, which was on a parcel of land near, but entirely separate from, the Brunswick Plant Site.  Georgia Power started construction of Plant McManus in 1951.  Beginning in 1959, Plant McManus used coal to generate electricity, in line with industry standards at the time.  *See* Declaration of Robert W. Mitchell ("Mitchell Dec.," attached as **Exhibit A**) ¶¶ 13-18.  In the early 1970s, Georgia Power began converting Plant McManus to generate electricity by using oil instead of coal.  *See id.* ¶ 19.  To convert Plant McManus from a coal-based plant, Georgia Power shut down each of the Plant's units for months, reducing Plant McManus's supply of electricity.  *See id.* ¶ 20.  Georgia Power also installed five oil storage tanks large enough to accommodate 18 million gallons of oil and constructed a large receiving dock where oil could be unloaded.  *See id.* ¶¶ 21, 22.  The conversion of Plant McManus from coal-based to oil-based cost Georgia Power millions of dollars[1] and took approximately two years.  *See id.* ¶¶ 23-24. Georgia Power has not used coal at Plant McManus since 1972, more than 50 years ago.  *See id.* ¶¶ 25-27.

The City's Complaint mentions Georgia Power in only three of its 134 paragraphs, and the framework of the City's claims against Georgia Power is set forth in only one paragraph—Georgia Power's alleged emission of mercury as a result of using coal at Plant McManus.  *See id.* ¶ 87. The 131 paragraphs of the Complaint that do not mention Georgia Power address operations at the

---

[1] For context, if Georgia Power were to undertake the same conversion project today, it would cost tens of millions, if not hundreds of millions, of dollars.  *See id.* ¶ 24.

20782563.2

Brunswick Plant Site by Honeywell or "Defendants" collectively. Not a single allegation relating to the Brunswick Plant Site is made against Georgia Power.

The Court should dismiss the City's claims against Georgia Power for three reasons. First, the City lacks standing to bring this action, because it does not own the property forming the basis of its nuisance and trespass claims.

Second, the Complaint fails to state a claim against Georgia Power upon which relief can be granted, because the City's claims are barred by the four-year limitations period of O.C.G.A. § 9-3-30(a). Georgia law clearly shows the alleged nuisance created at Plant McManus—the emission of mercury resulting from the use of coal—is permanent, and not continuing or abatable, because it was an integral part and a substantial and relatively enduring feature of Plant McManus's original plan of construction as a coal-based plant and resulted from the essential method of the Plant's operation from 1959 to 1972. The Complaint fails to allege any harm to the City's property as a result of Georgia Power's decades-old conduct that occurred within the four years prior to filing this action. Because the nuisance the City alleges Georgia Power created is permanent, the City's claims are barred by the expiration of the four-year limitations period in 1976.

Third, the Complaint also fails to state a claim against Georgia Power upon which relief can be granted because, even if the nuisance the City alleges Georgia Power created at Plant McManus was abatable or continuing and not permanent, an essential element of a continuing nuisance claim under Georgia law is a legal right to abate the nuisance, and the City does not allege (and cannot allege) that it granted Georgia Power the legal right to abate the alleged nuisance on the City's property.

For these reasons, the Court should grant this Motion and dismiss the City's claims against Georgia Power in their entirety. In the alternative, the Court should order the City to plead its allegations against Georgia Power with greater specificity so that Georgia Power may frame a proper response to the City's allegations.

II.    **ARGUMENT AND CITATION OF AUTHORITY**

A.    **Standards Governing Motions to Dismiss and Motions for More Definite Statement**

A motion to dismiss for failure to state a claim upon which relief may be granted should be granted where "(1) the allegations in the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought." *Love v. Fulton County Bd. of Tax Assessors*, 311 Ga. 682, 683 (2021). Moreover, "[a] complaint may be dismissed on motion for failure to state a claim if clearly without any merit; and this want of merit may consist in an absence of law to support a claim of the sort made, or of facts sufficient to make a good claim, or in the disclosure of some fact which will necessarily defeat the claim." *Mabra v. SF, Inc.*, 316 Ga. App. 62, 66 (2012) (brackets omitted). When determining whether a complaint lacks merit, the trial court "is under no obligation to adopt [a plaintiff's] legal conclusions" as true. *Love*, 311 Ga. at 691 n.7.

A motion for more definite statement will be granted where a complaint "is so vague or ambiguous that [the defendant] cannot reasonably be required to frame a proper responsive pleading …." O.C.G.A. § 9-11-12(e). Below, Georgia Power "point[s] out the defects" in the City's Complaint "and the details [Georgia Power] desire[s]." *Id.*

20782563.2

B.     **The Court Should Dismiss the City's Claims Against Georgia Power.**

    1.     **The City Lacks Standing to Bring Its Claims.**

"Every action shall be prosecuted in the name of the real party in interest." O.C.G.A. § 9-11-17(a). "The common law restricts the action for nuisance to invasions of interest in the use and enjoyment of land." *Reidling v. City of Gainesville*, 280 Ga. App. 698, 704 (2006). "A private nuisance may injure either a person or property, or both, and for that injury a right of action accrues to the person who is injured or whose property is damaged." O.C.G.A. § 41-1-4. Similarly, "[t]o maintain an action for trespass or [other] injury to realty, it is essential that the plaintiff show either that [it] was the true owner or was in possession at the time of the trespass." *Brown Inv. Group, LLC v. Mayor and Aldermen of City of Savannah*, 289 Ga. 67, 68 (2011) (citation omitted). In an action for damage to real property, therefore, "the real party in interest is the person or persons who own, lease or have a legal interest in the property." *Reidling*, 280 Ga. App. at 704. To have standing to bring its claims against Georgia Power, the City must show it "owns, leases or has a legal interest in the property" allegedly damaged by the alleged trespass and nuisance.

The City alleges its jurisdictional limits are shown on the map attached as Exhibit A to the Complaint. *See* Complaint ¶ 1. The City further alleges it owns the "high ground, marshes," "creek bottoms," "river bottoms," and a "non-navigable canal" within its jurisdictional boundaries, and that Georgia Power's Plant McManus "emitted mercury into the air" that "migrated onto marshes and shoreline owned by the City ...." *Id.* ¶¶ 6, 87, 88.

The City lacks standing to bring its claims against Georgia Power because the City does not own the property allegedly affected by the alleged trespass and nuisance. Under Georgia law, the State "hold[s] title to the beds of all tidewaters within the state, except where title in a private party can be traced to a valid Crown or state grant which explicitly conveyed the beds of such tidewaters." O.C.G.A. § 52-1-2. "[T]he protection of tidewaters for use by the state and its citizens

has more than local significance, is of equal importance to all citizens of the state, is of state-wide concern, and, consequently, is properly a matter for regulation under the police powers of the state." *Id.* The General Assembly defined "tidewaters" to include "the sea and all rivers and arms of the sea that are affected by the tide, where the tide rises and falls, which are capable of use for fishing, passage, navigation, commerce, or transportation, and which are located within the jurisdiction of the State of Georgia." O.C.G.A. § 52-1-3(4). Accordingly, the State of Georgia, and not the City, "owns the tidewaters bottoms up to the high water mark …." *Black v. Floyd*, 280 Ga. 525, 526 (2006) (punctuation and citation omitted).

The City therefore does not own the "high ground" below the high water mark, "marshes," "creek bottoms," "river bottoms," "non-navigable canal," and "shoreline" that the Complaint alleges have been damaged by the alleged trespass and nuisance. Thus, the City is not the real party in interest with standing to bring this action, and its claims against Georgia Power should be dismissed.

        **2.**      **<u>The Statute of Limitations Bars the City's Claims.</u>**

Claims for damage to property based on trespass or nuisance are subject to a four-year statute of limitation. *See* O.C.G.A. § 9-3-30(a). "However, when the statute begins to run depends on the nature of the nuisance or trespass. … [T]he classification of a nuisance as continuing or permanent directly controls the manner in which the statute of limitations will be applied to the underlying claim." *City of Atlanta v. Carlisle*, 359 Ga. App. 444, 445 (2021) (citations and punctuation omitted).

Georgia case law clearly shows the trespass and nuisance that is the subject of the City's claims against Georgia Power is permanent in nature. The scant allegations against Georgia Power in the City's Complaint—that Plant McManus "***was*** coal-fired and ***emitted*** mercury" that harmed

the City's property—allege conduct by Georgia Power that occurred more than 50 years ago. The Complaint fails to allege any harm to the City's property as a result of Georgia Power's decades-old conduct that occurred within the four years prior to filing this action. The City's Complaint therefore clearly alleges a permanent nuisance against Georgia Power, and the City's claims are barred by the statute of limitations.

  a)  **Georgia Law Governing the City's Claims**

    (1)  **Permanent Versus Abatable Nuisances/Trespasses**

The Georgia Supreme Court classifies nuisances as either "abatable" or "permanent." *Wise Business Forms, Inc. v. Forsyth County*, 317 Ga. 636, 640 (2023).

> An "abatable" nuisance is one where the harm to a plaintiff's property "results from some minor feature of construction or management" or "from an improper and unnecessary method of operation," which can "be averted at slight expense" or readily enjoined. A "permanent" nuisance is "one whose character is such that, from its nature and under the circumstances of its existence, it presumably will continue indefinitely." Determining whether a nuisance is abatable or permanent will typically dictate "the manner in which the statute of limitations will be applied."

*Id.* at 640-41 (quoting *Oglethorpe Power Corp. v. Forrister*, 289 Ga. 331, 333-34 (2011)).

If the nuisance is permanent, the statute of limitations begins "once some portion of the harm becomes observable," and "a plaintiff is allowed only one cause of action to recover damages for past and future harm." *Forrister*, 289 Ga. at 333. If the nuisance is abatable, or "continuing," "every continuance of the nuisance is a fresh nuisance for which a fresh action will lie, and the statute of limitation will begin to run at the time of each continuance of the harm." *Id.* (quoting *City of Atlanta v. Kleber*, 285 Ga. 413, 416 (2009)).

The Georgia Supreme Court in *Wise Business Forms* held its decision in *Forrister* articulated "one of the correct standards to apply in determining when the applicable statute of limitation begins to run on a permanent nuisance claim," but it "clarif[ied *Forrister*'s] standards

for determining when" such a claim accrues. *Wise Business Forms*, 317 Ga. at 636. The *Wise Business Forms* Court found "th[e] language from *Forrister* [quoted above] is imprecise because it does not explain that this standard will not apply in *all* permanent nuisance cases," since "[p]ermanent nuisance cases vary in relation to when the alleged harm to a plaintiff's property caused by the nuisance becomes 'observable' to the plaintiff." *Id.* at 641 (quoting *Forrister*, 289 Ga. at 333) (emphasis in original).

"In some cases, the harm to the plaintiff's property is immediately observable 'upon the creation of the nuisance.'" *Id.* (quoting *Forrister*, 289 Ga. at 333). "In other permanent nuisance cases, the harm to the plaintiff's property is not 'observable' to the plaintiff until later—sometimes years later." *Id.* at 641-42 (quoting *Forrister*, 289 Ga. at 333). In such circumstances, where the activity alleged to be a nuisance

> is not injurious in and of itself, [it may] become[ ] a permanent and continuing nuisance because of some supervening cause, like heavy rains, which produces special injury at different periods. In such cases, a separate action lies for each injury thus occasioned, and the statute begins to run from the time when the special injury is occasioned.

*Id.* at 642 (citations and punctuation omitted); *see also Columbia County v. Satcher*, 369 Ga. App. 608, 611-12 (2023) (discussing *Wise Business Forms*'s clarification of *Forrister*, court found county's metal stormwater pipe, which had been in place since 1976, caused repeated flooding of plaintiffs' property and, regardless of when plaintiffs first observed harm, their permanent nuisance claims based on flooding events within four years prior to bringing suit were not barred).

The Complaint does not allege this second type of "permanent" nuisance against Georgia Power; it does not allege Georgia Power did anything that became a continuing nuisance because it produced an injury to the City's property within the four years prior to the filing of the Complaint. Instead, the Complaint's only allegation against Georgia Power is that Plant McManus "***was*** coal-fired and ***emitted*** mercury" that migrated onto and harmed the City's property. *See*

Complaint ¶ 87. There is no dispute Plant McManus ceased using coal in 1972 and any alleged "emi[ssion of] mercury" from Plant McManus could not have occurred after 1972. *Cf. Columbia County*, 369 Ga. App. at 612 (plaintiff's lawsuit filed in 2014, which alleged flooding events occurred in 2013 and 2016 as result of defendant's stormwater drain pipe, was not barred by O.C.G.A. § 9-3-30(a)); *Wise Business Forms*, 317 Ga. at 643 (plaintiff, who alleged its property flooded during every significant rainfall as a result of defendants' roadway expansion project, could sue for harms occurring within four years prior to suit, as well as future harms, in one lawsuit).

The "clarification" of Georgia nuisance law set forth in *Wise Business Forms* is therefore irrelevant here. This case falls within *Forrister*'s holding that the statute of limitations began "once some portion of the harm" caused by the alleged emission of mercury from Plant McManus as a result of using coal prior to 1972 "became observable." Because the City did not file its Complaint within four years of that time, the City's claims are barred by the four-year limitation period of O.C.G.A. § 9-3-30(a).

(2)    **Permanent Nuisances Created by Public Versus Private Entities**

Georgia law draws a further distinction between permanent nuisances created by public entities and permanent nuisances created by private entities.[2] If a public entity is alleged to have created a permanent nuisance, then two unique rules apply. First, the four-year statute of limitations begins to run when the harm becomes observable, and the plaintiff may not file a claim after the limitations period has elapsed. *See Forrister*, 289 Ga. at 333-34; *Kleber*, 285 Ga. at 416-

---

[2] It is undisputed Georgia Power is a public entity. *See Allied Chemical Corp. v. Georgia Power Co.*, 236 Ga. 548, 558 (1976) ("Georgia Power Company is duly organized as a public utility company under the laws of Georgia, holding exclusive franchise to furnish electric power in a major portion of the State of Georgia.").

9

17.  Second, if the plaintiff does file a claim, the available remedy is strictly limited: the plaintiff "cannot demand … abatement and must instead seek a damages award for [both] past and future harm …." *Forrister*, 289 Ga. at 335.  In other words, a plaintiff asserting a permanent nuisance claim against a public entity must bring a single claim for all damages – past and future – within the four-year limitations period beginning when the harm first becomes observable. *See id.* at 333 ("[A] plaintiff is allowed only one cause of action to recover damages for past and future harm.").

If a private party is alleged to have created a nuisance, on the other hand, these rules do not apply.  In such cases, even if the nuisance is permanent, the plaintiff may file a claim more than four years after the harm was first observable. *See Cox v. Cambridge Towne Houses, Inc.*, 239 Ga. 127, 128 (1977) (noting available damages are limited to those "which have occurred within the past four years").  And the plaintiff has greater discretion as to the remedy sought – it can either sue for both past and future damages in one action, as with public entity nuisances, or sue for past damages alone. *See id.*  If the plaintiff sues only for past damages, it is allowed to file more lawsuits in the future to recover for any additional damage that occurs.

The Georgia Supreme Court has explained why this distinction exists between permanent nuisances created by public entities versus by private entities.  Unlike a private entity, a public utility is "employed in necessary public service," so a permanent nuisance caused by the public entity is functionally equivalent to taking land by eminent domain for public use. *See Forrister*, 289 Ga. at 334 (quoting Restatement (Second) of Torts § 930 cmt. c).  This means the plaintiff is entitled to a single award for both past and future damages. *See id.*  It also means the public entity is entitled to "have the court ascertain and award complete compensation for the continuing injury, instead of awaiting successive actions" that might undermine "public interest" and "convenience." Restatement (Second) of Torts § 930 cmt. c.

Under Georgia law, therefore, because the nuisance that is the subject of the City's claims against Georgia Power is permanent in nature, the four-year statute of limitations began to run when the harm first became observable, and the City's remedy was limited to a single award for all past and future harm.

> b) **The City's Claims Allege a Permanent Nuisance/Trespass Against Georgia Power and Are Barred by the Statute of Limitations.**

The Complaint alleges the nuisance allegedly created by "Defendants" is "continuing" and "abatable," and not permanent, which it must do to avoid the statute of limitations bar. *See* Complaint ¶¶ 126, 127, 129. The Complaint's scant allegations against Georgia Power, however, clearly show the City alleges claims for permanent nuisance.

A nuisance caused by a public utility is permanent where it is "caused by some substantial and relatively enduring feature of the plan of construction or from an essential method of operation ...." *Forrister*, 289 Ga. at 334 (quoting Restatement (Second) of Torts § 930, cmt. c). Thus,

> if an establishment providing a necessary public service would have to be substantially rebuilt or otherwise have its basic operations shut down to stop a nuisance, thereby potentially harming the general public, a plaintiff cannot demand such abatement but must instead seek a damages award for past and future harm within the statutorily prescribed period.

*Id.*

The Georgia Supreme Court's opinions in *Forrister* and *Kleber* illustrate the special framework established for nuisances/trespasses allegedly created by public utilities. In *Forrister*, neighbors of a power plant alleged a continuing nuisance from noise created by exhaust stacks. *See id.* at 335. To stop the noise, the power plant would have had to completely "tear-down" and rebuild the exhaust stacks, costing the plant millions of dollars and halting the production of electricity, a necessary public service, while the stacks were rebuilt. *See id.* The court held the noise was a permanent nuisance, because the exhaust system was "an integral part [and] an

11

enduring feature of the power plant's plan of construction, and the noise emanating from the exhaust stacks results from the essential method of the plant's operation, which is the generation of electrical power." *Id.* The plaintiffs were therefore "limited to filing one cause of action for the recovery of past and future damages caused by a permanent nuisance." *Id.*

In *Kleber*, the plaintiffs filed a nuisance action against Norfolk Southern railroad, alleging its drainage pipe caused flooding on the plaintiffs' property in part because Norfolk Southern inadequately maintained the pipe. *See* 285 Ga. at 414-16. The court held that, to the extent the flooding was due to Norfolk Southern's improper maintenance of the pipe—and not the pipe's "mere presence"—the nuisance claim was continuing in nature, because poor maintenance is "an improper and unnecessary method of operation" that can be abated, and the plaintiffs were allowed to contend Norfolk Southern's maintenance of the pipe within the four years preceding their lawsuit created a nuisance. *Id.* at 417 (quoting Restatement (Second) of Torts § 930, cmt. c).

Here, the nuisance the City alleges Georgia Power created at Plant McManus—the emission of mercury resulting from the use of coal—did not result "from some minor feature of construction or management [of Plant McManus], so that it could be averted at slight expense." *Forrister*, 289 Ga. at 334 (quoting Restatement (Second) of Torts § 930, cmt. c). Nor did it result from improper maintenance or some other "improper and unnecessary method of operation." *Kleber*, 285 Ga. at 417.[3] Rather, the sole allegation of Georgia Power's alleged wrongdoing is

---

[3] The City has previously relied on *Hoffman v. Atlanta Gas Light Company*, 206 Ga. App. 727 (1992), as showing its claims against Georgia Power are not barred. *Hoffman* is factually distinguishable because, in that case, a pipeline leak caused the alleged nuisance/trespass. *See* 206 Ga. App. at 727. The pipeline leak was a continuing and abatable nuisance because it resulted from improper maintenance and "an improper ... method of operation" that can be easily fixed and can "be averted at slight expense." *Forrister*, 289 Ga. at 334. Here, by contrast, Georgia Power designed and built Plant McManus to use coal, which was "a substantial and relatively enduring feature of the plan of construction [and] an essential method of [the

20782563.2

"Plant [McManus] was coal fired, and emitted mercury into the air, the waters and the marshes of Glynn County." Complaint ¶ 87.[4] The alleged nuisance was an integral part and a "substantial and relatively enduring feature" of Plant McManus's original plan of construction as a coal-based plant and resulted from the essential method of the Plant's operation from 1959 to 1972. *Forrister*, 289 Ga. at 334 (finding nuisance to be permanent where "there would have to be a complete tear-down and rebuilding of the exhaust stacks, which would stop the production of electricity while the stacks were replaced"); *see also* Mitchell Dec. ¶¶ 14-27. Plant McManus ceased using coal in 1972 when it was converted at substantial expense into an oil-based facility and therefore could not possibly have "emitted mercury" after 1972. Nowhere in the Complaint is there any allegation of any harm to the City's property as a result of Georgia Power's decades-old method of operation of Plant McManus that occurred within the four years prior to the filing of this action.

The Complaint therefore alleges against Georgia Power a nuisance permanent in nature, and not abatable or continuing, under clear Georgia law. *See KSSR Props., LLC v. BellSouth Telecom.*, No. 1:19-cv-2708-TCB, 2021 WL 1940207, *4 (N.D. Ga. April 21, 2021) ("the overwhelming majority of case law on this issue holds that absent any improper maintenance or

---

Plant's] operation." *Id.* Under clear Georgia law, the alleged nuisance created by Plant McManus's operations, which ended more than 50 years ago, was permanent in nature.

[4] All other paragraphs of the Complaint that make allegations against "Defendants" collectively are conclusory and improper and do not provide Georgia Power notice of any claim against it. *See LaCroix v. Western Dist. of Kentucky*, 627 Fed. Appx. 816, 819 (11th Cir. 2015) (affirming dismissal of complaint that made allegations against defendants collectively, "making it impossible to identify which particular defendant engaged in what allegedly wrongful conduct"); *Lawrence v. Thornburg Mortg. Home Loans Inc.*, 624 Fed. Appx. 721, 722 (11th Cir. 2015) (plaintiff's conclusory allegations that "defendants collectively and individually" engaged in acts of wrongdoing "were insufficient to withstand the motion … to dismiss"). To sustain a grant of relief against Georgia Power, therefore, the City must introduce evidence within the framework of paragraph 87 of its Complaint.

13

ongoing acts ... utilities constitute permanent trespasses or nuisances");[5] *Crosson v. Carrollton City School District*, 478 F. Supp. 3d 1255, 1267 (N.D. Ga. 2020) (finding recently built high school was permanent, and not continuing, nuisance because "abatement would have required great expense and disruption to a public use, would not be feasible or practicable, [and] could not be resorted to by the defendant without great expense and inconvenience"); *Liberty County v. Eller*, 327 Ga. App. 770, 774 (2014) (holding nuisance claim was barred by four-year statute of limitations because alleged nuisance, a county-installed drainage pipe, was permanent); *Bainbridge Power Co. v. Ivey*, 41 Ga. App. 193 (1930) (rejecting claim that reservoir created to generate electricity was continuing nuisance, even though mosquitoes used reservoir as breeding ground, because nuisance could not be abated without "considerable expense"); *Smith v. Dallas Utility Co.*, 27 Ga. App. 22 (1921) ("A dam and its appurtenances, constructed for the development of electricity and the distribution of it to the public for light, heat, and power, is a public improvement within the meaning of the law; and, where it has been properly constructed and maintained, the law will not compel its destruction because of damages flowing from its maintenance.").

The four-year limitations period began at the latest in 1972 when Plant McManus stopped using coal, and it expired four years later in 1976. The City's nuisance and trespass claims are therefore barred by the statute of limitations and should be dismissed.

---

[5] The City's Complaint does not allege Georgia Power improperly maintained Plant McManus or that mercury emissions are ongoing. Indeed, the City allegations are past-tense: Plant McManus "*was* coal-fired, and *emitted* mercury ...." Complaint ¶ 87 (emphasis added).

c) **The Federal "Discovery Rule" Does Not Save the City's Claims.**

To the extent the City makes the argument, its claims are not saved by 42 U.S.C. § 9658(b)(4)(A) (the "Discovery Rule"). The Discovery Rule commences the statute of limitations when "the plaintiff knew (or *reasonably should have known*) that the ... property damages ... were caused or contributed to by the pollutant ...." 42 U.S.C. § 9658(b)(4)(A) (emphasis added). The Complaint shows the City reasonably should have known its property may have been contaminated with mercury as early as 1981, when Honeywell allegedly notified the United States Environmental Protection Agency and the Georgia Environmental Protection Division that 4500 tons of material containing mercury were allegedly dumped into the marshes of Glynn County. *See* Complaint ¶¶ 45, 46.

In addition, it was a well-known public fact, at least four years before the City filed its Complaint, that coal-based power plants emit mercury. *See, e.g.,* U.S. Gov't Accountability Off., GAO-10-47, "Clean Air Act: Mercury Control Technologies at Coal-Fired Power Plants Have Achieved Substantial Emissions Reductions" at 4 (2009) ("Mercury enters the environment in various ways, such as through ... coal combustion"); U.S. Dept. of the Interior, USGS Fact Sheet FS-095-01, "Mercury in U.S. Coal – Abundance, Distribution, and Modes of Occurrence" (2001) ("In February 1998, the U.S. Environmental Protection Agency ... issued a report citing mercury emissions from [coal-based] electric utilities as the largest remaining anthropogenic source of mercury released to the air."); U.S. EPA, EPA-452/R-97-004, "Mercury Study Report to Congress Volume II: An Inventory of Anthropogenic Mercury Emissions in the United States" ES-4 (1997) ("coal-fired utility boilers" cause 33 percent of "the total anthropogenic emissions" of mercury in the United States); U.S. EPA, EPA-600/3-77-063, "Mercury Distribution in Soil Around a Large Coal-Fired Power Plant" (1977) ("The combustion of coal is often cited as a significant mercury

source. ... [T]he 1975 estimated mercury release from U.S. coal-fired electric utilities was about 49,000 kg.").

Specifically as to the City's allegations, on July 24, 2017, more than five years before the City filed its Complaint, the *Savannah Morning News* reported an environmental group was planning to sue Georgia Power over its plan to clean up coal ash at several power plants, including at Plant McManus, because it contained contaminants such as mercury. *See* Mary Landers, "Sierra Club files intent to sue Georgia Power over coal ash cleanup," *Savannah Morning News* (July 24, 2017).[6] On November 7, 2017, almost five years before the City filed its Complaint, *The Florida Times-Union* reported Georgia Power had stored 550,000 tons of coal ash, which is "known to contain ... mercury," in an unlined pit at Plant McManus in the estuary west of Brunswick. *See* Terry Dickson, "Environmental law firm wants Georgia Power to remove more coal ash," *The Florida Times-Union* (Nov. 7, 2017).[7]

It clearly was public knowledge within the City's local community in 2017 that coal-based power plants, specifically including Plant McManus, may have emitted mercury into their environment. The City therefore reasonably should have known more than four years before it filed its Complaint in October 2022 of the property damage that is the subject of its Complaint and that such damage was caused or contributed to by contaminants emitted from Plant McManus. *See O'Connor v. Boeing North American, Inc.*, 311 F.3d 1139, 1147 (9th Cir. 2002) (applying 42 U.S.C. § 9658(b)(4)(A) and holding that, "[b]ecause the plaintiff must be diligent in discovering

---

[6] Available at https://www.savannahnow.com/story/news/2017/07/25/sierra-club-files-intent-sue-georgia-power-over-coal-ash-cleanup/13871752007; *see also* Russell Grantham, "Sierra Club: Georgia Power's coal ash plan illegal," ATLANTA JOURNAL-CONSTITUTION (July 24, 2017) (available at https://www.ajc.com/business/sierra-club-georgia-power-coal-ash-plan-illegal/JA56xb0v0qzxRZCNRVEuPK).

[7] Available at https://www.jacksonville.com/story/news/2017/11/07/ environmental-law-firm-wants-georgia-power-remove-more-coal-ash/15778793007.

20782563.2

the critical facts[,] a plaintiff who did not actually know of his claim will be barred if he should have known of it in the exercise of due diligence;" "[a] plaintiff is held to her actual knowledge as well as knowledge that could reasonably be discovered through investigation of sources open to her") (punctuation and citations omitted); *Reichhold Chemicals, Inc. v. Textron, Inc.*, 888 F. Supp. 1116, 1126 (N.D. Fla. 1995) (for purposes of 42 U.S.C. § 9658(b)(4)(A), "it is not necessary that the plaintiff know the identity of every specific pollutant or contaminant, but only the fact of the contamination").

The City cannot turn a blind eye to widely available public reports of potential emissions of mercury from Plant McManus affecting City property and then use the Discovery Rule as a shield against its ignorance. Combined with the countless allegations in the Complaint as to Honeywell's emissions of mercury since 1956 on and near the City's property and the EPA's designation in 1995 of Honeywell's property as a Superfund site, it is clear the City "reasonably should have known" more than four years prior to filing this action that its property might also have been affected by mercury emitted by Plant McManus. *See Blankenship v. Consolidation Coal Company*, 850 F.3d 630, 638 (4th Cir. 2017) ("based on the extensive record of publicity about [defendant]'s activities in this case, … the plaintiffs reasonably should have known of their damages more than [the applicable limitations period] before they commenced their actions"); Complaint ¶ 96, Ex. C. Because the City did not file its Complaint until more than four years after it reasonably should have known of its cause of action against Georgia Power, the City's claims are barred by the statute of limitations and should be dismissed.

      **3.**    **<u>Even if the City's Claims Against Georgia Power Were for Continuing Nuisance/Trespass, the City Cannot Establish an Essential Element of Its Claims.</u>**

Even if the nuisance of which the City complains was abatable and continuing, and not permanent, the City cannot possibly establish a cause of action against Georgia Power. It is a

17

longstanding rule of Georgia law that an alleged wrongdoer's legal right to abate a continuing nuisance/trespass is an essential element of a viable nuisance/trespass claim. *See Southfund Partners v. City of Atlanta*, 221 Ga. App. 666, 669 (1996) ("the principle upon which one is charged as a continuing wrong-doer is, that he has a legal right, and is under a legal duty, to terminate the cause of the injury") (quoting *City Council of Augusta v. Lombard*, 101 Ga. 724, 724 (1897)); *Bodin v. Gill*, 216 Ga. 467, 473 (1960) (one can only be held liable for continuing nuisance or trespass if "he has a legal right and is under a legal duty to terminate the cause of the injury"); *see also Parris v. 3M Company*, 595 F. Supp. 3d 1288, 1341 (N.D. Ga. 2022) (to be liable for a continuing nuisance, "the defendant must at least have a 'legal right' to terminate the cause of the injury"). The Complaint does not allege (and cannot allege) that the City granted Georgia Power the legal right to abate the alleged nuisance on the City's property, which is an essential element of the City's claims against Georgia Power.

In *Corporation of Mercer University v. National Gypsum Company*, No. 85-126-3-MAC, 1986 WL 12447 (M.D. Ga. March 9, 1986), for instance, Mercer's complaint alleged the presence of National Gypsum's asbestos products in Mercer's buildings constituted a continuing nuisance and trespass. *See* 1986 WL 12447 at *5. National Gypsum moved to dismiss the complaint on the ground Mercer did not allege National Gypsum had the legal right to enter Mercer's property to remove the asbestos products, which was an essential element of Mercer's continuing nuisance/trespass claim. *See id.* at *5. The court agreed and dismissed Mercer's continuing nuisance and trespass claims, holding "a legal right to abate the nuisance is an element of a continuing nuisance claim in Georgia" and "Mercer's inability to allege that the defendants had a legal right to abate the nuisance is fatal to its nuisance claim." *Id.* at *6, *7 (also dismissing continuing trespass claim as "virtually indistinguishable" from continuing nuisance claim). The

20782563.2

court dismissed Mercer's continuing nuisance and trespass claims, therefore, because National Gypsum had no legal right to abate the asbestos problem by forcing repairs or replacements on Mercer's property. *See also Briggs & Stratton Corp*, 971 F. Supp at 573 n.2 ("an element of a continuing nuisance claim in Georgia is a legal right to abate the nuisance").

The City does not complain its property has been injured by Georgia Power's failure to terminate the cause of the injury on Georgia Power's property; rather, the City complains of the presence of mercury on *its* property, and it wants Georgia Power to remove the mercury from the City's property. The City's property, however, is outside Georgia Power's control, and Georgia Power does not have the legal right to enter onto City property and abate the alleged presence of mercury there. The City's failure and inability to allege Georgia Power had the legal right to enter City property to abate the alleged continuing nuisance/trespass is fatal to its claims, and they should be dismissed.

**C.    In the Alternative, the Court Should Order the City to Provide a More Definite Statement of Its Claims Against Georgia Power.**

O.C.G.A. § 9-11-12(e) authorizes a defendant to request a more definite statement from a plaintiff if the complaint "is so vague or ambiguous that [the defendant] cannot reasonably be required to frame a proper responsive pleading …." From the Complaint's scant allegations against Georgia Power, Georgia Power cannot determine how it can possibly be liable for an alleged continuing nuisance or trespass, exactly when the City contends the statute of limitations began to run, which parcels of the City's property Plant McManus allegedly contaminated, or (as the City alleges) how the City was damaged within the four years prior to its Complaint by something Georgia Power did more than 50 years ago.

"A complaint must contain 'a short and plain statement of the claims showing that the pleader is entitled to relief,' and … this short and plain statement must include enough detail to

afford the defendant fair notice of the nature of the claim and a fair opportunity to frame a responsive pleading." *Bush v. Bank of New York Mellon*, 313 Ga. App. 84, 89-90 (2011) (quoting O.C.G.A. § 9-11-8(a)(2)(A); citation omitted). "The pleading requirements of the Civil Practice Act are *requirements*, not just suggestions." *Id.* at 90 (emphasis in original).

The Complaint refers to "Defendants" collectively 46 times without any distinction, making it impossible to determine whether a given allegation is directed towards Georgia Power or Honeywell. Such a pleading technique in which scant factual allegations are made specifically against Georgia Power "is the type of 'unadorned, the-defendant-unlawfully-harmed-me accusation' and 'naked assertion devoid of further factual enhancement' condemned by the [United States] Supreme Court." *Carr v. Mid-Atlantic Financial Services, Inc.*, No. 1:10-CV-00477-TWT-AJB, 2010 WL 3368260, *7 (N.D. Ga. July 27, 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (punctuation omitted). "The burden of clearly identifying the claims alleged in a case should not lie with the defendants or the courts; it should lie with the plaintiff, who has an obligation under the Civil Practice Act to make a 'short and plain statement' of [its] claim." *Bush*, 313 Ga. App. at 91. The City cannot bootstrap it shotgun allegations against "Defendants" collectively to save its time-barred claims against Georgia Power.

If the Court is inclined not to dismiss the City's claims against Georgia Power in their entirety, Georgia Power requests the Court to require the City to provide a more definite statement of its allegations specifically against Georgia Power. Without such specificity, the City's claims against Georgia Power are so vague and ambiguous that Georgia Power cannot reasonably frame a proper responsive pleading.

III.  **CONCLUSION**

For the foregoing reasons, Georgia Power respectfully requests the Court to dismiss the City's claims against Georgia Power in their entirety or, in the alternative, to provide a more definite statement of its claims specifically against Georgia Power.

Respectfully submitted this 31st day of May, 2024.

<div style="margin-left:40%">

*/s/ Benjamin H. Brewton*
Benjamin H. Brewton
Georgia Bar No. 002530
T. Joshua R. Archer
Georgia Bar No. 021208
**Balch & Bingham LLP**
801 Broad Street, Suite 800
Augusta, Georgia 30901
Telephone: (706) 842-3711
Fax: (866) 258-8984
bbrewton@balch.com
jarcher@balch.com

*Attorneys for Defendant Georgia Power Company*

</div>

21

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using

the CM/ECF system and service will be perfected upon the following this 31st day of May, 2024:

John C. Bell, Jr.
Pamela S. James
The Bell Firm
P.O. Box 1547
Augusta, GA  30903

Brian D. Corry
McQuigg Smith & Corry
504 Beachview Drive
Suite 3D
St. Simons Island, GA  31522

Robert P. Killian
Killian Law Firm LLC
47 Professional Drive
Brunswick, GA  31520

Mark D. Johnson
Amber M. Carter
Gilbert Harrell Sumerford & Martin PC
777 Gloucester Street
Suite 200
Brunswick, GA  31520

*/s/ Benjamin H. Brewton*
Benjamin H. Brewton
*Attorney for Defendant Georgia Power Company*

22

Exhibit 4

GLYNN CO. CLERK'S OFFICE
Filed 6/3/2024 7:29 PM
Accepted 6/4/2024 8:57 AM
CASE # CE22-01086

*Rebecca GWalden*
CLERK SUPERIOR COURT

**IN THE SUPERIOR COURT OF GLYNN COUNTY
STATE OF GEORGIA**

| | |
|---|---|
| CITY OF BRUNSWICK, by and through its MAYOR AND BOARD OF COMMISSIONERS, )<br><br>Plaintiff, )<br><br>v. )<br><br>HONEYWELL INTERNATIONAL INC., f/k/a ALLIED CHEMICAL CORPORATION and as ALLIEDSIGNAL, INC., and THE GEORGIA POWER COMPANY, )<br><br>Defendants. ) | CIVIL ACTION NO. <u>CE22-01086</u> |

---

<u>**DEFENDANT HONEYWELL INTERNATIONAL INC.'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT**</u>

**COME NOW**, Defendant HONEYWELL INTERNATIONAL INC. moves for this court, pursuant to O.C.G.A. § 9-11-12(b)(6), to dismiss with prejudice all causes of action that Plaintiff THE CITY OF BRUNSWICK alleges in its Complaint. The grounds for this motion are set forth below. Honeywell respectfully requests that the Court schedule a hearing on the motion and the City's forthcoming response.

