# Arnold & Porter

**Elisabeth Theodore**
+1 202.942.5891 Direct
Elisabeth.Theodore@arnoldporter.com

May 5, 2026

**VIA CM/ECF**

Hon. David J. Smith
Clerk of the Court
United States Court of Appeals
Eleventh Circuit
56 Forsyth St., N.W.
Atlanta, Georgia 30303

> Re: *City of Brunswick v. The Georgia Power Company, et al.*, No. 23-13200—Defendant-Appellant Honeywell's Response to the Court's April 21, 2026 Order

Dear Mr. Smith:

On April 21, 2026, this Court lifted its stay pending the Supreme Court's decision in *Chevron USA Inc. v. Plaquemines Parish*, 146 S. Ct. 1052 (2026), and directed the parties to file supplemental letter briefs addressing "the effect, if any, the Supreme Court's decision in *Chevron USA Inc. v. Plaquemines Parish* . . . has on this appeal." Dkt.78-2.[1]  The Supreme Court's decision in *Plaquemines* confirms that the district court committed fundamental errors in its analysis of the federal-officer-removal inquiry.  It also confirms that the City of Brunswick's original Complaint and Second Amended Complaint clear the low bar for relatedness under the federal-officer-removal statute.  *Plaquemines* unequivocally supports the removal of the City's lawsuit, which "implicates acts by [Defendants] that are closely connected to the performance of [their] federal duties," *id.* at 1062, by challenging the sufficiency of a federally directed and controlled cleanup of a Superfund site.  Based on the reasoning of *Plaquemines*, this Court should reverse the district court's remand order.

---

[1] References to the district court record are formatted as follows: Dct.Doc.[ECF No.] at [Page No.] and ¶ [No.].  References to this Court's docket are formatted as follows: Dkt.[ECF No.] at [Page No.] and ¶ [No.].

**Arnold & Porter Kaye Scholer LLP**
601 Massachusetts Ave, NW  |  Washington, DC 20001-3743  |  **www.arnoldporter.com**

Below we first describe the background of the *Plaquemines* case and the Supreme Court's recent decision, then explain how the district court failed to apply the *Plaquemines* standard and indeed committed the same errors addressed and corrected by the Court in that case, and lastly demonstrate that the City's allegations easily satisfy the *Plaquemines* standard.

## I.    *Chevron USA Inc. v. Plaquemines Parish*

In *Plaquemines*, oil and gas companies were sued by local governments in Louisiana that alleged the companies lacked requisite permitting for crude-oil production activities in Louisiana's coastal zone. *See* 146 S. Ct. at 1059. The litigation challenged production activities and methods that began during World War II, which allegedly caused increased harm to the environment through contamination and land losses. *Id.* Chevron and other defendants[2] removed under the federal-officer removal statute, 28 U.SC. § 1442(a)(1), arguing that their World War II-era production activities were related to their "contractual duties to refine crude oil into" specialized aviation gasoline (referred to as "avgas") "for the military at the same time." *Id.* at 1059. Chevron "removed on the theory that the suit alleged that Chevron illegally produced crude oil . . . , while it simultaneously served as an avgas refiner for the military." *Id.* The district court rejected this argument for removal, and the removing defendants appealed.

### A.    The Fifth Circuit's Opinion

The Fifth Circuit first held that the removing defendants had "acted under" a federal officer while acting as federal contractors refining specialized fuel for the U.S. military. *Plaquemines Parish v. BP Am. Prod. Co.*, 103 F.4th 324, 335 (5th Cir. 2024), *rev'd on other grounds*, 146 S. Ct. 1052 (2026). The court faulted the district courts for blending the acting-under and relating-to prongs and "requiring Defendants to show not only that they 'act[ed] under' a federal officer, but also that they acted pursuant to federal directives when they engaged in the conduct giving rise to Plaintiffs' suits." *Id.* The Fifth Circuit held that the lower courts had "impermissibly conflate[d] the 'distinct'" prongs of federal-officer removal, and further found that the defendants had satisfied the acting-under requirement based on contracts that "vested the government with control" over defendants' operations and provided a service that "the government needed to fight in World War II." *Id.*

---

[2] Following the Supreme Court's approach, we refer only to "Chevron" subsequently.