<u>**AUTOMATIC STAY OF DISCOVERY**</u>

Pursuant to O.C.G.A. § 9-11-12(j)(1), discovery is automatically stayed for 90 days, or until the Court rules on the motion, whichever occurs first.

1

## PRELIMINARY STATEMENT

Plaintiff the City of Brunswick is suing Defendants Honeywell and Georgia Power for *failing* to violate their obligations under federal law. Over the past thirty years, Honeywell has been helping to remediate pollution from a federal Superfund site located in Brunswick pursuant to a federal cleanup plan directed and overseen by the U.S. Environmental Protection Agency (EPA). EPA has been managing this ongoing cleanup under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), the federal law that establishes a comprehensive framework for developing and implementing "a single EPA-led cleanup effort rather than tens of thousands of competing individual ones." *Atl. Richfield Co. v. Christian*, 140 S. Ct. 1335, 1353 (2020). One of CERCLA's central mechanisms for ensuring exclusive federal cleanup control is Section 122(e)(6), which prohibits parties like Honeywell from undertaking *any* remediation of pollution beyond those actions that have been expressly authorized and approved by EPA itself. EPA, in short, is responsible under CERCLA for determining not only which remedial actions are taken to resolve a spill but also which are *not*. In the context of the Brunswick cleanup plan, that means that Honeywell is bound by federal law to take the remedial actions that EPA has ordered and *only* those actions.

The City of Brunswick has nevertheless sued Honeywell for not doing more. The City alleges that some of its property has been polluted by mercury and poly-chlorinated byphenals (PCBs) discharged from a chemical plant that operated on the federal Superfund site from 1956 to 1994, and it claims that Honeywell has continued and maintained that pollution by failing to remediate it. *See* Compl. ¶¶ 35, 108, 111, 122, 125. The City does not suggest that Honeywell has failed, in any way, to comply with EPA's ongoing cleanup plan; rather, the City believes that EPA's cleanup plan itself fails to sufficiently address the harms the City alleges. So almost seven

decades after the first alleged discharge and roughly three decades since Honeywell and federal and state regulators first began their remediation efforts, the City is asking this Court to award punitive damages against Honeywell for continuing trespass and continuing nuisance. *See* Compl. ¶¶ 12, 69, 111, 122, pp. 26–27.

The City's case cannot be allowed to proceed. Its state-law demands conflict directly with the requirements of federal law, and that conflict preempts the Complaint in its entirety. The City's Complaint should be dismissed for at least four independent reasons.

*First*, the City's claims—predicated as they are on Honeywell's alleged failure to sufficiently remediate pollution from the Superfund site—conflict with Honeywell's obligation under CERCLA to undertake only those remedial actions expressly authorized by EPA. *See* 42 U.S.C. § 9622(e)(6). Facing liability under Georgia law for failing to perform remediation beyond what EPA has authorized, Honeywell is presented with a choice between adhering to its obligations under federal law and complying with the City's view of state law. In such cases, the conflicting state-law claims must give way.

*Second*, Honeywell also lacks the requisite legal right and legal duty under state law to abate the alleged continuing nuisance and trespass. Defendants cannot be liable under Georgia law for a continuing tort unless they have both a legal right and a legal duty to abate the tort. Here, Honeywell has neither, because it is barred from undertaking any remedial actions with respect to the nuisance and trespass unless those actions are specifically authorized by EPA. As a matter of law, the City cannot demonstrate essential elements of its state-law claims, and its Complaint must be dismissed as a result.

*Third*, the Complaint must also be dismissed because the City has failed to join a required and indispensable party: EPA. By challenging the remedial actions Honeywell has taken, is taking,

3

and can legally take in the future, the City threatens to impair and impede the integrity of EPA's overall cleanup plan even as it also threatens to saddle Honeywell with inconsistent obligations under state and federal law. EPA is an indispensable party under these circumstances, but it cannot be joined because this Court lacks jurisdiction over it. This Court should accordingly dismiss the action.

*Fourth*, notwithstanding the City's allegations of wrongdoing by Honeywell dating back decades, its claims are cabined to conduct that occurred within the four-year statute of limitations. To the extent the City seeks to recover damages for alleged actions prior to the four-year limitations period, those claims are time-barred.

Honeywell thus respectfully requests that this Court dismiss the City's Complaint in its entirety with prejudice. *See* O.C.G.A. § 9-11-12(b)(6).

## **BACKGROUND**

On October 20, 2022, the City filed suit against Defendants Honeywell and Georgia Power, alleging that they have failed to remediate pollution from the "LCP Superfund Site" located in Brunswick. Based on Defendants' alleged "continuing failure and refusal to permanently remove their pollution from property of the City," the City asserts two claims: continuing trespass (Count One) and continuing nuisance (Count Two). Compl. pp. 22, 24. Based on those two claims, the City seeks punitive damages resulting from the alleged interference with "the City's right to exclude others and the pollutants of others from its property" and "the City's use and enjoyment of its property." Compl. ¶¶ 111, 122, p. 26.

Because the City's claims for continuing trespass and nuisance are based only on alleged pollution originating from the LCP Superfund Site, *see, e.g.*, Compl. ¶ 67 (alleging that the continued operation of the chemical plant located on the Site "continued and aggravated the

4

ongoing and expanding nuisance and trespasses"), the City's suit centers around the comprehensive federal statute that has governed the cleanup of pollution from that Site for the last thirty years—CERCLA.

## I.    Statutory Background

Congress enacted CERCLA in 1980 "in response to the serious environmental and health risks posed by industrial pollution." *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 602 (2009). Congress designed the statute to "promote the 'timely cleanup of hazardous waste sites' and to ensure that the costs of such cleanup efforts were borne by those responsible for the contamination." *Id.* (quoting *Consolidated Edison Co. of N.Y. v. UGI Utils., Inc.*, 423 F.3d 90, 94 (2d Cir. 2005)); *see also In re Acushnet River & New Bedford Harbor Proc. Re Alleged PCB Pollution*, 675 F. Supp. 22, 31 (D. Mass. 1987) ("In attempting to eliminate the dangers of hazardous wastes, CERCLA presents a national solution to a nationwide problem."). "[I]n enacting CERCLA, Congress also stressed the importance of efficiency and regulatory expertise in effecting a remedy." *Bartlett v. Honeywell Int'l Inc.*, 737 F. App'x 543, 549 (2d Cir. 2018), *cert. denied*, 139 S. Ct. 343 (2018). To that end, Congress enshrined "several tools in the Act that ensure the careful development of a single EPA-led cleanup effort rather than tens of thousands of competing individual ones." *Atl. Richfield*, 140 S. Ct. at 1353; *see also United States v. Chem-Dyne Corp.*, 572 F. Supp. 802, 808 (S.D. Ohio 1983) ("The improper disposal or release of hazardous substances is an enormous and complex problem of national magnitude involving uniquely federal interests.").

CERCLA thus provides "a comprehensive scheme for the cleanup of hazardous waste sites," *Broward Gardens Tenants Ass'n v. EPA*, 311 F.3d 1066, 1071 (11th Cir. 2002), and it empowers the federal government to pursue the "removal of" and "remedial action relating to" the

"release or substantial threat of release into the environment of any pollutant or contaminant which may present an imminent and substantial danger to the public health or welfare," 42 U.S.C. § 9604(a)(1).

CERCLA's cleanup process begins with identifying so-called "Superfund" sites. Pursuant to its delegated statutory authority, *see id.* § 9615, EPA "compile[s] and annually revise[s] a prioritized list of contaminated sites for cleanup, commonly known as Superfund sites." *Atl. Richfield*, 140 S. Ct. at 1346 (citing 42 U.S.C. § 9605). Once a site is listed, EPA may either clean up the site itself or "compel responsible parties to perform the cleanup." *Id.* (citing 42 U.S.C. §§ 9604, 9606, 9615).[1] CERCLA imposes strict liability on these responsible parties (also referred to as "potentially responsible parties" in the statute) for the costs of removal or remedial action as well as for natural resource damages. CERCLA also casts a wide net when defining a potentially responsible party, a term that includes—among others—"the owner and operator of a vessel or a facility" and "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of." 42 U.S.C. §§ 9607(a)(1)–(2). A "facility," in turn, is defined broadly by the statute to include:

> (A) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located . . .

*Id.* § 9601(9); *see also Sierra Club v. Seaboard Farms Inc.*, 387 F.3d 1167, 1172 (10th Cir. 2004) ("Consistent with a liberal construction to further CERCLA's purposes, . . . 'the term "facility"

---

[1] EPA may delist a Superfund site "once responsible parties have taken all appropriate remedial action and the pollutant no longer poses a significant threat to public health or the environment." *Atl. Richfield*, 140 S. Ct. at 1354 (citing 40 C.F.R. § 300.425(e)).

enjoys a broad and detailed definition.'" (quoting *United States v. Bestfoods*, 524 U.S. 51, 56 (1998)).

CERCLA closely regulates the remedial actions that may be taken to address pollution at a site. First, before EPA chooses a cleanup plan, "EPA conducts (or orders a private party to conduct) a remedial investigation and feasibility study to assess the contamination and evaluate cleanup options." *Atl. Richfield*, 140 S. Ct. at 1346 (citing 40 C.F.R. § 300.430). CERCLA also "prescribes extensive public consultation while a cleanup plan is being developed," requiring that EPA provide "an opportunity for public notice and comment on proposed cleanup plans." *Id.* (citing 42 U.S.C. §§ 9613(k), 9617). Additionally, CERCLA expressly states that the federal government must provide "for substantial and meaningful involvement by each State in initiation, development, and selection of remedial actions to be undertaken in that State." 42 U.S.C. § 9621(f)(1). EPA must specifically provide for "State involvement in decisions whether to perform a preliminary assessment and site inspection," "State participation in the long-term planning process for all remedial sites within the State," and a "reasonable opportunity" for the states to review and comment on the "planned remedial action," to name only a few of CERCLA's extensive consultation requirements. *Id.* §§ 9621(f)(1)(A), (D), (E)(ii); *see generally* 40 C.F.R. Part 300 Subpart F (EPA's regulations governing "State Involvement in Hazardous Substance Response").

Following these consultations with local stakeholders, EPA must choose remedial actions that are "cost effective," that are "protective of human health and the environment," and that "utilize[] permanent solutions and alternative treatment technologies or resource recovery technologies to the maximum extent practicable." 42 U.S.C. § 9621(b)(1). Remedial actions must also "attain a degree of cleanup of hazardous substances, pollutants, and contaminants released

7

into the environment and of control of further release at a minimum which assures protection of human health and the environment." *Id.* § 9621(d)(1). And if EPA "selects a remedial action that results in any hazardous substances, pollutants, or contaminants remaining at the site," then that action must be reviewed "no less often than each 5 years after the initiation of such remedial action to assure that human health and the environment are being protected by the remedial action being implemented." *Id.* § 9621(c).

Critically, CERCLA also mandates that there be one—and only one—cleanup plan for any given facility. Once a remedial investigation and feasibility study has been "initiated," CERCLA mandates in Section 122(e)(6) that "no potentially responsible party may undertake any remedial action at the facility unless such remedial action has been authorized by the President." 42 U.S.C. § 9622(e)(6); *see also* Exec. Order No, 12,580, 52 Fed. Reg. 2,923 (1987) (delegating responsibility to EPA). Because CERCLA defines "facility" as "any site or area where a hazardous substance has . . . come to be located," *id.* § 9601(9), Section 122(e)(6) ensures that EPA remains exclusively in charge of any cleanup it has initiated and that every effort to undertake remedial actions outside of EPA's cleanup plan is barred from the start.

Congress struck a careful balance in pursuing CERCLA's goal of timely and effective cleanup of hazardous sites. On the one hand, CERCLA embodies the "spirit of cooperative federalism," and Congress intended that the statute "should work in conjunction with other federal and state hazardous waste laws in order to solve this country's hazardous waste cleanup problem." *New Mexico v. Gen. Elec. Co.*, 467 F.3d 1223, 1244 (10th Cir. 2006) (quoting *United States v. Colorado*, 990 F.2d 1565, 1575 (10th Cir. 1993)). To that end, EPA's cleanup plans "generally must comply with 'legally applicable or relevant and appropriate' standards of state environmental law." *Atl. Richfield*, 140 S. Ct. at 1356 (quoting 42 U.S.C. § 9621(d)(2)(A)(ii)). CERCLA also

8

contains two saving clauses, *see* 42 U.S.C. §§ 9614(a), 9652(d), which courts have interpreted as meaning that Congress did not intend for CERCLA to "occupy[] the entire field of hazardous wastes." *Bartlett v. Honeywell Int'l Inc.*, 260 F. Supp. 3d 231, 239 (N.D.N.Y. 2017) (quoting *Bedford Affiliates v. Sills*, 156 F.3d 416, 426 (2d Cir. 1998)).

On the other hand, CERCLA aims to "effect the expeditious and permanent cleanup of hazardous waste sites," *United States v. City & Cnty. of Denver*, 100 F.3d 1509, 1512 (10th Cir. 1996), and "once a [cleanup] plan is selected, the time for debate ends and the time for action begins," *Atl. Richfield*, 140 S. Ct. at 1346. CERCLA thus includes several key provisions that "ensure the careful development of a single EPA-led cleanup effort rather than tens of thousands of competing individual ones." *Id.* at 1353. First, to "insulate cleanup plans from collateral attack," *id.* at 1346, CERCLA vests federal district courts with "exclusive original jurisdiction over all controversies arising under" CERCLA and strips those courts of jurisdiction "to review any challenges to removal or remedial action selected" outside of certain limited cases, 42 U.S.C. §§ 9613(b), (h). Further, CERCLA directs EPA to reach settlement agreements governing response actions "[w]henever practicable and in the public interest . . . in order to expedite effective remedial actions and minimize litigation." *Id.* § 9622(a). To incentivize such settlements, the Act allows EPA to include "covenant[s] not to sue" limiting a potentially responsible party's liability to the United States, *id.* § 9622(c)(1), and shielding settling parties from claims for contribution from other potentially responsible parties, *see id.* § 9613(f)(2). Finally, one of CERCLA's "crucial tools for ensuring an orderly cleanup of toxic waste" is Section 122(e)(6), *Atl. Richfield*, 140 S. Ct. at 1355, which—as described above—prohibits any potentially responsible party from undertaking "any remedial action at the facility unless such remedial action has been authorized" by EPA, 42 U.S.C. § 9622(e)(6).

9

## II.    Factual Background

### A.  The Creation and Remediation of the LCP Superfund Site

As relevant here, the City alleges that Honeywell built and operated a chlor-alkalai chemical plant on what would become the LCP Superfund Site from 1956 to 1979.  Compl. ¶ 9. Honeywell then sold the plant to another company, Linden Chemicals and Plastics Corporation, while allegedly continuing to play a role in keeping the plant operational.  Compl. ¶¶ 9, 44.  During these years, the plant allegedly manufactured "chlorine gas, caustic soda, bleach and hydrogen gas in a process using metallic mercury," which resulted in the discharge of waste, contaminated waste water, and vaporized mercury.  Compl. ¶¶ 10–12.  The City also alleges that the plant engaged in manufacturing processes that resulted in the discharge of PCBs.  Compl. ¶¶ 14–22.

In February 1994, however, the plant was shut down permanently.  Compl. ¶ 68.  Shortly afterwards, EPA stepped in and began directing and overseeing the comprehensive investigation and remediation of environmental contamination at and around the plant pursuant to its authority under CERCLA, an effort that continues to this day.  *See* Compl. ¶¶ 69–72, 89, 96.

Ove the last thirty years, the investigation activities and remedial work undertaken at EPA's direction have been extensive.  Around the time of the plant's shutdown, EPA issued a Unilateral Administrative Order directing Honeywell "to remove the chemicals remaining at the Plant, to determine the extent of contamination at the Plant, and to begin the environmental remediation of the Plant and the Plant Site."  Compl. ¶ 69.  On July 6, 1995, Honeywell commenced a remedial investigation and feasibility study at the Site—the necessary prerequisites to a cleanup plan under CERCLA.  *See* Answer Ex. A at 1.  The following year, EPA placed the Site on the CERCLA National Priorities List.  *See National Priorities List for Uncontrolled Hazardous Waste Sites*, 61 Fed. Reg. 30,510, 30,512 (June 17, 1996).  And in 1998, EPA ordered

Defendants to undertake one of the first remedial steps: "to remove one foot of soil from thirteen acres of the marsh and sediment in creeks in front of the old Honeywell trash dump." Compl. ¶ 72. EPA would later report that over the next two years, Defendants removed and disposed of roughly 167,000 cubic yards of alleged waste and contaminated soil; Defendants then backfilled the area with clean fill that was re-vegetated with native marsh grasses. *See* U.S. Environmental Protection Agency, "Community Involvement Plan for LCP Chemicals Site, Brunswick, Glynn County, Georgia" 21 (May 2015), https://www.epa.gov/sites/default/files/2017-04/documents/may_2015_ community_involvement_plan_lcp_chemicals_superfund_site.pdf.[2]   Defendants also dredged other potentially contaminated areas and removed another 39,000 tons of alleged waste from the marsh area.  *Id.*  "As a result of these removal actions," EPA concluded, "the remaining contamination" in the relevant area was "considered to be a low-level threat." *Id.*

Simultaneously, Defendants continued what EPA later described as an "extensive" remedial investigation. *Id.* at 20.  As part of that investigation, "[m]ore than 4,700 sediment samples were analyzed for contaminants." *Id.* at 21.  By November 2012, the investigation was complete, and the feasibility study was likewise finished by August 2015.  Answer Ex. A at 1.

Once these investigations and studies were complete, EPA undertook extensive steps to solicit and incorporate feedback from local stakeholders before deciding on its final cleanup plan. On December 1, 2014, for example, EPA published a notice of its proposed plan in the *Brunswick News*, "a major local newspaper of general circulation."  Answer Ex. A at 1.  EPA also provided "an opportunity for written and oral comments from the public on the proposed plan." *Id.*  On December 4, 2014, for example, EPA held a public meeting in the City of Brunswick attended by

---

[2] The Court may take judicial notice of any fact that is "[c]apable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," including publicly available reports from the federal government.  O.C.G.A. § 24-2-201(b) (2), (c).

"approximately 130 citizens, local stakeholders and city officials." EPA, Community Involvement Plan, *supra*, at 9; *see id.* at 28. EPA presented information at that meeting on its preferred cleanup plan and "explained the procedures for submitting written comments pertinent to the preferred remedy." *Id.* at 9. On February 26, 2015, EPA hosted another meeting on the City's property "to address questions and concerns that were voiced at the [first] meeting," including "[c]oncerns about the extent of [the] contamination and how it lines up with the remedy." *Id.*; *see id.* at 28. EPA also established an "information repository" for the site at the City of Brunswick's local library so that information about the site and EPA's cleanup plan was easily accessible. *Id.* at 29.

On September 22, 2015, EPA executed a final "Record of Decision" selecting a plan for remedial action to be implemented at the marsh portion of the site. Answer Ex. A at 2. EPA's Record of Decision included "a responsiveness summary to the public comments," and EPA also ensured that the State of Georgia was given an opportunity to review and give its concurrence. *Id.* EPA then published notice of the final plan. *Id.*; *see* 42 U.S.C. § 9617(b).

Six days after executing the Record of Decision, EPA notified the State of Georgia that it was negotiating with Defendants over the implementation of the cleanup plan under the Record of Decision. Answer Ex. A at 1. EPA gave the State the opportunity to participate in the negotiations and be a party to the resulting consent decree. *Id.*

Following these negotiations, EPA and Defendants entered into a Consent Decree in 2016 to implement the remedial action that EPA selected, subject to the agency's oversight and control. *See generally* Answer Ex. A.[3]   In the Consent Decree, Defendants did not admit liability for the

---

[3] The City's Complaint necessarily relies on—but does not attach as an exhibit—the Consent Decree entered into by Defendants and the United States. *See* Compl. ¶ 89 (citing and describing the contents of the Consent Decree). The Consent Decree is attached to Honeywell's Answer pursuant to O.C.G.A. § 9-11-10(c) and is therefore part of the pleadings. The Court may thus consider it in ruling on this motion. *See Dep't of Transp. v. Mixon*, 844 S.E.2d 524, 527 (Ga. Ct. App. 2020) (in ruling on a motion to dismiss

alleged pollution but nevertheless agreed to spend millions of dollars implementing the EPA's cleanup plan. *See, e.g., id.* at 1, 14. For its part, EPA specifically reserved the right to "modify" the work that Defendants would undertake in order "to carry out and maintain the effectiveness of the [remedial activities in the Record of Decision]." *Id.* at 9. The Consent Decree also ordered the Defendants to support EPA's regular reviews as to whether the remedial activities in question were sufficiently "protective of human health and the environment" or whether more might be needed. *Id.*

On July 29, 2016, EPA lodged the Consent Decree with the federal district court and gave the public a final opportunity to comment on the proposed cleanup plan. *Id.* at 34. EPA elected not to modify the Consent Decree based on any of those comments, and on May 19, 2017, EPA moved the district court to approve the agreement as originally executed. On July 27, 2017, the court entered the Consent Decree after finding that it would "expedite the cleanup of the Site" and that it was "fair, reasonable, and in the public interest." *Id.* at 2, 35.

**B. The City's Lawsuit**

On October 20, 2022, the City filed suit against Defendants Honeywell and Georgia Power in this Court, asserting claims for continuing trespass and continuing nuisance based on Defendants' alleged "failure to permanently remove their pollutants from property of the City of Brunswick." Compl. ¶ 108, pp. 22, 24. Specifically, the City faults Honeywell for failing "to recover the mercury" and "to remove any of the tens of thousands of pounds of PCBs" that were allegedly discharged from the Site. Compl. ¶¶ 30, 35. The City further alleges that "Defendants' continuing failure and refusal to permanently remove their pollution from property of the City of Brunswick unreasonably and substantially interferes with the City's right to exclude others and

---

for failure to state a claim, the trial court can consider "the answer, the complaint, and documents attached to either the answer or the complaint and explicitly incorporated therein by reference." (citation omitted)).

the pollutants of others from its property," and that the presence of the pollution "unreasonably and substantially interferes with the City's use and enjoyment of its property." Compl. ¶¶ 111, 121, 122. The City seeks punitive damages for Defendants' alleged failure to take those remedial actions.[4]

As the City's Complaint repeatedly emphasizes, the alleged failure to remediate the pollution originating from the LCP Superfund Site is fundamental to the City's claims: "Defendants' failure and refusal to permanently abate their continuing nuisances and damage is continuance or maintenance of the nuisance." Compl. ¶ 125.

## LEGAL STANDARD

Courts must dismiss a complaint if it "[f]ail[s] to state a claim upon which relief can be granted." O.C.G.A. § 9-11-12(b)(6). Courts should grant a motion to dismiss for failure to state a claim when, "assuming the allegations in the complaint are true, the plaintiff would not be entitled to any relief under the facts as stated and the defendant demonstrates that the plaintiff could not introduce evidence that would justify granting the relief sought." *Mowell v. Marks*, 603 S.E.2d 702, 703 (Ga. Ct. App. 2004) (quoting *Moore v. BellSouth Mobility*, 534 S.E.2d 133, 675 (Ga. Ct. App. 2000)). The "complaint may be dismissed on motion if clearly without any merit," whether from "an absence of law to support a claim of the sort made, or of facts sufficient to make a good claim, or in the disclosure of some fact which will necessarily defeat the claim." *Earl v. Mills*, 570 S.E.2d 282, 284 (Ga. 2002) (quoting *Poole v. City of Atlanta*, 160 S.E.2d 874, 875 (Ga.

---

[4] The City is vague about the precise scope of the damages it seeks. The City advances various allegations about the impact of pollutants on the natural resources and wildlife surrounding the LCP Superfund Site. *See* Compl. ¶¶ 81–84. The City also contends that it "owns properties containing hazardous and toxic wastes that render the City of Brunswick potentially liable for the remediation of the waste on its property" and that "Defendants are liable for all such remediation costs and damages." Compl. ¶ 100. Relatedly, the City alleges that "[t]he rental or use value of property of the City of Brunswick is reduced by Defendants' continuing abatable nuisances." Compl. ¶ 129. However, in its request for relief, the City demands only an "[a]ward [of] punitive damages" as well as "attorney's fees" and costs. Compl. pp. 26–27.

Ct. App. 1968)). Courts must view "all of the plaintiff's well-pleaded material allegations as true," but they are "under no obligation to adopt [the plaintiff's] legal conclusions."[5] *Love v. Fulton Cnty. Bd. of Tax Assessors*, 859 S.E.2d 33, 41 n.7 (Ga. 2021) (quotation omitted). Courts may also base their dismissal of a complaint on judicially noticeable facts. *Hunter v. Will*, 833 S.E.2d 128, 132 (Ga. Ct. App. 2019) (citing O.C.G.A. § 24-2-201(b)(2), (c)).

## ARGUMENT

I.  **The City's Claims for Continuing Trespass and Continuing Nuisance Are Preempted by Federal Law.**

Notwithstanding the extensive cleanup of pollution from the LCP Superfund Site performed by Honeywell under the oversight and direction of EPA, the City contends that the remediation effort has been insufficient and that Honeywell is liable under Georgia law for not doing more. The City's claims directly conflict with Honeywell's obligations under CERCLA and EPA's directives as embodied in the CERCLA-authorized Consent Decree. Under these sources of federal law governing the cleanup of the LCP Superfund Site, Honeywell is prohibited from undertaking remedial actions other than those expressly authorized by EPA. *See* 42 U.S.C. § 9622(e)(6). The City nonetheless seeks to hold Honeywell liable for obeying this mandate— thus placing Honeywell in the impossible position of choosing between compliance with federal law on the one hand and state law on the other. In such cases, federal law must win out: State-law claims such as the City's are preempted where they conflict with a potentially responsible party's obligations under CERCLA to perform *only* those remedial actions authorized by EPA.

"The Supremacy Clause of the United States Constitution mandates that federal law will preempt a state law that is inconsistent with it." *Reis v. OOIDA Risk Retention Group*, 814 S.E.2d

---

[5] Although the Court must assume as true the City's well-pleaded factual allegations, Honeywell does not concede, does not intend to waive, and specifically reserves all arguments concerning the allegations in the City's Complaint, including but not limited to the allegation that any pollutants from the LCP Superfund Site have reached the City's property.

338, 340 (Ga. 2018) (citing U.S. CONST., art. VI, cl. 2).  Preemption of a state law or state cause of action by federal law "may be either express or implied" and remains "compelled" whether the "command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Id.* (quoting *Poloney v. Tambrands, Inc.*, 412 S.E.2d 526, 527 (Ga. 1991)).  "[S]tate law that conflicts with federal law is 'without effect,'" and "common law liability may create a conflict with federal law, just as other types of state law can." *Gentry v. Volkswagen of America*, 521 S.E.2d 13, 16 (Ga. Ct. App. 1999) (first quoting *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992), and then *Irving v. Mazda Motor Corp.*, 136 F.3d 764, 767 (11th Cir. 1998)).  "A court's "inquiry into the scope of a statute's [preemptive] effect is guided by the rule that the purpose of Congress is the ultimate touchstone in every [preemption] case." *Smith v. Hi-Tech Pharms., Inc.*, 875 S.E.2d 454, 458 (Ga. Ct. App. 2022) (quoting *Altria Group v. Good*, 555 U. S. 70, 76 (2008)).

Courts recognize and apply three types of preemption: "(1) express preemption; (2) field preemption (regulating the field so extensively that Congress clearly intends the subject area to be controlled only by federal law); and (3) implied (or conflict) preemption." *Smith*, 875 S.E.2d at 458 (quoting *Gentry*, 521 S.E.2d at 16).  "Conflict preemption occurs either when it is physically impossible to comply with both the federal and the state laws or when the state law stands as an obstacle to the objective of the federal law." *Club Madonna Inc. v. City of Miami Beach*, 42 F.4th 1231, 1253 (11th Cir. 2022) (quoting *Fla. State Conf. of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1167 (11th Cir. 2008)).  Here, the City's suit is conflict-preempted for two reasons.  First, it is impossible for Honeywell to simultaneously comply with its obligations under CERCLA and avoid liability under Georgia law for continuing trespass and continuing nuisance.  And second, subjecting Honeywell to potential state-law liability for the conduct alleged in the City's

Complaint would create an obstacle to the accomplishment and execution of Congress's full purposes and objectives in CERCLA.

Section 122(e)(6) of CERCLA prohibits any potentially responsible party, including Honeywell, from "undertak[ing] any remedial action at the facility unless such remedial action has been authorized" by EPA.  42 U.S.C. § 9622(e)(6).  "Facility" is broadly defined, including "any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, *or otherwise come to be located*."  *Id.* § 9601(9) (emphasis added); *see also* 61 Fed. Reg. at 30,511 (formally listing the LCP Superfund Site and explaining that the "site" is "neither equal to nor confined by the boundaries of any specific property that may give the site its name" and includes "any other location to which contamination from that area has come to be located").  On the basis of Section 122(e)(6)'s clear mandate, Honeywell is not *allowed* to remediate the City's property and thereby abate any alleged continuing trespass and nuisance.  In such circumstances, courts have concluded that the conflicting state law is preempted.

For example, in *Bartlett v. Honeywell International Inc.*, property owners living near a Superfund site argued "on a state tort law theory" that Honeywell "should have departed from [a] consent decree's terms by conducting additional or different remedial action than that mandated by CERCLA and the consent decree."  737 F. App'x at 545, 549.  Given Section 122(e)(6)'s express prohibition on unauthorized remedial action, the property owners sought—through state-law claims for nuisance and trespass, among others—to hold Honeywell "liable for activities consistent with the Consent Decree on the theory that Defendant should have conducted additional remediation."  *Bartlett*, 260 F. Supp. 3d at 235, 246.  The Second Circuit concluded that "subjecting Honeywell to potential state tort law liability" for failing to perform certain actions beyond what was required under a consent decree "would pose an obstacle to the accomplishment

17

and execution of Congress's full purposes and objectives" under CERCLA. *Bartlett*, 737 F. App'x at 551. As the Second Circuit explained, CERCLA preempts "attempts to impose state tort law liability on Honeywell for not going above and beyond" the terms of a "meticulously negotiated remediation of the . . . Superfund site which was the product of approximately two decades of legal and technical efforts, including public notice and comment and extensive supervision by a federal court and state and federal expert agencies." *Id.*

The Second Circuit is not alone in recognizing the preemptive impact of Section 122(e)(6)'s mandate. Other courts have similarly concluded that conflict preemption bars state-law claims challenging activity—or inactivity—by potentially responsible parties that is consistent with their strict legal obligations under CERCLA. *See York v. Northrop Grumman Guidance & Elecs. Co., Inc.*, No. 21-CV-03251, 2022 WL 3971283, at *3 (W.D. Mo. Aug. 31, 2022) ("Courts uniformly interpret [Section 122(e)(6)] as prohibiting the settling party from taking any remedial action not specified in the order or decree and hold that conflicting state claims are preempted."); *see also Salerno v. City of Niagara Falls*, No. 1:18-CV-304, 2020 WL 5814406, at *5 (W.D.N.Y. Sep. 30, 2020), *aff'd* 2021 WL 4592138 (2d Cir. Oct. 6, 2021) (applying *Bartlett* and holding that "any state law claims related to either the process of disposal and/or remediation at [a Superfund site] were settled by means of a consent order, approved by the federal government, and are preempted"); *cf. New Mexico*, 467 F.3d at 1250 (finding that preemption applied in an analogous context where the plaintiffs' argument "might place [defendants] in the unenviable position of being held liable for monetary damages because they are complying with an EPA-ordered remedy which [they] have no power to alter without prior EPA approval").

Still other courts have held that state-law claims are preempted where they conflict with a potentially responsible party's obligations under a federal consent decree establishing the terms of

a CERCLA cleanup. *See, e.g.*, *N.J. Dep't of Env't Prot. v. Gloucester Env't Mgmt. Servs., Inc.*, No. 84-CV-0152, 2005 WL 1129763, at *12 (D.N.J. May 11, 2005) (holding in a case involving a CERCLA cleanup that "[u]nder the Supremacy Clause of the U.S. Constitution, a judicial decree entered by a federal court cannot be vitiated by a state law that essentially prevents decree compliance"); *United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1454–55 (6th Cir. 1991) (holding that a consent decree entered into between EPA and a potentially responsible party pursuant to CERCLA preempted conflicting state-law causes of action); *Town of Halfmoon v. Gen. Elec. Co.*, 105 F. Supp. 3d 202, 217–18 (N.D.N.Y. 2015) (plaintiffs' state-law claims preempted where it was impossible for the defendant "to comply with the requirements of the Consent Decree without subjecting itself to liability under state statutory and common law, which is an obstacle to the execution" of the mandated remedial action); *see also, e.g.*, *Coastline Terminals of Conn., Inc. v. USX Corp.*, 156 F. Supp. 2d 203, 208–09 (D. Conn. 2001) (plaintiff's state-law claims preempted where they "disrupt[] CERCLA's settlement incentive scheme by providing a potential avenue for recovery against a potentially responsible party that has settled a CERCLA action"); *cf. Feikema v. Texaco, Inc.*, 16 F.3d 1408, 1416 (4th Cir. 1994) (holding that a consent decree entered into under the Resource Conservation and Recovery Act preempted homeowners' claims based on alleged nuisance and trespass because the claims "would conflict with the remedial measures selected and supervised by the EPA").

Here, the City's claims for continuing trespass and nuisance necessarily depend on allegations that Honeywell's remediation efforts thus far have been insufficient. *See, e.g.*, Compl. ¶¶ 111, 122. Indeed, to state a claim for such continuing torts under Georgia law, the City is *required* to allege that Honeywell failed to take appropriate remedial action to remove mercury and PCBs from the environment and thereby maintained—*i.e.*, continued—the alleged harm. *See*

19

*Tri-Cnty. Inv. Grp., Ltd. v. S. States, Inc.*, 500 S.E.2d 22, 25 (Ga. Ct. App. 1998) ("Under Georgia law, a cause of action for a tort that is continuing in nature . . . accrues at the time of continuance" (citation omitted)).  For example, a continuing nuisance is "one which can and should be abated by the person erecting or maintaining it"; "[i]f a nuisance is not abatable, it is considered permanent." *Stroud v. Hall Cnty.*, 793 S.E.2d 104, 109 (Ga. Ct. App. 2016).  If a nuisance is "not abatable" and therefore "permanent," it "creates only one right of action, which accrues immediately upon the creation of the nuisance" and expires after four years under the relevant statute of limitations.  *Id.* (internal quotation marks and citation omitted); *see also infra* pp. 30–31 (discussing the statute of limitations).  By contrast, where a *continuing* nuisance is claimed, each alleged "continuance" serves to extend the statute of limitations, *id.*, and the alleged "maintenance" of the nuisance—*i.e.*, "the failure to abate the nuisance after notice by the injured party"— constitutes that essential "continuance of the nuisance," *Hoffman v. Atlanta Gas Light Co.*, 426 S.E.2d 387, 391 (Ga. Ct. App. 1992).  Accordingly, by asserting claims of *continuing* trespass and nuisance, the City is necessarily alleging that Honeywell failed to take remedial actions that it should have taken.  Such claims are necessarily claims that the actions taken by Honeywell under the ongoing EPA-directed cleanup do not go far enough, and they thus attempt to make Honeywell liable for complying with Section 122(e)(6).

The City's claims are not protected by CERCLA's saving clauses.  Conflict preemption is an affirmative defense available to defendants like Honeywell "notwithstanding the presence of the saving clauses." *New Mexico*, 467 F.3d at 1244.  While CERCLA's saving clauses may be "intended to preserve state law claims relating to the underlying contamination CERCLA was enacted to address," they nonetheless cannot preserve claims "relating to remediation activities mandated by a consent decree" and conflicting with Section 122(e)(6)'s mandate that once a

federal cleanup begins, *all* remedial actions must come from EPA itself. *Bartlett*, 260 F. Supp. 3d at 242. As the Supreme Court has explained, "[i]nterpreting [CERCLA's] saving clauses to erase the clear mandate of § 122(e)(6) would allow the Act 'to destroy itself.'" *Atl. Richfield*, 140 S. Ct. at 1355 (citation omitted).

Finally, the City's suit is also preempted because it stands as an obstacle to the purposes and objectives of CERCLA. Allowing the City's claims to proceed would contravene not only the plain text of Section 122(e)(6) but also the provision's evident purpose: to preserve and reinforce EPA's exclusive authority over remedial actions associated with CERCLA cleanups. Section 122, as a whole, is intended to "promote the policy of environmentally sound and cost effective clean up through governmental, community and private party input into the decision-making process." *Allied Corp. v. Acme Solvents Reclaiming, Inc.*, 691 F. Supp. 1100, 1110 (N.D. Ill. 1988). EPA's final chosen remedy is the product of a statutorily mandated process combining agency expertise, community input, and public interests, and Congress chose to proscribe any remedial activity that was not the subject of the formalized and comprehensive decision-making process outlined in the statute. When crafting a cleanup plan, in other words, EPA chooses not only what remedial actions are necessary but also which actions are *not* necessary, and both halves of that expert determination are legally binding. Refusing to apply the doctrine of conflict preemption in this case would thus not only be "counter to the purposes of CERCLA; to wit, to encourage settlements and the prompt cleanup of contaminated sites," *Town of Halfmoon*, 105 F. Supp. 3d at 219, but it would also "substitute a . . . court's judgment for the authorized judgment of both the EPA and [the relevant state agency]," *New Mexico*, 467 F.3d at 1249.