The Fifth Circuit further held, however, that the lawsuits were not "for or relating" to acts taken under a federal officer. *See id.* at 339-45. The court concluded that a lawsuit challenging a vertically-integrated company's *production* activities did not relate to the same company's federally controlled *refining* activities—emphasizing "[t]he lack of *any* contractual provision pertaining to oil production or directing Defendants to use only oil they produced." *Id.* at 341 (emphasis in original). The Fifth Circuit found that the defendants offered only an "attenuated connection" between their production and refining, and noted that a federal agency had allocated crude oil produced during the war—meaning the "connection was severed by Defendants' lack of control over where their crude oil was refined and by their use of crude oil purchased on the open market from other producers to comply with their contractual obligations." *Id.* at 341. The court thus concluded that the cases "require[d] various intermediary (and ultimately severed) links to connect the federal directives and challenged conduct." *Id.* at 342.

Judge Oldham dissented, contending that the majority had erroneously heightened the relating-to standard in violation of precedent interpreting recent legislative amendments to the federal-officer-removal statute. *See id.* at 354 (Oldham, J., dissenting). Judge Oldham described the lengthy legislative history reflecting how "Congress relaxed, relaxed, and relaxed again the limits on federal officer removal"—including, most recently, by adding "or relating to" in § 1442(a)(1). *Id.* at 347. This final amendment requires only that "the charged conduct is *connected or associated* with an act pursuant to a federal officer's directions." *Id.* at 349 (quoting *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 296 (5th Cir. 2020) (en banc)). In violation of this standard, Judge Oldham found the majority had "reinstate[d] a version of the old, discarded, causal nexus test" that predated the congressional amendment. *Id.* at 354.

### B.     The Supreme Court's Reversal

The Supreme Court granted certiorari and unanimously reversed on April 17, 2026, holding that the lawsuit against Chevron was removable under § 1442.

The Court held that "Chevron's wartime crude-oil production was closely connected to its wartime avgas refining, so the parish's suit challenging that crude-oil production relates to that refining" for purposes of federal-officer removal. *Plaquemines*, 146 S. Ct. at 1060. The Court explained that the statutory reference to "'relating to' sweeps broadly" and means "'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with.'" *Id.* (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992)). "One thing can relate to another even if the connection is 'indirect,'" and

"even if it was 'not specifically designed to affect' it." *Id.* (quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990)).

The Court made clear that a "strict causal relationship" is accordingly not necessary to show relatedness, and "a removing defendant need not show that his federal duties specifically required or strictly caused the challenged conduct." *Id.* (quoting *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021)). Applying that standard, the Court concluded that the "case fits comfortably within the ordinary meaning of a suit 'relating to' the performance of federal duties" because "Chevron has plausibly alleged a close relationship between its challenged conduct and the performance of its federal duties." *Id.* at 1061.

In particular, the Court found that wartime oil production efforts—and the challenged methods that maximized crude-oil production—were "closely connected" to "wartime avgas refining for the military." *Id.* Notably, "[i]f Chevron had refrained from these actions and produced less crude oil as a result, its avgas refining for the military *may* have suffered." *Id.* (emphasis added). At bottom, to satisfy the relatedness prong of federal-officer removal, the Court held that the suit need only "implicate[] acts by [the removing defendant] that are closely connected to the performance of its federal duties." *Id.* at 1062.

The Supreme Court specifically faulted the Fifth Circuit for requiring that Chevron's agreement with the federal government "specify" aspects of crude-oil production—holding to the contrary that "the ordinary meaning of 'relating to' does not require the defendant to show that his federal duties specifically invited his challenged conduct." *Id.* As such, a removing defendant need not show that the federal government "expressly direct[ed] or invite[d]" its challenged conduct for relatedness to be satisfied. *Id.* Further, the Supreme Court found that the Fifth Circuit had erroneously decided that the actions of a third-party agency allocating crude oil to refineries "severed any relation" between the defendants' challenged production activities and the federally directed refining activities. *Id.* The Court held that "an act can relate to its consequences even when the causal chain includes actions by intermediaries." *Id.*

Lastly, the Supreme Court unequivocally rejected an argument from the plaintiff state that attempted to blend the acting-under and relating-to prongs of federal-officer removal, such that a defendant must be "'acting under' a federal officer in taking the specific actions challenged in the suit" to satisfy the statute. *Id.* at 1062. Such a "theory is not consistent with the statutory text," the Court explained. *Id.* at 1063. Rather, the statute "contemplates removal of suits against

4

officers or their agents for acts that were *not done* under color of their offices, so long as the suits 'relat[e] to' such acts." *Id.* (emphasis added). A contrary rule, that blended the two elements, "would leave the 'relating to' requirement with little, if any, independent function," and "impermissibly conflates the 'distinct' 'acting under' and 'connected or associated with' elements of the federal officer removal test." *Id.* (quoting *Plaquemines*, 103 F.4th at 335).