21

If Honeywell is liable for continuing trespass and continuing nuisance in this matter, it is only liable as such because it has complied with directly applicable federal law. When such a clear conflict between federal and state law arises, the U.S. Constitution requires that federal law prevail.

## II. Honeywell Cannot Be Held Liable for Continuing a Nuisance or Trespass It Has Neither a Legal Right Nor a Legal Duty to Stop

The City claims that Honeywell is liable for continuing nuisance and trespass because Honeywell has allegedly "fail[ed] and refus[ed] to permanently remove [its] pollution from [the] property of the City." Compl. ¶¶ 111, 122. But, as explained above, federal law prohibits Honeywell from taking remedial steps beyond those authorized by EPA to clean up any pollution that might be found on the City's property. Honeywell thus cannot be held liable as a matter of state law for continuing any alleged nuisance or trespass.

Georgia courts have long held that "the principle upon which one is charged as a continuing wrongdoer . . . is that he has a legal right and is under a legal duty to terminate the cause of the injury." *Bodin v. Gill*, 117 S.E.2d 325, 330 (Ga. 1960) (citing *City Council of Augusta v. Lombard*, 28 S.E. 994, 994 (Ga. 1897)); *accord Southfund Partners v. City of Atlanta*, 472 S.E.2d 499, 502 (Ga. Ct. App. 1996) (same); *Keener v. Addis*, 5 S.E.2d 695, 698 (Ga. Ct. App. 1939) (same). The "legal right and legal duty" rule reflects the fact that an "essential element of nuisance [and trespass] is control over the cause of harm." *Pers. Concierge MD, LLC v. SG Echo, LLC*, 890 S.E.2d 334, 341 (Ga. Ct. App. 2023) (citation omitted); *see id.* (explaining that for continuing tort liability to attach, a defendant "must be either the cause or a concurrent cause of the . . . continuance[] or maintenance of the nuisance" (citation omitted)). If a defendant has the legal right to abate a continuing tort—that is, the ability to prevent it from continuing—as well as a legal duty to do so, then that defendant may potentially be held liable for letting the tort continue. But when a defendant lacks a legal right to abate or a legal duty to do so (or both), then that defendant

22

is not the cause of the tort's continuance and thus cannot be held liable for it. *See, e.g.*, *Parris v. 3M Co.*, 595 F. Supp. 3d 1288, 1341 (N.D. Ga. 2022) ("Georgia courts have emphasized that, in the case of a continuing nuisance, to be liable, the defendant must at least have a 'legal right' to terminate the cause of the injury." (citation omitted)); *Briggs & Stratton Corp. v. Concrete Sales & Servs., Inc.*, 971 F. Supp. 566, 573 (M.D. Ga. 1997), *aff'd sub nom. Concrete Sales & Servs., Inc. v. Blue Bird Body Co.*, 211 F.3d 1333 (11th Cir. 2000) ("In order to be held liable for maintaining a continuing nuisance or trespass, [a defendant] must have a legal right and be under a legal duty to terminate the cause of the injuries sustained . . . ."); *Corp. of Mercer Univ. v. Nat'l Gypsum Co.*, 85-CV-126-3, 1986 WL 12447, at *6 (M.D. Ga. Mar. 9, 1986) ("[A] legal right to abate the nuisance is an element of a continuing nuisance claim in Georgia, regardless of whether the relief desired is an injunction or damages."). Simply put: without a legal right to abate a continuing tort as well as a duty to do so, no liability can exist.

Here, Honeywell has neither a legal right nor a legal duty to abate the alleged continuing torts. Specifically, the City blames Honeywell for failing "to permanently remove [the] pollution from [the] property of the City." Compl. ¶¶ 111, 122. But Honeywell has no "legal right" to remove the alleged pollution from the City's property because such remedial action is squarely prohibited by federal law. As explained, CERCLA mandates that once EPA or a potentially responsible party like Honeywell "has initiated a remedial investigation and feasibility study for a particular facility," then "no potentially responsible party may undertake *any* remedial action at the facility unless such remedial action has been authorized by the President." 42 U.S.C. § 9622(e)(6) (emphasis added). "Facility," in turn, covers not only places where remedial action has already been ordered, but "*any* site or area where a hazardous substance has . . . *come to be located*," *id.* § 9601(9) (emphasis added)—which includes, by definition, every part of the City's

23

allegedly affected property. CERCLA thus currently bars Honeywell from undertaking any remedial actions with respect to the alleged continuing nuisance and trespass on the City's property unless and until those actions are specifically authorized by EPA. Since the City concedes that EPA has not authorized any remedial actions on the City's property, *see* Compl. ¶¶ 96–98, Honeywell has no "legal right" to abate the alleged continuing nuisance and trespass and thus cannot be liable for its alleged failure to do so.

For similar reasons, Honeywell also has no "legal duty" to abate the alleged continuing nuisance and trespass. Honeywell cannot be obligated to do under the law what the law itself prohibits. Once the CERCLA remedial investigation and feasibility study began, EPA assumed primary responsibility for deciding how best to abate any continuing nuisance and trespass originating from the LCP Superfund Site. *See Atl. Richfield*, 140 S. Ct. at 1346. The City had every opportunity to persuade EPA to adopt a greater scope for the final cleanup plan. *See supra* pp. 11–12, 13. But, as Exhibit C of the City's Complaint demonstrates, EPA determined to go forward with a narrower cleanup plan that did not include the City's property, and that decision is legally binding on the City and Honeywell alike. 42 U.S.C. § 9622(e)(6). Far from having a "legal duty" to clean up the alleged continuing nuisance and trespass on the City's property, Honeywell has an affirmative "legal duty" under CERCLA *not* to do so.

Here, the case for dismissal is especially clear because the City seeks only punitive damages and attorney's fees in its complaint. *See* Compl. pp. 26–27; *see also City of Brunswick v. Honeywell Int'l, Inc.*, No. 2:22-cv-132, 2023 WL 5671290, at *5 (S.D. Ga. Sept. 1, 2023) (construing the City's complaint as seeking only "punitive damages and not remediation costs"). Punitive damages and attorney's fees, however, are reserved for cases involving egregious conduct: "such tort actions in which it is proven by clear and convincing evidence that the

defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1(b) (punitive damages); *see id.* § 13-6-11 (similar standard for attorney's fees). Punitive damages and attorney's fees, in other words, aim not to "compensat[e]" a plaintiff "but solely to punish, penalize, or deter a defendant." *Id.* § 51-12-5.1(c). And defendants can reasonably be "punished, penalized, or deterred" only for purposefully or recklessly violating the law, not for *refusing* to do so. Indeed, the Georgia Supreme Court has held that "compliance with the law" generally precludes punitive damages, and that "punitive damages . . . are, as a general rule, improper where a defendant has adhered to environmental . . . regulations." *Stone Man, Inc. v. Green*, 435 S.E.2d 205, 206 (Ga. 1993). Here, the situation is even more stark: Not only did Honeywell comply with federal environmental law and regulations, but doing what the City demands would have required Honeywell to affirmatively *violate* federal environmental law.

The City seeks to punish Honeywell for failing to remediate the alleged continuing nuisance and trespass on the City's property. But Honeywell has no "legal right" to do that which federal law prohibits, and Honeywell has no "legal duty" to do that which only the federal government can authorize. Because CERCLA bars Honeywell from remediating any alleged continuing nuisance or trespass on the City's property, Honeywell cannot be held liable for that continuing nuisance or trespass.

### III. EPA Is a Required and Indispensable Party that Cannot Be Joined Because This Court Lacks Jurisdiction over It.

This Court should also dismiss the City's case because it is missing a required and indispensable party: EPA. Where (1) a required party (2) cannot be joined to the case and (3) is indispensable, as is true of EPA here, the suit must be dismissed. *See* O.C.G.A. § 9-11-19.

*First,* EPA is a required party. Georgia law "mandates joinder of persons where complete relief cannot be afforded among those who are already parties." *Artson, LLC v. Hudson*, 747 S.E.2d 68, 72 (Ga. Ct. App. 2013). Specifically, a party "who is subject to service of process shall be joined as a party in the action if . . . [h]e claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may: (A) As a practical matter impair or impede his ability to protect that interest; or (B) Leave any of the persons who are already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest." O.C.G.A. § 9-11-19(a).

Here, EPA is such a required party. EPA has an acute interest in successfully implementing the cleanup plan for any pollution from the LCP Superfund Site—a plan that EPA is charged by statute to authorize and oversee, a plan that was carefully selected by EPA in consultation with local stakeholders, and a plan that is governed by a consent decree to which EPA is a party. EPA also has an acute interest in defending the scope of that cleanup plan, including the agency's decisions about which remedies were appropriate and which were not. Once a remedial investigation and feasibility study has begun, EPA has exclusive responsibility for authorizing "any remedial action" that may be undertaken within the associated contaminated area. 42 U.S.C. § 9622(e)(6). If this Court were to hold Defendants liable for failing to take such remedial actions (as the City urges), that would directly impair and impede EPA's exclusive statutory and regulatory responsibilities. For similar reasons, adjudication of the City's lawsuit would also impair and

26

impede EPA's ability to protect its interest in the proper implementation of its consent decree, which represents the only remedial actions it has currently authorized with respect to the alleged pollution at issue.

To the extent that the City alleges that the cleanup plan itself was flawed, underinclusive, or otherwise insufficient, EPA's interests are equally at risk of being impaired or impeded by the City's attack. EPA developed the cleanup plan through a painstaking, long, and detailed decision-making and implementation process. The plan was based on a remedial investigation and feasibility study and was subject to repeated opportunities for public comment. *See supra* pp. 11–12, 13. Following this process, EPA developed a remediation plan that it determined would "assure[] protection of human health and the environment." 42 U.S.C. § 9621(d)(1). To the extent the City is alleging that the cleanup plan was flawed because it did not remediate the City's property, the City seeks to challenge EPA's determinations in EPA's absence.

To permit this case to move forward would allow the City to challenge and supplant EPA's authority without EPA having any voice to protect its interests. Doing so would have an impact not only on EPA's oversight of the relevant cleanup here, but also on EPA's ability to effectively manage other remediation sites across the nation. Accordingly, the threat raised by the City's claims to EPA's interests demand that EPA be joined as a required party.

Proceeding in this matter without EPA would also leave Honeywell at substantial risk of incurring inconsistent obligations. EPA has not currently authorized any of the remedial actions that the City claims Honeywell was obligated to undertake. To hold Honeywell liable in a state tort action for Honeywell's failure to undertake those remedial actions would create precisely the inconsistent obligations and prejudice contemplated under Georgia's joinder rules. Such prejudice would occur even if the Court awarded monetary damages only, as Honeywell would still be

27

required to pay damages for not undertaking remedial actions that it is prohibited by federal law from taking in the absence of EPA authorization.

*Second*, even though EPA is a required party under Georgia's joinder rules, it cannot be joined to this action. Georgia law "limits joinder of persons as parties to those persons who are subject to service of process," *Artson*, 747 S.E.2d at 73, and "[i]n cases in which the court lacks jurisdiction over the indispensable party, . . . a complaint may be dismissed," *Wright v. Safari Club Int'l*, 706 S.E.2d 84, 86 (Ga. Ct. App. 2010). In *Dixon v. Cole*, 589 S.E.2d 94 (Ga. 2003), for example, the Georgia Supreme Court considered a case involving the property rights of various landowners near a lake that fell under the authority of the Tennessee Valley Authority (TVA). The Court affirmed dismissal of the case on the grounds that the TVA was an indispensable party and that Georgia courts did not have jurisdiction over it because "[t]he TVA is a corporation created by an Act of Congress . . . over which the federal district courts have jurisdiction when civil actions are filed against it." *Id.* at 95.

So too here. EPA is a federal agency, and any civil actions filed against it must proceed in federal court under CERCLA's limited waiver of EPA's sovereign immunity. *See* 42 U.S.C. §§ 9613(b), 9659(a). Courts have accordingly held that "insofar as exclusive jurisdiction for a challenge to an EPA [remedial] action [under CERCLA] resides in the federal courts, EPA [cannot] be involuntarily joined in [a state] action." *Aztec Mins. Corp. v. Romer*, 940 P.2d 1025, 1034 (Colo. App. 1996) (citation omitted).

*Finally*, EPA is indispensable. Georgia law provides that if a required party such as EPA "cannot be made a party," then the court must "determine whether in equity and good conscience the action should proceed among the parties before it or should be dismissed, the absent party being thus regarded as indispensable." O.C.G.A. § 9-11-19(b). Georgia articulates five factors a

28

court should consider in making this determination, *see id.*, and here, each of those factors counsels in favor of holding that EPA is "indispensable" and thus that this action cannot continue.

First, any "judgment rendered in the person's absence" would be "prejudicial" to both EPA and Honeywell. *Id.* § 9-11-19(b)(1). As explained, the City has centered its case on Honeywell's failure to take remedial actions that EPA has not currently authorized and that are thus unlawful for Honeywell to take.

Second, that prejudice cannot "be lessened or avoided" by "protective provisions in the judgment, by the shaping of relief, or by other measures." *Id.* § 9-11-19(b)(2). The City's claims fundamentally conflict with CERCLA's exclusive delegation of the choice of remedial measures to EPA, and no measure can avoid that central conflict.

Third, any "judgment rendered in [EPA's] absence" will not be "adequate." *Id.* § 9-11-19(b)(3). If the City prevails, Honeywell will remain inextricably caught between the competing and mutually exclusive demands of state tort law and federal environmental law, and it will continue to be unable to abate any continuing nuisance or trespass except through the remedial actions that have been authorized by EPA to date.

Fourth, the City will still "have an adequate remedy if the action is dismissed for nonjoinder." *Id.* § 9-11-19(b)(4). For example, if the action is dismissed, the City can request that EPA authorize and order Honeywell to undertake additional "remedial action[s]" with respect to any alleged pollution on the City's property. 42 U.S.C. § 9622(e)(6); *see, e.g., id.* § 9621(c) (requiring that, where EPA orders "a remedial action [that] results in any hazardous substances, pollutants, or contaminants remaining at [a] site," EPA must "review such remedial action no less often than each 5 years after [its] initiation . . . to assure that human health and the environment are being protected"). Indeed, the Consent Decree specifically contemplates that EPA might

29

expand the scope of the remedial actions it has ordered to account for new developments. *See supra* p. 13.

Finally, any "prejudice" to the City's interests "might have been avoided" and "may, in the future, be avoided" by the City itself. O.C.G.A. § 9-11-19(b)(5). The City had every opportunity during the remedial investigation and feasibility study to request EPA to include its property in the cleanup plan. If it failed to avail itself of those "extensive" opportunities, *Atl. Richfield*, 140 S. Ct. at 1346, that is the City's responsibility. Even today, the City can still petition EPA to take additional remedial actions or require potentially responsible parties like Honeywell to do so. *See supra* pp. 8, 13, 29–30. The City, in short, can still avoid any prejudice to its interests even if this case is dismissed.

Because EPA is a required and indispensable party but cannot be joined, this action should be dismissed.

## IV. The City's Claims Are Time-Barred to the Extent They Are Based on Actions Outside the Four-Year Statute of Limitations.

Section 9-3-30 of the Georgia Code provides that "[a]ll actions for trespass upon or damage to realty shall be brought within four years after the right of action accrues." That four-year statute of limitations applies to claims of both continuing nuisance and continuing trespass. *See, e.g.*, *Tri-Cnty. Inv. Grp.*, 500 S.E.2d at 25. Section 9-3-30 thus permits a "plaintiff in a continuing tort suit [to] recover for any damages that were suffered within four years prior to the filing of the suit," on the theory that "a cause of action for a tort that is continuing in nature . . . accrues at the time of continuance." *Id.* (citation omitted). But a plaintiff cannot recover for damages suffered more than four years before the suit was filed because any cause of action for such harm would have accrued outside the statute of limitations. *See, e.g.*, *City of Gainesvile v. Waters*, 574 S.E.2d 638, 643 (Ga. Ct. App. 2002) (Section 9-3-30 "preclude[s] recovery for any damages . . . which were

30

suffered more than 4 years prior to the filing of the suit" (quoting *City of Columbus v. Myszka*, 272 S.E.2d 302, 305 (Ga. 1980))).

Here, the City is suing exclusively for punitive damages arising from Honeywell's alleged continuance of the alleged nuisance and trespass. *See* Compl. pp. 26–27. Section 9-3-30 limits the scope of that suit to the four years before the City brought suit on October 20, 2022. But to the extent the City intends to bring claims for conduct that occurred before October 20, 2018, such claims would be squarely foreclosed. For example, the City includes inflammatory (and untrue) allegations in its complaint that Honeywell, despite knowing "the dire potential consequences" of the alleged pollution, "elected to hide its wrongdoing" during the course of the 1970s. Compl. ¶ 37. The City cannot predicate any liability on such allegations because any cause of action arising from them would have accrued—and become time-barred—decades ago.

<u>CONCLUSION</u>

For the foregoing reasons, Honeywell respectfully requests the Court grant its motion to dismiss with prejudice. Honeywell further requests that the Court schedule a hearing on the motion and the City's forthcoming response.

RESPECTFULLY SUBMITTED, this 3rd day of June, 2024.

*/s/ Mark D. Johnson*
Mark D. Johnson
Georgia Bar No. 395041
mjohnson@ghsmlaw.com

*/s/ Amber M. Carter*
Amber M. Carter
Georgia Bar No. 631646
acarter@ghsmlaw.com

**GILBERT HARRELL SUMERFORD & MARTIN, P.C.**

31

Post Office Box 190
Brunswick, Georgia 31521-0190
P:  (912) 265-6700
F:  (912) 264-0244

Brian D. Israel*
**ARNOLD & PORTER KAYE SCHOLER LLP**
777 South Figueroa Street, 44th Fl.
Los Angeles, CA 90017-5844
P: (213) 243-4000
F: (213) 243-4199
brian.israel@arnoldporter.com

*Admitted Pro Hac Vice.*

**Attorneys for Defendant Honeywell**
**International, Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed electronically the foregoing **DEFENDANT HONEYWELL INTERNATIONAL INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** with the Clerk of the Court to be served by operation of the Court's electronic filing system.

Respectfully submitted this 3rd day of June, 2024.

_/s/ Mark D. Johnson_____
Mark D. Johnson

**Counsel for Defendant**
**Honeywell International, Inc.**

GILBERT, HARRELL,
SUMERFORD & MARTIN, P.C.
P.O. Box 190
Brunswick, GA 31521-0190
Telephone: (912) 265-6700
Facsimile: (912) 264-0244
mjohnson@ghsmlaw.com

33

Exhibit 5

GLYNN CO. CLERK'S OFFICE
Filed 7/1/2024 10:43 AM
Accepted 7/1/2024 10:55 AM
CASE # CE22-01086

*Rebecca G Walden*
CLERK SUPERIOR COURT

IN THE SUPERIOR COURT OF GLYNN COUNTY
STATE OF GEORGIA

| | |
|---|---|
| CITY OF BRUNSWICK, by and through its MAYOR AND BOARD OF COMMISSIONERS, | ) ) ) |
| | ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No.: CE22-01086 |
| | ) |
| HONEYWELL INTERNATIONAL, INC., f/k/a ALLIED CHEMICAL CORPORATION and as ALLIEDSIGNAL, INC., and THE GEORGIA POWER COMPANY, | ) ) ) ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT GEORGIA POWER'S MOTION TO DISMISS OR FOR A MORE DEFINITE STATEMENT**

Georgia Power's motion is without merit and should be denied in full.

Georgia Power continues its efforts to bar the City of Brunswick from the enlightenment that will flow from full discovery. Twice it has agreed to respond to the City's now twenty-month-old discovery requests and twice it has reneged, claiming cover first by its unmeritorious removal petition and now by filing this motion that it labels a "motion to dismiss," a motion that recycles arguments already rejected by the Southern District of Georgia in this case. Strangely, Georgia Power chooses not to disclose this directly on-point authority. Exh. A.

After the City filed its complaint and served the Defendants, both Defendants removed this case to the United States District Court for the Southern District of Georgia. The City moved to remand. All of the issues set forth in Georgia Power's motion to dismiss were asserted in its brief in opposition to the City's motion to remand. The District Court ruled adversely to Georgia Power on all issues.

The doctrine of collateral estoppel "precludes the re-adjudication of an issue that has previously been litigated and adjudicated on the merits in another action between the same parties or their privies." *Copelan v. Copelan*, 294 Ga. 840, 841 (2014); *Minnefield v. Wells Fargo Bank, NA*, 331 Ga.App. 512, 515 (2015). "[C]ollateral estoppel does not require identity of the claim—so long as the issue was determined in the previous action and there is identity of the parties, that issue may not be re-litigated, even as part of a different claim." *Coffee Iron Works v. QORE*, 322 Ga.App. 137, 139 (2013); *Minnifield v. Wells Fargo Bank, N.A.*, *supra*. The common and determinative issue in the federal litigation and this litigation is whether each of the issues raised in Georgia Power's motion to dismiss were raised and decided when this case had been removed to federal court. There is mutual identity of parties. *Body of Christ Overcoming Church of God v. Brinson*, 287 Ga. 485, 486 (2010). There is clearly sufficient identity of the issues for purposes of collateral estoppel. *See Coffee Iron Works v. QORE*, 322 Ga.App. at 140; *Minnifield v. Wells Fargo Bank, N.A.*, 331 Ga.App. at 516.

This Court may consider federal orders issued in this case that were decided before remand. *See, Minnefield v. Wells Fargo Bank, NA, supra*.

### STANDARDS GOVERNING MOTIONS TO DISMISS

A motion to dismiss for failure to state a claim upon which relief may be granted should not be granted where the complaint shows that the plaintiff may be entitled to relief under a provable set of facts and could possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. *Love v. Fulton County Bd. Of Tax Assessors*, 311 Ga. 682 (2021). The allegations of the complaint must be accepted as true, "resolving any doubts in favor of [the plaintiff]." *Greene County School Dist. v. Circle Y Constr., Inc.*, 291 Ga. 111, 112 (2012).

-2-

Affidavits submitted by the movant to contravene allegations of the complaint should be excluded.

O.C.G.A. § 9-11-12(b).  The motion, as filed by Georgia Power, is a motion for summary judgment.

The time for Georgia Power to answer or object to outstanding discovery has not been stayed.  It has

expired.

### THE CITY HAS STANDING AS THE OWNER OF HIGH GROUND, MARSHES, CREEK AND RIVER BOTTOMS AND PORTIONS OF A CANAL

The City alleges that it owns high ground, marshes, creek bottoms, and river bottoms:

6.

The City of Brunswick owns properties that lie west of Newcastle Street and east of the East River that include high ground, marshes and creek and river bottoms; property that lies east of Glynn Avenue, south of the F.J. Torras Causeway, and east of the Back River that includes high ground, marshes and creek bottoms; property lying both north and south of the F.J. Torras Causeway, east of the Back River and west of the Little River that includes high ground, marshes and creek bottoms; property that encompasses the southern portion of the Altimaha Canal that includes high ground and the non-navigable canal.

Complaint, p. 2, ¶ 6.

Georgia Power recognizes that if the City's chain of title contains a Crown or State grant, the

City can own marsh and river creek bottoms. Georgia Power Brief, p. 5.  Georgia Power invites this

Court into error by disputing the truth of paragraph 6.  *Id*, p. 5.  This argument of Georgia Power

would not only be an error of law, it conflicts with Georgia Power's factual assertion in its answer:

6.  Georgia Power lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 6 of the Complaint and therefore denies those allegations.

Georgia Power Answer, p. 6.

The City is entitled to a finding that its complaint states a claim of ownership that gives it

standing to bring this claim.

-3-

### THE STATUTE OF LIMITATIONS HAS NOT RUN

Georgia Power lost its statue of limitations argument in the District Court. Exh. A, pp. 20-25. Collateral estoppel applies.

Georgia Power's assertion that the City of Brunswick's claims are barred by the applicable statute of limitations is unsupported in either law or fact. Georgia Power ignores inconvenient authority. Georgia Power does not even cite much less attempt to distinguish *Tucker v. Southern Wood Piedmont Co.*, 28 F.3d 1089, 1091 (11th Cir. 1994); *Tri-County Investment Group, Ltd. v. Southern States, Inc.*, 231 Ga.App. 632, 500 S.E.2d 632 (1998); *Smith v. Branch*, 226 Ga.App. 626 (1997) or *Hoffman v. Atlanta Gas Light Co.*, 206 Ga.App. 727 (1992), controlling decisions that conflict with Georgia Power's assertions.

The statute of limitations defense is an affirmative defense. Only when facts are not in dispute, may the question of statute of limitations be disposed upon on a motion to dismiss. *Guthrie v. Monumental Properties, Inc.*, 141 Ga App. 21 (1977).

The statute of limitations does not bar this action. The complaint sets forth classic claims for continuing nuisance and continuing trespass. The above citations and the allegations of Paragraphs 98, 99, 112, 114, 121, 122, 124, 126 and 128 establish that the statute of limitations is not a bar to the claims made by the City against Georgia Power. The failure of Georgia Power to even cite any of the above-cited cases is telling.

In its Appellate Brief to the Eleventh Circuit, whereby it is seeking to reverse the District Court's order remanding this case to this Court, Georgia Power seems to admit the uncertainty of its contentions by its citation to comments by the district court in the decision below, wherein the Court held:

-4-

Moreover, "Georgia courts have found that the distinction between a permanent nuisance and a continuing nuisance has been referred to as one of the most baffling areas of the law." *Id.* at 1266 (alterations adopted, citations and quotation marks omitted). At this stage of the proceedings, the Court must resolve all doubts in favor of remand. *Mann*, 505 F. App'x at 856 (citation omitted). With this in mind, the Court finds Defendants' statute of limitations argument unavailing because "[i]n the absence of clear precedent," Defendants fail to meet their burden of demonstrating with clear and convincing evidence that the City alleges permanent trespass and nuisance. *See Stephens v. Wal-Mart Stores E., LP*, No. 5:09-CV-325, 2010 WL 1487213, at *2 (M.D. Ga. Apr. 12, 2010). Given that there is no clear bright line rule on whether Georgia Power's conduct constitutes permanent or continuing nuisance and trespass, there is a possibility the statute of limitations does not bar the City's claim against Georgia Power.

*City of Brunswick v. Honeywell International, Inc.*, CV 222-132, 2023 WL 5671290, * 7 (S.D. Ga., 9/1/2023); Exh. A, p. 21.

*Wise Business Forms, Inc., v. Forsyth County*, 317 Ga. 636 (2023) was decided by the

Supreme Court on September 19, 2023, shortly after the decision of the District Court. The *Wise*

decision confirmed that each continuance of a continuing nuisance creates a new cause of action with

a new commencement date for the statute of limitations. The *Wise* decision thereby clarified the

uncertainty noted by Judge Hall, holding:

> In concluding that Wise's permanent nuisance claim was barred by OCGA § 9-3-30 (a), the Court of Appeals relied on a 2011 case from this Court, in which we explained that, when a nuisance is "considered permanent," a "plaintiff is allowed only one cause of action to recover damages for past and future harm," and "[t]he statute of limitation begins to run against such a claim upon the creation of the nuisance once some portion of the harm becomes observable." *Forrister*, 289 Ga. at 333 (2), 711 S.E.2d 641. However, this language from *Forrister* is imprecise because it does not explain that this standard will not apply in all permanent nuisance cases.
>
> Permanent nuisance cases vary in relation to when the alleged harm to a plaintiff's property caused by the nuisance becomes "observable" to the plaintiff. *Forrister*, 289 Ga. at 333 (2), 711 S.E.2d 641. In some cases, the harm to the plaintiff's property is immediately observable "upon the creation of the nuisance." *Id.* For example, where a landowner or governmental agency "erects a harmful structure such as a bridge or conducts a harmful activity such as opening a sewer that pollutes a stream," and it is immediately obvious that the structure or activity interferes with the plaintiff's

interests, the plaintiff must file "one cause of action for the recovery of past and future damages caused by [the] permanent nuisance" within four years of the date the structure is completed or the harmful activity is commenced. *Id.* at 333-336 (2)–(3), 711 S.E.2d 641 (citing Restatement (Second) of Torts §§ 899 and 930). Phrased another way, where the "construction and continuance" of the permanent nuisance at issue is "necessarily an injury, the damage is original, and may be at once fully compensated. In such cases[,] the statute of limitations begins to run upon the construction of the nuisance." *City Council of Augusta v. Lombard*, 101 Ga. 724, 728, 28 S.E. 994 (1897).

In other permanent nuisance cases, the harm to the plaintiff's property is not "observable" to the plaintiff until later—sometimes years later. *Forrister*, 289 Ga. at 333 (2), 711 S.E.2d 641. This circumstance may arise when a structure is built or an activity is commenced that is not injurious in and of itself, but it becomes a "permanent and continuing nuisance" because of "some supervening cause[, like heavy rains], which produce[s] special injury at different periods." *Lombard*, 101 Ga. at 728, 28 S.E. 994. In such cases, "a separate action lies for each injury thus occasioned, and the statute begins to run" from "the time when the special injury is occasioned." *Id.* (citing *Athens Mfg. Co. v. Rucker*, 80 Ga. 291, 4 S.E. 885 (1887) ("So this court has held that recovery might be had for injuries [to a plaintiff's property] resulting from the erection and maintenance of a dam, in so far as such injuries occurred within four years preceding the bringing of the action, although the dam may have remained unchanged for twenty years.")).

There are also cases, however, where the permanent nuisance causes multiple harms to a plaintiff's property—some of which are immediately observable upon the completion or construction of the nuisance and some of which are not observable until later—i.e., **cases where the nuisance "is by its nature continuing" and "will continue indefinitely."** *Cox v. Cambridge Square Towne Houses*, 239 Ga. 127, 127-128, 236 S.E.2d 73 (1977). Pinpointing when the statute of limitation starts to run in such cases can be challenging—both for litigants and for factfinders. See *id.* (noting that confusion "has long existed as to when a nuisance, which is by its nature continuing, is considered 'permanent' ").

The circumstances at issue in Cox were strikingly similar to those in the present case. The subject nuisance was "by its nature continuing"; the lawsuit arising out of this nuisance was "filed more than four years after the creation of the nuisance"; and "the dispute center[ed] around whether the action for damages [was] barred by the statute of limitation." *Id.* at 127, 236 S.E.2d 73. In *Cox*, the Court held that, where the subject nuisance "will continue indefinitely, the appellant has the right to elect to treat the nuisance as temporary and sue for all those damages which have occurred within the past four years, or he may elect to sue for all future damages as well and put an end to the matter." *Id.* at 129, 236 S.E.2d 73 (citation and punctuation

omitted).

In other words, under *Cox*, when a nuisance "is by its nature continuing," the plaintiff can elect to proceed in one of two ways. The first option would be to treat the nuisance as "temporary" and file a lawsuit to recover for "all those damages [or harms] which have occurred [to the plaintiff's property] within the past four years." *Cox*, 239 Ga. at 129, 236 S.E.2d 73. And, by implication, when the plaintiff elects to proceed in this manner and treats the nuisance as "temporary," if the continuing nuisance causes additional harms to the plaintiff's property in the future, the plaintiff can file another lawsuit seeking recovery for these additional harms, as long as the plaintiff initiates the lawsuit within four years from the occurrence of that future harm. *See Lombard*, 101 Ga. at 727, 28 S.E. 994 (in these cases, "**every continuance of the nuisance is a fresh nuisance, for which a fresh action will lie**," and the cause of action "accrues at the time of such continuance" and "the statute of limitations runs only from the time of such accrual"). Alternatively, the plaintiff can elect to file a single lawsuit to recover for harms that occurred to the plaintiff's property within the past four years and for all prospective harms that might occur to the plaintiff's property in the future. *See Cox*, 239 Ga. at 127-129, 236 S.E.2d 73. And, if the plaintiff elects to proceed in this manner, the plaintiff is limited to seeking those damages in one lawsuit. *See id.*

*Wise Business, supra,* 641- 644 (emphasis added).

The *Wise* decision confirms that the City's claims are not barred by the statute of limitations.

The running of any statute of limitations has also been tolled by a federal statute.

42 U.S.C. § 9658 provides in pertinent part:

**§ 9658. Actions under State law for damages from exposure to hazardous substances**

**(a) State statutes of limitations for hazardous substance cases**

    **(1) Exception to State statutes**

In the case of any action brought under State law for personal injury, or property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility, if the applicable limitations period for such action (as specified in the State statute of limitations or under common law) provides a commencement date which is earlier than the federally required commencement date, such period shall commence at the federally required commencement date in lieu of the date specified in such State

statute.

**(2) State law generally applicable**

Except as provided in paragraph (1), the statute of limitations established under State law shall apply in all actions brought under State law for personal injury, or property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility.

**(4) Federally required commencement date**

**(A) In general**

Except as provided in subparagraph (B), the term "federally required commencement date" means the date the plaintiff knew (or reasonably should have known) that the personal injury or property damages referred to in subsection (a)(1) were caused or contributed to by the hazardous substance or pollutant or contaminant concerned.

42 U.S.C. § 9658(a)(1), (2), (4)(A).

The Court in *Freier v. Westinghouse Elec. Corp.*, 303 F.3d 176 (2d Cir. 2002) analyzed this statute, referring to it as the "federally required commencement date" and "FRCD." *Id.* at 184. The Court held:

> The discovery-of-cause standard set by the FRCD, defined as "the date the plaintiff knew (or reasonably should have known) that the personal injury" was caused or contributed to by the hazardous materials, focuses on knowledge, actual or imputed, not on suspicion. **Mere suspicion, whatever its reasonableness, cannot be equated with knowledge; and the fact that a claimant had only a "reasonable suspicion" that the injuries were caused by the Landfill is not a sufficient basis for ruling as a matter of law that the claimant "reasonably should have** *known* **"** (emphasis added) that the injuries were caused by the Landfill. Accordingly, the district court applied an erroneous legal standard in interpreting the FRCD.

*Id.*, 205 (emphasis added).

Under the facts as pled in the complaint, the statute of limitations has not run. 42 U.S.C. § 9658.

Georgia Power argues that none of the above-cited statutory and case law apply to it because

it is a "public entity." Georgia Power Brief, p. 19. It is not. Georgia Power is a private, for-profit corporation. A *public entity* is "[a] governmental entity, such as a state government or one of its political subdivisions," Black's Law Dictionary, 10th ed., p. 850.

The fact that a court of equity should not issue an injunction that shuts down an electricity-generating power plant, thereby leaving all within its service area in the dark, is irrelevant to the issue of a utility's liability in damage for harm done to the property of another.

*Hoffman v. Atlanta Gas Light Co.*, 206 Ga.App. 727 (1992) and *Georgia Power Co. v. Moore*, 47 Ga.App. 411 (1933) (continuing nuisance; judgment for plaintiff affirmed) establish that, in Georgia, utilities are liable for damage resulting from continuing nuisances that began more than four years before suit was filed.

What has been done can be done.

### THE ISSUE OF ABATEABILITY IS NOT CONTROLLING

Georgia Power ignores controlling authority from the Georgia Supreme Court that addresses the issue of *abateability*. The issue of whether or not a nuisance or trespass is abatable is an issue as to whether or not a court should grant injunctive relief.

> Generally, nuisances are classified as "abatable" or "permanent." An "abatable" nuisance is one where the harm to a plaintiff's property "results from some minor feature of construction or management" or "from an improper and unnecessary method of operation," which can "be averted at slight expense" or readily enjoined. *Forrister*, 289 Ga. at 333-334 (2), 711 S.E.2d 641 (citations and punctuation omitted). A "permanent" nuisance is "one whose character is such that, from its nature and under the circumstances of its existence, it presumably will continue indefinitely." *Id.* at 333 (2), 711 S.E.2d 641. Determining whether a nuisance is abatable or permanent will typically dictate "the manner in which the statute of limitations will be applied." *Id.*
>
> Here, Wise asserted claims against Appellees for both inverse condemnation by abatable nuisance and inverse condemnation by permanent nuisance. However, as

noted above, this appeal concerns only Wise's claim for inverse condemnation by permanent nuisance, so we will limit our analysis to when the statute of limitation starts to run on the permanent nuisance claim. *See* OCGA § 9-3-30 (a) ("[a]ll actions for trespass upon or damage to realty shall be brought within four years after the right of action accrues").

*Wise Business, supra*, 640-641.

The fact that a nuisance is deemed abatable means that it is not permanent. However, as

recognized in *Wise,* **continuing nuisances can be both continuing and permanent**. *Wise Business,*

*supra,* 642. In those cases, the injured party has an election of remedies:

> In other permanent nuisance cases, the harm to the plaintiff's property is not "observable" to the plaintiff until later—sometimes years later.
>
> . . .
>
> In such cases, "a separate action lies for each injury thus occasioned, and the statute begins to run" from "the time when the special injury is occasioned." *Id.* (*citing Athens Mfg. Co. v. Rucker*, 80 Ga. 291, 4 S.E. 885 (1887).
>
> . . .
>
> There are also cases, however, where the permanent nuisance causes multiple harms to a plaintiff's property—some of which are immediately observable upon the completion or construction of the nuisance and some of which are not observable until later—i.e., cases where the nuisance "is by its nature continuing" and "will continue indefinitely." *Cox v. Cambridge Square Towne Houses, Inc.*, 239 Ga. 127, 127-128, 236 S.E.2d 73 (1977).
>
> . . .
>
> The circumstances at issue in *Cox* were strikingly similar to those in the present case. The subject nuisance was "by its nature continuing;" the lawsuit arising out of this nuisance was "filed more than four years after the creation of the nuisance;" and "the dispute center[ed] around whether the action for damages [was] barred by the statute of limitations." *Cox,* 239 Ga. at 127, 236 S.E.2d 73. In *Cox,* the Court held that, where the subject nuisance "will continue indefinitely, the appellant has the right to elect to treat the nuisance as temporary and sue for all those damages which have occurred within the past four years, or he may elect to sue for all future damages as well and put an end to the matter." *Id.* at 128, 236 S.E.2d 73 (citation and punctuation omitted).