## II.    The District Court's Decision in This Case Is Plainly Inconsistent With *Plaquemines*

The Supreme Court's *Plaquemines* decision vindicates Honeywell's arguments that the district court erred in rejecting federal-officer removal in this case. The Supreme Court described a standard for relatedness under 28 U.S.C. § 1442(a)(1) that is easily satisfied by the City's lawsuit challenging the sufficiency of a federally directed cleanup under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") and pursuant to a federal Consent Decree.

The district court concluded that "Defendants fail[ed] to satisfy the first prong" of the federal officer test because they could not "demonstrat[e] they were 'acting under' a federal officer *when* they allegedly released pollutants in the waters and marshlands on and abutting the City's property." Dct.Doc.43 at 8 (emphasis added). That was so, the court held, because the City alleged that "Defendants released pollutants even before the EPA was involved," the "Complaint does not allege the pollution was done under the direction and control of the EPA," and the City is not alleging that "implementation of the remediation efforts violated Georgia law or caused the pollution." Dct.Doc.43 at 10.

Honeywell's briefing has already demonstrated how the district court erroneously narrowed the scope of the City's express allegations, which do not concern merely the past release of pollutants, but also an alleged continuing failure to remediate that pollution. *See, e.g.*, Dkt.21 at 26-28. The City's claims would be time barred if they were limited to alleged releases of contamination predating the start of the CERCLA cleanup, and so the City has chosen to assert claims for *continuing* nuisance and trespass that turn on allegations of a *continuing* failure to abate pollution. *See* Dkt.21 at 11. But *Plaquemines* also makes clear that the

5

district court applied the wrong standard for federal-officer removal and that its analysis was incorrect even if the only challenged conduct were past pollution.[3]

*First*, rather than ask whether defendants had acted under federal officers in performing certain activities and then ask whether those activities relate to the City's suit, the district court impermissibly conflated the two inquiries. The Supreme Court emphasized that the relating to and acting under prongs are "distinct" elements of the test. *Plaquemines*, 146 S. Ct. at 1063. Honeywell's prior briefing explained that Honeywell has been acting under a federal officer while performing CERCLA cleanup duties for the last three decades under EPA's direction and control. *See* Dkt.21 at 16-23. The district court nonetheless held that Honeywell failed to satisfy the "acting under" prong because it could not show that alleged tortious conduct was directed by a federal officer. *Plaquemines* rejected this exact argument, explaining that the statute does *not* require a showing that the "defendant was 'acting under' a federal officer in taking the specific actions challenged in the suit," and "contemplates removal of suits against officers or their agents for acts that were not done under color of their offices." *Id.* at 1062–63. The district court's "acting under" analysis is irreconcilable with those holdings.

*Second*, the district court's analysis would be incorrect even if it were treated as a holding under the "relating-to" prong, because *Plaquemines* rejects the district court's "direction and control" and causal connection tests. Dct.Doc.43 at 10. "[A] removing defendant need not show that his federal duties specifically required or strictly caused the challenged conduct." *Plaquemines*, 146 S. Ct. at 1060. Accordingly, to satisfy the "relating to" prong, Honeywell need not show that it was acting under a federal officer "when" it allegedly released pollutants, *contra*

---

[3] As explained in Honeywell's prior briefs, Honeywell has amply demonstrated that the City's claims—in both its original Complaint and Second Amended Complaint—challenge the sufficiency of the remediation of the Plant Site because those claims depend on allegations that there is a continuing release of pollution and continuing failure to remediate that pollution to the City's satisfaction. *See, e.g.*, Dct.Doc.1-1 at 152 ¶ 75 ("Honeywell's activities at the Plant Site caused and continue to cause toxic mercury and PCBs to be spilled, discharged and deposited"); Dkt.62-3 at 17 ¶ 71 (same). And with regard to pollution allegedly present on the City's property, the City attempts to hold Honeywell liable for failing to perform tasks that Honeywell could not undertake without EPA's approval. However, *Plaquemines* confirms that a much lesser showing is sufficient for federal-officer removal.