*Wise Business, supra*, 642 - 643. *See Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1016

n.29 (11th Cir. 2004) ("The fact that the [plaintiffs] prevented the defendants from coming onto the

[plaintiffs'] property to clean up the debris does not prevent a finding of continuing nuisance").

## GEORGIA POWER IS NOT ENTITLED TO AN
## ORDER FOR A MORE DEFINITE STATEMENT

Georgia Power seeks, by its motion, to use a 12(b) motion as its one-way discovery device in the manner that special demurrers were utilized before passage of the Civil Practice Act in 1966, a practice long rejected by our appellate courts.

> In his article on our Civil Practice Act by its principal architect, E. Freeman Leverett, appearing in 3 Ga. State Bar Jour. 295, 299, said: 'Paragraphs (e) and (f) of s 81A-112 contain the only vestige of the much abused special demurrer long known to Georgia practice. The test of a special demurrer and a motion for more definite statement is vastly different, however. A special demurrer lies to make the plaintiff set out the facts more fully so as to enable the defendant to prepare his defense. Georgia Procedure and Practice s 9-5. A motion for more definite statement, however, lies only when the pleading is so indefinite that the defendant is unable to frame an answer thereto, and only with respect to a pleading to which another responsive pleading must be filed. 2 Moore, Federal Practice, par. 12.18(1), at 2303.'

> The applicable principle is succinctly stated in the hornbook series book by Charles Alan Wright entitled 'Law of Federal Courts' (2d Ed. 1970) in Section 66, p. 277: 'Another disfavored motion is the motion for a more definite statement . . . If the pleading is sufficiently definite that the opponent can reply to it, the motion for more definite statement should be denied and any particulars that the opponent needs to prepare for trial obtained by depositions, interrogatories, and similar discovery procedures.'

*Emerson v. Fleming*, 127 Ga.App. 296, 298 (1972).

Georgia Power has fully answered the complaint. The parties should proceed with discovery. Grant of Georgia Power's 12(e) motion will only further delay this action that was filed and served in October, 2022. Discovery requests served on Georgia Power twenty months ago remain unanswered. Should the Court order the City to amend its complaint to give a more definite statement, Georgia Power can be expected to file a renewed 12(b)(6) motion and thereby claim another ninety days of delay.

-11-

Georgia Power claims that the City mentions it by name in only three paragraphs of the complaint. While the City uses the name "Georgia Power" in only four paragraphs, it refers to Georgia Power as a Defendant and states how Defendant Georgia Power harmed the City in paragraphs 90, 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 121, 122, 123, 124, 129, 130, 131, 132, 133 and 134 of the complaint. Georgia Power's argument is somewhat pedestrian. While defendants must be named in the caption of the complaint and the summons, there is no requirement that a plaintiff must use a defendant's name in each paragraph of a complaint.

On page 19 of its motion, Georgia Power admits that the complaint refers to *Defendants* collectively 46 times but because the complaint does not distinguish between which of those 46 times Georgia Power did the specific thing the City alleges the Defendants did, it cannot determine whether "a given allegation is directed towards Georgia Power or Honeywell. This argument is sophistry. When there are only two defendants in a complaint, and the complaint alleges the defendants did or did not do something the only common sense, common knowledge and grammatical way to interpret the allegation is that the complaint is alleging that both Defendants committed the act or failed to act. It is silly for Georgia Power to recognize that the "complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief" and at the same time state that the rather lengthy complaint should have been longer. If the Court were to order a more definite statement, the City would take each paragraph of the complaint in which it said "Defendants" and insert in its place the words, "both Honeywell and Georgia Power." The meanings of each allegation would be the same whether the City uses the Defendants in the plural or says that both Honeywell and Georgia Power did it. Discovery is the way to sort out facts and proof.

-12-

The District Court's order found that the complaint states a claim under Georgia law as

follows:

> Here, the City's Complaint alleges "(t)he Georgia Power Plant was coal fired, and
> emitted mercury into the air, the waters and the marshes of Glynn County." (Doc.
> 1-1, at 154.) The City then alleges that this conduct is the actual and proximate cause
> of the City's injury, which is the contamination, or pollution, of the City's property
> with mercury. (*Id.* at 154, 159, 161.) Moreover, the Complaint also alleges
> "Defendants' conduct ...showed...willful misconduct, malice, wantonness, (or)
> oppression..." (*Id.* at 159.) Based upon the allegations in the Complaint and the
> pleading standard under Georgia law, the Court finds there is a possibility that a state
> court could find the City states a cause of action against Georgia Power.

Exh. A., p. 23.

## CONCLUSION

Georgia Power's motion to dismiss and for a more definite statement should denied.

<div align="center">Respectfully submitted,</div>

*s/ John C. Bell, Jr.*
John C. Bell, Jr. (Ga. Bar No. 048600)
Pamela S. James (Ga. Bar No. 389015)
THE BELL FIRM
PO Box 1547
Augusta, GA 30903-1547
(706) 722-2014
John@bellfirm.net
Pam@bellfirm.net

Robert P. Killian (Ga. Bar No. 417575)
KILLIAN LAW FIRM LLC
47 Professional Drive
Brunswick, GA   31520
(912) 263-9520
bob@killianlawfirm.com

Brian Donald Corry (Ga. Bar No. 165557)
McQUIGG SMITH & CORRY
504 Beachview Drive Suite 3D
Saint Simons Island, GA 31522
(912) 638-1174
brian@msclawga.com

Counsel for Plaintiff

CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing **PLAINTIFF'S BRIEF**

**IN OPPOSITION TO DEFENDANT GEORGIA POWER'S MOTION TO DISMISS OR FOR**

**A MORE DEFINITE STATEMENT,** upon all counsel of record by electronic mail as follows:


Mark D. Johnson, Esq. {*mjohnson@gilbertharrelllaw.com*}
Amber M. Carter, Esq. {*acarter@gilbertharrelllaw.com*}
Gilbert, Harrell, Sumerford & Martin, P.C.
777 Gloucester Street - Suite 200
Brunswick, Georgia  31520

Benjamin H. Brewton, Esq. {*bbrewton@balch.com*}
T. Joshua R. Archer, Esq. {*jarcher@balch.com*}
Balch & Bingham LLP
801 Broad Street - Suite 800
Augusta, Georgia  30901

Brian D. Israel, Esquire {*brian.israel@arnoldporter.com*}
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001-3743


This 1st day of July, 2024.


_s/ John C. Bell, Jr._
John C. Bell, Jr.
Counsel for Plaintiff

-15-

Exhibit 6

GLYNN CO. CLERK'S OFFICE
Filed 7/10/2024 9:47 AM
Accepted 7/10/2024 9:56 AM
CASE # CE22-01086

*Rebecca G Walden*

CLERK SUPERIOR COURT

IN THE SUPERIOR COURT OF GLYNN COUNTY
STATE OF GEORGIA

| | |
|---|---|
| CITY OF BRUNSWICK, by and through its MAYOR AND BOARD OF COMMISSIONERS, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No.: CE22-01086 |
| | ) |
| HONEYWELL INTERNATIONAL, INC., f/k/a ALLIED CHEMICAL CORPORATION and as ALLIEDSIGNAL, INC., and THE GEORGIA POWER COMPANY, | ) ) ) ) ) |
| Defendants. | ) ) |

**PLAINTIFF'S BRIEF IN OPPOSITION TO**
**DEFENDANT HONEYWELL'S MOTION TO DISMISS**

Honeywell's motion to dismiss is without merit and should be denied.

Honeywell continues its efforts to bar the City of Brunswick from the enlightenment that will flow from full discovery. Twice it has agreed to respond to the City's now twenty-month-old discovery requests and twice it has failed to honor its agreement, claiming cover first by its unmeritorious removal petition and now by filing this "motion to dismiss" that recycles arguments already rejected by the Southern District of Georgia and introduces defensive materials and issues not drawn from the complaint, thereby converting its motion to a motion for summary judgment. O.C.G.A. § 9-11-12(b). Exhs. A, B, C. Discovery therefore has not been stayed. The time for Honeywell to answer or object to discovery requests served in October, 2022, has passed.

After the City filed its complaint and served the Defendants, both Defendants removed this case to the United States District Court for the Southern District of Georgia. The City moved to remand. All of the issues set forth in Honeywell's motion to dismiss were asserted in its brief in

opposition to the City's motion to remand. The District Court ruled adversely to Honeywell on all issues. Exh. A.

The doctrine of collateral estoppel "precludes the re-adjudication of an issue that has previously been litigated and adjudicated on the merits in another action between the same parties or their privies." *Copelan v. Copelan*, 294 Ga. 840, 841 (2014); *Minnefield v. Wells Fargo Bank, NA*, 331 Ga.App. 512, 515 (2015). "[C]ollateral estoppel does not require identity of the claim—so long as the issue was determined in the previous action and there is identity of the parties, that issue may not be re-litigated, even as part of a different claim." *Coffee Iron Works v. QORE*, 322 Ga.App. 137, 139 (2013); *Minnifield v. Wells Fargo Bank, N.A., supra.* The common and determinative issue in the federal litigation and this litigation is whether each of the issues raised in Honeywell's motion to dismiss were raised and decided when this case had been removed to federal court. There is mutual identity of parties. *Body of Christ Overcoming Church of God v. Brinson*, 287 Ga. 485, 486 (2010). There is clearly sufficient identity of the issues for purposes of collateral estoppel. *See Coffee Iron Works v. QORE*, 322 Ga.App. at 140; *Minnifield v. Wells Fargo Bank, N.A.*, 331 Ga.App. at 516.

This Court may consider federal orders issued in this case that were decided before remand. *See, Minnefield v. Wells Fargo Bank, NA, supra.*

## I.

## STANDARDS GOVERNING MOTIONS TO DISMISS

A motion to dismiss for failure to state a claim upon which relief may be granted should not be granted where the complaint shows that the plaintiff may be entitled to relief under a provable set of facts and could possibly introduce evidence within the framework of the complaint sufficient

to warrant a grant of the relief sought. *Love v. Fulton County Bd. Of Tax Assessors*, 311 Ga. 682 (2021). The allegations of the complaint must be accepted as true, "resolving any doubts in favor of [the plaintiff]." *Greene County School Dist. v. Circle Y Constr., Inc.*, 291 Ga. 111, 112 (2012). Affidavits submitted by the movant to contravene allegations of the complaint should be excluded. O.C.G.A. § 9-11-12(b). Defenses raised in an answer should not be considered. The motion, as filed by Honeywell, is a motion for summary judgment. Honeywell Brief, pp. 11, 12, 13.

## II.

## INTRODUCTION

Honeywell, in its motion to dismiss the complaint, does not see fit to quote a single paragraph of the complaint. Moreover, its descriptions of the averments in the complaint are far from accurate. Most notably, Honeywell states repeatedly that the City seeks only punitive damages against Honeywell. Honeywell Brief, pp. 14, n.4, 24, 31. This repeated assertion by Honeywell raises a question: Did the writer of its brief read the complaint? If that writer did carefully read the complaint, was the writer therefore seeking to mislead this Court?

The averments of the complaint establish how inaccurate are Honeywell's descriptions of what is and is not in the complaint:

> 99.
> As a result of the actions of Defendants, property of the City of Brunswick has been damaged and reduced in value.
>
> . . .
> 101.
> The actions of Defendants have interfered with the value, use and enjoyment of property of the City of Brunswick. The properties of the City of Brunswick have been poisoned and contaminated.
>
> . . .
> 105.
> Defendants' fault in this case is indivisible. Plaintiff's injury and damage in

-3-

this case are indivisible.

106.

Defendants are jointly and severally liable to Plaintiff for the full amount of Plaintiff's damages.

.   .   .

115.

The City of Brunswick was and is specially damaged by Defendants' continuing trespasses.

116.

Because of Defendants' continuing trespasses, Defendants are liable to the City of Brunswick in dollar amounts to be determined by the enlightened conscience of the jury.

.   .   .

121.

The continuing unpermitted presence and spread of Defendants' pollution at and about property of the City of Brunswick unreasonably and substantially interferes with the City's use and enjoyment of its property.

122.

Defendants' continuing failure and refusal to permanently remove their pollution from property of the City of Brunswick unreasonably and substantially interferes with the City's use and enjoyment of its property.

123.

The City of Brunswick is entitled to the full use and enjoyment of its property free from the Defendants' continuing nuisances.

124.

Defendants' continuing nuisances cause the City of Brunswick hurt, inconvenience and damage within the meaning of O.C.G.A. § 41-1-1.

.   .   .

129.

The rental or use value of property of the City of Brunswick is reduced by Defendants' continuing abatable nuisances.

130.

The City of Brunswick is specially damaged by the loss of rental or use value of its property, by its annoyance, aggravation and inconvenience, by its loss of use and enjoyment, and by its lawsuit expenditures including attorney's fees and expenses, resulting from Defendants' maintenance of the nuisances.

131.

Defendants are liable to the City of Brunswick in dollar amounts to be determined by the enlightened conscience of the jury.

Complaint, pp. 20, 21, 23-25.

This is an action seeking recovery of actual and punitive damages, plus expenses of litigation. The City does not seek equitable relief or any modification of the U.S.E.P.A. Order. Honeywell's thirty-one-page brief erroneously seeks to remold the complaint.

### III.

### THE CITY'S CLAIMS FOR MONETARY DAMAGES ARE NOT BARRED BY CERCLA OR THE ORDER IMPOSED UPON HONEYWELL BY U.S.E.P.A.

Honeywell writes at length about its efforts to clean up its own highly-polluted property, as compelled by the United States Environmental Protection Agency, but fails to disclose the central fact:

The City does not own any property within the EPA-designated "Superfund Site." Honeywell does. This lawsuit has nothing to do with the property over which the U.S.E.P.A. has asserted jurisdiction.

Moreover, Honeywell attaches to its motion the Order that it is under to clean up its pollution at the "Site," but strangely does not include Appendix C of the Order. Appendix C is a plat that identifies the boundaries of the "Site." The Consent Decree provides:

"Site" shall mean the LCP Chemicals Superfund Site, located at 4125 Ross Road in Brunswick, Glynn County, Georgia, and depicted generally on the map attached at *Appendix C*. The Site has been organized into three operable units (OUs): OU1, the LCP Chemicals marsh; OU2, the Site's groundwater, including the surface and subsurface soil of a former mercury cell building area; and OU3, the remaining uplands, excluding the mercury cell building area.

U.S.D.C. Dkt. 26, p. 7. A copy of Appendix C is attached. Exh. D.

-5-

Honeywell further fails to disclose relevant allegations of the complaint:

96.

Defendants and U.S. E.P.A. have defined the boundaries of the site subject to remediation under the Comprehensive Environmental Response and Liability Act, 42 U.S.C. § 9601, et seq. The property within this site is referred to as the Allied/LCP CERCLA Site as shown of Exhibit C to this Complaint.

97.

Property, waters and marshland outside the area of the Allied/LCP CERCLA Site are not part of a CERCLA superfund site.

98.

Defendants has polluted land, water and marshland outside the boundaries of the Allied/LCP CERCLA Site.

Complaint, p. 20.

Honeywell also fails to note that the City is not seeking any equitable relief against Honeywell, only monetary damages. This suit in no way challenges the Order of the E.P.A.

Honeywell's arguments regarding CERCLA and efforts to modify a CERCLA consent order are therefore irrelevant. Honeywell cites not a single case that holds that the existence of a CERCLA site grants a polluter immunity from liability for damages for harm done to owners of property outside the boundaries of the a Superfund Site and ignores controlling authority.

The Supreme Court has confirmed that claims for compensatory damages of the nature sought by the City are not pre-empted by CERCLA. *Atlantic Richfield Company v. Christian,* 590 U.S. 1, 23 (2020) ("Atlantic Richfield remains potentially liable under state law for compensatory damages, including loss of use and enjoyment of property, diminution of value, incidental and consequential damages, and annoyance and discomfort.")

Honeywell's arguments in this regard provide no support for its motion to dismiss the City's complaint for failure to state a claim.

-6-

Moreover, Honeywell fails to even cite or attempt to distinguish the following provisions of

the CERCLA statute:

### § 9614. Relationship to other law

(a) Additional State liability or requirements with respect to release of substances within State

Nothing in this chapter shall be construed or interpreted as preempting any State from imposing any additional liability or requirements with respect to the release of hazardous substances within such State.

42 U.S.C.A. § 9614(a).

### § 9652. Effective dates; savings provisions

(d) Nothing in this chapter shall affect or modify in any way the obligations or liabilities of any person under other Federal or State law, including common law, with respect to releases of hazardous substances or other pollutants or contaminants. The provisions of this chapter shall not be considered, interpreted, or construed in any way as reflecting a determination, in part or whole, of policy regarding the inapplicability of strict liability, or strict liability doctrines, to activities relating to hazardous substances, pollutants, or contaminants or other such activities.

42 U.S.C.A. §9652(d).

A similar provision is included in E.P.A.'s Order:

7. **Compliance with Applicable Law**. Nothing in this CD limits SDs' obligations to comply with the requirements of all applicable federal and state laws and regulations. SDs must also comply with all applicable or relevant and appropriate requirements of all federal and state environmental laws as set forth in the ROD and the SOW. The activities conducted pursuant to this CD, if approved by EPA, shall be deemed to be consistent with the NCP as provided in Section 300.700(c)(3)(ii) of the NCP.

U.S.D.C., Dkt. 16, p. 8.

Honeywell is not immune from liability in this Court for actual and punitive damages for

harm done to property lying outside the boundaries of the Superfund Site. Its motion should be

denied.

## IV.

### HONEYWELL'S ARGUMENTS ON THE ISSUE OF ABATABILITY DO NOT SUPPORT GRANT OF ITS MOTION

The complaint avers:

125.

Defendants' failure and refusal to permanently abate their continuing nuisances and damage is continuance or maintenance of the nuisance.

126.

Defendants' nuisances are continuing and abatable.

Complaint, p. 25.

At this stage, these allegations must be "accepted as true." *Williams v. Dekalb County*, 308 Ga. 265, 270 (2020).

Honeywell ignores these allegations and controlling authority from the Georgia Supreme Court that addresses the issue of whether a continuing nuisance must be abatable. The issue of whether or not a nuisance or trespass is abatable is an issue as to whether or not a court should grant injunctive relief. Moreover, Honeywell conflates two distinct issues that are not synonymous: 1) Whether a nuisance is abatable; 2) Whether a particular defendant can be enjoined to abate the nuisance. *See* Honeywell Brief, pp. 3, 22-25.

An abatable nuisance is one that can be diminished. *Beatty v. Washington Metropolitan Area Transit Authority*, 860 F.2d 1117, 1124-1125 (D.C. Cir. 1988) ("To assume that a nuisance is abatable only if it can be completely terminated or removed does violence to the law of nuisance."). The issue of whether a nuisance is abatable is a question of fact for the trier of fact. *State of Georgia v. City of East Ridge*, 949 F.Supp. 1571, 1583 (N.D. Ga. 1996).

-8-

Generally, nuisances are classified as "abatable" or "permanent." An "abatable" nuisance is one where the harm to a plaintiff's property "results from some minor feature of construction or management" or "from an improper and unnecessary method of operation," which can "be averted at slight expense" or readily enjoined. *Forrister*, 289 Ga. at 333-334 (2), 711 S.E.2d 641 (citations and punctuation omitted). A "permanent" nuisance is "one whose character is such that, from its nature and under the circumstances of its existence, it presumably will continue indefinitely." *Id.* at 333 (2), 711 S.E.2d 641. Determining whether a nuisance is abatable or permanent will typically dictate "the manner in which the statute of limitations will be applied." *Id.*

Here, Wise asserted claims against Appellees for both inverse condemnation by abatable nuisance and inverse condemnation by permanent nuisance. However, as noted above, this appeal concerns only Wise's claim for inverse condemnation by permanent nuisance, so we will limit our analysis to when the statute of limitation starts to run on the permanent nuisance claim. *See* OCGA § 9-3-30 (a) ("[a]ll actions for trespass upon or damage to realty shall be brought within four years after the right of action accrues").

*Wise Business Forms, Inc., v. Forsyth County*, 317 Ga. 636, 640-641 (2023).

The fact that a nuisance is deemed abatable means that it is not permanent. However, as recognized in *Wise*, **continuing nuisances can be both continuing and permanent**. *Wise Business*, *supra*, 642. In those cases, the injured party has an election of remedies:

In other permanent nuisance cases, the harm to the plaintiff's property is not "observable" to the plaintiff until later—sometimes years later.

. . .

In such cases, "a separate action lies for each injury thus occasioned, and the statute begins to run" from "the time when the special injury is occasioned." *Id.* (*citing Athens Mfg. Co. v. Rucker*, 80 Ga. 291, 4 S.E. 885 (1887).

. . .

There are also cases, however, where the permanent nuisance causes multiple harms to a plaintiff's property—some of which are immediately observable upon the completion or construction of the nuisance and some of which are not observable until later—i.e., cases where the nuisance "is by its nature continuing" and "will continue indefinitely." *Cox v. Cambridge Square Towne Houses, Inc.*, 239 Ga. 127, 127-128, 236 S.E.2d 73 (1977).

. . .

The circumstances at issue in *Cox* were strikingly similar to those in the present case. The subject nuisance was "by its nature continuing;" the lawsuit arising out of this

-9-

> nuisance was "filed more than four years after the creation of the nuisance;" and "the dispute center[ed] around whether the action for damages [was] barred by the statute of limitations." *Cox*, 239 Ga. at 127, 236 S.E.2d 73. In *Cox*, the Court held that, where the subject nuisance "will continue indefinitely, the appellant has the right to elect to treat the nuisance as temporary and sue for all those damages which have occurred within the past four years, or he may elect to sue for all future damages as well and put an end to the matter." *Id.* at 128, 236 S.E.2d 73 (citation and punctuation omitted).

*Wise Business*, *supra*, 642 - 643. *See Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1016 n.29 (11th Cir. 2004) ("The fact that the [plaintiffs] prevented the defendants from coming onto the [plaintiffs'] property to clean up the debris does not prevent a finding of continuing nuisance").

This case asserts claims under Georgia law. Where decisions of the Georgia Supreme Court conflict, the more recent decision controls. *In re Irvin*, 254 Ga. 251, 256 (1985) (Hill, C.J., concurring); *Bitterman v. Atkins*, 217 Ga.App. 652, 653 (1995) ("[T]he latest Supreme Court decision is our lodestar.")

The *Wise* decision sets forth the controlling law. However, Honeywell chooses to ignore *Wise* and the above-cited allegations of the complaint. Instead, it cites well-aged decisions that are no longer authoritative.

Honeywell's argument that its massive pollution is not abatable also conflicts with its self-praise about all it has done and is doing to remediate marsh that it polluted with tons of mercury and PCB's. Honeywell Brief, pp. 10-13. These actions should abate in part mercury in the Marshes of Glynn that otherwise could continue onto property of the City of Brunswick. Honeywell thus confirms that its pollution can be abated.

The issue of whether a nuisance can be abated provides no grounds for grant of Honeywell's motion.

-10-

## V.

### E.P.A. IS NOT AN INDISPENSABLE PARTY

Honeywell's argument that the E.P.A is a necessary party to this suit for monetary damages is founded upon a false premise. Honeywell argues that this is a lawsuit requiring affirmative remedial actions by Honeywell that are different than remedial actions ordered by the E.P.A. Such is not the case.

This is a case for damages and not for equitable relief. No claim is made against the U.S.E.P.A. There is no challenge to anything that E.P.A. has ordered. Honeywell cites no authority that holds that U.S.E.P.A. is a necessary party to a suit for monetary damages caused by a polluter that damages property outside of the boundaries of a Superfund Site.

Honeywell's suggestion that the U.S.E.P.A. is a necessary party is without merit.

## VI.

### THE STATUTE OF LIMITATIONS HAS NOT RUN

Honeywell's assertion that the City of Brunswick's claims are barred by the applicable statute of limitations is unsupported in either law or fact. Honeywell ignores inconvenient authority. Honeywell does not cite much less attempt to distinguish *Tucker v. Southern Wood Piedmont Co.*, 28 F.3d 1089, 1091 (11th Cir. 1994); *Smith v. Branch*, 226 Ga.App. 626 (1997); *Hoffman v. Atlanta Gas Light Co.*, 206 Ga.App. 727 (1992), or *Wise Business Forms, Inc., v. Forsyth County*, *supra*, controlling decisions that conflict with Honeywell's assertions.

The statute of limitations defense is an affirmative defense. Only when facts are not in dispute may the issue of a statute of limitations bar be disposed of on a motion to dismiss. *Guthrie v. Monumental Properties, Inc.*, 141 Ga App. 21 (1977).

-11-

The statute of limitations does not bar this action. The complaint sets forth classic claims for continuing nuisance and continuing trespass. The above citations and the allegations of paragraphs 98, 99, 112, 114, 121, 122, 124, 126 and 128 of the complaint establish that the statute of limitations is not a bar to the claims made by the City against Honeywell. The failure of Honeywell to cite any of the above-cited cases or these allegations of the complaint is telling.

*Wise Business Forms* was decided by the Supreme Court on September 19, 2023, shortly after the decision of the District Court. Exh. A. The *Wise* decision confirmed that each continuance of a continuing nuisance creates a new cause of action with a new commencement date for the statute of limitations. The *Wise* decision thereby clarified the uncertainty noted by Judge Hall, holding:

> In concluding that Wise's permanent nuisance claim was barred by OCGA § 9-3-30 (a), the Court of Appeals relied on a 2011 case from this Court, in which we explained that, when a nuisance is "considered permanent," a "plaintiff is allowed only one cause of action to recover damages for past and future harm," and "[t]he statute of limitation begins to run against such a claim upon the creation of the nuisance once some portion of the harm becomes observable." *Forrister*, 289 Ga. at 333 (2), 711 S.E.2d 641. However, this language from *Forrister* is imprecise because it does not explain that this standard will not apply in all permanent nuisance cases.
>
> Permanent nuisance cases vary in relation to when the alleged harm to a plaintiff's property caused by the nuisance becomes "observable" to the plaintiff. *Forrister*, 289 Ga. at 333 (2), 711 S.E.2d 641. In some cases, the harm to the plaintiff's property is immediately observable "upon the creation of the nuisance." *Id.* For example, where a landowner or governmental agency "erects a harmful structure such as a bridge or conducts a harmful activity such as opening a sewer that pollutes a stream," and it is immediately obvious that the structure or activity interferes with the plaintiff's interests, the plaintiff must file "one cause of action for the recovery of past and future damages caused by [the] permanent nuisance" within four years of the date the structure is completed or the harmful activity is commenced. *Id.* at 333-336 (2)–(3), 711 S.E.2d 641 (citing Restatement (Second) of Torts §§ 899 and 930). Phrased another way, where the "construction and continuance" of the permanent nuisance at issue is "necessarily an injury, the damage is original, and may be at once fully compensated. In such cases[,] the statute of limitations begins to run upon the construction of the nuisance." *City Council of Augusta v. Lombard*, 101 Ga. 724, 728, 28 S.E. 994 (1897).

In other permanent nuisance cases, the harm to the plaintiff's property is not "observable" to the plaintiff until later—sometimes years later. *Forrister*, 289 Ga. at 333 (2), 711 S.E.2d 641. This circumstance may arise when a structure is built or an activity is commenced that is not injurious in and of itself, but it becomes a "permanent and continuing nuisance" because of "some supervening cause[, like heavy rains], which produce[s] special injury at different periods." *Lombard*, 101 Ga. at 728, 28 S.E. 994. In such cases, "a separate action lies for each injury thus occasioned, and the statute begins to run" from "the time when the special injury is occasioned." *Id.* (citing *Athens Mfg. Co. v. Rucker*, 80 Ga. 291, 4 S.E. 885 (1887) ("So this court has held that recovery might be had for injuries [to a plaintiff's property] resulting from the erection and maintenance of a dam, in so far as such injuries occurred within four years preceding the bringing of the action, although the dam may have remained unchanged for twenty years.")).

There are also cases, however, where the permanent nuisance causes multiple harms to a plaintiff's property—some of which are immediately observable upon the completion or construction of the nuisance and some of which are not observable until later—i.e., **cases where the nuisance "is by its nature continuing" and "will continue indefinitely."** *Cox v. Cambridge Square Towne Houses*, 239 Ga. 127, 127-128, 236 S.E.2d 73 (1977). Pinpointing when the statute of limitation starts to run in such cases can be challenging—both for litigants and for factfinders. See *id.* (noting that confusion "has long existed as to when a nuisance, which is by its nature continuing, is considered 'permanent' ").

The circumstances at issue in Cox were strikingly similar to those in the present case. The subject nuisance was "by its nature continuing"; the lawsuit arising out of this nuisance was "filed more than four years after the creation of the nuisance"; and "the dispute center[ed] around whether the action for damages [was] barred by the statute of limitation." *Id.* at 127, 236 S.E.2d 73. In *Cox*, the Court held that, where the subject nuisance "will continue indefinitely, the appellant has the right to elect to treat the nuisance as temporary and sue for all those damages which have occurred within the past four years, or he may elect to sue for all future damages as well and put an end to the matter." *Id.* at 129, 236 S.E.2d 73 (citation and punctuation omitted).

In other words, under *Cox*, when a nuisance "is by its nature continuing," the plaintiff can elect to proceed in one of two ways. The first option would be to treat the nuisance as "temporary" and file a lawsuit to recover for "all those damages [or harms] which have occurred [to the plaintiff's property] within the past four years." *Cox*, 239 Ga. at 129, 236 S.E.2d 73. And, by implication, when the plaintiff elects to proceed in this manner and treats the nuisance as "temporary," if the continuing nuisance causes additional harms to the plaintiff's property in the future, the plaintiff can file another lawsuit seeking recovery for these additional harms, as long as the

-13-

plaintiff initiates the lawsuit within four years from the occurrence of that future harm. *See Lombard*, 101 Ga. at 727, 28 S.E. 994 (in these cases, **"every continuance of the nuisance is a fresh nuisance, for which a fresh action will lie,"** and the cause of action "accrues at the time of such continuance" and "the statute of limitations runs only from the time of such accrual"). Alternatively, the plaintiff can elect to file a single lawsuit to recover for harms that occurred to the plaintiff's property within the past four years and for all prospective harms that might occur to the plaintiff's property in the future. *See Cox*, 239 Ga. at 127-129, 236 S.E.2d 73. And, if the plaintiff elects to proceed in this manner, the plaintiff is limited to seeking those damages in one lawsuit. *See id.*

*Wise Business, supra,* 641- 644 (emphasis added).

The *Wise* decision confirms that the City's claims are not barred by the statute of limitations.

Moreover, the running of any statute of limitations has also been tolled by a federal statute.

42 U.S.C. § 9658 provides in pertinent part:

**§ 9658. Actions under State law for damages from exposure to hazardous substances**

**(a) State statutes of limitations for hazardous substance cases**

   **(1) Exception to State statutes**

In the case of any action brought under State law for personal injury, or property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility, if the applicable limitations period for such action (as specified in the State statute of limitations or under common law) provides a commencement date which is earlier than the federally required commencement date, such period shall commence at the federally required commencement date in lieu of the date specified in such State statute.

   **(2) State law generally applicable**

Except as provided in paragraph (1), the statute of limitations established under State law shall apply in all actions brought under State law for personal injury, or property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility.

-14-

**(4) Federally required commencement date**

**(A) In general**

> Except as provided in subparagraph (B), the term "federally required commencement date" means the date the plaintiff knew (or reasonably should have known) that the personal injury or property damages referred to in subsection (a)(1) were caused or contributed to by the hazardous substance or pollutant or contaminant concerned.

42 U.S.C. § 9658(a)(1), (2), (4)(A).

The Court in *Freier v. Westinghouse Elec. Corp.*, 303 F.3d 176 (2d Cir. 2002) analyzed this statute, referring to it as the "federally required commencement date" and "FRCD." *Id.* at 184. The Court held:

> The discovery-of-cause standard set by the FRCD, defined as "the date the plaintiff knew (or reasonably should have known) that the personal injury" was caused or contributed to by the hazardous materials, focuses on knowledge, actual or imputed, not on suspicion. **Mere suspicion, whatever its reasonableness, cannot be equated with knowledge; and the fact that a claimant had only a "reasonable suspicion" that the injuries were caused by the Landfill is not a sufficient basis for ruling as a matter of law that the claimant "reasonably should have** *known***"** (emphasis added) that the injuries were caused by the Landfill. Accordingly, the district court applied an erroneous legal standard in interpreting the FRCD.

*Id.*, 205 (emphasis added).

Honeywell does not address the above-cited statutory and case law that vitiates its arguments regarding the statute of limitations.

Under the facts as pled in the complaint, the statute of limitations has not run. 42 U.S.C. § 9658.

-15-

## CONCLUSION

Honeywell's motion to dismiss should be denied.

Respectfully submitted,


*s/ John C. Bell, Jr.*
John C. Bell, Jr. (Ga. Bar No. 048600)
Pamela S. James (Ga. Bar No. 389015)
THE BELL FIRM
PO Box 1547
Augusta, GA 30903-1547
(706) 722-2014
John@bellfirm.net
Pam@bellfirm.net

Robert P. Killian (Ga. Bar No. 417575)
KILLIAN LAW FIRM LLC
47 Professional Drive
Brunswick, GA  31520
(912) 263-9520
bob@killianlawfirm.com

Brian Donald Corry (Ga. Bar No. 165557)
McQUIGG SMITH & CORRY
504 Beachview Drive Suite 3D
Saint Simons Island, GA 31522
(912) 638-1174
brian@msclawga.com

Counsel for Plaintiff

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing **PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT HONEYWELL'S MOTION TO DISMISS,** upon all counsel of record by electronic mail as follows:

Mark D. Johnson, Esq. {*mjohnson@gilbertharrelllaw.com*}
Amber M. Carter, Esq. {*acarter@gilbertharrelllaw.com*}
Gilbert, Harrell, Sumerford & Martin, P.C.
777 Gloucester Street - Suite 200
Brunswick, Georgia 31520

Benjamin H. Brewton, Esq. {*bbrewton@balch.com*}
T. Joshua R. Archer, Esq. {*jarcher@balch.com*}
Balch & Bingham LLP
801 Broad Street - Suite 800
Augusta, Georgia 30901

Brian D. Israel, Esquire {*brian.israel@arnoldporter.com*}
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001-3743

This 10th day of July, 2024.

_s/ John C. Bell, Jr._
John C. Bell, Jr.
Counsel for Plaintiff

Exhibit 7

FILED - JA
GLYNN CO. CLERK'S OFFICE
Filed 7/16/2024 12:45 PM
Accepted 7/16/2024 4:04 PM
CASE # CE22-01086

CLERK SUPERIOR COURT

## IN THE SUPERIOR COURT OF GLYNN COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| CITY OF BRUNSWICK, by and through its MAYOR AND BOARD OF COMMISSIONERS,<br><br>    Plaintiff,<br><br>v.<br><br>HONEYWELL INTERNATIONAL, INC. f/k/a ALLIED CHEMICAL CORPORATION and as ALLIEDSIGNAL, INC., and GEORGIA POWER COMPANY,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. CE22-01086<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### DEFENDANT GEORGIA POWER COMPANY'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR MORE DEFINITE STATEMENT

Defendant Georgia Power Company ("Georgia Power") respectfully submits this Reply Brief in support of its Motion to Dismiss Plaintiff City of Brunswick's (the "City") claims against Georgia Power or, in the alternative, to direct the City to provide a more definite statement of its allegations and claims specifically against Georgia Power.

### I.    INTRODUCTION

The City's Brief in Opposition to Georgia Power's Motion (the "Opposition") fails to respond, or at least to respond substantively, to most of Georgia Power's arguments for dismissal of the City's claims against it, including that the City lacks standing to bring this action. Combined with the Complaint's skeletal allegations against Georgia Power, the City's Opposition clearly highlights the fact that evidence cannot be introduced within the framework of the Complaint sufficient to warrant a grant of the relief the City seeks against Georgia Power.

The Complaint's only allegation against Georgia Power is that Plant McManus "*was* coal-fired and *emitted* mercury" that migrated onto and harmed property allegedly owned by the City. There is no dispute Plant McManus ceased using coal in 1972 and any alleged "emi[ssion of] mercury" from Plant McManus could not have occurred after 1972. Despite filing its Complaint, briefing its motion in the federal district court to remand this action to this Court, briefing before the Eleventh Circuit, and briefing on Georgia Power's Motion to Dismiss, the City has never explained how or where the Complaint alleges Georgia Power's method of operating Plant McManus more than 52 years ago produced an injury to the City's property within the four years prior to the filing of the Complaint.