Dct.Doc.43 at 8; it need only show that the lawsuit "implicates" its EPA-directed remedial efforts, *Plaquemines*, 146 S. Ct. at 1061.

The district court thus committed the same error as the Fifth Circuit in *Plaquemines* when it rejected removal because "the Complaint does not allege the pollution was done under the direction and control of the EPA." Dct.Doc.43 at 10. Like the Fifth Circuit, the district court effectively asked whether Defendants' "federal duties specifically invited [their] challenged conduct." *Plaquemines*, 146 S. Ct. at 1062. That standard is erroneous. The Supreme Court has made clear "[o]ne thing can relate to another even if the connection is 'indirect'" and "even without a 'strict causal relationship.'" *Id.* at 1060 (citation omitted). Accordingly, the City's lawsuit "relate[s] to" Defendants' activities under the EPA, for purposes of federal-officer removal, without any showing that Defendants' "federal duties specifically required or strictly caused the challenged conduct." *Id.*

### III.   The City's Lawsuit Easily Meets the Standard Described in *Plaquemines*

This lawsuit is removable under the standard for federal-officer removal described in *Plaquemines*. The Supreme Court required only that a suit "implicate[] acts by [a removing defendant] that are closely connected to the performance of its federal duties" and definitively rejected any requirement that a defendant's "federal duties specifically required or strictly caused the challenged conduct." *Plaquemines*, 146 S. Ct. at 1060, 1062. At minimum, the City's claims implicate acts by Honeywell that Honeywell has "plausibly alleged" are closely connected to Honeywell's performance of its federal duties for the past three decades. *Id.* at 1061. Indeed, the City's claims turn on allegations that Honeywell has failed to adequately abate pollution in carrying out the federally controlled cleanup of pollution from a federal Superfund site.

The City's original Complaint asserts violations of state law based on Defendants' alleged "failure to permanently remove their pollutants from property of the City of Brunswick." Dct.Doc.1-1 at 158 ¶ 108. The City's suit plainly targets Honeywell's handling of pollution originating from the Plant Site and the sufficiency of its current, EPA-controlled remediation of the Site—contending that "Honeywell's activities at the Plant Site caused and *continue to cause* toxic mercury and PCBs to be spilled, discharged and deposited into the Turtle River, its tributaries, surrounding marshlands and onto property of the City of Brunswick." Dct.Doc.1-1 at 152 ¶ 75 (emphasis added). The Complaint contends that "Honeywell took no action to remove any of the tens of thousands of pounds of PCBs that it had already dumped on [the Plant] Site, into the marshlands and in the

outfall canal that leads to Purvis Creek, the Turtle River Estuary and beyond." Dct.Doc.1-1 at 144 ¶ 35.  The Complaint's basic contention is that pollution at the Plant Site migrates into waters surrounding the Site and then into the marshlands and property of the City.  Dct.Doc.1-1 at 145 ¶ 41-42, 152 ¶ 72-75.

The foregoing allegations "implicate[]" Honeywell's response to pollution on and around the Plant Site, and Honeywell's actions (or alleged inaction) regarding that pollution is "closely connected" to its performance of its "federal duties" under a federally directed cleanup of the Plant Site.  *Plaquemines*, 146 S. Ct. at 1062.  The City's theory is that pollution at the Plant Site migrates onto the City's property, so Honeywell's actions at the Plant Site implicate alleged pollution on the City's property.  The connection is especially close because, as the City acknowledges, EPA's investigation includes the surrounding waters and it is directing cleanup activities involving the surrounding waters.  *See* Dct.Doc.1-1 at 151-52 ¶ 70-72 (describing EPA's testing for pollution in the waters around the Plant Site).  From the beginning of the remediation of Plant Site pollution, EPA has directed investigation and remediation "at or near" the "Site," *see* Dct.Doc. 1-1 at 81 (1995 Administrative Order by Consent describing scope of access necessary to carry out remedial investigation and feasibility study).  To that end, when EPA formally listed the Site on the CERCLA National Priorities List in 1996, EPA described it as "neither equal to nor confined by the boundaries of any specific property that may give the site its name" and including "any other location to which contamination from that area has come to be located."  61 Fed. Reg. 30,510, 30,511 (June 17, 1996); *see also id.* at 30,512 (listing "LCP Chemicals Georgia" site).  Once the remedial investigation and feasibility study began for the "facility"—likewise defined by CERCLA as "any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located"—the statute barred Honeywell from "undertak[ing] any remedial action at the facility unless such remedial action has been authorized by the President."  42 U.S.C. §§ 9601(9), 9622(e)(6).  The Consent Decree, which concerns the cleanup of one part of the Plant Site, likewise recognizes that "affected property" includes "any other real property" where remedial action may be implemented and thus continues to require that Honeywell investigate contamination and evaluate the need for responses "at or near the Site." Dct.Doc.1-1 at 6, 13.