The City's Complaint fails to state a claim upon which relief can be granted and should be dismissed in its entirety, because (1) it fails to allege any facts supporting its legal conclusion that the City owns the property forming the basis of its nuisance and trespass claims; (2) Georgia law clearly establishes the City's claims against Georgia Power are for a permanent nuisance, and not a continuing or abatable nuisance, and are thus barred by the statute of limitations; and (3) even if the City's claims against Georgia Power were for a continuing or abatable nuisance, the City fails to allege, and cannot allege, it gave Georgia Power the legal right to enter onto the City's property to abate the nuisance, which is an essential element of the City's claim.

## II.    ARGUMENT AND CITATION OF AUTHORITY

### A.    The Court Should Dismiss the City's Claims Against Georgia Power.

#### 1.    The City Lacks Standing to Bring Its Claims.

In its Motion, Georgia Power showed the City does not have standing to bring its nuisance and trespass claims because it is not the owner of the property allegedly damaged by the alleged

24105461.1

trespass and nuisance.[1] *See Brown Inv. Group, LLC v. Mayor and Aldermen of City of Savannah*, 289 Ga. 67, 68 (2011); *Reidling v. City of Gainesville*, 280 Ga. App. 698, 704 (2006). In its Opposition, the City does not show, or even contend, it is the recipient of "a valid Crown or state grant which explicitly conveyed" the allegedly affected property to the City, such that it might have standing. O.C.G.A. § 52-1-2. Rather, the City merely contends its bald allegation that it owns the property must be accepted as true for purposes of Georgia Power's Motion. *See* Opposition at 3.

"In considering a motion to dismiss for failure to state a claim, the trial court is required to take the factual allegations in the complaint as true. But in the absence of any specifically pled facts to support … a legal conclusion couched as fact, the trial court [is] not required to accept this conclusion as true." *Mabra v. SF, Inc.*, 316 Ga. App. 62, 65 (2012) (citation omitted). The City's assertion that it owns the property affected by the alleged nuisance and trespass is a legal conclusion. *See Amnay v. Select Portfolio Servicing, Inc.*, No. 22-13128, 2023 WL 3944869, *2 (11th Cir. June 12, 2023) (holding district court was not required to accept as true plaintiff's legal conclusion in complaint about ownership of property at issue); *Kendall v. Thaxton Road LLC*, 443 Fed. Appx. 388, 390 (11th Cir. (Ga.) 2011) (holding plaintiff's allegation in complaint that he owned property allegedly contaminated by defendants was improper legal conclusion).

In light of Georgia law clearly providing "the State of Georgia [and not the City] owns the tidewaters bottoms up to the high water mark," the City was required to have specifically pled

---

[1] The City contends this argument "conflicts with" Georgia Power's statement in its Answer as to the City's allegation that it owns the subject property. *See* Opposition at 3. Georgia Power answered paragraph 6 of the Complaint by stating it lacks information sufficient to admit or deny the City's allegation that it owns the subject property, because Georgia Power in fact does not know how the City can claim ownership of property that Georgia law clearly provides belongs to the State, and therefore Georgia Power denied the City's allegation. There is no "conflict" in Georgia Power's position on this issue.

24105461.1

facts tracing its title to the allegedly affected property "back to an explicit conveyance thereof by a valid Crown or state grant." *Black v. Floyd*, 280 Ga. 525, 526 (2006) (punctuation omitted); *see also* O.C.G.A. §§ 52-1-2, 52-1-3(4). The City has not done so. The Court is therefore not bound to accept as true the City's legal conclusion that it owns the property.

Importantly, the Court cannot address the merits of the City's nuisance and trespass claims until it resolves the question whether the City has standing to bring those claims. *See New Cingular Wireless PCS, LLC v. Georgia Department of Revenue*, 303 Ga. 468, 470 (2018) (holding lower court should have addressed question of standing "prior to considering the merits, as the question of standing is a jurisdictional issue"). "[S]tanding is 'in essence the question of whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues,' and litigants must establish their standing to raise issues before they are entitled to have a court adjudicate those issues." *Sherman v. City of Atlanta*, 293 Ga. 169, 172 (2013) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)) (punctuation omitted).

Because the City has alleged no facts and produced no evidence showing it owns the property allegedly damaged by the alleged trespass and nuisance, the City has failed in its burden to establish its standing to bring this action. Accordingly, the Court may not reach the merits of the City's claims against Georgia Power, and those claims should be dismissed in their entirety.

### 2. Collateral Estoppel Does Not Apply to Bar Georgia Power's Arguments.

The City contends Georgia Power's other arguments for dismissal – that the City's claims are barred by the statute of limitations and the City cannot establish an essential element of its claims – are precluded by collateral estoppel because the federal district court disagreed with these arguments in its order remanding this action to this Court. *See* Opposition at 1-2, 4. The district

court's findings in its remand order, however, do not constitute an adjudication on the merits of Georgia Power's arguments that can support the City's collateral estoppel argument.

"The doctrine of collateral estoppel, also known as issue preclusion, prevents the re-litigation of an issue actually litigated and adjudicated on the merits between the same parties or their privies." *York v. RES-GA LJY, LLC*, 300 Ga. 869, 877 (2017). The district court's remand order makes clear it could not and did not adjudicate the merits of this case, including the merits of Georgia Power's arguments that the City now contends are barred by collateral estoppel, in issuing its remand order. *See* Opposition Ex. A at 17, 22. As to Georgia Power's statute of limitations argument, the district court stated, "[a]t this stage of the proceedings, the Court must resolve all doubts in favor of remand" and "there is a possibility the statute of limitations does not bar the City's claim against Georgia Power." *Id.* at 21. As to Georgia Power's argument that the City cannot establish an essential element of its claims, the district court stated it "does not decide at this time whether the 'right to abate' is an essential element of nuisance and trespass claims." *Id.* at 25.

Because the district court did not adjudicate the merits of Georgia Power's arguments in its remand order, collateral estoppel does not apply to bar Georgia Power from making those arguments before this Court. *See Medisys Health Network, Inc. v. Local 348-S United Food & Commercial Workers, AFL-CIO, CLC*, 337 F.3d 119, 124 (2nd Cir. 2003) ("any issues that the district court decided incident to remand may be relitigated in state court") (citation omitted); *Lewis v. Lycoming*, 876 F. Supp. 2d 497, 499 (E.D. Pa. 2012) ("a remand order does not have the requisite finality for issue preclusion to apply"); *Sciborski v. Pacific Bell Directory*, 205 Cal. App. 4th 1152, 1160 (2012) ("Upon remand, a district court's order on a removal issue is generally not accorded collateral estoppel effect."); *see also Pollard v. Queensborough National Bank & Trust*

*Company*, 356 Ga. App. 223, 230 (2020) (holding plaintiff's claims were not barred by collateral estoppel by virtue of another court's denial of plaintiff's motion for TRO, which involved consideration of likelihood of success on merits of plaintiff's claims, because court did not actually adjudicate merits of claims in ruling on TRO).

As the U.S. Supreme Court has held, "it is only the forum designation that is conclusive" in a district court order remanding an action to state court. *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 647 (2006). The district court's remand order reflects only the court's determination that the City's claims and Georgia Power's defenses to those claims should be resolved in this Court. The City's collateral estoppel argument is therefore without merit.

3.      **The Statute of Limitations Bars the City's Claims**.

The City's Opposition fails to address, much less rebut, many of Georgia Power's arguments showing the Complaint alleges permanent, and not abatable, nuisance and trespass claims against Georgia Power that are barred by the statute of limitations. The Opposition also fails to address the fact that nowhere in the Complaint is there any allegation of harm to the City's property resulting from Georgia Power's decades-old conduct that occurred within the four years prior to filing this action. The City cannot possibly introduce evidence within the framework of the Complaint sufficient to warrant a grant of the relief it seeks on its nuisance and trespass claims, and those claims should be dismissed.

a)      **The City's Complaint Alleges a Permanent Nuisance and Trespass Against Georgia Power.**

The City quotes extensively from *Wise Business Forms, Inc. v. Forsyth County*, 317 Ga. 636 (2023), which the City contends held "each continuance of a continuing nuisance creates a new cause of action with a new commencement date for the statute of limitations" and shows "the City's claims are not barred by the statute of limitations." Opposition at 5-7. The City does not

24105461.1

explain, however, how *Wise Business Forms* applies to the allegations in the City's Complaint or saves its claims against Georgia Power. In fact the City cannot do so because, again, the Complaint is devoid of any allegation that emissions of mercury from Plant McManus more than 50 years ago invaded property belonging to the City within the four years prior to its lawsuit.

Georgia Power explained in its initial Brief in support of its Motion that *Wise Business Forms* clarified the holding of *Oglethorpe Power Corp. v. Forrister*, 289 Ga. 331 (2011), to articulate the standards that determine when a permanent nuisance claim accrues. Georgia Power further explained why *Wise Business Forms*'s clarification of Georgia nuisance law is irrelevant in the present case – the Complaint does not allege Georgia Power did anything that became a continuing nuisance because it produced an injury to the City's property that was first observable within the four years prior to the filing of the Complaint. The Complaint's only allegation against Georgia Power is that Plant McManus "*was* coal-fired and *emitted* mercury" that migrated onto and harmed the City's property, which could not have occurred after 1972 when Plant McManus stopped using coal. Complaint ¶ 87. The City's Opposition completely fails to address Georgia Power's argument.

The City also fails to address Georgia Power's argument that the City's claims are permanent in nature because the nuisance allegedly created at Plant McManus—the emission of mercury resulting from the use of coal—did not result "from some minor feature of construction or management [of Plant McManus], so that it could be averted at slight expense" (*Forrister*, 289 Ga. at 334), or from improper maintenance or some other "improper and unnecessary method of operation" (*City of Atlanta v. Kleber*, 285 Ga. 413, 414 (2009)). Rather, the alleged emission of mercury resulting from using coal was an integral part and a "substantial and relatively enduring feature" of Plant McManus's original plan of construction as a coal-based plant and resulted from

the essential method of the Plant's operation from 1959 to 1972, and the alleged nuisance was therefore permanent in nature. *Forrister*, 289 Ga. at 334.[2]

**b)**      **The City's Permanent Nuisance and Trespass Claims Against Georgia Power Are Barred by the Statute of Limitations.**

In its initial Brief, Georgia Power explained Georgia's special rules governing nuisance claims against public utilities such as Georgia Power, including that a plaintiff asserting a permanent nuisance claim against a public utility must bring a single claim for all damages – past and future – within the four-year limitation period beginning when the harm first becomes observable. *See Forrister*, 289 Ga. at 333. The Georgia Supreme Court has explained that, "[i]f a plaintiff could sue a public utility each time the harm resulting from a permanent nuisance changed by degree, the rule requiring a plaintiff to bring one lawsuit for past and future damages within the applicable statute of limitation would be meaningless." *Id.* at 337.

The City's only response to this argument is that Georgia Power is not a public entity, for which the City cites only BLACK'S LAW DICTIONARY. *See* Opposition at 8-9. Under controlling authority from the Georgia Supreme Court, Georgia Power undisputedly is a public entity. *See Forrister*, 289 Ga. at 331, 333-34, 335 (repeatedly recognizing power plants are operated by "public utilities" and "provid[e] a necessary public service"); *Allied Chemical Corp. v. Georgia Power Co.*, 236 Ga. 548, 558 (1976) ("Georgia Power Company is duly organized as a public utility company under the laws of Georgia, holding exclusive franchise to furnish electric power

_____

[2] The City lists, but does not discuss, several cases that it contends show its claims against Georgia Power are not barred. *See* Opposition at 4. These cases are factually distinguishable because they all involved the continuous underground leakage and migration of the defendants' contaminants onto the plaintiffs' properties, including during the four-year period prior to the plaintiffs' filing their complaints. The leaks were abatable, and not permanent, nuisances because they resulted from improper maintenance and "an improper ... method of operation" that could be easily fixed and "averted at slight expense." *Forrister*, 289 Ga. at 334. Here by contrast, the City's Complaint does not allege Georgia Power emitted mercury from Plant McManus that migrated onto and damaged City property within the four years prior to the Complaint.

in a major portion of the State of Georgia."); *Georgia Power Co. v. Georgia Public Service Commission*, 231 Ga. 339, 339 (1973) ("Georgia Power Company [is] a public utility").

The four-year limitations period began at the latest in 1972 when Plant McManus stopped using coal, and it expired four years later in 1976. The City fails to show otherwise. The City's nuisance and trespass claims are therefore barred by the statute of limitations and should be dismissed.

<p style="text-align:center"><strong>c)</strong>    <strong><u>The Federal Discovery Rule Does Not Save the City's Claims.</u></strong></p>

The City contends its claims are saved by 42 U.S.C. § 9658(b)(4)(A), which commences the limitations period when "the plaintiff knew (or reasonably should have known) that the ... property damages ... were caused or contributed to by the pollutant ...." 42 U.S.C. § 9658(b)(4)(A). Georgia Power explained in detail in its initial Brief why this statute does not save the City's claims. In response, the City merely quotes the statute and an opinion from the Second Circuit. *See* Opposition at 8.

The City ignores, however, the substantial evidence set forth in Georgia Power's initial Brief, as well as the countless allegations in the Complaint, showing the City reasonably should have known more than four years prior to filing its Complaint that its alleged property damage might have been caused by the emission of mercury from Plant McManus when it used coal prior to 1972. Because the City did not file its Complaint until more than four years after it reasonably should have known of its cause of action against Georgia Power, the City's claims are barred by the statute of limitations and should be dismissed.

<p style="text-align:center"><strong>4.</strong>    <strong><u>Even if the City's Claims Against Georgia Power Were for Continuing Nuisance/Trespass, the City Cannot Establish an Essential Element of Its Claims.</u></strong></p>

The City also ignores Georgia Power's argument that, even if the nuisance of which the City complains was abatable and continuing, and not permanent, the City cannot possibly establish

<p style="text-align:center">9</p>

a cause of action against Georgia Power because the City cannot allege it granted Georgia Power the legal right to abate the alleged nuisance on the City's property, which is an essential element of the City's claims against Georgia Power. Instead, the City again extensively quotes irrelevant excerpts from *Wise Business Forms*. *See* Opposition at 9-10.[3] As explained in Georgia Power's initial Brief, the City's failure and inability to allege Georgia Power had the legal right to enter City property to abate the alleged continuing nuisance/trespass is fatal to its claims, and they should be dismissed.

**B.      In the Alternative, the Court Should Order the City to Provide a More Definite Statement of Its Claims Against Georgia Power.**

As Georgia Power explained in its initial Brief, the Complaint refers to "Defendants" collectively 46 times without any distinction, making it impossible to determine whether a given allegation is directed towards Georgia Power or Honeywell. The City contends Georgia Power is not entitled to a more definite statement of the allegations against it because it should assume every allegation of the Complaint made against "Defendants" collectively is made against Georgia Power specifically. *See* Opposition at 12.

The Complaint's first mention of Georgia Power (other than the jurisdictional allegation in paragraph 4) appears in paragraph 87, and the last mention of Georgia Power appears in paragraph 89. Every factual allegation prior to paragraph 87 is made only against Honeywell and relates to its operations at the Brunswick Plant Site, and every factual allegation after paragraph 89 is made

---

[3] The City cites *Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1016 n.29 (11th Cir. 2004), which affirmed a jury verdict finding a continuing nuisance and stated in a footnote, "[t]he fact that the [plaintiffs] prevented the defendants from coming onto the [plaintiffs'] property to clean up the debris does not prevent a finding of continuing nuisance." Opposition at 10-11. This one sentence from a footnote that was not essential to the *Parker* court's affirmance of the jury's verdict does not negate the holdings of the cases on which Georgia Power relies in its initial Brief showing the right to abate is an essential element of the City's claim.

against "Defendants" collectively and without distinction. One such factual allegation against "Defendants" is in paragraph 98, which states, "Defendants has [sic] polluted land, water and marshland outside the boundaries of the Allied/LCP CERCLA [Brunswick Plant] Site." The following paragraphs then allege the City's property was damaged as a result of "the actions of Defendants." Complaint ¶¶ 99-101. Not a single allegation in the Complaint relating to "the Allied/LCP CERCLA Site," however, is made against Georgia Power. The only allegations specifically against Georgia Power relate to its activities at Plant McManus, which ended in 1972. These are just a few examples of allegations the Complaint makes against "Defendants" collectively that cannot possibly apply to Georgia Power. The burden of parsing the Complaint's allegations against "Defendants" to fathom which are made against Georgia Power does not lie with Georgia Power, but with the City. *See Bush v. Bank of New York Mellon*, 313 Ga. App. 84, 91 (2011).

The City also argues Georgia Power is not entitled to a more definite statement because it has already answered the Complaint. *See* Opposition at 11. Georgia Power responded to 123 of the Complaint's 134 paragraphs by stating it lacks knowledge or information sufficient to admit or deny the allegations. Many of such responses were necessitated by the fact Georgia Power has no idea whether the allegations are directed to Georgia Power or to Honeywell, how Georgia Power can possibly be liable for an alleged continuing nuisance or trespass, or how (as the City alleges) the City was damaged within the four years prior to its Complaint by something Georgia Power did more than 50 years ago. Georgia Power cannot possibly proceed with discovery "to sort out facts," as the City argues, without knowing what conduct it is defending.

The above discussion and the discussion in Georgia Power's initial Brief demonstrate the Court should dismiss the City's claims against Georgia Power in their entirety. If the Court does

11

not do so, however, Georgia Power is entitled to a more definite statement of the City's allegations specifically against Georgia Power.

## III.    **CONCLUSION**

For the foregoing reasons and those in Georgia Power's initial Brief, Georgia Power respectfully requests the Court to dismiss the City's claims against Georgia Power in their entirety or, in the alternative, to direct the City to provide a more definite statement of its claims specifically against Georgia Power.

Respectfully submitted this 16th day of July, 2024.

<div align="right">

*/s/ Benjamin H. Brewton*
Benjamin H. Brewton
Georgia Bar No. 002530
T. Joshua R. Archer
Georgia Bar No. 021208
**Balch & Bingham LLP**
801 Broad Street, Suite 800
Augusta, Georgia 30901
Telephone: (706) 842-3711
Fax: (866) 258-8984
bbrewton@balch.com
jarcher@balch.com

*Attorneys for Defendant Georgia Power Company*

</div>

12

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and service will be perfected upon the following this 16th day of July, 2024:

John C. Bell, Jr.
Pamela S. James
The Bell Firm
P.O. Box 1547
Augusta, GA  30903

Brian D. Corry
McQuigg Smith & Corry
504 Beachview Drive
Suite 3D
St. Simons Island, GA  31522

Robert P. Killian
Killian Law Firm LLC
47 Professional Drive
Brunswick, GA  31520

Mark D. Johnson
Amber M. Carter
Gilbert Harrell Sumerford & Martin PC
777 Gloucester Street
Suite 200
Brunswick, GA  31520

Brian D. Israel
Arnold & Porter Kaye Scholer LLP
777 S. Figuera Strteet, 44th Floor
Los Angeles, CA 90017-5844

James L. Roberts IV
Roberts Tate, LLC
2487 Demere Road, Suite 400
Saint Simons Island, GA 31522

*/s/ Benjamin H. Brewton*
Benjamin H. Brewton
*Attorney for Defendant Georgia Power Company*

Exhibit 8

FILED - JA
GLYNN CO. CLERK'S OFFICE
Filed 9/13/2024 9:22 AM
Accepted 9/13/2024 9:26 AM
CASE # CE22-01086

*Rebecca g Walden*

CLERK SUPERIOR COURT

## IN THE SUPERIOR COURT OF GLYNN COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| CITY OF BRUNSWICK, by and through its MAYOR AND BOARD OF COMMISSIONERS, )<br><br>Plaintiff, )<br><br>v. )<br><br>HONEYWELL INTERNATIONAL INC., f/k/a ALLIED CHEMICAL CORPORATION and as ALLIEDSIGNAL, INC., and THE GEORGIA POWER COMPANY, )<br><br>Defendants. ) | CIVIL ACTION NO. <u>CE22-01086</u> |

---

### DEFENDANT HONEYWELL INTERNATIONAL INC.'S REPLY
### IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Congress passed the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) to promote "a single EPA-led cleanup effort rather than tens of thousands of competing individual ones." *Atl. Richfield Co. v. Christian*, 590 U.S. 1, 19 (2020). To that end, Congress enacted Section 122(e)(6), which mandates that once a "remedial investigation and feasibility study for a particular facility" has been initiated, "no potentially responsible party may undertake *any* remedial action at the facility unless such remedial action has been authorized by [EPA]." 42 U.S.C. § 9622(e)(6) (emphasis added).

Section 122(e)(6) resolves this case. The City claims that Honeywell is liable for damages because it has continued and maintained pollution allegedly emitted from a former chlor-alkalai chemical plant by failing to clean up that pollution from the City's property. *See* Compl. ¶¶ 111, 122. But the City does not dispute that the EPA has—over the last three decades—ordered and

overseen numerous cleanup activities at the facility. The City itself alleges that EPA ordered a remedial investigation and feasibility study for that exact facility in the 1990s. The City also does not dispute that Honeywell is a "potentially responsible party" under CERCLA for pollution at and from the facility. Finally, the City concedes that EPA has not authorized any remedial actions to be taken on the City property allegedly at issue in this case. *See* Compl. ¶¶ 96–98. It follows that Honeywell is squarely barred by Section 122(e)(6) from "undertak[ing] any remedial action," and that the City therefore cannot hold Honeywell liable under either federal or state law for its alleged failure to take such actions.

The City has only one response to this clear statutory language: It claims that its property falls outside the bounds of the LCP Superfund Site and that Section 122(e)(6) therefore does not apply. But that assertion is irrelevant and incorrect. Section 122(e)(6) applies to any "*facility*," and the statute expressly defines "facility" to encompass "any site or area where a hazardous substance has . . . come to be located." 42 U.S.C. § 9601(9). By definition, then, the "facility" under CERCLA includes the City property allegedly at issue in this case, where hazardous substances released historically from the plant allegedly have come to be located. The City offers no response to that statutory language.

Since the City has no alternative interpretation of Section 122(e)(6)—failing to quote or even cite that provision anywhere in its opposition—the City must instead resort to raising red herrings, attacking strawmen, and mistaking rhetoric for substance. The City claims (at 1, 3) that Honeywell has converted its motion to dismiss into a motion for summary judgment, but for support it points only at a document incorporated into the pleadings and a paradigmatic example of a judicially noticeable record. The City claims (at 1–2) that Honeywell is collaterally estopped by the district court's remand decision even though that court did not rule on any of Honeywell's

defenses. The City argues (at 11–15) that Honeywell seeks to dismiss the City's entire case as time-barred when Honeywell has made no such argument. And the City repeatedly claims that Honeywell failed to read its complaint or cite certain cases, even though every example it provides is demonstrably false. *Compare, e.g.*, Opp. at 3 (claiming Honeywell "does not see fit to quote a single paragraph of the complaint"), *with* MTD 4, 10, 11, 13, 14, 22, 23, 31 (quoting well over a dozen different paragraphs of the complaint); Opp. at 7 (claiming Honeywell "fails to even cite" 42 U.S.C. §§ 9614(a), 9652(d)), *with* MTD 8–9 (citing 42 U.S.C. §§ 9614(a), 9652(d)).

The Court should not be distracted by the City's efforts to sidetrack from the core arguments and caselaw raised in Honeywell's motion to dismiss. Put simply, the City cannot escape the clear mandate of CERCLA, and this Court should dismiss this case with prejudice.

## I. CERCLA Section 122(e)(6) Preempts the City's Claims in this Case.

The City does not contest that its entire suit is premised on the alleged insufficiency of Honeywell's efforts to clean up pollution originating from the plant. Nor does the City dispute that Section 122(e)(6) of CERCLA prohibits Honeywell from undertaking remedial actions "at the facility" other than those remedial actions expressly authorized by EPA. 42 U.S.C. § 9622(e)(6). Section 122(e)(6) thus resolves this case: If federal law bars Honeywell from undertaking any action to remediate alleged pollution on the City's property that originated from the plant unless and until such action is specifically authorized by EPA, then Honeywell cannot be held liable for failing to take that remedial action.

The City never cites Section 122(e)(6) in its opposition, but it appears to take the position (at 5) that Section 122(e)(6) does not apply because "[t]he City does not own any property within the EPA-designated 'Superfund Site.'" That assertion is both irrelevant and wrong.

First, Section 122(e)(6) applies regardless of the scope of a Superfund site. Georgia courts "are charged with interpreting [statutes] in accordance with the . . . plain meaning of the text at

3

issue." *AMG, LLC v. Georgia Dep't of Transportation*, 904 S.E.2d 10, 16 (Ga. Ct. App. 2024) (citation omitted). Section 122(e)(6) applies to any "facility," not to any "site." 42 U.S.C. § 9622(e)(6). "Facility," in turn, encompasses not only "any site," but also any "area where a hazardous substance has been deposited, stored, disposed of, or placed, or *otherwise come to be located*." *Id.* § 9601(9) (emphasis added). The City cannot dispute that its property falls within CERCLA's statutory definition of a "facility" when the entire premise of its suit is that alleged pollution from the plant has "come to be located" on its property. Tellingly, the City never quotes either Section 122(e)(6) or CERCLA's definition of a "facility" at any point in its brief.

Second, the City is also incorrect when it claims that the boundaries of the LCP Superfund Site are set and limited to the plant. As EPA explained when it formally listed the LCP Superfund Site on its National Priorities List, "the boundaries of the contamination [from a site] can be expected to change over time," and "in most cases, it may be impossible to describe the boundaries of a release with absolute certainty." *National Priorities List for Uncontrolled Hazardous Waste Sites*, 61 Fed. Reg. 30,510, 30,511 (June 17, 1996). Even after the remedial investigation and feasibility study discover more "about the source and the migration of the contamination," EPA explains that "the boundaries of the release need not be exactly defined." *Id.* EPA is thus careful to reiterate that Superfund sites are defined consistently with CERCLA's definition of a "facility": A "site consists of all contaminated areas within the area used to define the site, *and any other location to which contamination from that area has come to be located*." *Id.* (emphasis added). And though the site may be referred to "in terms of the property owned by [a] particular party, the site properly understood is not limited to that property (e.g., it may extend beyond the property

due to contaminant migration)." *Id.*[1] "As a legal matter, the site is not coextensive with that area, and the boundaries of the installation or plant [referenced in the National Priorities List] are not the 'boundaries' of the site." *Id.*

The City does not address this plain statutory language. It cites (at 6) the allegations in its complaint about the boundaries of the LCP Superfund Site, but those allegations reflect legal conclusions that are entitled to no weight at the motion to dismiss stage. *See Love v. Fulton Cnty. Bd. of Tax Assessors*, 859 S.E.2d 33, 41 n.7 (Ga. 2021). The City also cites (at 5) one paragraph and a map from the Consent Decree related to the LCP Superfund Site. Far from supporting the City, however, those sources make clear that the Site's boundaries are only "depicted *generally*" on the attached map, belying the City's suggestion that the Superfund Site is somehow strictly limited to the area depicted. Opp. 5 (emphasis added).

The City also claims (at 6) that Honeywell has not cited "a single case" protecting a defendant from claims asserted by "owners of property outside the boundaries of the a [sic] Superfund Site." But the City ignores the caselaw that Honeywell cited in its motion to dismiss. For example, in *Bartlett v. Honeywell International, Inc.*, the Second Circuit affirmed that "subjecting Honeywell to potential state tort law liability" for failing to perform certain remedial actions beyond what was required under a consent decree "would pose an obstacle to the accomplishment and execution of Congress's full purposes and objectives" under Section 122(e)(6) and CERCLA more broadly. 737 F. App'x 543, 551 (2d Cir. 2018). In that case, the state-law claims were brought by "residents and property owners living near a waste disposal area known as 'Wastebed 13' at the Onondaga Lake Superfund site." *Id.* at 545. Plaintiffs there

---

[1] As Honeywell demonstrated in its Motion to Dismiss, EPA could have drawn the lines delineating the cleanup in the Consent Decree to include the property referenced by the City in the Complaint, and the City had ample opportunity to persuade EPA to adopt a larger scope in its cleanup. *See* MTD at 24, 30.

complained of—among other things—nuisances and trespasses allegedly caused by dangerous conditions on Honeywell's property and the release of "toxic chemical particulates" that had "landed on Plaintiffs' real property and persons." *Bartlett v. Honeywell Int'l Inc.*, 260 F. Supp. 3d 231, 235 (N.D.N.Y. 2017). The location of the plaintiffs' property in relation to the geography of the Superfund site as described by EPA simply did not factor into the district court's and Second Circuit's decisions that the plaintiffs' claims were preempted by Section 122(e)(6) because plaintiffs had sought to subject Honeywell to state-law liability for not doing more than EPA had directed with regard to pollution from the site. As the Second Circuit put it: CERCLA barred plaintiffs' "attempts to impose state tort law liability on Honeywell for not going above and beyond" the terms of a "meticulously negotiated remediation of the . . . Superfund site which was the product of approximately two decades of legal and technical efforts." *Bartlett*, 737 F. App'x at 551. *See also* MTD 18–19 (citing cases in which courts found state-law claims to be preempted irrespective of the location of the plaintiffs' allegedly contaminated property).

Additionally, the City emphasizes (at 6) that it "is not seeking any equitable relief against Honeywell, only monetary damages," and that it "in no way challenges the Order of the E.P.A." But the nature of the relief is not dispositive—the preemption analysis remains the same. Courts have not applied a different preemption analysis under CERCLA depending on whether the plaintiffs seek equitable relief or damages. *See Bartlett*, 260 F. Supp. 3d at 239–43 (collecting cases); *see also York v. Northrop Grumman Guidance & Elecs. Co., Inc.*, No. 21-CV-03251, 2022 WL 3971283, at *3 (W.D. Mo. Aug. 31, 2022) (claims were preempted to the extent they sought "damages because Defendants failed to undertake 'remedial actions' that were not required by the settlements"). To hold otherwise would place defendants "in the unenviable position of being held liable for monetary damages because they are complying with an EPA-ordered remedy which

6

[defendants] have no power to alter without prior EPA approval." *New Mexico v. Gen. Elec. Co.*, 467 F.3d 1223, 1250 (10th Cir. 2006). And generally speaking, claims for damages are understood by courts as having the same regulatory impact on alleged polluters' behavior as requests for injunctive relief. *See, e.g.*, *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 498 n.19 (1987) (refusing to distinguish between damages and injunctive relief for purposes of conflict-preemption analysis because the threat of damages might compel a defendant "to adopt different or additional means of pollution control from those required by" federal law). Even without a request for injunctive relief, the City's claims are accordingly preempted under Section 122(e)(6) because they seek to hold Honeywell liable for not doing more than EPA has required to remediate pollution stemming from the plant.

For similar reasons, the City's protestation (at 6) that its lawsuit "in no way challenges" EPA's cleanup plan falls flat. EPA's cleanup plan involves a determination not only of which areas must be remediated (and how), but also which areas must not be remediated. By saying that Honeywell must clean up areas that EPA has decided not to order cleaned up, the City is directly challenging the scope of EPA's cleanup plan, putting Honeywell in an impossible position and posing an obstacle to the remediation of the site as contemplated by EPA. *See, e.g.*, *Town of Halfmoon v. Gen. Elec. Co.*, 105 F. Supp. 3d 202, 217–18 (N.D.N.Y. 2015) ("It is impossible for [the defendant] to comply with the requirements of the Consent Decree without subjecting itself to liability under state statutory and common law, which is an obstacle to the execution of" the remedial action ordered by EPA). Furthermore, by seeking to open up a new area for cleanup of pollution from the plant, the City's suit stands as an obstacle to Section 122(e)(6)'s purpose. Section 122(e)(6) operates as one of CERCLA's "crucial tools for ensuring an orderly cleanup of toxic waste" by preserving and reinforcing EPA's exclusive authority over remedial actions in

CERCLA cleanups. *Atl. Richfield*, 590 U.S. at 22.[2]  The City would disrupt that order by demanding that Honeywell violate federal law or else face liability under state law for obeying Section 122(e)(6).

Finally, the City invokes (at 7) CERCLA's saving clauses, but the City makes no effort to explain how or why those clauses apply here.  By their plain terms, they do not.  CERCLA's saving clauses preserve certain "state law claims relating to the underlying contamination," but they do not preserve claims "relating to remediation activities mandated by a consent decree." *Bartlett*, 260 F. Supp. at 242.  In this case, the City is not suing about the "underlying contamination" from the plant (which is unsurprising, given Georgia's statute of limitations and the decades that have passed since the plant stopped operation), but instead about the alleged *maintenance* and *continuance* of that contamination by Honeywell.  CERCLA's saving clauses—which are both limited to state-law liability for "the release" of hazardous substances—do not apply.  *See* 42 U.S.C. § 9614(a) (permitting states to impose "any additional liability or requirements with respect to the *release* of hazardous substances," not their continuation or maintenance (emphasis added)); *id.* § 9652(d) (similarly relating "to *releases* of hazardous substances or other pollutants or contaminants," not their continuation or maintenance (emphasis added)).  In any event, to the

---

[2] The City invokes (at 6) the U.S. Supreme Court's decision in *Atlantic Richfield*, but that decision supports Honeywell's position.  In that case, the Supreme Court affirmed the central importance of Section 122(e)(6) "for ensuring an orderly cleanup of toxic waste" and held that its prohibition on unauthorized remedial action extended even to "owners of polluted property" that had been contaminated by another party—thus requiring even those "innocent" landowners to seek and obtain EPA approval for remedial action on their property. *Atl. Richfield*, 590 U.S. at 18, 19, 22 (citation omitted).  The Court further explained that its ruling did not vitiate CERCLA's saving clauses because the defendant remained "*potentially* liable under state law," but the Court made clear that the only damages issue actually before the Court was whether the defendant was "also liable for the landowners' own remediation beyond that required under the Act." *Id.* at 23 (emphasis added).  The Court never considered the viability of state-law claims that challenged the sufficiency of a defendant's cleanup  and, to the contrary, affirmed that the saving clauses should not be read to "erase the clear mandate of § 122(e)(6)." *Id.*  Consistent with this balanced view, Honeywell has never argued that Section 122(e)(6) operates as a total bar that conflicts with or in any way supersedes CERCLA's saving clauses. *See* MTD 20–21.

extent there were any conflict between Section 122(e)(6)'s mandate and CERCLA's saving clauses, Section 122(e)(6) would prevail. *See Atl. Richfield*, 140 S. Ct. at 1355 ("[W]e have long rejected interpretations of sweeping saving clauses that prove 'absolutely inconsistent with the provisions of the act' in which they are found. Interpreting the Act's saving clauses to erase the clear mandate of § 122(e)(6) would allow the Act 'to destroy itself.'" (citations omitted)).

Section 122(e)(6) squarely precludes Honeywell from taking the remedial actions that the City argues Honeywell must take or otherwise face liability under state law. The City's claims are therefore preempted under federal law and the Court should accordingly dismiss the City's case.

## II. Honeywell Cannot Be Held Liable for Continuing a Nuisance or Trespass It Has Neither a Legal Right Nor a Legal Duty to Stop.

Georgia law establishes that a defendant cannot be held liable for a continuing tort unless that defendant "has a legal right, and is under a legal duty, to terminate the cause of the injury." *Southfund Partners v. City of Atlanta*, 472 S.E.2d 499, 502 (Ga. Ct. App. 1996). For good reason: "control over the cause of harm" is an "essential element" of a continuing tort claim, *Pers. Concierge MD, LLC v. SG Echo, LLC*, 890 S.E.2d 334, 341 (Ga. Ct. App. 2023) (citation omitted), and when a defendant lacks a legal right to stop a continuing tort from continuing, then that defendant has no control over the injury at issue. Here, Honeywell has neither a legal right nor a legal duty to "permanently remove [its] pollution from [the] property of the City," Compl. ¶¶ 111, 122, and thereby terminate the cause of the City's alleged injury, because Section 122(e)(6) bars Honeywell from taking any such remedial action. As a matter of state law, the City cannot hold Honeywell liable for letting a tort continue when federal law precludes Honeywell from doing anything else.

It is difficult to understand the City's response to these points. The City labors (at 8–10) to establish that the alleged pollution on its property "can be abated," Opp. 10, stressing that the

issue is one "of fact" and that, at this stage, the City's allegations about the pollution being abatable "must be 'accepted as true,'" Opp. 8 (citation omitted). Perhaps, but that misses the point entirely. At this stage, Honeywell is not disputing whether the alleged pollution is abatable—that is, whether the alleged pollution can be removed, mitigated, or otherwise "diminished" as a factual matter. Opp. 8. Even if the pollution *is* abatable, Honeywell cannot be held liable for *not* abating it when CERCLA deprives Honeywell of either a legal right or a legal duty to abate the alleged pollution. The question—which the City simply ignores—is purely *legal*: does Honeywell have a *legal* right or a *legal* duty to do what the City has alleged can be done? If the City is trying to suggest that its allegations with regard to that question "must be 'accepted as true,'" Opp. 8, that is incorrect. Courts are "under no obligation to adopt [the plaintiff's] legal conclusions" at the motion to dismiss stage. *Love*, 859 S.E.2d at 41 n.7 (quotation omitted). The City can no more dictate the elements of its state-law causes of action through its complaint than it can authoritatively interpret federal law.