But even if the Court were only considering cleanup at the Plant Site itself, claims alleging that pollution is migrating onto the City's property "implicate" Honeywell's cleanup activities—and Honeywell has certainly "plausibly alleged" that to be so.  *Plaquemines*, 146 S. Ct. at 1061; *see* Dct.Doc.1 at 6-7, 14-16 (Notice

8

of Removal). As the City must acknowledge, the cleanup of that pollution has been controlled by EPA for the last thirty years. *See*, *e.g.*, Dct.Doc.1-1 at 151-52. And the complaint directly challenges the sufficiency of that EPA-controlled cleanup by seeking damages for maintaining a continuing trespass and nuisance through the alleged continuing failure to abate pollution "at the Plant Site" and "at and about" the City's property. Dct.Doc.1-1 at 152, 158, 160 ¶¶ 75, 110, 121. There is a "close relationship" between (1) the alleged ongoing tortious conduct and alleged continuing contamination by Plant-Site pollutants and (2) the ongoing remediation of pollution under EPA's direction and control at the Plant Site. *Plaquemines*, 146 S. Ct. at 1061.

The City cannot evade that result by denying that it seeks to challenge remediation of the Plant Site (just as the plaintiffs in *Plaquemines* could not evade removal by arguing that their case focused on production activities that were upstream of federal refining agreements cited by Chevron). And any attempt to limit the scope of the lawsuit to pollution that predates any EPA involvement cannot survive scrutiny. Indeed, at oral argument, this Court asked the City to clarify the scope of its claims, and the City made clear that pollution "continues to move on and off" the City's property and "[t]he contamination on their land today is not necessarily the same molecules of methylized mercury and PCBs that were on it five years ago."[4]

Any doubt is resolved by the City's Second Amended Complaint, which makes clear that the City's theory of continuing nuisance and trespass challenges the adequacy of the remediation currently being performed at the Plant Site. The Second Amended Complaint confirms that Defendants' trespass and nuisance arise from the "continuing failure and refusal to permanently remove their pollution *before* it trespasses upon property of the City," Dkt.62-3 at 24 ¶ 109 (emphasis added); *see also* Dkt.62-3 at 26 ¶ 119 (same allegation for continuing nuisance). The City further clarifies the nuisance and trespass are "abatable" by "removing contamination from the land and marsh *owned by Honeywell*"—i.e., the Plant Site—"before" the pollutants "trespass" or "threaten[] properties of the City." Dkt.62-3 at 24–25, 27 ¶¶ 110, 123 (emphasis added). These explicit claims build on the City's continued allegation that "Honeywell's activities at the Plant Site *caused and continue to cause* toxic mercury and PCBs to be spilled, discharged and deposited into the turtle River, its tributaries, surrounding marshlands and with the passage of time onto property of the City." Dkt.62-3 at 17 ¶ 71. And, as it did

---

[4] Oral Argument at 22:34, *City of Brunswick v. Honeywell International, Inc.*, No. 23-13200 (11th Cir. Dec. 16, 2024).

9

before this Court at oral argument, the City explains the continuing nature of the alleged tortious conduct by describing pollutants as "continu[ing] to migrate both to and from City property." Dkt.62-3 at 19 ¶ 78.

As in the City's original Complaint, the City's allegations in the Second Amended Complaint clearly "implicate" Honeywell's remediation of pollution on and around the Plant Site, and that remediation is, at minimum, "closely connected" to Honeywell's performance of its "federal duties" under the EPA-controlled remediation of the Plant Site. *Plaquemines*, 146 S. Ct. at 1062.

*    *    *

The Supreme Court's decision in *Plaquemines* confirms that the district court in this case applied the wrong standard for federal-officer removal, and that the federal-officer-removal statute supports removal here. This Court should reverse the remand order.

Respectfully submitted,

*/s/ Elisabeth Theodore*
Elisabeth Theodore

*Counsel for Defendant-Appellant Honeywell*

10