The City also makes the puzzling assertion (at 8) that "[t]he issue of whether or not a nuisance or trespass is abatable is an issue as to whether or not a court should grant injunctive relief." The City cites no case in support of that proposition, and it is unclear what the City is even trying to say. But regardless of the connection between whether injunctive relief is proper and whether a continuing tort is abatable, the fact remains that Georgia law requires a defendant to have a legal right and a legal duty to abate a continuing tort before that defendant can be held liable for continuing the tort. Questions about damages and injunctive relief go to the relief that a plaintiff may seek, but the legal right and duty standard goes to the antecedent question of *liability*.[3]

---

[3] On the subject of damages, the City claims (at 5) that its suit "seek[s] recovery of actual and punitive damages" and chastises Honeywell for "seek[ing] to remold the complaint" by suggesting that the City is seeking only punitive damages. But the City's prayer for relief speaks for itself, and what it says is that the City wants this Court to "award punitive damages." Compl. pp. 26–27. Notably absent is any mention of

10

Finally, the City accuses Honeywell (at 10) of ignoring a recent Georgia Supreme Court decision and instead citing "well-aged decisions that are no longer authoritative." The City is correct that the "legal right and legal duty" standard has been a critical part of Georgia's continuing tort law for at least a century, *see, e.g.*, *City Council of Augusta v. Lombard*, 28 S.E. 994, 994 (Ga. 1897), but that standard retains its vitality to the present day, *see Parris v. 3M Co.*, 595 F. Supp. 3d 1288, 1341 (N.D. Ga. 2022); *see also, e.g.*, MTD 22–23 (citing other examples). Regardless, the Georgia Supreme Court did nothing to change the relevant standard through its recent decision in *Wise Business Forms, Inc., v. Forsyth County,* 893 S.E.2d 32 (Ga. 2023), which did not address this issue and instead centered on how Georgia's statute of limitations applies to different types of nuisance claims.

Honeywell has neither a legal right nor a legal duty to violate federal law, and it accordingly cannot be held liable for allegedly failing to remove pollution from the City's property.

## III. EPA Is a Required and Indispensable Party That Cannot Be Joined Because this Court Lacks Jurisdiction Over It.

The City does not appear to dispute that if Section 122(e)(6) prohibits Honeywell from taking any remedial actions on the City's property, then this case must be dismissed because it is missing a required and indispensable party that cannot be joined: EPA. *See* MTD 26–30; *see* O.C.G.A. § 9-11-19. Instead, the City recycles (at 11) its argument that Section 122(e)(6) does not bar Honeywell from taking actions "outside of the boundaries of a Superfund Site." But as explained above, that reading of Section 122(e)(6) runs headlong into its text, its purpose,

---

actual damages. Notably, too, the district court came to the same conclusion, and the City never challenged it. *See City of Brunswick v. Honeywell Int'l, Inc.*, No. 2:22-cv-132, 2023 WL 5671290, at *5, n.6 (S.D. Ga. Sept. 1, 2023) ("[U]nder each count and the prayer for relief, the City only seeks punitive damages. Therefore, the Court construes the City's Complaint as seeking punitive damages and not remediation costs." (citation omitted)).

CERCLA's structure, government regulations, and the uniform body of caselaw interpreting Section 122(e)(6). *See supra* pp. 3-9.

The City also argues (at 11) that "[t]his is a case for damages," and that the City has not filed "a lawsuit requiring affirmative remedial actions by Honeywell that are different than remedial actions ordered by the E.P.A." For purposes of joinder, however, none of that matters. Joinder turns not on the relief sought, but on whether the suit would either "[a]s a practical matter impair or impede [an absent party's] ability to protect [its] interest[s]" or "[l]eave any of the persons who are already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." O.C.G.A. § 9-11-19(a). Here, both of those prongs are easily met. Even if the City is exclusively seeking "damages," the only basis for those damages is Honeywell's alleged failure to take "affirmative remedial actions ... that are different than remedial actions ordered by the E.P.A." Opp. 11. As Honeywell explained in its motion to dismiss, that means that the City's suit contravenes several of EPA's interests, including its exclusive responsibility for formulating and implementing remedial plans, its decision *not* to remediate the City's property, and its interest in "a single EPA-led cleanup effort rather than tens of thousands of competing individual ones." *Atl. Richfield Co.*, 140 S. Ct. at 1353; *see* MTD 26–27. Likewise, as addressed above, the City's suit puts Honeywell in an impossible bind, caught between its federal-law obligation *not* to remediate the City's property and its alleged obligation to remediate the City's property under the City's view of state law. *See* MTD 27–28.

EPA is a required party to this suit—indeed, it is absolutely indispensable—but as the City does not dispute, EPA cannot be joined to this case because of its immunity. This Court should accordingly dismiss the case.

12

**IV.    The City's Claims Are Time-Barred to the Extent They Are Based on Actions Outside the Four-Year Statute of Limitations.**

Honeywell argued in its motion to dismiss that the City's claims "are time-barred *to the extent* that they are based on actions outside the four-year statute of limitations"—that is, "*to the extent* the City intends to bring claims for conduct that occurred before October 20, 2018." MTD 30, 31 (emphases added).

The City refuses to engage with that argument, choosing instead to battle (at 11–15) with a strawman of its own imagination: the never-made "assertion that the City of Brunswick's claims are barred by the applicable statute of limitations." Opp. 11.  Honeywell, however, has not argued that the City's claims are barred by the statute of limitations; Honeywell has argued only that the statute of limitations bars claims for any damages suffered more than four years before the City filed its suit.  Far from "conflict[ing]" with Georgia caselaw, *id.*, that argument is directly supported by every single case the City cites.  *See, e.g., Wise Bus. Forms*, 893 S.E.2d at 38 (explaining how a plaintiff suing over a continuing nuisance is limited to "harms that occurred to the plaintiff's property within the past four years"); *Smith v. Branch*, 487 S.E.2d 35, 38 (Ga. Ct. App. 1997) (same); *Hoffman v. Atlanta Gas Light Co.*, 426 S.E.2d 387, 390 (Ga. Ct. App. 1992) (same); *Tucker v. S. Wood Piedmont Co.*, 28 F.3d 1089, 1091 (11th Cir. 1994) (same).

The City also argues that Georgia's four-year statute of limitations has been tolled under the federal discovery rule, which tolls state statutes of limitations to "the date the plaintiff knew (or reasonably should have known) that [its] personal injury or property damages . . . were caused or contributed to by the hazardous substance or pollutant or contaminant concerned."  42 U.S.C. § 9658(b)(4)(A).  But that rule does not apply here because the City cannot seriously argue that it did not know and reasonably could not have known by October 20, 2018, that its property may have been contaminated by any alleged pollution originating from the LCP Superfund Site.

Long before 2018, the City was—at minimum—on notice of claims that its property may have been contaminated. As Honeywell explained in its motion to dismiss, CERCLA and related regulations include *dozens* of provisions specifically aimed at ensuring that members of communities near a Superfund site are kept informed about pollution and that they have extensive opportunities to comment on proposed investigations and remedial actions. *See* MTD 7–9. Consistent with these notice-and-comment requirements, EPA took extensive steps to inform the City and its citizens about the releases at issue in this case, and these steps provided reasonable notice to the City that its property may be contaminated. *See* MTD 10–13. For the City to suggest that it had no actual notice of the possibility of pollution on its property—much less that it could not have *reasonably* known—ignores reality given that City officials attended multiple public meetings on City property for the purpose of discussing *exactly* that concern. *See id.*

Contrary to the City's suggestion, the federal discovery rule accordingly has no relevance here, Georgia's statute of limitations applies as it ordinarily would, and the City is therefore barred from bringing claims to recover for any damages suffered before October 20, 2018.

## V.    The City's Remaining Arguments Are Meritless.

The City asserts (at 1, 3) that Honeywell has converted its motion to dismiss into a motion for summary judgment by citing materials not found in the City's complaint. This argument is baseless. The City fails to describe the materials in question, but it appears that the City is taking issue with (1) the attachment to Honeywell's answer of the Consent Decree entered into by Defendants and the United States and (2) Honeywell's citation to EPA's Community Involvement Plan for the LCP Superfund Site. *See* MTD 11–13. Neither reference has converted Honeywell's motion to dismiss into a motion for summary judgment.

As to the Consent Decree, the City's own complaint directs the Court to its exact location on the federal court's docket, *see* Compl. ¶ 89, and Honeywell simply incorporated the same

14

document in its answer pursuant to O.C.G.A. § 9-11-10(c). Accordingly, the Consent Decree is part of the pleadings, and the Court may consider it in ruling on Honeywell's motion to dismiss. *See Dep't of Transp. v. Mixon*, 844 S.E.2d 524, 527 (Ga. Ct. App. 2020) (in ruling on a motion to dismiss for failure to state a claim, the trial court can consider "the answer, the complaint, and documents attached to either the answer or the complaint and explicitly incorporated therein by reference." (citation omitted)). Doing so does not convert the motion into a motion for summary judgment. *See Brown v. Gadson*, 654 S.E.2d 179, 181 (Ga. Ct. App. 2007). Regardless, the Consent Decree is a public, federal court document that is judicially noticeable by this Court and that may be considered on a motion to dismiss.

As to EPA's Community Involvement Plan, the City does not contest that the Plan is also judicially noticeable pursuant to O.C.G.A. § 24-2-201 because it sets forth facts "[c]apable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Indeed, Georgia and federal courts alike have held that materials made publicly available online by federal agencies are judicially noticeable. *See, e.g.*, *Jaycee Atlanta Dev., LLC v. Providence Bank*, 765 S.E.2d 536, 538 n.4 (Ga. Ct. App. 2014) (taking judicial notice of information "publicly available on the FDIC's website"); *Sierra Club v. EPA*, 964 F.3d 882, 893 & n.9 (10th Cir. 2020) (taking judicial notice of EPA guidance document published on its website).

Further, Georgia rules explicitly provide that "[j]udicial notice may be taken at *any stage* of the proceeding." O.C.G.A. § 24-2-201(f) (emphasis added). The Georgia Supreme Court has not expressly decided whether a court may convert a motion to dismiss into a motion for summary judgment upon taking judicial notice of adjudicative facts. *See Bank of Am., N.A. v. Johnson*, 792 S.E.2d 704, 706 n.3 (Ga. 2016) (describing question but declining to resolve it).[4] The Georgia

---

[4] Decisions by the Georgia Court of Appeals similarly have not articulated a consistent rule. *See, e.g.*, *Silver Comet Terminal Partners, LLC v. Paulding Cnty. Airport Auth.*, 885 S.E.2d 48, 50 (Ga. Ct. App.

Supreme Court has explained, however, that "in construing a Georgia statute that closely tracks federal statutory law, [Georgia courts] may look to federal court decisions and commentary interpreting the federal statute as persuasive authority." *Abrams v. Laughlin*, 816 S.E.2d 26, 29 (Ga. 2018). Here, federal courts, applying materially identical rules, have consistently held that trial courts may take judicial notice of adjudicative facts without converting a motion to dismiss into a motion for summary judgment. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) (explaining that, in ruling on motions to dismiss, courts ordinarily consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"); *Universal Express, Inc. v. S.E.C.*, 177 F. App'x 52, 53 (11th Cir. 2006) ("A district court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment."). This Court should reach the same conclusion here.

If, however, this Court doubts its power to judicially notice the facts contained in EPA's Community Involvement Plan without converting Honeywell's motion to dismiss into a motion for summary judgment, that would still make no difference. None of Honeywell's arguments depend on its citation to that Plan (or any other judicially noticeable material), and this Court can exclude those facts from its consideration and still grant Honeywell's motion to dismiss.

Finally, the City invokes the doctrine of collateral estoppel but provides no supporting citations to the district court's decision. Even a cursory reading of the decision reveals why: Collateral estoppel requires, at a minimum, that "*the same issue* has been litigated and decided before," *Copelan v. Copelan*, 755 S.E.2d 739, 740 (Ga. 2014) (emphasis in original), and none of

---

2023) (observing without disagreement that "the trial court specifically noted that it could [take judicial notice] at the motion-to-dismiss stage without converting the motion into a motion for summary judgment because the documents were publicly available"); *but see Sweet City Landfill, LLC v. Lyon*, 835 S.E.2d 764, 772–73 (Ga. Ct. App. 2019) (finding the trial court failed to give sufficient notice of the conversion of a motion to dismiss after taking judicial notice but error was harmless).

the issues raised in Honeywell's motion to dismiss were even *considered* in the district court's remand order, much less decided.  First, the district court did not evaluate Honeywell's preemption argument, which was offered in briefing only as a "colorable federal defense" supporting its federal-officer-removal argument.  *See* Opp. Ex. A at 6.  Nor could the court have considered Honeywell's present arguments regarding the sufficiency of the City's claims under Georgia law or the indispensability of EPA to this matter, because those arguments were not raised by Honeywell in opposing remand.  And, finally, the district court did not consider an argument based on the statute of limitations matching the one articulated in Honeywell's motion to dismiss or "adjudicate[]" any such arguments "on the merits."  *Copelan*, 755 S.E.2d at 740; *see* Opp. Ex. A at 19–21.

<div align="center">

**CONCLUSION**

</div>

For the foregoing reasons and the reasons set forth in its motion to dismiss, Honeywell respectfully requests the Court grant its motion to dismiss.

This 13th day of September, 2024.

Respectfully submitted,

*/s/ Mark D. Johnson*
Mark D. Johnson
Amber M. Carter
Gilbert, Harrell, Sumerford & Martin, P.C.
777 Gloucester St., Ste. 200
Brunswick, GA 31520
Telephone: (912) 265-6700
Fax: (912) 264-0244
mjohnson@ghsmlaw.com

*Attorneys for Honeywell International Inc.*
*f/k/a Allied Chemical Corporation and as*
*AlliedSignal, Inc.*

<div align="center">17</div>

**CERTIFICATE OF SERVICE**

I hereby certify that I have electronically filed electronically the foregoing **DEFENDANT HONEYWELL INTERNATIONAL INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT** with the Clerk of the Court to be served by operation of the Court's electronic filing system.

Respectfully submitted this 13th day of September, 2024.

*/s/ Mark D. Johnson*
Mark D. Johnson

18

# Exhibit 9

FILED - JA
GLYNN CO. CLERK'S OFFICE
Filed 9/19/2024 4:49 PM
Accepted 9/20/2024 7:54 AM
CASE # CE22-01086
*Rebecca G Walden*
CLERK SUPERIOR COURT

## IN THE SUPERIOR COURT OF GLYNN COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| CITY OF BRUNSWICK, by and through its MAYOR AND BOARD OF COMMISSIONERS, <br><br> Plaintiff, <br><br> v. <br><br> HONEYWELL INTERNATIONAL, INC. f/k/a ALLIED CHEMICAL CORPORATION and as ALLIEDSIGNAL, INC., and GEORGIA POWER COMPANY, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Civil Action No. CE22-01086 |

## DEFENDANT GEORGIA POWER COMPANY'S AMENDED MOTION TO DISMISS AND BRIEF IN SUPPORT

Defendant Georgia Power Company ("Georgia Power") respectfully submits its Amended Motion to Dismiss Plaintiff City of Brunswick's (the "City") claims against Georgia Power in their entirety.

## I.    INTRODUCTION

On September 18, 2024, the City filed its Amended Complaint, which sets forth additional allegations against Georgia Power. The City prepared and filed its Amended Complaint in clear response to Georgia Power's Motion to Dismiss or, in the Alternative, for More Definite Statement and in a last-ditch effort to save its claims against Georgia Power. Because the City filed its Amended Complaint a mere two days before the Court's September 20, 2024, hearing on Georgia Power's Motion and Defendant Honeywell International, Inc.'s ("Honeywell") Motion to Dismiss,

24333107.1

the Court should consider during the hearing the grounds for dismissal of the Amended Complaint set forth below.

The City filed its original Complaint on October 20, 2022, almost two years ago. Before filing its original Complaint, the City presumably did some research and investigation into the factual basis for its claims against Georgia Power. As shown in Georgia Power's Motion, the original Complaint's only allegation against Georgia Power related to its operation of Plant McManus, which the City alleged "was coal-fired and emitted mercury" that migrated onto and harmed property allegedly owned by the City. Nowhere in its original Complaint, briefing on its motion in the federal district court to remand this action to this Court, briefing before the Eleventh Circuit, and briefing on Georgia Power's Motion to Dismiss did the City explain how or where its original Complaint alleges Georgia Power's method of operating Plant McManus more than 52 years ago produced an injury to the City's property within the four years prior to the filing of the Complaint.

Now, two days before the Court is scheduled to hear oral argument on Georgia Power's and Honeywell's Motions to Dismiss, the City has filed its Amended Complaint that alleges for the first time that Georgia Power "purchased tracts of land within … the Allied/LCP Site in 1937, 1942, and 1950" at which "hazardous substances … were disposed …." Amended Complaint ¶ 89. The City's Amended Complaint fares no better than its original Complaint, and it is due to be dismissed as well. The City still lacks standing to bring this action because it does not own the property forming the basis of its nuisance and trespass claims, the Amended Complaint still fails to state a claim against Georgia Power upon which relief can be granted relating to Plant McManus, and the Amended Complaint fails to state a claim against Georgia Power upon which relief can be granted relating to "the Allied/LCP Site".

2

## II.    ARGUMENT AND CITATION OF AUTHORITY

### A.    The City's Claims Against Georgia Power Should Be Dismissed for the Reasons Supporting Georgia Power's Initial Motion to Dismiss.

Georgia Power incorporates by reference herein in their entirety its original Motion to Dismiss or in the Alternative for More Definite Statement and Brief in Support and its Reply Brief in Support of Motion to Dismiss or in the Alternative for More Definite Statement. For the reasons set forth in Georgia Power's original Motion and in its Reply Brief, the City's Amended Complaint should be dismissed because (1) the City lacks standing to bring this action because it does not own the property forming the basis of its nuisance and trespass claims; (2) Georgia law clearly establishes the City's claims against Georgia Power relating to Plant McManus are for a permanent nuisance, and not a continuing or abatable nuisance, and are thus barred by the statute of limitations; and (3) even if the City's claims against Georgia Power relating to Plant McManus were for a continuing or abatable nuisance, the City fails to allege, and cannot allege, it gave Georgia Power the legal right to enter onto the City's property to abate the nuisance, which is an essential element of the City's claim.

### B.    The City's Claims Against Georgia Power Relating to "the Allied/LCP Site" Should Be Dismissed.

The only new allegations against Georgia Power in the City's Amended Complaint relate to same "Allied/LCP Site" that forms the basis of the City's claims against Honeywell. *See* Amended Complaint ¶ 89. For the reasons set forth in Honeywell's Motion to Dismiss Plaintiff's Complaint and Reply in Support of Motion to Dismiss Plaintiff's Complaint, which Georgia Power incorporates by reference herein in their entirety, Georgia Power cannot be liable to the City for any alleged actions or omissions related to "the Allied/LCP Site", and the City's claims against Georgia Power as they relate to "the Allied/LCP Site" should be dismissed.

24333107.1

In short, the City claims Georgia Power is liable because it "disposed" of "hazardous substances" at "the Allied/LCP Site" that "spread into the Marshes of Glynn and beyond" and which Georgia Power has failed "to permanently remove." Amended Complaint ¶¶ 89, 108, 111, 121. "The Allied/LCP Site" is a federal Superfund site that Honeywell and Georgia Power have worked to clean up under the oversight and direction of the EPA pursuant to the Consent Decree referenced in paragraph 90 of the Amended Complaint.[1] Pursuant to CERCLA Section 122(e)(6), once a "remedial investigation and feasibility study for a particular facility" has been initiated, "no potentially responsible party may undertake any remedial action at the facility unless such remedial action has been authorized by [EPA]." 42 U.S.C. § 9622(e)(6). Section 122(e)(6) therefore has prohibited Honeywell and Georgia Power from undertaking any remediation of pollution at "the Allied/LCP Site" beyond those actions that have been expressly authorized and approved by the EPA. In other words, Georgia Power is bound by federal law to take the remedial actions EPA has ordered at "the Allied/LCP Site" and *only* those actions, and Georgia Power is prohibited from "permanently removing" pollutants from "the Allied/LCP Site" as the City demands in its Amended Complaint.

For this reason and the other reasons set forth in Honeywell's Motion to Dismiss Plaintiff's Complaint and Reply in Support of Motion to Dismiss Plaintiff's Complaint, the Court should dismiss the Amended Complaint in its entirety as to Georgia Power.

---

[1] This Consent Decree to which Georgia Power was a party was cited in the City's original Complaint. *See* Complaint ¶ 89. Accordingly, at the time it filed its original Complaint, the City had all the facts upon which its Amended Complaint's new allegations against Georgia Power are based. For this additional reason, the Amended Complaint should be dismissed – despite having those facts when it filed its original Complaint, the City delayed asserting its new allegations based on those facts until the eve of the Court's hearing on Defendants' Motions to Dismiss.

4

**III.**     **CONCLUSION**

For the foregoing reasons, Georgia Power respectfully requests the Court to dismiss the

City's claims against Georgia Power in their entirety.

Respectfully submitted this 19th day of September, 2024.

> */s/ Benjamin H. Brewton*           
> Benjamin H. Brewton
> Georgia Bar No. 002530
> T. Joshua R. Archer
> Georgia Bar No. 021208
> **Balch & Bingham LLP**
> 801 Broad Street, Suite 800
> Augusta, Georgia 30901
> Telephone: (706) 842-3711
> Fax: (866) 258-8984
> bbrewton@balch.com
> jarcher@balch.com
>
> *Attorneys for Defendant Georgia Power*
> *Company*

5

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and service will be perfected upon the following this 19th day of September, 2024:

John C. Bell, Jr.
Pamela S. James
The Bell Firm
P.O. Box 1547
Augusta, GA  30903

Robert P. Killian
Killian Law Firm LLC
47 Professional Drive
Brunswick, GA  31520

Brian D. Israel
Paul Hastings LLP
1999 Avenue of the Stars, 27th Floor
Century City, CA 90067

Brian D. Corry
McQuigg Smith & Corry
504 Beachview Drive
Suite 3D
St. Simons Island, GA  31522

Mark D. Johnson
Amber M. Carter
Gilbert Harrell Sumerford & Martin PC
777 Gloucester Street
Suite 200
Brunswick, GA  31520

*/s/ Benjamin H. Brewton*
Benjamin H. Brewton
*Attorney for Defendant Georgia Power Company*

24333107.1

Exhibit 10

2022D - VM
GLYNN CO. CLERK'S OFFICE
Filed 6/3/2024 6:30 PM
Accepted 6/4/2024 8:55 AM
CASE # CE22-01086

*Rebecca J Walden*
CLERK SUPERIOR COURT

## IN THE SUPERIOR COURT OF GLYNN COUNTY
## STATE OF GEORGIA

CITY OF BRUNSWICK, by and through )
its MAYOR AND BOARD OF )
COMMISSIONERS, )
         )
    Plaintiff, )
         )    CIVIL ACTION FILE NO. <u>CE22-01086</u>
v. )
         )
HONEYWELL INTERNATIONAL INC., )
f/k/a ALLIED CHEMICAL )
CORPORATION and as ALLIEDSIGNAL, )
INC., and THE GEORGIA POWER )
COMPANY, )
         )
    Defendants. )

### <u>DEFENDANT HONEYWELL INTERNATIONAL INC.'S MOTION FOR MORE DEFINITE STATEMENT</u>

Honeywell has filed an Answer contemporaneously with this Motion and in so doing has answered the Complaint to the best of its ability. However, simply stated, Plaintiff, the City of Brunswick (the "City")'s Complaint is about alleged contamination of its property, but it has failed to identify a single parcel of property. In its Motion to Dismiss, Honeywell asks this Court to dismiss the claims against it for their failure to state a claim. In the alternative to full dismissal, Honeywell asks the Court to require the City to amend its Complaint and provide a more definite statement of which property it contends is contaminated.

The City filed its Complaint on October 20, 2022, alleging that Defendants Honeywell and Georgia Power Company have caused a continuing trespass and a continuing nuisance on "its property." The Complaint refers to the City's property 35 times, but provides only a map of the city limits and a vague, unintelligible description to guide Defendants in responding to the claims of damage to the unknown property. According to the publicly available Glynn County tax

records, the City owns or co-owns 155 parcels of property in Glynn County. The City's property is purportedly the subject of this 134-paragraph lawsuit that seeks punitive damages for Honeywell's alleged contamination of an unknown number of the 155 parcels the City owns, many of which are miles from the alleged source of contamination—the LCP Superfund Site.

A complaint filed in Georgia courts must give the defendant fair notice of the nature of the claims against which he must defend. *Jefferson v. Stripling*, 728 S.E.2d 826, 827 (Ga. Ct. App. 2012). The "short and plain statement of the claims," required under O.C.G.A. § 9-11-8-(a)(2)(A), "must include enough detail to afford the defendant fair notice of the nature of the claim and a fair opportunity to frame a responsive pleading." *Bush v. Bank of New York Mellon*, 720 S.E.2d 370, 374 (Ga. Ct. App. 2011) (citation omitted). Moreover, "[e]ach averment of a pleading shall be simple, concise, and direct." O.C.G.A. § 9-11-8(e)(1).

The pleading standard requires more than the City's vague and description of the property that has been allegedly harmed by Defendants.

> "The City of Brunswick owns properties that lie west of Newcastle Street and east of the Turtle River that include high ground, marshes and creek and river bottoms; property that lies east of Glynn Avenue, south of the F.J. Torras Causeway, and west of the Mackay River that includes high ground, marshes and creek bottoms; property lying both north and south of the F.J. Torras Causeway, east of the Back River and west of the Little River that includes high ground, marshes and creek bottoms; property that encompasses the southern portion of the Altimaha Canal that includes high ground and the now non-navigable canal; and property that lies on the east side of Andrews Island that includes high ground, marshes and river bottom."

Compl. ¶ 6. This riddle of a description is unnecessarily unclear where the City can easily access and provide tax parcel identification numbers and addresses of the specific properties that have allegedly been affected by pollution from the LCP Superfund Site.[1]

---

[1] Further, the City claims ownership of "marshes and creek bottoms" in various areas in and around Brunswick, Georgia, and those areas were allegedly contaminated by Honeywell. Pursuant to O.C.G.A.

The Georgia Court of Appeals in *Bush v. Bank of New York Mellon* held that the proper remedy for a complaint lacking sufficient specificity to provide adequate notice required by O.C.G.A. § 9-11-8, as here, is a Section 9-11-12(e) motion for a more definite statement.    720 S.E.2d at 376.  The *Bush* Court emphasized:

> The burden of clearly identifying the claims alleged in a *case should not lie with the defendants or the courts*; it should lie with the plaintiff, who has an obligation under the Civil Practice Act to make a "short and plain statement" of his claim.

*Id.* at 375.  The Court explained that "[t]he pleading requirements of the Civil Practice Act are requirements, not just suggestions."  *Id.* at 374 (emphasis in original). Accordingly, where, as here, "we cannot ascertain the nature of the claims that [a Plaintiff] seeks to assert in their amended complaint," *Bush* teaches that a trial court should "require [the Plaintiff] to amend their pleadings again . . . to make a more definite statement." *Id.* at 376–77.

The Court of Appeals noted that unclear pleadings "'not only harm the litigants . . . but they 'harm the court by impeding its ability to administer justice.'" *Id.* at 375 (citation omitted).  The *Bush* Court reasoned that its approach will "save the courts and the defendants considerable time . . . by requiring plaintiffs to clearly state the nature of their claims *before anyone undertakes to assess the legal sufficiency of the complaint*." *Id.* at 376 n.17 (emphasis added).  A more definite statement will narrow the issues, disclose the boundaries of the claims, and expedite and simplify the proceedings.

Neither Honeywell nor this Court are better positioned than the City to ascertain the subject of the claims it seeks to assert.  As the *Bush* Court emphasized, the trial court should not attempt

---

§ 52-1-2, the State of Georgia holds "title to the beds of all tidewaters within the state . . . ."  Therefore, without a chain of title containing a valid king's land grant from the Crown of England or a state grant conveying the tidewater beds, the City does not own much of the property it confusingly describes, rendering Honeywell all the more prejudiced in its effort to respond to the Complaint.

"to guess the nature" of a plaintiff's claims, but "instead should . . . order[] [the plaintiff] to clarify the nature of [its] claims by making a more definite statement." *Id.*

The City should be required to clarify the subject of its claims by making a more definite statement and replead in a way that conforms to the pleading requirements of the Civil Practice Act. Sufficient facts should be included to provide Honeywell, Georgia Power and the Court with notice of the specific property the City seeks to put in issue and how Honeywell has allegedly contaminated those properties.

RESPECTFULLY SUBMITTED, this 3rd day of June, 2024.

*/s/ Mark D. Johnson*
Mark D. Johnson
Georgia Bar No. 395041
mjohnson@ghsmlaw.com

*/s/ Amber M. Carter*
Amber M. Carter
Georgia Bar No. 631646
acarter@ghsmlaw.com

**GILBERT HARRELL SUMERFORD & MARTIN, P.C.**
Post Office Box 190
Brunswick, Georgia 31521-0190
P: (912) 265-6700
F: (912) 264-0244

Brian D. Israel*
**ARNOLD & PORTER KAYE SCHOLER LLP**
777 South Figueroa Street, 44th Fl.
Los Angeles, CA 90017-5844
P: (213) 243-4000
F: (213) 243-4199
brian.israel@arnoldporter.com

*Admitted Pro Hac Vice.*

*Attorneys for Defendant Honeywell International, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that I have electronically filed electronically the foregoing **DEFENDANT HONEYWELL INTERNATIONAL INC.'S MOTION FOR MORE DEFINITE STATEMENT** with the Clerk of the Court to be served by operation of the Court's electronic filing system.

Respectfully submitted this 3rd day of June, 2024.

*/s/ Mark D. Johnson*
Mark D. Johnson

**Counsel for Defendant
Honeywell International, Inc.**

GILBERT, HARRELL,
SUMERFORD & MARTIN, P.C.
P.O. Box 190
Brunswick, GA 31521-0190
Telephone:  (912) 265-6700
Facsimile:  (912) 264-0244
mjohnson@ghsmlaw.com

# Exhibit 11

FILED - JA
GLYNN CO. CLERK'S OFFICE
Filed 10/11/2024 2:07 PM
Accepted 10/11/2024 2:15 PM
CASE #  CE22-01086
*Rebecca J Walden*
CLERK SUPERIOR COURT

## IN THE SUPERIOR COURT OF GLYNN COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| CITY OF BRUNSWICK, by and through its MAYOR AND BOARD OF COMMISSIONERS,<br><br>Plaintiff,<br><br>v.<br><br>HONEYWELL INTERNATIONAL, INC. f/k/a ALLIED CHEMICAL CORPORATION and as ALLIEDSIGNAL, INC., and GEORGIA POWER COMPANY,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )    Civil Action No. CE22-01086 |

## DEFENDANT GEORGIA POWER COMPANY'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS AMENDED MOTION TO DISMISS

During the Court's September 20, 2024, hearing on, among other things, Defendant Georgia Power Company's Motion to Dismiss and Amended Motion to Dismiss, the Court invited Georgia Power to file this Supplemental Brief in support of its Amended Motion to Dismiss Plaintiff City of Brunswick's claims against Georgia Power in their entirety.

## I.    INTRODUCTION

As Georgia Power showed in its initial Motion to Dismiss, the City's initial Complaint's only allegation against Georgia Power related to its operation prior to 1972 of Plant McManus, which the City alleged "was coal-fired and emitted mercury" that migrated onto and harmed property allegedly owned by the City.  Georgia case law clearly shows the alleged trespass and nuisance that is the subject of initial Complaint's claims against Georgia Power is permanent in nature and the City's claims are thus time-barred.

24347348.2

On the eve of the Court's hearing on Defendants' Motions to Dismiss, the City filed an Amended Complaint asserting a single new factual allegation as to Georgia Power relating to activities more than 70 years ago. *See* Amended Complaint ¶ 89 ("Georgia Power Company purchased tracts of land within what is now the Allied/LCP Site in 1937, 1942, and 1950. The company utilized the Site primarily for electric power generation and petroleum product storage. As a result of these operations, hazardous substances … were disposed at the Site … [and] have spread" onto the City's property.).[1] Despite filing an Amended Complaint that, given its timing, was presumably intended to save the City's claims from dismissal, the Amended Complaint still fails to allege mercury or other substances emitted by Georgia Power's operations more than 50 years ago migrated onto the City's property within the four years prior to this action.

During the Court's September 20, 2024, hearing, the Court questioned whether Georgia case law supports the City's claim that every alleged movement of mercury or other substance, no matter how small, across the City's property from emissions that ceased more than 50 years ago triggers a separate nuisance and trespass claim for which the statute of limitations begins anew. As Georgia Power has shown, the Amended Complaint does not allege any such migration

---

[1] These allegations are taken verbatim from paragraph 9 of the Complaint in *United States of America v. Honeywell International, Inc. and Georgia Power Company*, No. 2:16-CV-00112 (S.D. Ga.) (the "EPA Complaint"). Paragraph 10 of the EPA Complaint shows Georgia Power sold these tracts of land "[i]n the mid-1950s," or 70 years ago. Georgia Power and Honeywell attached the EPA Complaint as Exhibit B to their Notice of Removal of this action to the United States District Court for the Southern District of Georgia, filed on November 18, 2022. The City thus had information almost two years ago forming the basis of new paragraph 89 of the Amended Complaint, yet the City waited until the eve of the Court's hearing on Defendants' Motions to Dismiss to file its Amended Complaint asserting these new allegations against Georgia Power, clearly in an effort to stave off dismissal of this action. The City's Amended Complaint fares no better than its initial Complaint, and it should be dismissed.

24347348.2

occurred within the four years prior to this action.  Even if it did include such an allegation, however, Georgia case law does not save the City's claims against Georgia Power.

The City's claims are for an alleged nuisance and trespass resulting from a substantial and enduring feature of the plan of construction and an essential method of Georgia Power's operations at Plant McManus more than 50 years ago and at a portion of the Allied/LCP Site more than 70 years ago.  To eliminate the alleged emissions of mercury and other substances at Plant McManus, Georgia Power had to completely convert Plant McManus from coal-based to oil-based, at considerable expense and over the course of two years.  Georgia case law is clear that, under the circumstances here, the nuisance alleged in the Amended Complaint is permanent and not abatable or continuing, and the City's claims are barred by the statute of limitations.  The Georgia Supreme Court's opinion in *Wise Business Forms, Inc. v. Forsyth County*, 317 Ga. 636 (2023), does not change this conclusion.

## II.    ARGUMENT AND CITATION OF AUTHORITY

### A.    The Georgia Supreme Court Distinguishes Between Permanent and Continuing/Abatable Nuisances Based on the Nature of a Public Utility's Operations Creating the Alleged Nuisance.

The Georgia Supreme Court in *Oglethorpe Power Corp. v. Forrister*, 289 Ga. 331 (2011), and *Wise Business Forms* drew a clear distinction between permanent and abatable nuisances.  "An 'abatable' nuisance is one where the harm to a plaintiff's property 'results from some minor feature of construction or management' or 'from an improper and unnecessary method of operation,' which can 'be averted at slight expense' or readily enjoined." *Wise Business Forms*, 317 Ga. at 640 (quoting *Forrister*, 289 Ga. at 334); *see also City of Atlanta v. Kleber*, 285 Ga. 413, 416-17 (2009) (to extent flooding was due to defendant's improper maintenance of pipe, and not pipe's mere presence, nuisance claim was continuing/abatable in nature, because poor maintenance is "an improper and unnecessary method of operation" that can be abated).

24347348.2

A permanent nuisance, by contrast, is "caused by some substantial and relatively enduring feature of the plan of [an electric plant's] construction or from an essential method of [its] operation" and is "one whose character is such that, from its nature and under the circumstances of its existence, it presumably will continue indefinitely." *Forrister*, 289 Ga. at 334; *see also Wise Business Forms*, 317 Ga. at 640-41.

The Georgia Supreme Court applies special rules to permanent nuisances allegedly created by public utilities such as Georgia Power – the plaintiff must bring a single claim for all damages, past and future, within the four-year limitations period beginning when the harm first becomes observable. *See Forrister*, 289 Ga. at 333; *see also Stroud v. Hall County*, 339 Ga. App. 37, 42 (2016) ("If a nuisance is created by some substantial and relatively enduring feature of the plan of construction or from an essential method of operation of some infrastructure employed in necessary public service, then it will usually not be abatable by injunction."); *Georgia Power Co. v. Moore*, 170 S.E. 520, 521 (Ga. App. 1933) ("Where a dam is lawfully and properly constructed and maintained by a public utility company for the production of electricity, the defendant cannot be held liable for creating or maintaining an abatable nuisance."); *KSSR Properties, LLC v. BellSouth Telecommunications, LLC*, No. 1:19-cv-2708-TCB, 2021 WL 1940207, *3 (N.D. Ga. April 21, 2021) ("a property invasion is considered a permanent trespass or nuisance if an establishment providing a necessary public service would have to be substantially rebuilt or have its basic operations shut down to stop it").

### B.    The Georgia Supreme Court in *Wise Business Forms* Attempted to Distinguish Types of Permanent Nuisances.

In discussing when the statute of limitation starts to run on a permanent nuisance claim, the Georgia Supreme Court in *Wise Business Forms* stated permanent nuisance cases vary depending on when the alleged harm to a plaintiff's property becomes observable.

24347348.2

> In some cases, the harm to the plaintiff's property is immediately observable "upon the creation of the nuisance." For example, where a landowner or governmental agency "erects a harmful structure such as a bridge or conducts a harmful activity such as opening a sewer that pollutes a stream," and it is immediately obvious that the structure or activity interferes with the plaintiff's interests, the plaintiff must file "one cause of action for the recovery of past and future damages caused by the permanent nuisance" within four years of the date the structure is completed or the harmful activity is commenced.

*Wise Business Forms*, 317 Ga. at 641 (quoting *Forrister*, 289 Ga. at 333-36) (punctuation omitted).

"Phrased another way, where the 'construction and continuance' of the permanent nuisance at issue is 'necessarily an injury, the damage is original, and may be at once fully compensated. In such cases, the statute of limitations begins to run upon the construction of the nuisance.'" *Id.* (quoting *City Council of Augusta v. Lombard*, 101 Ga. 724, 728 (1897)).

> In other permanent nuisance cases, the harm to the plaintiff's property is not observable to the plaintiff until later – sometimes years later. This circumstance may arise when a structure is built or an activity is commenced that is not injurious in and of itself, but it becomes a permanent and continuing nuisance because of some supervening cause, like heavy rains, which produces special injury at different periods. In such cases, a separate action lies for each injury thus occasioned, and the statute begins to run from the time when the special injury is occasioned.

*Id.* at 641-42 (citations and punctuation omitted).

"There are also cases … where the permanent nuisance causes multiple harms to a plaintiff's property – some of which are immediately observable upon the completion or construction of the nuisance and some of which are not observable until later – i.e., cases where the nuisance is by its nature continuing and will continue indefinitely." *Id.* at 642 (punctuation omitted). In such cases, the plaintiff may either (1) file successive lawsuits to recover for harms occurring within the preceding four years or (2) file a single lawsuit to recover for all past and future harms. *See id.* at 643.

The latter two types of permanent nuisance addressed in *Wise Business Forms* are inapplicable here; the Amended Complaint does not allege the nuisance Georgia Power created

5

first became observable, due to some supervening cause like heavy rains or otherwise, during the four years prior to the commencement of this action. Rather, the nuisance the City alleges was created upon commencement of operations at Plant McManus in 1959 and at a portion of the Allied/LCP Site in the 1940s. Because the City did not file its complaint "within four years of the date the structure [wa]s completed or the harmful activity [wa]s commenced," its claims against Georgia Power are barred. *Wise Business Forms*, 317 Ga. at 641.

C.    <u>Georgia Case Law Before and After *Wise Business Forms* Holds a Nuisance Is Continuing/Abatable Where It Results from an Improper Method of Operation and Can Be Abated at Slight Expense.</u>

Applying the *Wise Business Forms* principles to Georgia case opinions issued before and after *Wise Business Forms* reveals Georgia courts find a nuisance to be continuing/abatable, and not permanent, and therefore not barred by the statute of limitations where the harm to the plaintiff's property resulted from the defendant's improper method of operation and could be abated at slight expense – in other words, the analysis the Georgia Supreme Court has held defines a continuing/abatable nuisance. *See id.* at 640 (defining an "abatable nuisance" as "one where the harm to a plaintiff's property results from some minor feature of construction or management or from an improper and unnecessary method of operation, which can be averted at slight expense or readily enjoined") (punctuation omitted).

For instance, in *Columbia County v. Satcher*, 369 Ga. App. 608 (2023), *vacated in part on other grounds*, 2024 WL 3802370 (Ga. Aug. 31, 2024), the court found the county's metal stormwater pipe, which had been in place since 1976, was defective ("an improper method of operation") and caused repeated flooding of the plaintiffs' property after heavy rains (a "supervening cause like heavy rains"). *See* 369 Ga. App. at 609-10. Sidestepping the question "whether the nuisance was abatable or permanent," the court held the plaintiffs' nuisance claims

based on flooding events caused by the defective pipe that occurred within four years prior to bringing suit were not barred. *Id.* at 612.

In addition, in *Hoffman v. Atlanta Gas Light Company*, 206 Ga. App. 727 (1992), the defendants' pipeline, which had been in place since 1941, leaked petroleum ("an improper method of operation") several times between 1954 and 1956, and the defendant admitted it had spilled hazardous chemicals, that the contamination could be removed, and that the contamination migrated outward from the pipeline. *See* 206 Ga. App. at 727. The court held the nuisance was continuing/abatable, and not permanent, because it "could and should be abated" – the defendant just refused to do so – and the plaintiffs thus could recover for harm to their property occurring within the four years prior to bringing suit. *Id.* at 730; *see also Tucker v. Southern Wood Piedmont Co.*, 28 F.3d 1089, 1091 (11th Cir. 1994) (holding plaintiff's complaint stated claim for continuing/abatable nuisance that alleged defendants spilled hazardous waste ("an improper method of operation") that Georgia EPD and US EPA monitoring wells proved was continuing to migrate onto plaintiff's adjacent property (*see also* Brief of Appellees, 1993 WL 13128897, at *1-2)); *Tri-County Investment Group, Ltd. v. Southern States, Inc.*, 231 Ga. App. 632, 636 (1998) (holding plaintiff could recover for continuing/abatable nuisance arising from chemicals leaked from defendant's drainage pipe ("an improper method of operation") that defendant's expert admitted had migrated through groundwater under plaintiff's property); *Smith v. Branch*, 226 Ga. App. 626 (1997) (holding plaintiff could recover for continuing/abatable nuisance arising from leakage of dry cleaning chemicals from defendant's machines ("an improper method of operation") that evidence showed contaminated groundwater on property defendant leased from plaintiff).

7

The Georgia Supreme Court in *Wise Business Forms* therefore did not materially change Georgia nuisance law; rather, in "clarifying" its earlier opinion in *Forrister* as to when a permanent nuisance claim accrues, the court simply applied Georgia's rules governing the accrual of continuing/abatable nuisance claims.  In each of the above cases, including in *Wise Business Forms*, the nuisance was held to be continuing/abatable because the structure or activity creating it was a "minor feature of construction or management" or "an improper and unnecessary method of operation" that could "be averted at slight expense" – a faulty or improperly designed or constructed stormwater pipe or pipeline or the spillage of chemicals.

**D.**    **This City's Amended Complaint Alleges a Nuisance Caused by a Substantial and Enduring Feature of the Georgia Power Facilities' Plans of Construction and an Essential Method of Their Operations, Which Is a Permanent Nuisance.**

In this case, the City's Amended Complaint does not allege Georgia Power improperly maintained or operated Plant McManus or any facilities at the Allied/LCP Site or that emissions of mercury or other substances are ongoing and can be abated at slight expense.  Accordingly, none of the above cases supports the City's argument that its claims against Georgia Power are for a continuing/abatable nuisance and not a permanent nuisance.

Rather, the nuisance on which the City's claims are based resulted from a "substantial and relatively enduring feature of the plan of construction [and] from an essential method of [Georgia Power's] operations" at Plant McManus (more than 50 years ago) and the Allied/LCP Site (more than 70 years ago).  *Forrister*, 289 Ga. at 334; *Wise Business Forms*, 317 Ga. at 640-41.  To eliminate the alleged emissions of mercury and other substances, Georgia Power completely converted Plant McManus from coal-based to oil-based, at considerable expense and over the course of two years.  Prior to that conversion, the emission of mercury and other substances was an integral part of the method of generating electricity from the 1950s to the early 1970s and a

8

substantial and enduring feature of the power plant's original plan of construction. Similarly, the nuisance the City alleges Georgia Power created as a result of generating electric power at the Allied/LCP Site was an integral part and a substantial and enduring feature of that facility's original plan of construction and resulted from the essential method of the facility's operation from 1937 to the mid-1950s. *See Forrister*, 289 Ga. at at 335-36 (alleged nuisance was permanent where, to stop noise from power plant, plant would have had to completely tear down and rebuild exhaust stacks, costing plant millions of dollars and halting production of electricity, a necessary public service, while stacks were rebuilt; plaintiffs were thus limited to filing one action within limitations period after plant became operational for past and future damages); *KSSR Properties*, 2021 WL 1940207 at *3 ("a property invasion is considered a permanent trespass or nuisance if an establishment providing a necessary public service would have to be substantially rebuilt or have its basic operations shut down to stop it"). None of the cases discussed above or on which the City relies, including *Wise Business Forms*, involved the type of permanent nuisance the City alleges against Georgia Power.

Georgia case law makes clear that the alleged harm to the City's property from Georgia Power's alleged release of mercury and other substances occurred, and the statute of limitations began to run, immediately upon the commencement of Georgia Power's use of coal at Plant McManus in 1959 and electric power generation and petroleum storage at a portion of the Allied/LCP Site in the 1940s. Because the City did not file its Complaint "for the recovery of past and future damages caused by the permanent nuisance within four years of the date the structure [wa]s completed or the harmful activity [wa]s commenced," the City's claims against Georgia Power are time-barred and should be dismissed. *Wise Business Forms*, 317 Ga. at 641.

III.    **CONCLUSION**

For the foregoing reasons and those set forth in support of Georgia Power's initial Motion to Dismiss and Amended Motion to Dismiss, Georgia Power respectfully requests the Court to dismiss the City's claims against Georgia Power in their entirety.

Respectfully submitted this 11th day of October, 2024.

> /s/ Benjamin H. Brewton
> Benjamin H. Brewton
> Georgia Bar No. 002530
> T. Joshua R. Archer
> Georgia Bar No. 021208
> **Balch & Bingham LLP**
> 801 Broad Street, Suite 800
> Augusta, Georgia 30901
> Telephone: (706) 842-3711
> Fax: (866) 258-8984
> bbrewton@balch.com
> jarcher@balch.com
>
> *Attorneys for Defendant Georgia Power Company*

10

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and service will be perfected upon the following this 11th day of October, 2024:

John C. Bell, Jr.
Pamela S. James
The Bell Firm
P.O. Box 1547
Augusta, GA 30903

Brian D. Corry
McQuigg Smith & Corry
504 Beachview Drive
Suite 3D
St. Simons Island, GA 31522

Robert P. Killian
Killian Law Firm LLC
47 Professional Drive
Brunswick, GA 31520

Mark D. Johnson
Amber M. Carter
Gilbert Harrell Sumerford & Martin PC
777 Gloucester Street
Suite 200
Brunswick, GA 31520

Brian D. Israel
Paul Hastings LLP
1999 Avenue of the Stars, 27th Floor
Century City, CA 90067

*/s/ Benjamin H. Brewton*
Benjamin H. Brewton
*Attorney for Defendant Georgia Power Company*

11

Exhibit 12

FILED - JH
GLYNN CO. CLERK'S OFFICE
Filed 10/11/2024 11:11 AM
Accepted 10/11/2024 11:21 AM
CASE # CE22-01086

*Rebecca J Walden*
CLERK SUPERIOR COURT

## IN THE SUPERIOR COURT OF GLYNN COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| CITY OF BRUNSWICK, by and through its MAYOR AND BOARD OF COMMISSIONERS, | ) ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. <u>CE22-01086</u> |
| v. | ) ) | |
| HONEYWELL INTERNATIONAL INC., f/k/a ALLIED CHEMICAL CORPORATION and as ALLIEDSIGNAL, INC., and THE GEORGIA POWER COMPANY, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## <u>DEFENDANT HONEYWELL INTERNATIONAL INC.'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>

On September 18, 2024, in an apparent admission that its prior complaint was deficient, Plaintiff the City of Brunswick amended its complaint against Defendant Honeywell International, Inc. The amended complaint, which is filled with conclusory legal allegations, fares no better. In fact, the City's new allegations support dismissal.

*First*, the City's amended complaint contains several legal conclusions that show that its claims are pre-empted by CERCLA. For example, the City claims in its new complaint that it "has no ownership interest in any of the property within the [A]llied/LCP CERCLA Site," and that its "lawsuit does not challenge the actions of the U.S. E.P.A. or the orders entered relating to remediation of the Allied/LCP CERCL[A] Superfund Site." Am. Compl. ¶ 97. But those are legal conclusions, not factual allegations, and they are accordingly not entitled to any weight on a motion to dismiss. *Love v. Fulton Cnty. Bd. of Tax Assessors*, 859 S.E.2d 33, 41 n.7 (Ga. 2021). Either

1

way, though, those new claims do not matter.  Section 122(e)(6) of CERCLA preempts this suit, regardless of whether the City has any property interest within the scope of what it considers the outer bounds of the Superfund Site, regardless of whether the EPA orders any remedial action, and regardless of whether the City challenges any aspect of EPA's orders.  Section 122(e)(6)'s text is plain: Once EPA "has initiated a remedial investigation and feasibility study for a particular facility," then "*no potentially responsible party* [such as Honeywell] *may undertake any remedial action at the facility* unless such remedial action has been authorized by [EPA]," 42 U.S.C. § 9622(e)(6) (emphasis added), with "facility" defined to include any "area where a hazardous substance has . . . come to be located."  42 U.S.C. § 9601(9).  So regardless of whether the City thinks it has an "ownership interest in any of the property within the [A]llied/LCP CERCLA Site," any of its contaminated property constitutes part of the "facility" at which Honeywell is legally prohibited from "undertak[ing] any remedial action" by Section 122(e)(6).  The City accordingly cannot sue Honeywell for *failing* to undertake that prohibited remedial action.  *See* Am. Compl. 111–12, 121, 124–25; *see also* MTD 2–4, 15–30; Reply 1–2, 3–12.

Similarly, the City has added a new allegation that Honeywell's alleged continuing torts are "abatable, at least in part by removing contamination owned from the land and marsh owned by Honeywell."  Am. Compl. ¶¶ 112, 125.  But as Honeywell has already explained in detail, whether the torts are theoretically "abatable" is irrelevant to whether Section 122(e)(6) permits Honeywell to *lawfully* abate them.  *See* Reply 9–10.  If anything, the City's reference to cleaning up land "owned by Honeywell" underscores that the City *is* challenging the EPA's clean-up plan for the Superfund Site: not only EPA's decision *not* to authorize remedial action on land owned by the City, *see* MTD 24, 26–27, Reply 7–8, 12, but also the remedial actions that EPA has already ordered on the land that Honeywell owns at the heart of the Superfund Site.  If the City believes,

as it alleges, that Honeywell is not properly "removing contamination from the land and marsh [it] own[s]," the City either is saying that Honeywell is not complying with EPA remedial actions with respect to that land or is challenging the scope of those actions. Neither is permissible. *See Bartlett v. Honeywell International, Inc.*, 737 F. App'x 543, 549–51 (2d Cir. 2018).

*Second*, the City expands its prayer for relief beyond punitive damages—now referred to in the Complaint as "exemplary damages" "sufficient to punish each Defendant and to deter each Defendant from further like wrongful conduct"—to include demands for "full compensation [of] all actual damages." Compl. p.28; *see also id.* ¶ 130 (adding claim that Defendants are liable for "all actual damages" to be determined by a jury). These changes tacitly acknowledge the City's error in previously asking only for punitive damages and expenses. However, now that the City has clarified the scope of its request for damages arising from the alleged contamination of its property, its Complaint runs headlong into another key limitation erected by CERCLA—namely, "CERCLA's comprehensive damage scheme which addresses damage assessment for natural resource injury, damage recovery for such injury, and use of such recovery." *New Mexico v. Gen. Elec. Co.*, 467 F.3d 1223, 1244 (10th Cir. 2006). CERCLA makes potentially responsible parties like Honeywell (and the City) liable not only for cleanup costs but also for "damages for injury to, destruction of, or loss of natural resources." 42 U.S.C. § 9607(a)(4)(c). The primary purpose of so-called "natural resource damages" (NRDs) under CERCLA is to restore or replace natural resources harmed by the release of hazardous substances—a remedy that exists in parallel with the cleanup efforts undertaken by potentially responsible parties. *See New Mexico*, 467 F.3d at 1244–45 (analyzing legislative history). Such parties are specifically liable for NRDs to the United States, state government, and Indian tribes as public trustees of the natural resources in question, *id.* § 9607(f)(1), and the "*measure* and *use* of damages arising from the release of hazardous waste

3

is restricted to accomplishing CERCLA's essential goals of restoration or replacement, while also allowing for damages due to interim loss of use," *New Mexico*, 467 F.3d at 1245; *see also* 42 U.S.C. § 9607(f)(1).

Based on this structure for assessing NRDs arising from a Superfund site, the Tenth Circuit has held that "CERCLA's comprehensive NRD scheme preempts any state remedy designed to achieve something other than the restoration, replacement, or acquisition of the equivalent of a contaminated natural resource." *Id.* at 1247. And "an unrestricted award of money damages"—even, in that case, based on a state-law cause of action brought by the state itself as a public trustee of the natural resources—is preempted because it "does not restore or replace contaminated natural resources." *Id.* Accordingly, if a natural resource trustee's request for an "unrestricted award of money damages . . . cannot withstand CERCLA's comprehensive NRD scheme," *New Mexico*, 467 F.3d at 1248, then the City should not be permitted to recover such damages itself. And to the extent that the City seeks damages in keeping with CERCLA (*i.e.*, to remediate harm to natural resources from the Superfund Site), those claims should be brought by the federal and state trustees and adjudicated pursuant to the provisions laid out under Section 9607 of CERCLA—not in this suit. Indeed, the NRD assessment and collection process for the LCP Superfund Site may ultimately cover the same damages on behalf of the public that the City seeks here, rendering recovery by the City duplicative. *See, e.g.*, *Alaska Sport Fishing Ass'n v. Exxon Corp.*, 34 F.3d 769, 774 n.6 (9th Cir. 1994) (barring private parties' recovery of "damages for harm not distinct from the harm suffered by the public at large" where federal and state trustees had recovered NRDs "on behalf of the public" through settlement with the same defendant).

*Third*, the City also made three primary arguments at the motion-to-dismiss hearing. Each has already been fully addressed in Honeywell's briefing, and none is persuasive. First, the federal

district court did not address or resolve any of Honeywell's arguments for dismissal, notwithstanding the City's citation-free assertions to the contrary. *See* Reply 16–17. Second, far from supporting the City (or being a decision Honeywell is "afraid of"), *Atlantic Richfield* confirmed the broad scope and effect of Section 122(e)(6); it also held squarely that Section 122(e)(6)'s "clear mandate" was not "erase[d]" by CERCLA's saving clauses. *Atl. Richfield Co. v. Christian*, 140 S. Ct. 1335, 1355 (2020); *see* Reply 7–9 & n.2. Finally, the City again invoked the Georgia Supreme Court's recent decision in *Wise Business Forms, Inc., v. Forsyth County*, 893 S.E.2d 32 (Ga. 2023). But the City again failed to explain how that decision affected any of Honeywell's arguments, and it clearly did not. *See* Reply 10. In fact, *Wise* confirmed that the City's claims are barred by the statute of limitations to the extent that they are based on actions outside the four-year statute of limitations. *See* 893 S.E.2d at 38; *see also* Reply 13.

Finally, the City has informed Honeywell that it plans to file yet another amended complaint next week. Honeywell accordingly reserves the right to file another supplemental brief to address any new or changed allegations.

## **CONCLUSION**

For the foregoing reasons and the reasons set forth in its motion to dismiss and reply in support thereof, Honeywell respectfully requests the Court grant its motion to dismiss.

This 11th day of October, 2024.

Respectfully submitted,

*/s/ Mark Johnson*
Mark D. Johnson
Amber M. Carter
Gilbert, Harrell, Sumerford & Martin, P.C.
777 Gloucester St., Ste. 200
Brunswick, GA 31520
Telephone: (912) 265-6700
Fax: (912) 264-0244
mjohnson@ghsmlaw.com

Jeffrey D. Talbert
Zachary Fayne
Arnold & Porter LLP
250 W. 55th Street
New York, NY 10019
Telephone: (207) 233-3463
Fax: (212) 836-8689
jeff.talbert@arnoldporter.com

*Attorneys for Honeywell International Inc.*
*f/k/a Allied Chemical Corporation and as*
*AlliedSignal, Inc.*

6

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed electronically the foregoing **DEFENDANT HONEYWELL INTERNATIONAL INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT** with the Clerk of the Court to be served by operation of the Court's electronic filing system.

Respectfully submitted this 11th day of October, 2024.

/s/ *Mark Johnson*
Mark D. Johnson
Amber M. Carter
Gilbert, Harrell, Sumerford & Martin, P.C.
777 Gloucester St., Ste. 200
Brunswick, GA 31520
Telephone: (912) 265-6700
Fax: (912) 264-0244
mjohnson@ghsmlaw.com

7

# Exhibit 13

FILED - JA
GLYNN CO. CLERK'S OFFICE
Filed 10/14/2024 3:30 PM
Accepted 10/15/2024 7:58 AM
CASE #  CE22-01086

*Rebecca J Walden*

CLERK SUPERIOR COURT

## IN THE SUPERIOR COURT OF GLYNN COUNTY
## STATE OF GEORGIA

CITY OF BRUNSWICK, by )
and through its MAYOR AND BOARD )
OF COMMISSIONERS, )
            )
           Plaintiff, )
            )
v. )     CIVIL ACTION FILE
            )     NO. CE22-01086
HONEYWELL INTERNATIONAL, )
INC., formerly known as )
ALLIED CHEMICAL CORPORATION, )
and as ALLIEDSIGNAL, INC. and THE )
GEORGIA POWER COMPANY, )
            )
           Defendants. )

## SECOND AMENDED COMPLAINT

COMES NOW the City of Brunswick through counsel and amends its complaint to show the Court the following:

## PARTIES, JURISDICTION AND VENUE

### 1.

The Plaintiff, the City of Brunswick, by and through its Mayor and Commissioners, is a municipal corporation in Glynn County, Georgia.   Plaintiff, by and through its mayor, commissioners and attorney, brings this action to protect and enforce the rights, interests and duties of the City and as trustee of the citizens, taxpayers and properties of the City of Brunswick.   The city limits of the City of Brunswick are deleneated on the attached map. Ex. A.

### 2.

Claims sought by the City of Brunswick are brought on behalf of the Plaintiff by Plaintiff's counsel in their role as attorneys for the City of Brunswick.

3.

The Defendant Honeywell International, Inc. is a corporation incorporated under the laws of the State of Delaware. Its principal place of business is 855 S. Mint Street, Charlotte, North Carolina 28202. This Defendant may be served by service upon its registered agent for service, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092. It is subject to the jurisdiction of this Court. This corporation was formerly named AlliedSignal, Inc. and, before being named AlliedSignal, Inc., was named Allied Chemical Corporation and before that its corporate name was Allied Chemical and Dye Corporation. This company is referred to herein as "Honeywell."

4.

The Defendant The Georgia Power Company (hereinafter "Georgia Power") is a Georgia corporation with its principal place of business at 241 Ralph McGill Blvd., N.E., Bin #10180, Atlanta, Georgia 30308-3374. This Defendant may be served by service upon its registered for service, Kristi Dow, 241 Ralph McGill Blvd., N.E., Bin # 10180, Atlanta, Georgia 30308. It is subject to the jurisdiction of this Court.

5.

This action arises out of acts and injuries that occurred in Glynn County, Georgia. Jurisdiction and venue lie in the Superior Court of Glynn County, Georgia.

**GENERAL ALLEGATIONS**

6.

The City of Brunswick owns properties that lie west of Newcastle Street and east of the Turtle River that include high ground, marshes and creek and river bottoms; property that lies east of Glynn Avenue, south of the F.J. Torras Causeway, and west of the Mackay River that

-2-

includes high ground, marshes and creek bottoms; property lying both north and south of the F.J. Torras Causeway, east of the Back River and west of the Little River that includes high ground, marshes and creek bottoms; property that encompasses the southern portion of the Altimaha Canal that includes high ground and the now non-navigable canal; and property that lies on the east side of Andrews Island that includes high ground, marshes and river bottom. The attached G.I.S. maps of the Glynn County Assessor delineate these properties owned by the City of Brunswick. Ex. B. Neither Honeywell nor Georgia Power have any ownership interest in these properties, nor do they claim any ownership interest in these City-owned properties.

7.

In 1955, Defendant Honeywell, then operating as Allied Chemical and Dye Corporation, purchased land abutting Purvis Creek for use as a site for construction and operation of a chlor-alkalai chemical plant. The tract of land purchased by the Defendant Honeywell included 480 acres of marshland. The property is referred to herein as the Honeywell Plant Site and as the Plant Site. Numerous documents refer to this tract of land as the "LCP Site" even though the site is owned by Defendant Honeywell.

8.

Prior to beginning construction of the chlor-alkalai plant, Honeywell assured the State of Georgia "that there will be no significant discharge of industrial waste from our plant" into the waters at Brunswick. Ex. C.

9.

Defendant Honeywell built and operated the chlor-alkalai plant on the Plant Site from 1956 through December 1979, at which time it sold the Plant to Linden Chemicals and Plastics Corp., herein referred to as "LCP." LCP subsequently changed its corporate name to Hanlin

GP, Inc., but continued to do business under the trade name LCP until the Plant was forced to close in 1994 by Order obtained by the Environmental Protection Division of the Department of Natural Resources of the State of Georgia.

10.

At the Plant, Defendant Honeywell manufactured chlorine gas, caustic soda, bleach and hydrogen gas in a process using metallic mercury in large processing areas called cell rooms.

11.

By design, waste and wastewater contaminated with mercury were discharged through a ditch that emptied into Purvis Creek.   The mercury dumped into Purvis Creek spread in the tidal waters throughout the Turtle River estuary and in time, into waters within the City of Brunswick and after the passage of time onto property of the City of Brunswick.   All of Turtle River is tidal with its direction of flow reversing four times each day.

12.

Between 1956 and 1979, Defendant Honeywell discharged tons of vaporized mercury into the air of Glynn County.   Approximately one million pounds of mercury was wrongfully released into the environment by Defendant Honeywell.

13.

Mercury discharged into the air and water by Defendant Honeywell precipitated and flowed over time within the City of Brunswick and migrated over time onto property of the City of Brunswick.

14.

Between 1962 and 1972, Defendant Honeywell used graphite anodes impregnated with Aroclor 1268 poly-chlorinated byphenals (PCBs) in its chlorine manufacturing process.

-4-

15.

Each PCB-impregnated anode contained from 8.5 to 10 pounds of Aroclor-1268 (PCBs). Between 1962 and 1972, Defendant Honeywell utilized at its Brunswick Plant approximately twenty-five percent of the amount of Aroclor-1268 (PCBs) produced annually in the United States.

16.

Between 1962 and 1972, Defendant Honeywell consumed thirty to sixty tons of Aroclor-1268 (PCBs) per year at its Brunswick Plant.

17.

Defendant Honeywell was the only company in Georgia to purchase Aroclor-1268 (PCBs) for use in its manufacturing process.

18.

During the manufacturing process, mercury was also absorbed by the graphite anodes.

19.

During the manufacturing process, the anodes eroded into dust. The eroded graphite particles that were contaminated with mercury and Aroclor-1268 (PCBs) were discharged into Purvis Creek or captured in filters and backwashed through the plant sewer into Purvis Creek or dumped on site.

20.

An anode was considered "spent" or no longer usable after eighty to ninety percent of the anode had eroded into the cell. Defendant Honeywell stacked contaminated spent anodes

around the Plant Site, dumped spent anodes in the marsh, built berms in the marsh out of spent anodes, and filled in potholes in roads at the Plant Site with spent anodes.

21.

The anodes that were dumped in the marsh and used to build berms contained Aroclor-1268 (PCBs) and mercury.

22.

Defendant Honeywell dumped hundreds of tons of Aroclor-1268 (PCBs) in filter backwash sent to Purvis Creek, in the trash dump in and near the marsh behind the cell rooms, in berms and in other construction and fill at the Plant Site.

23.

Some of the PCBs that Honeywell discharged into Purvis Creek, the Turtle River Estuary and nearby marshes have dechlorinated over time into even more toxic forms of PCBs. Some of these dechlorinated PCBs have now contaminated City property.

24.

PCBs were banned for use in the United States by the U.S. Environmental Protection Agency in the 1970's.

25.

Between 1956 and 1978, Defendant Honeywell dumped used cell room parts in the marsh and on land to the west of the Plant. These used parts were contaminated with mercury. Mercury was visible on the ground in the areas where the old parts were dumped in the marsh.

26.

Defendant Honeywell used a bulldozer to fill portions of the marsh where it had dumped used parts and spent anodes containing mercury and Aroclor-1268 (PCBs).

27.

In 1973, Defendant Honeywell discovered that its cell rooms containing metallic mercury were sinking because caustic soda that it had dumped was chemically dissolving the earth under the Plant.   The sinking foundation caused the cell room floors to crack and sink, thus facilitating further discharges of mercury into the environment.

28.

No later than 1969, management of Defendant Honeywell knew that metallic mercury dumped into a saltwater estuary would methylate into organic mercury that would be absorbed by plant and animal life.  Having entered the food chain, methylmercury bioaccumulates and biomagnifies, with the result that fish in an estuary acquire levels of methylmercury toxic to people who eat the fish.   Methylmercury is far more toxic and bioactive than metallic mercury.

29.

No later than 1969, management of Honeywell and Georgia Power were on notice that that people living near Minamata Bay in Japan had been poisoned by methylmercury in fish they had eaten, and that the source of this toxic mercury was a chemical plant that had dumped metallic mercury into Minamata Bay.

30.

Copies of studies documenting the methylation and bioaccumulation of mercury and the Minamata Bay tragedy were furnished to the management of Defendant Honeywell's Brunswick Plant and kept in the Plant files.  At least since 1969, management of Defendants Honeywell and Georgia Power have known that metallic mercury dumped into the Turtle River Estuary would methylate and bioaccumulate in the fish and poison people who ate the fish.

31.

Despite the notice and knowledge of the toxic consequences of dumping metallic mercury into the Turtle River saltwater estuary, Defendant Honeywell intentionally continued to dump metallic mercury into the Turtle River Estuary and made no effort to recover the mercury that it had already wrongfully dumped and released.

32.

No later than 1970, management of Defendant Honeywell knew that PCBs released into the environment are strongly absorbed on particles, concentrate in animal fat, and are transferred through the food chain.

33.

No later than 1970, management of Defendant Honeywell knew that PCBs in very low concentrations cause death in fish, crab and oyster populations, with toxic effects found at levels as low as one part per billion in an aquatic environment, the equivalent of one pint of PCBs dumped into 300 acres of water one foot deep.

34.

No later than 1970, management of Defendants Honeywell and Georgia Power knew that PCBs should never be disposed of in a manner in which the PCBs could enter an aquatic environment.

35.

Despite actual notice and knowledge of the severe toxic consequences of releasing PCBs into an aquatic environment, Defendant Honeywell intentionally continued to dump PCB waste at a rate of tens of thousands of pounds of PCBs each year onto its Brunswick Plant Site, into

ponds on the Site, into marshlands and into its outfall canal that led to Purvis Creek and the Turtle River Estuary.

36.

Despite actual notice and knowledge of the severe toxic consequences of releasing PCBs into an aquatic environment, Defendant Honeywell took no action to remove any of the tens of thousands of pounds of PCBs that it had already dumped on its Site, into the marshlands and in the outfall canal that leads to Purvis Creek and the Turtle River Estuary.

37.

No later than 1971, management of Defendant Honeywell had learned that its mercury had, in fact, methylated, entered the food chain and was in fish, crabs oysters and other marine life in the Turtle River Estuary and beyond at levels that posed a risk of injury to people eating the seafood.

38.

Despite the knowledge and notice to Defendant Honeywell of the dire potential consequences of its wrongdoing, Defendant Honeywell elected to hide its wrongdoing and to take no action to notify and warn its neighbors, the City of Brunswick, or the citizens of the City of Brunswick or those who fished and crabbed in the waters of Glynn County or those who ate seafood from the waters of Glynn County.

39.

In 1978, management of Defendant Honeywell directed managers of each Honeywell unit to evaluate the cost of complying with environmental laws for each unit. Management of Honeywell had decided to discontinue ownership and operation of plants where the cost of environmental stewardship was found to be "uneconomical."

-9-

40.

In December 1979, Defendant Honeywell sold its Brunswick chlor-alkalai plant to Linden Chemicals and Plastics Corporation (LCP) for the purpose of shedding Defendant Honeywell's responsibilities for environmental stewardship.

41.

Defendant Honeywell sold its Brunswick Plant and Plant Site to LCP without disclosing to LCP that Defendant Honeywell had dumped many tons of mercury and PCBs on and off the Site, and that the Plant buildings were slowly sinking because of caustic soda and mercury that Defendant Honeywell had dumped under the buildings.

42.

Defendant Honeywell sold the Brunswick Plant and Plant Site for the purpose of continuing the nuisance and trespasses that it had created by releasing mercury and PCBs that were slowly spreading into the Turtle River Estuary and over time spreading into waters within the City of Brunswick and onto property of the City of Brunswick.

43.

Defendant Honeywell's sale of the Brunswick Plant and Plant Site had the effect of continuing the nuisance and trespasses that it had created by releasing mercury and PCBs that were spreading into the Turtle River Estuary and over time into waters and marshes within the City of Brunswick and with the passage of time onto property of the City of Brunswick.

44.

Defendant Honeywell financed, in part, the sale of its Brunswick Plant and Plant Site to LCP and was, at all times relevant, a creditor of LCP with substantial control of LCP.

45.

Defendant Honeywell used the power that it held as a creditor of LCP as a tool to keep the Plant in operation for the express purpose of avoiding and delaying removal of the tons of mercury and tons of PCBs that it had dumped on the Plant Site and into adjacent marshes. It thereby maintained, continued, expanded and aggravated the nuisance and trespasses that it had created.

46.

In 1981, Defendant Honeywell filed a required report with the U.S. Environmental Protection Agency that stated that 4500 tons of material containing trace amounts of mercury had been disposed at the Plant Site. Defendant Honeywell did not inform the U.S. Environmental Agency that it had disposed of hundreds of tons of PCBs, that it had created an uncontained dump site containing PCBs and mercury in the marsh, or that it had discharged many tons of mercury into Purvis Creek. Defendant Honeywell represented in documents submitted to the U.S. Environmental Agency before 1981, in 1981, and after 1981, that the wastes that it had dumped at its Brunswick Plant Site did not contain PCBs. These were materially false statements intentionally made for the purpose of deceiving authorities with the U.S. E.P.A. in order to defer and avoid the cost of remediating the mercury and PCBs that it wrongfully discharged.

47.

The false representations contained in reports that Defendant Honeywell filed with the U.S. E.P.A. and the Georgia E.P.D. were done with the purpose and with the effect of continuing and expanding the nuisance and trespasses that Defendant Honeywell had created. False statements made to the Georgia E.P.D. and other agencies of the State of Georgia were in violation of O.C.G.A. § 16-10-20.

-11-

48.

By 1985, LCP was in financial difficulty. From 1985 to 1994, Defendant Honeywell used its power as a creditor of LCP to keep the Plant in operation for the purpose and with the effect of continuing and expanding the nuisance and trespasses that Defendant Honeywell had created and delaying the cost of remediation

49.

In 1988, LCP contacted Defendant Honeywell to complain about the sinking of the mercury cell rooms and other environmental misdeeds that Defendant Honeywell had not disclosed to LCP prior to the sale of the Plant to LCP.

50.

In 1988, Defendant Honeywell formed a conspiracy with LCP to hide environmental misdeeds, and to facilitate the continued operation of the Plant for the purpose and with the effect of continuing and aggravating the nuisance that Defendant Honeywell had created.

51.

When management of Defendant Honeywell learned that the State of Georgia had discovered some of the tons of PCBs that Defendant Honeywell had illegally dumped at the Plant Site, Defendant Honeywell conspired with LCP to assist Defendant Honeywell's effort to illegally hide its responsibility for the PCBs dumped at the Site by requesting that insolvent LCP claim responsibility for the PCBs, with Defendant Honeywell secretly agreeing to reimburse LCP for costs, even though LCP had never used PCBs at the Brunswick Plant. Defendant Honeywell thus sought to pay LCP to deceive government agents for the purpose of hiding

illegal, criminal conduct on the part of Defendant Honeywell and to avoid full financial responsibility for its misdeeds, all in violation of O.C.G.A. § 16-10-20.

52.

Defendant Honeywell's efforts to hide this portion of its wrongful conduct failed. The Georgia E.P.D. learned that Defendant Honeywell, and not LCP, had used the PCBs and that Honeywell had dumped the anodes and decomposed particles from anodes contaminated with Aroclor-1268 (PCBs) in the marsh and water. E.P.D. ordered Defendant Honeywell to remove the contaminated anodes.

53.

As a result of a negotiated consent order with E.P.D., Defendant Honeywell agreed to do further testing to delineate the extent of Aroclor-1268 (PCBs) contamination at the Plant Site. As a result, E.P.D. did not discover at that time the Aroclor-1268 (PCBs) contamination that existed in the old Honeywell trash dump, elsewhere at the Plant Site, and in the waters and marshes. Defendant Honeywell was thus able to continue to wrongfully hide large amounts of the PCBs that it had dumped and left in Brunswick and Glynn County and to delay incurring costs of remediation.

54.

By 1993, Defendant Honeywell determined that it could save over $20,000,000 if it could keep the Brunswick Plant in operation so that it could "defer" environmental remediation costs and thus leave its mercury and PCBs on and off the Site, thereby continuing and expanding the ongoing nuisance and trespasses. Defendant Honeywell believed that if the Brunswick Plant closed, the environmental regulators would move quickly to make Defendant Honeywell remediate the contamination at the Plant Site.

-13-

55.

Defendant Honeywell attempted to keep the Brunswick Plant in operation despite LCP's financial difficulties.  Defendant Honeywell and HoltraChem, Inc. began negotiating a prospective purchase of the Brunswick Plant and other chlor-alkalai plants from LCP. Defendant Honeywell wanted to purchase the Brunswick Plant to further delay environmental remediation costs and thereby save millions of dollars in current expenses.

56.

In 1993, Defendant Honeywell provided millions of dollars to LCP to keep the Brunswick Plant in operation so that Defendant Honeywell could continue to postpone environmental remediation of the Plant Site and the rivers and marshes of Glynn County, with the effect of continuing and expanding the nuisance and trespasses that Defendant Honeywell had created.

57.

During 1993, Defendant Honeywell's expenditures to keep the Brunswick Plant in operation included its guarantee of the Plant power bill, without which the Plant power would have been cut off and the plant would have been shut down.

58.

In October 1993, Defendant Honeywell took control of operations at the Brunswick Plant and sent its employee, Mark White, to serve as plant manager of the Brunswick Plant but posing as an LCP employee.

59.

Between September 1993, and February 1994, Defendant Honeywell opposed Georgia E.P.D.'s attempt to revoke LCP's environmental permits.  Defendant Honeywell claimed that it possessed sufficient interest in the Brunswick Plant during this time to give it standing to oppose the permit revocation proceedings.

60.

In October 1993, Defendant Honeywell sent James Kavney, a Honeywell employee, to take charge of maintenance at the Plant.

61.

Between October 1993, and February 1994, numerous Honeywell employees worked in operations and maintenance at the Plant.

62.

The prolonged operation of the Plant made possible by the efforts of Defendant Honeywell caused additional releases of mercury and PCBs from the Plant Site to the marsh and surrounding waters that slowly spread through the Marshes of Glynn and its adjoining creeks and rivers.

63.

Defendant Honeywell kept the Plant in operation in order to avoid having to spend money to remediate its releases of mercury and PCBs, and thus continued and aggravated the ongoing nuisance and trespasses.

64.

In February 1994, the Brunswick Plant was shut down by Georgia's E.P.D.

-15-

65.

A Unilateral Administrative Order was issued to Defendant Honeywell, LCP, and Mark White ordering them to remove the chemicals remaining at the Plant, to determine the extent of contamination at the Plant, and to begin the environmental remediation of the Plant and the Plant Site.

66.

Following the shutdown, the U.S. E.P.A. discovered tons of mercury underneath the cell rooms, in the soil around the Plant Site, in the marsh in front of the old Honeywell trash dump, in the old Honeywell trash dump and in the waters surrounding the Plant Site. Testing of marine life in waters adjacent to the Plant again confirmed that the seafood in this area was contaminated with mercury and was not safe to eat. The sediment in creeks, rivers and marshes adjacent to the Plant was found to be contaminated with mercury.

67.

The U.S. E.P.A. discovered tons of Aroclor-1268 (PCBs) in the soil around the Plant, in the marsh in front of the old Honeywell trash dump, in the old Honeywell trash dump and in the waters surrounding the Plant Site and beyond. Testing of marine life in waters adjacent to the Plant confirmed that the fish and crabs in this area were contaminated with Aroclor-1268 (PCBs) and therefore were not safe to eat. The sediment in creeks, marshes and rivers adjacent to the Plant was found to be contaminated with Aroclor-1268 (PCBs).

68.

The U.S. E.P.A. concluded that large amounts of mercury and Aroclor-1268 (PCBs) continued to be discharged from the Plant Site into the adjacent waters. In 1998, U.S. E.P.A. required Defendant Honeywell to remove one foot of soil from thirteen acres of the marsh and

sediment in creeks in front of the old Honeywell trash dump.  Large amounts of mercury and PCBs had continued to be discharged from the thirteen acres of marsh and creek.

69.

Mercury and PCBs released from the Plant and the Plant Site have entered the food chain in the Turtle River estuary and the waters and marshes within the City of Brunswick and now onto property of the City of Brunswick.

70.

Mercury and PCB contamination in water and sediment and in the food chain in the Turtle River Estuary and adjacent waters and marshes continues to spread.

71.

Defendant Honeywell's activities at the Plant Site caused and continue to cause toxic mercury and PCBs to be spilled, discharged and deposited into the turtle River, its tributaries, surrounding marshlands and with the passage of time onto property of the City of Brunswick in amounts, concentrations and combinations that are harmful to health, safety and welfare of the citizens of the City of Brunswick and to animals, birds and aquatic life.

72.

For many years, the Defendant Georgia Power Company owned and operated an electrical generator station on Crispen Island that abutted the Turtle River and was known as Plant McManus.  Plant McManus was for years coal fired, and emitted mercury into the air, the waters and the marshes of Glynn County.

73.

Georgia Power fitted the Plant with coal-handling equipment, including bunkers, conveyor belts, pulverizers, conveyors, a crusher house, and a coal train tripper house.  Coal ash

-17-

that contained mercury was stored on site in an unlined pond that contaminated ground water and overflowed into the Turtle River and the Marshes of Glynn during heavy rain events. *See* Ex. D.

74.

The burning of coal at Plant McManus released metallic mercury into the air that precipitated into upland, marshes and waterways of Glynn County that, along with contaminants released from Georgia Power's coal ash, has contributed to the present contamination of property of the City of Brunswick.

75.

The mercury released by Georgia Power has, over time, migrated onto marshes and shoreline owned by the City of Brunswick thereby contributing to the pollution of property of the City of Brunswick. It continues to migrate both to and from property of the City of Brunswick.

76.

Georgia Power Company purchased tracts of land within what is now the Allied/LCP Site in 1937, 1942, and 1950. The company utilized the Site primarily for electric power generation and petroleum product storage. As a result of these operations, hazardous substances, including lead, polychlorinated biphenyls ("PCBs"), and polycyclic aromatic hydrocarbons ("PAHs"), were disposed at the Site. These toxic chemicals have spread into the Marshes of Glynn and beyond.

77.

The Defendant Georgia Power has acknowledged joint responsibility for the pollution of the Marshes of Glynn, as evidenced by the Consent Decree agreed to by Georgia Power. *United States of America v. Honeywell International Inc. and Georgia Power Company*, Civil Action No. 2:16-CV-00112, U.S. District Court, S.D. GA, DKT. 3-1, 07-29-16.

78.

Defendants Honeywell and Georgia Power have with the passage of time stored, disposed, discharged and released their hazardous wastes onto property of the City of Brunswick and in the waters and marshlands abutting property of the City of Brunswick in order to avoid the costs of safe storage and safe disposal of its hazardous waste. This contamination is not visible. It was not observable to employees of the City of Brunswick when it was deposited on City property. It continues to migrate both to and from City property.

79.

Mercury and PCB contamination of the water, sediment, and marine life now in the Turtle River Estuary and adjacent waters and marshes within the City of Brunswick interferes with and will continue to damage the value and usefulness of property in the City of Brunswick, and impair use, the enjoyment, and rental value of these properties.

80.

As a waterfront property owner, the City of Brunswick has the right to construct docks into the creeks and rivers.

81.

As a result of Defendant Honeywell's widespread disposal of mercury and PCBs, and the wrongful releases of hazardous wastes by Defendant Georgia Power, the usefulness, enjoyment and rental value of docks of the City of Brunswick have been diminished.

82.

The City of Brunswick owns properties that abut and are inundated by tidal waters in which commercial and recreational fishing, crabbing and shrimping have been restricted.

-19-

83.

Animals, birds, aquatic life and vegetation living within the Turtle River Estuary and surrounding waters and marshlands have been poisoned as a result of Defendants' pollution.

84.

Mercury and PCBs wrongfully released by Defendant Honeywell have been ingested by oysters, snails, fish, crabs and other wildlife.

85.

As a result of the wrongful acts of Defendant Honeywell, the crabs, oysters, snails, fish and other wildlife that inhabit the Turtle River area and adjacent waters and marshes within the City of Brunswick now have high levels of mercury and PCBs.

86.

The fish, oysters and crabs in the area of the Turtle River and adjacent waters are now unfit for human consumption as a result of Defendants' contamination.

87.

Defendants Honeywell and Georgia Power knew at all times that mercury and PCBs were harmful to the environment.

88.

Defendants Honeywell and Georgia Power knew at all times that they should not allow mercury and PCB waste to enter into any body of water, including the Turtle River Estuary and adjacent waters and marshes.

89.

Defendants Honeywell and Georgia Power had a duty to the City of Brunswick to manage, store and contain their hazardous wastes in a reasonable manner.

90.

Defendants had a duty to the City of Brunswick to operate their plants and plant sites in a manner that did not pollute the waters and marshlands on and abutting property of the City of Brunswick.

91.

Defendants had a duty to the City of Brunswick to design and maintain all hazardous waste storage and disposal areas so that hazardous wastes did not seep into the marshlands and waters on and abutting property of the City of Brunswick.   Defendants did not have permission to use property of the City of Brunswick for storage of their hazardous waste.

92.

The above-described actions of Defendants were in violation of the Georgia Water Quality Control Act. O.C.G.A. § 12-5-29(a),(b).   Such wrongful acts constitute repeated violations of the criminal prohibitions of the Act. O.C.G.A. § 12-5-53.

93.

Defendants' dumping of mercury and PCBs into public waters was, at all times, illegal and criminal.

94.

Having wrongfully and knowingly discharged toxic chemicals into the Turtle River and the creeks, canals and marshes on and adjacent to property of the City of Brunswick, Defendants

are and have been under a duty to notify the City of Brunswick and to warn the City of Brunswick of the dangers that they have created.

95.

Defendants and U.S. E.P.A. have defined the boundaries of the Site subject to remediation under the Comprehensive Environmental Response and Liability Act, 42 U.S.C. § 9601, et seq. The property within this Site is referred to as the Allied/LCP CERCLA Site, as shown of Exhibit D to this Complaint. The City of Brunswick has no ownership interest in any of the property within the Allied/LCP CERCLA Site. This lawsuit does not challenge the actions of the U.S. E.P.A. or the orders entered relating to remediation of the Allied/LCP CERCLE Superfund Site.

96.

Property, waters and marshland outside the area of the Allied/LCP CERCLA Site are not part of a CERCLA superfund site.

97.

Defendants Honeywell and Georgia Power have polluted land, water and marshland outside the boundaries of the Allied/LCP CERCLA Site.

98.

As a result of the actions of Defendants Honeywell and Georgia Power, property of the City of Brunswick has been damaged and reduced in value.

99.

As a direct result of the wrongful actions of Honeywell and Georgia Power, the City of Brunswick owns properties containing hazardous and toxic wastes.

100.

The actions of Defendants Honeywell and Georgia Power have interfered with the value, use and enjoyment of property of the City of Brunswick. The properties of the City of Brunswick have been poisoned and contaminated.

101.                    `

Defendants Honeywell and Georgia Power have ratified the conduct of their employees, agents and contractors that benefitted each Defendant and that caused and or contributed to the City of Brunswick's damage and injury.

102.

At all times relevant hereto, it was foreseeable to Defendants Honeywell and Georgia Power that their conduct would harm the City of Brunswick.

103.

Defendants Honeywell and Georgia Power acted in concert to accomplish the tortious conduct about which the City of Brunswick complains.

104.

Defendants Honeywell and Georgia Power are jointly and severally liable to the City of Brunswick for the full amount of Plaintiff's damages.

105.

At all times relevant hereto, it was foreseeable to Defendants Honeywell and Georgia Power that their failure to prevent their pollutant discharges could harm the City of Brunswick and its property.

106.

At all times relevant hereto, it was foreseeable to Defendants Honeywell and Georgia Power that their failure to permanently remove their pollutants from property of the city of Brunswick could harm the City of Brunswick and its property.

## COUNT ONE

## CONTINUING TRESPASS

107.

The City of Brunswick restates and incorporates by reference, as if fully set forth herein, paragraphs 1 through 106.

108.

The continuing unpermitted presence and spread of Defendants' pollution at and about and to and from property of the City of Brunswick are continuing trespasses that unreasonably and substantially interferes with the City's right to exclude the pollutants of others from its property.

109.

Defendants' continuing failure and refusal to permanently remove their pollution before it trespasses upon property of the City of Brunswick, unreasonably and substantially interferes with the City's right to exclude the pollutants of others from its property.

110.

By their conduct above-described, each Defendant maintained and maintains continuing trespasses on property of the City of Brunswick. These continuing trespasses are abatable, at least in part by removing contamination from the land and marsh owned by Honeywell and

controlled by Honeywell and Georgia Power before their pollutants trespass upon property of the City of Brunswick.

111.

By their conduct above-described, each Defendant procured, assisted, or induced the commission and maintenance of the trespasses alleged in this Second Amended Complaint.

112.

The continuing trespasses that Defendants Honeywell and Georgia Power have maintained and are maintaining are an actual and proximate cause of aggravation, inconvenience and other damage and injury to the City of Brunswick.

113.

The City of Brunswick was and is specially damaged by Defendants' continuing trespasses.

114.

Because of Defendants' continuing trespasses, Defendants are liable to the City of Brunswick in dollar amounts to be determined by the enlightened conscience of the jury.

115.

Defendants' conduct set out above was reckless, showed willful misconduct, malice, wantonness, oppression and an entire want of care that would raise the presumption of conscious indifference to the consequences, O.C.G.A. § 51-12-5.1. The City of Brunswick is entitled to an award of punitive damages against each Defendant sufficient to punish, penalize and deter each Defendant from further like conduct.

116.

Within the meaning of O.C.G.A. § 13-6-11, Defendants have acted in bad faith, thereby entitling the City of Brunswick to recover its expenses of litigation including reasonable attorney fees, expert fees, and other litigation costs.

## COUNT TWO

### CONTINUING NUISANCE

117.

The City of Brunswick restates and incorporates by reference, as if fully set forth herein, paragraphs 1 through 106.

118.

The continuing unpermitted presence and spread of Defendants' pollution at and about and to and from property of the City of Brunswick unreasonably and substantially interferes with the City's use and enjoyment of its property.

119.

Defendants' continuing failure and refusal to permanently remove their pollution before it contaminated property of the City of Brunswick unreasonably and substantially interferes with the City's use and enjoyment of its property.

120.

The City of Brunswick is entitled to the full use and enjoyment of its property free from the Defendants' continuing nuisances.

121.

Defendants' continuing nuisances cause the City of Brunswick hurt, inconvenience and or damage within the meaning of O.C.G.A. § 41-1-1.

122.

Defendants' failure and refusal to permanently abate their continuing nuisances and damage is continuance or maintenance of the nuisance.

123.

Defendants' nuisances are continuing and abatable at least in part, by removing the contamination from the land and marsh owned by Honeywell and controlled by Honeywell and Georgia Power before it threatens properties of the City of Brunswick.

124.

Defendants cause or are a contributing cause of the continuing abatable nuisances, about which the City of Brunswick here complains.

125.

The continuing nuisances are an actual and proximate cause of the City of Brunswick 's damage and injury.

126.

The rental or use value of property of the City of Brunswick is reduced by Defendants' continuing abatable nuisances.

127.

The City of Brunswick is specially damaged by the loss of rental or use value of its property, by its annoyance, aggravation and inconvenience, by its loss of use and enjoyment, and by its lawsuit expenditures including attorney's fees and expenses of litigation, resulting from Defendants' maintenance of the nuisances.

-27-

128.

Defendants Honeywell and Georgia Power are liable to the City of Brunswick for all actual damages to be determined by the enlightened conscience of the jury.

129.

The conduct of Defendants Honeywell and Georgia Power set out above was reckless, showed willful misconduct, malice, wantonness, oppression, an entire want of care, and that conscious indifference to the consequences of their conduct to the City of Brunswick.

130.

The City of Brunswick is entitled to recover punitive damages against each Defendant sufficient to punish, penalize, or deter each Defendant from further like conduct.

131.

Within the meaning of O.C.G.A. § 13-6-11, Defendants have acted in bad faith, thereby entitling the City of Brunswick to recover its expenses of litigation including reasonable attorney fees, expert fees, and other litigation costs.

WHEREFORE, Plaintiff prays as follows:

[a]     that process issue and the Defendants be served as provided by law;

[b]     that the City of Brunswick recover from Defendants full compensation all actual damages;

[c]     that the City of Brunswick recover exemplary damages from each Defendant sufficient to punish each Defendant and to deter each Defendant from further like wrongful conduct;

-28-

[d]    that the City of Brunswick recover its expenses of litigation including reasonable

attorney fees;

[e]    that the City of Brunswick recover interest and court costs as provided by law;

[f]    that the City of Brunswick have trial by jury; and

[g]    that the City of Brunswick have such further relief as the Court may deem just.

Respectfully submitted,


_s/ John C. Bell, Jr._
John C. Bell, Jr. – Ga. Bar # 048600
Pamela S. James – Ga. Bar # 389015
THE BELL FIRM
PO Box 1547
Augusta, GA 30903-1547
(706) 722-2014
john@bellfirm.net
pam@bellfirm.net

_s/ Brian Donald Corry_
Brian Donald Corry – Ga. Bar # 165557
McQUIGG SMITH & CORRY
504 Beachview Drive, Suite 3D
Saint Simons Island, GA 31522
(912) 638-1174
brian@msclawga.com

_s/ Robert P. Killian_
Robert P. Killian – Ga. Bar # 417575
KILLIAN LAW FIRM LLC
47 Professional Drive
Brunswick, GA    31520
(912) 263-9520
bob@killianlawfirm.com

COUNSEL FOR PLAINTIFF

-29-

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing **SECOND AMENDED COMPLAINT,** upon all counsel of record by electronic mail as follows:

Mark D. Johnson, Esq. {*mjohnson@gilbertharrelllaw.com*}
Amber M. Carter, Esq. {*acarter@gilbertharrelllaw.com*}
Gilbert, Harrell, Sumerford & Martin, P.C.
777 Gloucester Street - Suite 200
Brunswick, Georgia   31520

Benjamin H. Brewton, Esq. {*bbrewton@balch.com*}
T. Joshua R. Archer, Esq. {*jarcher@balch.com*}
Balch & Bingham LLP
801 Broad Street - Suite 800
Augusta, Georgia   30901

Brian D. Israel, Esquire {*brian.israel@arnoldporter.com*}
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001-3743

This 14th day of October, 2024.

_s/ John C. Bell, Jr._
John C. Bell, Jr.
Counsel for Plaintiff

Exhibit 14

FILED - JB
GLYNN CO. CLERK'S OFFICE
Filed 10/22/2024 3:18 PM
Accepted 10/22/2024 4:06 PM
CASE # CE22-01086

*Rebecca J Walden*
CLERK SUPERIOR COURT

## IN THE SUPERIOR COURT OF GLYNN COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| CITY OF BRUNSWICK, by and through its MAYOR AND BOARD OF COMMISSIONERS, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | CIVIL ACTION FILE NO. CE22-01086 |
| HONEYWELL INTERNATIONAL, INC., formerly known as ALLIED CHEMICAL CORPORATION, and as ALLIEDSIGNAL, INC., and THE GEORGIA POWER COMPANY, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

### POST-HEARING, POST-AMENDMENT BRIEF OF THE CITY OF BRUNSWICK

This brief is submitted in response to arguments made at the hearing by counsel for Defendants and arguments made in their supplemental briefs. After the hearing, the City of Brunswick filed a Second Amended Complaint that addresses arguments made by the Defendants and that seeks to moot those arguments so that this case can proceed with discovery and resolution on the merits.

#### Honeywell's Motion for a More Definite Statement

Counsel for the City of Brunswick believes that the allegations of the Complaint and the First Amended Complaint were quite sufficient to plead the City's claims for damage to its properties. Defendants did not concur. The City has now filed a Second Amended Complaint that sets forth each parcel of property that it owns that is affected by the Defendants' wrongful pollution. *See* Second Amended Complaint, ¶ 6 and Exhibit B. This should satisfy Defendants' desire for a more complete, more detailed allegation of ownership at the pleadings stage.

## O.C.G.A. § 9-11-12(b)(6)

Honeywell argues that an allegation by the City that the City does not own property that is within the Honeywell/LCP Superfund Site is not an allegation of fact that must be taken as true in deciding a 12(b)(6) motion. Honeywell's argument in this regard is without merit. The appropriate rule for 12(b)(6) motions is clear:

> A motion to dismiss may be granted where a complaint lacks any legal basis for recovery. [W]e view all of the plaintiff's well-pleaded material allegations as true, and view all denials by the defendant as false, noting that we are under no obligation to adopt a party's legal conclusions based on these facts.

*Auto-Owners Insurance Company v. Tracy*, 344 Ga.App. 53, 54 (2017).

It is only *conclusions* of law that need not be accepted as correct. *Id.*

An allegation that a plaintiff owns property or does not own property, whether it be a car, a home or an office building, is an allegation of fact to be taken as true when addressing a 12(b)(6) motion to dismiss. *Id.*

### There is no CERCLA Preemption

The claims that the City of Brunswick assert are claims for monetary damages that are not preempted by federal law. Honeywell's arguments to the contrary are without merit.

> What is more, Atlantic Richfield remains potentially liable under state law for compensatory damages, including loss of use and enjoyment of property, diminution of value, incidental and consequential damages, and annoyance and discomfort.

*Atlantic Richfield Company v. Christian*, 590 U.S. 1, 23 (2020). *Accord Beck v. Atlantic Richfield Co.*, 62 F.3d 1240, 1243 (9th Cir. 1995) (resolution of a state law claim for monetary damages is not a challenge to a CERCLA cleanup plan); *Broward Gardens Tenants Ass'n v. U.S. E.P.A.*, 311 F.3d 1066, 1073 (11th Cir. 2002) (resolution of a damage claim that does not include a claim for injunctive relief is not a challenge to a CERCLA cleanup order); *Samples v. Conoco, Inc.*, 165 F.Supp.2d 1303,

1317 (N.D. Fla. 2001) (suit seeking monetary damages for nuisance and trespass is not a challenge to a CERCLA consent decree).

It is noteworthy that in its brief and at oral argument to this Court, the City of Brunswick cited two sections of the CERCLA statute and the provision of the consent decree entered into by Honeywell and Georgia Power on the one hand, and the U.S. Environmental Protection Agency on the other. These are as follows:

**§ 9614. Relationship to other law**

(a) Additional State liability or requirements with respect to release of substances within State

Nothing in this chapter shall be construed or interpreted as preempting any State from imposing any additional liability or requirements with respect to the release of hazardous substances within such State.

42 U.S.C.A. § 9614(a).

**§ 9652. Effective dates; savings provisions**

(d) Nothing in this chapter shall affect or modify in any way the obligations or liabilities of any person under other Federal or State law, including common law, with respect to releases of hazardous substances or other pollutants or contaminants. The provisions of this chapter shall not be considered, interpreted, or construed in any way as reflecting a determination, in part or whole, of policy regarding the inapplicability of strict liability, or strict liability doctrines, to activities relating to hazardous substances, pollutants, or contaminants or other such activities.

42 U.S.C.A. §9652(d).

A similar provision is included in E.P.A.'s Consent Order with Honeywell and Georgia Power:

7. **Compliance with Applicable Law**. Nothing in this CD limits SDs' obligations to comply with the requirements of all applicable federal and state laws and regulations. SDs must also comply with all applicable or relevant and appropriate requirements of all federal and state environmental laws as set forth in the ROD and the SOW. The activities conducted pursuant to this CD, if approved by EPA, shall be deemed to be consistent with the NCP as provided in Section 300.700(c)(3)(ii) of

the NCP.

U.S.D.C., Dkt. 16, p. 8.

It is telling that neither Honeywell nor Georgia Power chose to address either of these controlling code sections or paragraph seven of their Consent Order in their post-hearing briefs.

It also should be noted that a substantial source of mercury from Georgia Power's closed plant site on Crispen Island was an open coal ash pit that, as alleged in the Second Amended Complaint, seeped and released mercury into the Turtle River Estuary and beyond. Exhibit 1. This site is not a part of the Honeywell/LCP Superfund Site and is not subject to a CERCLA consent decree. A massive, unlined, uncovered coal ash pit that contains toxic chemicals left behind on a site where once stood a power plant is not "an establishment providing a necessary public service" as contended by Georgia Power. Brief of Georgia Power, October 11, 2024, p. 4. There is no support for a CERCLA preemption argument as to mercury that seeped therefrom.

The contentions that the City's tort action for monetary damages is barred by federal law is without merit.

### Statute of Limitation Issues

The Georgia Supreme Court decision in *Wise Business Forms, Inc., v. Forsyth County*, 317 Ga. 636 (2023) is the controlling authority:

> There are also cases, however, where the permanent nuisance causes multiple harms to a plaintiff's property—some of which are immediately observable upon the completion or construction of the nuisance and some of which are not observable until later—i.e., cases where the nuisance "is by its nature continuing" and "will continue indefinitely." *Cox v. Cambridge Square Towne Houses*, 239 Ga. 127, 127-128, 236 S.E.2d 73 (1977). Pinpointing when the statute of limitation starts to run in such cases can be challenging—both for litigants and for factfinders. *See id.* (noting that confusion "has long existed as to when a nuisance, which is by its nature continuing, is considered 'permanent' ").

The circumstances at issue in *Cox* were strikingly similar to those in the present case.

The subject nuisance was "by its nature continuing"; the lawsuit arising out of this nuisance was "filed more than four years after the creation of the nuisance"; and "the dispute center[ed] around whether the action for damages [was] barred by the statute of limitation." *Id.* at 127, 236 S.E.2d 73. In *Cox*, the Court held that, where the subject nuisance "will continue indefinitely, the appellant has the right to elect to treat the nuisance as temporary and sue for all those damages which have occurred within the past four years, or he may elect to sue for all future damages as well and put an end to the matter." *Id.* at 129, 236 S.E.2d 73 (citation and punctuation omitted).

In other words, under *Cox*, when a nuisance "is by its nature continuing," the plaintiff can elect to proceed in one of two ways. The first option would be to treat the nuisance as "temporary" and file a lawsuit to recover for "all those damages [or harms] which have occurred [to the plaintiff's property] within the past four years." *Cox*, 239 Ga. at 129, 236 S.E.2d 73. And, by implication, when the plaintiff elects to proceed in this manner and treats the nuisance as "temporary," if the continuing nuisance causes additional harms to the plaintiff's property in the future, the plaintiff can file another lawsuit seeking recovery for these additional harms, as long as the plaintiff initiates the lawsuit within four years from the occurrence of that future harm. *See Lombard*, 101 Ga. at 727, 28 S.E. 994 (in these cases, "every continuance of the nuisance is a fresh nuisance, for which a fresh action will lie," and the cause of action "accrues at the time of such continuance" and "the statute of limitations runs only from the time of such accrual").

*Id.* at 642-643.

The allegations of the Second Amended Complaint set forth in more detail facts that relate

to Georgia's limitations law:

### 11.

By design, waste and wastewater contaminated with mercury were discharged through a ditch that emptied into Purvis Creek. The mercury dumped into Purvis Creek spread in the tidal waters throughout the Turtle River estuary and in time, into waters within the City of Brunswick and **after the passage of time** onto property of the City of Brunswick. All of Turtle River is tidal with its direction of flow reversing four times each day.

### 13.

Mercury discharged into the air and water by Defendant Honeywell precipitated and flowed **over time** within the City of Brunswick and migrated over time onto property of the City of Brunswick.

23.

Some of the PCBs that Honeywell discharged into Purvis Creek, the Turtle River Estuary and nearby marshes have dechlorinated **over time** into even more toxic forms of PCBs. Some of these dechlorinated PCBs **have now contaminated** City property.

62.

The prolonged operation of the Plant made possible by the efforts of Defendant Honeywell caused additional releases of mercury and PCBs from the Plant Site to the marsh and surrounding waters **that slowly spread** through the Marshes of Glynn and its adjoining creeks and rivers.

69.

Mercury and PCBs released from the Plant and the Plant Site have entered the food chain in the Turtle River estuary and the waters and marshes within the City of Brunswick and **now onto property of the City of Brunswick**.

70.

Mercury and PCB contamination in water and sediment and in the food chain in the Turtle River Estuary and adjacent waters and marshes **continues to spread**.

73.

Georgia Power fitted the Plant with coal-handling equipment, including bunkers, conveyor belts, pulverizers, conveyors, a crusher house, and a coal train tripper house. **Coal ash that contained mercury was stored on site in an unlined pond that contaminated ground water and overflowed into the Turtle River and the Marshes of Glynn during heavy rain events.** *See* **Ex. D.**

75.

The mercury released by Georgia Power has, **over time,** migrated onto marshes and shoreline owned by the City of Brunswick thereby contributing to the pollution of property of the City of Brunswick. It continues to migrate both to and from property of the City of Brunswick.

78.

Defendants Honeywell and Georgia Power have **with the passage of time** stored, disposed, discharged and released their hazardous wastes onto property of the City of Brunswick and in the waters and marshlands abutting property of the City of Brunswick in order to avoid the costs of safe storage and safe disposal of its hazardous waste. **This contamination is not visible. It was not observable** to employees of the City of Brunswick when it was deposited on City property. **It continues to migrate both to and from City property.**

79.

Mercury and PCB contamination of the water, sediment, and marine life now in the Turtle River Estuary and adjacent waters and marshes within the City of Brunswick interferes with and will continue to damage the value and usefulness of property in the City of Brunswick, and impair use, the enjoyment, and rental value of these properties.

108.

The **continuing unpermitted presence and spread** of Defendants' pollution at and about and to and from property of the City of Brunswick are **continuing trespasses** that unreasonably and substantially interferes with the City's right to exclude the pollutants of others from its property.

118.

The **continuing unpermitted presence and spread of Defendants' pollution** at and about and **to and from property of the City** of Brunswick unreasonably and substantially interferes with the City's use and enjoyment of its property.

123.

**Defendants' nuisances are continuing** and abatable at least in part, by removing the contamination from the land and marsh owned by Honeywell and controlled by Honeywell and Georgia Power before it threatens properties of the City of Brunswick.

Second Amended Complaint (emphasis added).

The holdings in *Wise* and the above allegations of the City's Second Amended Complaint fit together like a glove. The arguments of Georgia Power that relate to the Georgia statute of limitations are without merit and do not support dismissal of the Complaint.

Moreover and more telling is the fact that Honeywell agrees that its claims are not barred by the Georgia statute of limitations:

Honeywell, however, has not argued that the City's claims are barred by the statute of limitations; Honeywell has argued only that the statute of limitations bars claims for any damages suffered more than four years before the City filed its suit. Far from "conflict[ing]" with Georgia caselaw, *id.*, that argument is directly supported by every single case the City cites. *See, e.g., Wise Bus. Forms*, 893 S.E.2d at 38 (explaining how a plaintiff suing over a continuing nuisance is limited to "harms that occurred to the plaintiff's property within the past four years"); *Smith v. Branch*, 487 S.E.2d 35, 38 (Ga. Ct. App. 1997) (same); *Hoffman v. Atlanta Gas Light Co.*, 426 S.E.2d 387, 390 (Ga. Ct. App. 1992) (same); *Tucker v. S. Wood Piedmont Co.*, 28

F.3d 1089, 1091 (11th Cir. 1994) (same).

Reply Brief of Defendant Honeywell, 9/13/2024, p. 13.

Strangely, Honeywell correctly cites and quotes the controlling Georgia authority, but, in its arguments, substitutes the words *conduct* and *actions* for the words *damage* and *harms* that the Georgia Appellate Courts use. Honeywell Brief of September 13, 2024, p. 13, and Brief of October 11, 2024. One is reminded of Mark Twain's oft-quoted observation of the difference between the right word and almost the right word.

The question of whether or not the provisions of 42 U.S.C. § 9658 preserve claims for damages occurring more than four years prior to the filing of this suit on October 20, 2022, is a question of fact that can be resolved at trial, probably by a jury. At this stage, the limitations arguments do not support grant of the motions to dismiss.

## CONCLUSION

The motions to dismiss and for a more definite statement should be denied. The case should proceed for discovery and trial on the merits.

Respectfully submitted,

*s/ John C. Bell, Jr.*
John C. Bell, Jr. (Ga. Bar No. 048600)
Pamela S. James (Ga. Bar No. 389015)
THE BELL FIRM
PO Box 1547
Augusta, GA 30903-1547
(706) 722-2014
John@bellfirm.net
Pam@bellfirm.net

Robert P. Killian (Ga. Bar No. 417575)
KILLIAN LAW FIRM LLC
47 Professional Drive
Brunswick, GA   31520
(912) 263-9520
bob@killianlawfirm.com

Brian Donald Corry (Ga. Bar No. 165557)
McQUIGG SMITH & CORRY
504 Beachview Drive Suite 3D
Saint Simons Island, GA 31522
(912) 638-1174
brian@msclawga.com

COUNSEL FOR PLAINTIFF

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing **POST-HEARING,**

**POST-AMENDMENT BRIEF OF THE CITY OF BRUNSWICK**, upon all counsel of record

by electronic mail as follows:


Mark D. Johnson, Esq. {*mjohnson@gilbertharrelllaw.com*}
Amber M. Carter, Esq. {*acarter@gilbertharrelllaw.com*}
Gilbert, Harrell, Sumerford & Martin, P.C.
777 Gloucester Street - Suite 200
Brunswick, Georgia  31520

Benjamin H. Brewton, Esq. {*bbrewton@balch.com*}
T. Joshua R. Archer, Esq. {*jarcher@balch.com*}
Balch & Bingham LLP
801 Broad Street - Suite 800
Augusta, Georgia  30901

Brian D. Israel, Esquire {*brian.israel@arnoldporter.com*}
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001-3743

This 22nd day of October, 2024.


_s/ John C. Bell, Jr._
John C. Bell, Jr.
Counsel for Plaintiff

Exhibit 15

FILED - JA
GLYNN CO. CLERK'S OFFICE
Filed 8/29/2024 10:54 AM
Accepted 8/29/2024 11:57 AM
CASE # CE22-01086

*Rebecca J Walden*

CLERK SUPERIOR COURT

## IN THE SUPERIOR COURT OF GLYNN COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| CITY OF BRUNSWICK, by and through its MAYOR AND BOARD OF COMMISSIONERS, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. CE22-01086 |
| HONEYWELL INTERNATIONAL, INC. f/k/a ALLIED CHEMICAL CORPORATION and as ALLIEDSIGNAL, INC., and GEORGIA POWER COMPANY, | ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

### DEFENDANT GEORGIA POWER COMPANY'S AMENDED NOTICE OF ELEVENTH CIRCUIT'S NOTICE SETTING ORAL ARGUMENT

Defendant Georgia Power Company files this Amended Notice[1] to inform the Court that on August 8, 2024, the United States Court of Appeals for the Eleventh Circuit issued a Notice scheduling oral argument in Defendants' appeal from the district court order remanding this case to this Court. Oral argument before the Eleventh Circuit is set to take place during the week of December 16, 2024, in Atlanta, Georgia. A copy of the Eleventh Circuit's August 8, 2024, Notice is attached as **Exhibit A**.

The Court will recall that, on November 18, 2022, Georgia Power and Defendant Honeywell International, Inc. removed this case to the United States District Court for the Southern District of Georgia, based on the federal officer removal statute (28 U.S.C. § 1442), federal

---

[1] This Notice is being amended to attach Exhibit A which was inadvertently not attached to the original filing of this Notice.

24254727.1

question jurisdiction (28 U.S.C. § 1331), and diversity jurisdiction (28 U.S.C. § 1332(a)).   On September 1, 2023, the District Court remanded the case to this Court.   Georgia Power and Honeywell timely appealed the District Court's September 1, 2023, order to the Eleventh Circuit (No. 23-13200).   Briefing in the Eleventh Circuit was completed in February 2024.   Honeywell requested oral argument before the Eleventh Circuit, but Georgia Power and Plaintiff the City of Brunswick did not request oral argument.

Oral argument on Defendant's Motion to Dismiss is scheduled for September 20, 2024. However, if the Eleventh Circuit reverses the District Court's September 1, 2023, order, this Court will be divested of jurisdiction over this case.

Respectfully submitted this 29th day of August, 2024.

/s/ Benjamin H. Brewton
Benjamin H. Brewton
Georgia Bar No. 002530
T. Joshua R. Archer
Georgia Bar No. 021208
**Balch & Bingham LLP**
801 Broad Street, Suite 800
Augusta, Georgia 30901
Telephone: (706) 842-3711
Fax: (866) 258-8984
bbrewton@balch.com
jarcher@balch.com

*Attorneys for Defendant Georgia Power Company*

24254727.1

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and service will be perfected upon the following this 29th day of August, 2024:

John C. Bell, Jr.
Pamela S. James
The Bell Firm
P.O. Box 1547
Augusta, GA 30903

Brian D. Corry
McQuigg Smith & Corry
504 Beachview Drive
Suite 3D
St. Simons Island, GA 31522

Robert P. Killian
Killian Law Firm LLC
47 Professional Drive
Brunswick, GA 31520

Mark D. Johnson
Amber M. Carter
Gilbert Harrell Sumerford & Martin PC
777 Gloucester Street
Suite 200
Brunswick, GA 31520

Brian D. Israel
Paul Hastings LLP
1999 Avenue of the Stars
27th Floor
Century City, CA 90067

James L. Roberts IV
Roberts Tate, LLC
2487 Demere Road, Suite 400
Saint Simons Island, GA 31522

/s/ Benjamin H. Brewton
Benjamin H. Brewton
*Attorney for Defendant Georgia Power Company*

24254727.1